RECEIVED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

MAR 3 1 2003

<u>JOHNNY M RUFFIN JR</u> #K80541

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

03-210-DRH

## 03C50090

vs.

Case No: _____

(To be supplied by the <u>Clerk of this Court</u>)

<u>WINNEBAGO COUNTY JAIL; RICHARD MEYER; GARY ARIBIS;</u>
<u>DEBRA DECKER; ILLINOIS DEPARTMENT OF CORRECTION; GUY</u>
<u>PIERCE; DONALD N SNYDER; KAREN MCKINNEY; CHRISTINE</u>
<u>MITCHELL; ALFREDO GARGIA; RONALD D WILLIAM; SCOTT</u>
<u>WCYISKAILA; ROBERT A DAVENPORT; T MURRY; ROGER COWEN,</u>
<u>JONATHAN A WHISS; ALAN PRENTZE; ADRIAN FEINERMAN; SUPT MAUE;</u>
<u>STEPHEN DOUGHTY; ELISA REA; MARVIS GROSS; PAM GRUBMAN,</u>
<u>GARY KNOP; "JOHN DOE" WHEELCHAIR REPAIR COMPANY, "JANE DOE"</u>
<u>REGISTER NURSE; ANY OTHER JANE AND JOHN DOES; ALL ARE</u>

<u>SUED IN THEIR OFFICIAL AND/OR INDIVIDUAL CAPACITIES</u>

(Enter above the full name of ALL
defendants in this action.  Do not
use "et al.")

**DOCKETED**

MAR 1 2 2003

CHECK ONE ONLY:

__X__   COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION
1983 U.S. Code (state, county, or municipal defendants)

_____   COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION),
TITLE 28 SECTION 1331(a) U.S. Code (federal defendants)

_____   OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

1

I.    Plaintiff(s):

    A.    Name: _JOHNNY M. RUFFIN JR_

    B.    List all aliases: _N/A_

    C.    Prisoner identification number: _TFK8____#_

    D.    Place of present confinement: _MENARD CORRECTIONAL CENTER_

    E.    Address: _P.O. BOX ___ MENARD, IL 62259_

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

II.    **Defendant(s):**
(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank.  Space for two additional defendants is provided in B and C.)

    A.    Defendant: _ILLINOIS DEPARTMENT OF CORRECTION_

        Title: _AN "PUBLIC ENTITY" PRISON SYSTEM_

        Place of Employment: _FALLS UNDER THE JURISDICTION OF STATE GOVERNMENT_

    B.    Defendant: _WINNEBAGE COUNTY JAIL_

        Title: _AN "PUBLIC ENTITY" LOCAL JAIL SYSTEM_

        Place of Employment: _FALLS UNDER THE JURISDICTION OF STATE GOVERNMENT_

    C.    Defendant: _JANE DOE "_

        Title: _NURSING SUPERVISOR_

        Place of Employment: _FALLS UNDER THE JURISDICTION OF STATE GOVERNMENT_

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

D. RICHARD MEYER
SHERIFF DIRECTOR
WINNEBAGO COUNTY SHERIFF DEPARTMENT

E. GARY ARSED
JAIL DIRECTOR
WINNEBAGO COUNTY JAIL

F. DEBRA DECKER
REGISTER NURSE
WINNEBAGO COUNTY JAIL

G. DONALD N SNYDER SR
DIRECTOR OF I.D.O.C.
ILLINOIS DEPARTMENT OF CORRECTION

H. GUY PIERCE
WARDEN
PINCKNEYVILLE CORRECTIONAL CENTER

I. KAREN McKINNEY
ASSISTANT WARDEN
PINCKNEYVILLE CORRECTIONAL CENTER

J. CHRISTINE McCRAY
HEALTH CARE ADMINISTRATOR
PINCKNEYVILLE CORRECTIONAL CENTER

K. ANGELO GARCIA
MEDICAL DIRECTOR
PINCKNEYVILLE CORRECTIONAL CENTER

3A

L. RONALD P WELIRM
LIEUTENANT
PINCKNEYVILLE CORRECTIONAL CENTER

M. SCOTT WHYTEKKER
CORRECTIONAL OFFICER
PINCKNEYVILLE CORRECTIONAL CENTER

N. ROBERT A. DAVENPORT
LIEUTENANT
PINCKNEYVILLE CORRECTIONAL CENTER

O. "JOHN DOE" WHITE HAIR REPAIR COMPANY
DIRECTOR OR REPAIR COMPANY
CONTRACT TECHNOL

P. LISA REA
LAW LIBRARY CLERK
MENARD CORRECTIONAL CENTER

Q. STEPHEN DOUGHTY
ASSISTANT MEDICAL CENTER
MENARD CORRECTIONAL CENTER

R. MIKKVIS GPS
SERGEANT MILLER
MENARD CORRECTIONAL CENTER

S. SUPERINTENDENT MAU
SUPERINTENDENT OF NORTH II SEG UNIT
MENARD CORRECTIONAL CENTER

—3b.—

T.    T. MURRY
        GRIEVANCE OFFICER
        PINCKNEYVILLE CORRECTIONAL CENTER

U.    ROGER COWEN
        WARDEN
        MENARD CORRECTIONAL CENTER

V.    JONATHAN A. WALLS
        WARDEN/A.D.A. COORDINATOR
        MENARD CORRECTIONAL CENTER

W.    GARY KNOP
        ASSISTANT WARDEN
        MENARD CORRECTIONAL CENTER

X.    ALAN FRENTZEL
        ASSISTANT WARDEN
        MENARD CORRECTIONAL CENTER

Y.    ADRIAN FEINERMAN
        MEDICAL DIRECTOR
        MENARD CORRECTIONAL CENTER

Z.    PAM GRUBMAN
        HEALTH CARE ADMINISTRATOR
        MENARD CORRECTIONAL CENTER

~~AA. TRAVIS GROSS~~
    ~~GRIEVANCE OFFICER~~
    ~~MENARD CORRECTIONAL CENTER~~

—2C—

III.    Exhaustion of Administrative Remedies

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.    Is there a grievance procedure available at your institution?

YES (X)   NO (  )   If there is no grievance procedure, skip to F.

B.    Have you filed a grievance concerning the facts in this complaint?

YES (X)   NO (  )

C.    If your answer is YES:

1.    What steps did you take?

I FILED GRIEVANCES (SEE ATTACHED TABLET OF EVIDENCES EXHIBITS)

2.    What was the result?

GRIEVANCES WAS DENIED (SEE ATTACHED TABLET OF EVIDENCES EXHIBITS)

3.    If the grievance was not resolved to your satisfaction, did you appeal?

What was the result (if there was no procedure for appeal, so state.)

I APPEALED GRIEVANCES TO (IDOC) DIRECTOR Or/AND THE ADMINISTRATOR REVIEW BOARD, EITHER DENIED OR REFUSES TO ANSWER GRIEVANCES (SEE, TABLET OF EVIDENCES EXHIBITS)

D.    If your answer is NO, explain why not

N/A

-3-

E.    Is the grievance procedure now completed?   YES (X)   NO (  )

F.    If there is no grievance procedure in the institution, did you complain to authorities?   YES (  )   NO (  )   (THERE IS A GRIEVANCE PROCEDURE)

G.    If your answer is YES:

1.    What steps did you take?



2.    What was the result?



H.    If your answer is NO, explain why not



IV.   List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):

A.   Name of case and docket number: JOHNNY M. RUFFIN JR VS KANE COUNTY SHERIFF DEPARTMENT et. Al. 01-CV-04898

B.   Approximate date of filing lawsuit: JUNE 23, 2001

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: JOHNNY M. RUFFIN JR

D.   List all defendants: KANE COUNTY SHERIFF DEPARTMENT, GARY WALTON, BRIAN LEWIS, THOMAS A. FRIENDICH, VERNE BJORNSEN, BRIAN GORCOWSKI, PETER AIMEDA

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): U.S. DISTRICT COURT NORTHEASTERN DIVISION

F.   Name of judge to whom case was assigned: JUSTICE PALLMEYER & BROWN

G.   Basic claim made: ~~ESSCA ~~ ~~ ~~ A CIVIL RIGHTS ACTION PURSUANT TO 42 U.S.C. 1983 ALLEGE UNREASONABLE SEIZURE, EXCESSIVE USE OF FORCE, AND CIVIL CONSPIRACY.

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): CASE IS STILL PENDING (STAYED All PROCEEDING)

H.   Approximate date of disposition: STILL PENDING

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-**

-5-

CONT, PREVIOUS LAW SUIT

A. JOHNNY M. RUFFIN JR. -VS- GEORGE C. HOWARD JR.; 00M1153831

B. FILED ON NOVEMBER 2, 2000

C. JOHNNY M. RUFFIN JR

D GEORGE C. HOWARD JR.

E. NO JUDGE YET ASSIGNED

F. ALLEGING LEGAL MALPRACTICE AND TORT BREACHED OF CONTRACT

G. IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS 1ST MUNICIPAL DISTRICT

H. CASE IS STILL PENDING


A. JOHNNY M. RUFFIN SR. -VS- CECIL RUNYON, 02-44-GPM

B. FILED ON JANUARY 22, 2002

C. JOHNNY M. RUFFIN JR.,

D. CECIL RUNYON, SEILER, PONINSKI, B. GALE

E. CHIEF JUSTICE G. PATRICK MURPHY

F. ALLEGING EXCESSIVE FORCE

G. IN THE U.S. SOUTHERN DISTRICT COURT OF ILLINOIS

H. CASE IS STILL PENDING

V.    Statement of Claim:

State here as briefly as possible, the facts of your case. Describe precisely how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

## PRELIMINARY STATEMENT

THIS IS A CIVIL RIGHTS ACTION FILED PRO SE BY JOHNNY M. RUFFIN JR., AN ILLINOIS STATE PRISONER, FOR INJUNCTION AND MONETARY DAMAGES, UNDER 42 U.S.C. §1983, ALLEGING SYSTEMATIC DELIBERATE INDIFFERENCE TO PRE-TRIAL DETAINEE'S SERIOUS MEDICAL NEEDS OF PHYSICAL THERAPY WHILE HE WAS CONFINED AT THE WINNEBAGO COUNTY JAIL (ROCKFORD ILLINOIS, COUNTY OF WINNEBAGO) AND REFUSAL TO TRANSFER HIS WINNEBAGO COUNTY JAIL'S MEDICAL RECORDS AND ALL BEING IN VIOLATION OF THE 14TH AND 8TH AMENDMENT'S BAN ON CRUEL AND UNUSUAL PUNISHMENT, AND VIOLATION OF SECTION 504 OF THE REHABILITAT. ACT OF 1973, 29 U.S.C. §794 AND PURSUANT TO 28 C.F.R. § 35.130 (B)(1)(i)(ii)(iii)(iv)(B)(7). THE PLAINTIFF ALSO ALLEGES SYSTEMATIC PRACTICE OF DENIAL OF HIS SERIOUS MEDICAL TREATMENT, IN VIOLATION OF THE 8TH AMENDMENT'S BAN ON CRUEL AND UNUSUAL PUNISHMENT AND CONSPIRACY, AND RETALIATION AND HARASSMENT IN VIOLATION OF THE 1ST AND 14TH AMENDMENT'S DUE PROCESS AND INTERFERENCE WITH ACCESS TO COURT, AND VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. §794 AND PURSUANT TO 28 C.F.R. § 35.130 (B)(1)(i)(ii)(iii)(iv)(B)(7). WHILE HE WAS CONFINED AT THE PINCKNEYVILLE CORRECTIONAL CENTER (PINCKNEYVILLE, ILLINOIS COUNTY OF PERRY); PLAINTIFF ALSO ALLEGES SYSTEMATIC PRACTICE OF DENIAL OF HIS SERIOUS MEDICAL

--6--

NEEDS OR/ TREATMENTS, IN VIOLATION OF THE 8TH AMENDMENTS "DELIBERATE INDIFFERENCE", AND RETALIATION AND HARASSMENT, IN VIOLATION OF THE 1ST AND 14TH AMENDMENTS' DUE PROCESS AND INTERFERENCE WITH ACCESS TO COURT, AND VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. §794 AND PURSUANT TO 28 C.F.R. §35.130(b)(1), (ii), (iii), (iv) (b)(3), (b)(7), AND VIOLATION OF FEDERAL TITLE VII OF 1964 CIVIL RIGHTS ACT OF RACIAL DISCRIMINATIONS, AND 14TH AMENDMENT EQUAL PROTECTION CLAUSE,

PLAINTIFF FURTHER ALLEGES THE TORTS NEGLIGENCE, MEDICAL MALPRACTICE GROSS NEGLIGENCE AND MEDICAL NEGLIGENCE, UNDER THE LAWS OF THE STATE OF ILLINOIS, AND IN CONJUNCTION WITH THE SYSTEMATIC PERIOD OF DENIAL OF PLAINTIFF'S MEDICAL TREATMENT'S AIMS.

## JURISDICTION

1.) THE COURT HAS JURISDICTION OVER THE PLAINTIFF'S CLAIMS OF VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER 28 U.S.C. §1331, AND 1343.

2.) THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE PLAINTIFF'S RELATED STATE LAW TORT CLAIMS UNDER 28 U.S.C. §1367.

## VENUE

3.) VENUE IS PROPER IN THIS COURT UNDER 28 U.S.C. §1457(A) BECAUSE THE EVENTS GIVING RISE TO THE PLAINTIFF'S CLAIMS IN ~~MULTI DISTRICTS~~ NORTHERN EASTERN AND WESTERN AND SOUTHERN DISTRICTS, IN WHICH CLAIMS ARE CONNECTED WITH HIS SYSTEMATIC DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS CLAIMS.

4.) THE PLAINTIFF, JOHNNY M. RUFFIN JR., WAS INCARCERATED AT THE WINNEBAGO COUNTY JAIL, ("HERE IN AFTER –WCJ") (ROCKFORD, ILLINOIS-COUNTY OF WINNEBAGO); THEN LATER TRANSFERRED TO PINCKNEYVILLE CORRECTIONAL CENTER ("HERE IN AFTER-PNKCC") (PINCKNEYVILLE, ILLINOIS-COUNTY OF PERRY) AND AGAIN TRANSFERRED TO AND CURRENTLY BEING HOUSED AT THE MENARD CORRECTIONAL CENTER ("HEREIN-AFTER-MCC") (MENARD, ILLINOIS-COUNTY OF RANDOLPH), DURING THE EVENTS DESCRIBED IN THIS COMPLAINT.

5.) DEFENDANT WINNEBAGO COUNTY JAIL ("PUBLIC ENTITY"), IS A LOCAL GOVERNMENT UNIT OF WINNEBAGO COUNTY (ILLINOIS), A PLACE OF CONFINEMENT THAT IS USED TO HOLD PERSONS EITHER CONVICTED OF MISDEMEANORS OR PERSONS WAITING TRIAL; AND AT ALL TIMES RELATED HERE TO WAS ACTING UNDER THE COLOR OF STATE LAW. IT IS BEING SUED IN ITS OFFICIAL CAPACITY.

6.) DEFENDANT RICHARD MEYER, WAS EMPLOYED AS A SHERIFF AT THE WINNEBAGO COUNTY SHERIFF DEPARTMENT. HE IS RESPONSIBLE FOR SETTING GENERAL POLICIES, PRACTICES AND PROCEDURE FOR THE CONDITION AT THE WINNEBAGO COUNTY JAIL, AND AT ALL TIMES RELATED HERE TO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITIES.

7.) DEFENDANT GAY ARIBIS, WAS EMPLOYED AS A JAIL DIRECTOR AT THE WINNEBAGO COUNTY JAIL. HE IS RESPONSIBLE FOR MANAGING, REGULATES, GUIDES OR ORDERS ALL AFFAIRS OF THE JAIL, AND AT ALL TIMES RELATED HERE TO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITIES.

8.) DEFENDANT DEBRA DECKER, WAS EMPLOYED AS A DIRECTOR OF NURSING AT THE WINNEBAGO COUNTY JAIL, SHE IS RESPONSIBLE FOR MANAGING, REGULATES, GUIDES, ORDERS OR DIRECT AFFAIRS FOR THE DAY TO DAY ADMINISTRATION OF THE HEALTH CARE UNIT, AND AT ALL TIMES RELATED HERE TO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING SUED IN HER INDIVIDUAL AND/OR OFFICIAL CAPACITIES.

-7a-

9.) DEFENDANT "JANE DOE", WAS EMPLOYED AS A REGISTER NURSE SUPERVISOR AT P.R.N. (TEMPORARY AGENCY) WHO IS A PRIVATE CONTRACTOR TO THE WINNEBAGO COUNTY JAIL, AND AT ALL TIMES RELATED HERE TO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING SUED IN HER INDIVIDUAL AND/OR OFFICIAL CAPACITIES.

10.) DEFENDANTS ILLINOIS DEPARTMENT OF CORRECTIONS ("HEREIN AFTER I.D.O.C.") IS AN ILLINOIS STATE PENAL SYSTEM, A PLACE FOR THE CONFINEMENT OF PERSONS, WHETHER AS A PUNISHMENT IMPOSED BY THE LAW AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. IT IS BEING SUED IN ITS OFFICIAL CAPACITY.

11.) DEFENDANT DONALD N. SNYDER JR., WAS EMPLOYED AS A DIRECTOR OF THE ILLINOIS DEPARTMENT OF CORRECTION; HE IS RESPONSIBLE FOR MANAGING, REGULATES, ORDER OR DIRECT ALL AFFAIRS FOR THE I.D.O.C. AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITY.

12.) DEFENDANT GUY PIERCE, WAS EMPLOYED AS A WARDEN AT PINCKNEYVILLE CORRECTIONAL CENTER. HE IS RESPONSIBLE FOR OVERSEES AND CONTROLS COMPLEX FACILITY FISCAL, CLASSIFICATION, TREATMENT, TRAINING AND REHABILITATION PROGRAMS POLICIES, AND PROCEDURES AT PINCKNEYVILLE CORRECTIONAL CENTER, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITY.

13.) DEFENDANT KAREN MCKINNEY WAS EMPLOYED AS AN ASSISTANT WARDEN AT PINCKNEYVILLE CORRECTIONAL CENTER. SHE IS RESPONSIBLE FOR, UNDER ADMINISTRATIVE DIRECTION OF THE WARDEN'S PLANS, ORGANIZES AND ASSUMES DIRECT RESPONSIBILITY OVER THE FUNCTIONS OF THE MEDICAL SERVICES AND COORDINATES ALL AMERICAN WITH DISABILITY ACT INMATES PROGRAMS, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING SUED INDIVIDUAL AND OFFICIAL CAPACITY.

-7b-

14.) DEFENDANT ALFREDO GARCIA, WAS EMPLOYED AS MEDICAL DIRECTOR AT PINCKNEYVILLE CORRECTIONAL CENTER. HE IS RESPONSIBLE FOR EVALUATING ALL EXISTING MEDICAL PROGRAMS, POLICIES, PROCEDURES AND PROTOCOLS TO ENSURE COMPLIANCE WITH MEDICALLY ACCEPTED STANDARDS, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER COLOR OF STATE LAW HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITY.

15.) DEFENDANT CHRISTINE MITCHELL, WAS EMPLOYED AS HEALTH CARE UNIT ADMINISTRATOR AT PINCKNEYVILLE CORRECTIONAL CENTER. SHE IS RESPONSIBLE FOR THE DAY-TO-DAY ADMINISTRATION OF THE HEALTH CARE UNIT. SHE SUPERVISES AND DIRECTLY RESPONSIBLE, TO UTILIZE ALL AVAILABLE RESOURCES WITHIN THE HEALTH CARE UNIT TO ENSURE THE BEST POSSIBLE HEALTH SERVICES AVAILABLE TO THE INMATES, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING SUED INDIVIDUAL AND OFFICIAL CAPACITY.

16.) DEFENDANT RONALD D. WILLIAM, WAS EMPLOYED AS LIEUTENANT AT PINCKNEYVILLE CORRECTIONAL CENTER, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITY.

17.) DEFENDANT ROBERT A. DAVENPORT, WAS EMPLOYED AS LIEUTENANT AT PINCKNEYVILLE CORRECTIONAL CENTER, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITY.

18.) DEFENDANT SCOTT WCYISKALLA, WAS EMPLOYED AS AN CORRECTIONAL OFFICER AT PINCKNEYVILLE CORRECTIONAL CENTER, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/OR OFFICIAL CAPACITY.

19.) DEFENDANT T. MURRY, WAS EMPLOYED AS GRIEVANCE OFFICER AT PINCKNEYVILLE CORRECTIONAL CENTER, AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING SUED INDIVIDUAL AND OFFICIAL CAPACITY.

20. DEFENDANT "JOHN DOE" WHEEELCHAIR REPAIR MAN, WAS EMPLOYED AS A REPAIRMAN AT "JOHNDOE" WHEELCHAIR COMPANY AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF THE STATE LAW HE IS BEING SUED IN HIS INDIVIDUAL CAPACITY.

21.DEFENDANT ROGER COWEN, WAS AS A WARDEN AT MENARD CORRECTIONAL CENTER ("HEREIN -AFTER MCC"). HE IS RESPONSIBLE FOR OVER SEES AND CONTROLS COMPLEX FACILITTYU FISCAL, CLASSIFICATION, TREATMENT, TRAINING AND REHABILITATION PROGRAMS, POLICIES AND PROCEDURES AT MCC. AND AT ALL TIMES RELATED HERE TO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/ OR OFFICIAL CAPACITY

22.) DEFENDANT JONATHAN A. WALLS, WAS EMPLOYED AT FIRST ASSISTANT WARDEN/A.D.A, COORDINATOR, THEN LATER HE BECAME THE WARDEN AT MCC. HE IS RESPONSIBLE FOR OVERSEES AND CONTROLS COMPLEX FACILITY FISCAL, CLASSIFICATION, TREATMENT, TRAINING AND REHABILITATION PROGRAMS, POLICIES AND PROCEDURESAS A WARDEN AND AS AN ASSAISTANT WARDEN, HE IS RESPONSIBLE FOR, UNDER ADMINISTRATIVE DIRECTION OF THE WARDEN PLAN AND ORGANIZES' POLICIES AND ASSUMES DIRECT RESPONSIBILITY OVER THE FUNCTION OF THE MEDICAL SERVICES AND COORDINATES ALL AMERICAN WITH DISABILITY ACT INMATES PROGRAMS, MCCC. AND AT ALL TIMESRELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/ OR OFFICIAL CAPACITIES

23.) DEFENDANT ALAN FRENTEZ, WAS EMPLOYED AS ASSISTANT WARDEN/ A.D.A CORDINATOR AT MCC. HE IS RESPONSIBLE FOR THE FUNCTION OF THE MEDICAL SERVICES AND COORDINATES ALL AMERICAN WITH DISABILITY ACT INMATES PROGRAMS AT MCC. AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/ OR OFFICIAL CAPACITIES.

24.) DEFENDANT PAM GRUBMAN, WAS EMPLOYED AS HEALTH CARE UNIT ADMINISTRATOR AT MCC. SHE IS RESPONSIBLE FOR EVALUATION OF INMATE SICKCALL COMPLANTS AND TO UTILIZE ALL AVAILABLE RESOURCES WITHIN THE HEALTHCARE UNIT TO ENSURE THE RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING SUED IN HER INDIVIDUAL AND/ OR OFFICIAL CAPACITIES.

25.)DEFENDANT ADRIAN FEINERMAN, WAS EMPLOYED AS A MEDICAL DIRECTOR AT MCC. HE IS RESPONSIBLE FOR ENSURING THE PROVISION OF MEDICARE TO INMATES AND SPECIALIZED TREATMENT OR EVALUATION AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND / OR OFFICIAL CAPACITIES.

26.) DEFENANT GARY KNOP, WAS EMPLOYED ASA DEPUTY WARDEN AT MCC. HE IS RESPONSIBLE FOR, TO DIRECT THE ENTIRE PROGRAMS OF SECURITY OPERATION, SUPERVISES STAFF IN MAINTAING AND ENFORCING DISCIPLINARY SAFETY SECURITY AND CUSTODIAL MEASURES AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

27.) DEFENDANT MAVE" SUPERINTENDENT", WAS EPML;OYED AS NORTH II ANNEX BUILDING SEGREGATION UNITS' SUPERINTENDENT, AT MCC. AND AT ALL TIMES RELATED HERE TO WAS ACTING UNDER THE COLOR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL CAPACITIES.

28.) DEFENDANT EILSA REA, WAS EMPLOYED AS A LAW LIBRARY CLERK AT MCC. AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING IN HER INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY.

29.) DEFENDANT MAVIS WITTENBORN/GROSS WAS EMPLOYED AS A GRIEVANCE OFFICER AT MC. AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER THE COLOR OF STATE LAW. SHE IS BEING SUED IN HER INDIVIDUAL CAPACITY AND OFFICIAL CAPACITY.

30.) DEFENDANT STEPHEN DOUGHTY, WAS EMPLOYED AS ASSISTANT MEDICAL DOCTOR AT MCC. HE IS RESPONSIBLE FOR EVALUATE INMATE'S MEDICAL NEEDS, PRESCRIBES MEDICAL TREATMENTS, MEDICATIONS TO PATIENT AND AID AND ASSIST THE MEDICAL DIRECTOR IN DAILY MEDICAL PROGRAMS, POLICIES, PROCEDURES, AND PROTOCOLS TO ENSURE COMLIANCE WITH MEDICALLY ACCEPTED STANDARDS. AND AT ALL TIMES RELATED HERETO WAS ACTING UNDER COLR OF STATE LAW. HE IS BEING SUED IN HIS INDIVIDUAL AND/ OR OFFICIAL CAPACITIES, FACTS AND BACK GROUND.

31.) ON JUNE 26, 1999, PLAINTIFF WAS SHOT 8 TIMES BY KANE COUNTY SHERIFF'S DEPUTIES, DURING THE COURSE OF INVESTIGATION STOP AND ARREST.

32.)UPON BEING DELIVERED INTO CUSTODY OF KANE COUNTY SHERIFF DEPARTMENT. PLANTIFF WAS RUSHED TO ELGIN'S SHERMAN HOSPITAL EMERGENCY ROOM TO TRY TO SAVE PLAINTIFF'S LIFE AND STABLIZE HIS CRITICAL CONDITIONS.

33.) UPON BEING STABLIZED, PLAINTIFF WAS SUBSEQUENTLY TRANSFERED TO A BETTER MEDICLA EQU9IPED CHICAGO NORTH WESTERN MEMORIAL HOSPITAL ADDITIONAL MEDICAL ATTENTION, LATER THAT SAME DAY.

34.) THERE PLAINTIFF UNDER WENT MANY X RAY TESTS AND WAS DIAGNOZED AS HAVING A SPINAL CORD COMMINUTED FRACTURE OF THE CERVICAL SPINE [C6:C7], CAUSED BY THE OFFICERS BULLETS FRAGMENT ALONE WITH MANY OTHER RELATED INJURIES.

35.) FURTHER, THE ORTHOPEDIC MEDICAL DOCTORS ORDERED FOR THE PLAINTIFF TO WEAR A NECK STABLIZATION DEVICE CALLED "HALO"

36.) IMMMEDIATELY AFTER MEDICAL DOCTORS' ORDER REQUEST PLAINTIFF UNDER WENT MINOR SURGERY TO DRILL HALO PINS DEVICE INTO AND AROUND THE PAAMETER OF HIS SKULL, " TO PREVENT ANY MOVEMNT OF THE NECK."

-7f-

37.) PLAINTIFF REMAINED AT THE CHICAGO NORTH WESTERN MEMORIAL HOSPITAL UNTILL JULY 3 1999.

38.) THAT SAME DAY PLAINTIFF WAS SUBSEQUENTLY TRANSFERED TO ROCKFORD SWEDISH AMERICAN HOSPITAL [ HEREIN AFTER "RSAH"], BECAUSE OF BHIS LEGAL HOLDINGS IN THE WINNEBAGO COUNTY.

39.) ON JULY 3, 19991 AT "RSAH" PLAINTIFF WAS PUT UNDER THE MEDICAL CARE OF ATTENDING PHYSICIAN DR JAMES HUSSAIN , M.D, WHO ATTENDED AND SUPERVISED PALINTIFF EVERY MEDICAL TREATMENTS, AT HOSPITAL DURING HIS STAY THERE.

40.) AFTER PLAINTIFF GOT SETTLE THERE [RSAH] TO HIS BED, A NEURO SURGICAL CI\ONSULTATION WAS RREQUESTED DR. CHARLES WRIGHT M.D [NEUROSURGERY] OF THE NEURO SURGICAL SERVICES WAS COVERING FOR DR NESHER ASNER, M.D [NUERO SURGERY], AND HAD HIS [PLAINTIFF] FIRST CONSULTATION.

41.) DR.WRIGHT "FELT THAT THE PLAINTIFF WAS A QUDRIPLEGIA WITH A PROBAL\BLE BRACHIAL PLEXUS INJURY TO THE RIGHT SECONDARY TO THE GUNSHOT WOUNDS. HE FURTHER ASSERTED THAT THE PLAINTIFF NEEDED TO BE IN THE HALO FOR A PEROID OF 3-4 MONTHS TO ALLOW THE WOUNDS AND BONED TO HEAL."

42.) DR. ASNER FINALLY ARRIVED ON THE SCENE AND CONSULTED IN FOLLOW UP. HE CONCURRED WITH DR. WRIGHT'S RECOMMENATIONS AND FINDINGS, AND PLANED TO SEE THE PALINTIFF PERIODICALLY ON AN AS- NEEDED BASIS UNTIL THE HALO WAS TAKEN OFF.

## COUNT 12

SYSTEMATIC DELIBERATE INDIFFERENCE TO PRE-TRIAL DETAINNEE'S SERIOUS MEDICAL NEEDS OF PHYSICAL THERAPY A. DENIAL OF ACCESS TO NECESSARY OUTSIDE SPECIALIST AND FACILITY FOR APPROPRIATE CARE.

1

1.) ON OCTOBER 8, 1999, DURING THE A.M HOURS, THERE WAS A MEETING AT WINNEBAGO COUNTY SHERIFF'S DEPARTMENT ATTENDED BY PLAINTIFF'S PUBLIC DEFENDERS, MEMBERS OF THE STATE'S ATTORNEY OFFICE, AND MEMBERS OF THE WINNEBAGO COUNTY SHERIFF'S DEPARTMENT (" HEREIN AFTER-WCSD"). ALSO INCLUDED IN THAT MEETING WERE DEFENDANT "SHERIFF" RICHARD MEYER, PLAINTIFF'S ATTENDING AND PRIMARY PHYSICIANS; DR JAMIL HUSSAIN [ORTHOPEDIC SPECIALIST], DR SCOTT CRAIG [PHYSICAL THERAPIST], AND STAFF MEMBERS OF THE RIVER BLUFF NURSING HOME (PLEASE REFER TO FOOTNOTE)[*]

2.) THE MEETING (AS DESCRIBED ABOVE) WAS PERTAINING TO PLAINTIFF CONTINUING A VIGOROUS REHABILITATION PROGRAM (PHYSICAL AND OCCUPATIONAL THERAPY) AT A COMMUNITY FACILITY. PLAINTIFF'S ATTENDING PHYSICIANS; DR HUSSAIN AND DR CRAIG COLLECTIVELY CONCLUDED AND BOTH STIPULATED TO ALL ATTENDING PARTIES; INCLUDING DEFENDANT MEYER, THE FOLLOWING.

---

[*] Plaintiff was not able to attend the meeting but all information that was discussed about plaintiff's health, and future recommendations made by the physicians, was later conveyed to plaintiff by his public defenders; Gary Walton and Ed Light and his attending physicians.

2

A.) THAT THE RSAH PHYSICAL THERAPY UNIT IS USED ONLY FOR
PATIENTS THAT HAVE ACUTE INJURIES THAT CAUSES PARALYSIS
AND ARE BED REST BOUND, PARTICULARLY STROKE VICTIMS,
SPINAL CORD DISEASES, AND VARIOUS SPINAL CORD INJURIES,
E.T.C..

B.) THE RSAH PHYSICAL THERAPY UNIT IS ONLY USED TO STABILIZE
PATIENTS ENOUGH TO BE IMMEDIATELY TRANSFERRED TO A MORE
EQUIPPED, AND TRAINED IN THE FIELD OF PHYSICAL THERAPY,
FACILITY FOR THE CONTINUATION OF A MORE VIGOROUS REHAB
TREATMENT AND TO INCREASE THE POSSIBILITIES FOR PATIENTS
TO REGAIN BACK MOTOR FUNCTIONS.

C.) THAT THE RSAH PHYSICAL THERAPY UNIT ONLY HAS A LIMITED
AND BARE MINIMUM OF REHAB EQUIPMENTS AND SUPPLIES, AND
THAT THIS WOULD PROVE FRUITLESS TO PLAINTIFF'S INJURIES.

D.) THAT THE RECOMMENDED FACILIT(Y)(IES)(AS DESCRIBED IN
PARAGRAPH #6) WILL, FIRST OF ALL, PUT PLAINTIFF ON A 3- HOURS
VIGOROUS "STRENGTH AND FLEXIBILITIES" PROGRAM IN WHICH
WILL BE FAR MORE BENEFICIAL THAN THE CURRENT 45 MINUTES
PHYSICAL THERAPY SECESSION OFFERED AT RSAH. PARTICULARLY
THE WATER RESISTANCE PROGRAMS, WEIGHT MARCHIONESS,
TREADMILLS THAT HAS ATTACHED SUPPORT DEVICES TO HOLD
PLAINTIFF UP WHILE HE ATTEMPT TO LEARN HOW TO WALK AND
ASSORTMENTS OF ADVANCED THERAPEUTIC EQUIPMENT AND

3

SUPPLIES ENDED PHYSICAL AND OCCUPATIONAL THERAPIES AND
WITH ADEQUATE REHAB EQUIPMENT AND SUPPLIES, IN THE
EARLIEST STAGES OF HIS PARALYSIS, HE WOULD PROBABLY BE
SUBJECTED TO MAJOR CRIPPLING AND OR PERMANENT
DISABILITIES FOR THE REST OF HIS LIFE.

E.) THE PHYSICIANS (DR HUSSAIN AND DR CRAIG) CONTENDED THAT
THIS MEDICAL NEED WAS ABSOLUTELY NECESSARY AND
THEREFORE UNCOMPROMISING.

3.) AFTER DEFENDANT SHERIFF MEYER CONSULTED WITH OTHER
EMPLOYEES FROM THE WCSD AND HEARD SUGGESTIONS FORM BOTH OF
THE PLAINTIFF'S PUBLIC DEFENDERS, OFFICIALS FROM THE STATE'S
ATTORNEY OFFICE AND PLAINTIFF'S ATTENDING PHYSICIANS, HE
(DEFENDANT MEYER) MADE AN ARBITRARY DECISION TO NOT FOLLOW
THROUGH ON DR HUSSAIN AND DR CRAIG'S MEDICAL
RECOMMENDATIONS TO TRANSFER THE PLAINTIFF TO THE RIVER BLUFF
NURSING HOME REHABILITATION PROGRAM FOR PHYSICAL AND
OCCUPATIONAL THERAPIES. HIS (DEFENDANT MEYER) DECISION WAS
BASED VAGUELY UPON AVOIDING MEDICAL EXPENSES AND ALLEGEDLY
"SECURITY CONCERNS," (THIS WAS LATER CONVEYED TO PLAINTIFF BY
HIS PUBLIC DEFENDER AND RSAH SOCIAL WORKER AND ATTENDING
PHYSICIAN).

4

4.) THE COUNTY OF WINNEBAGO (ILLINOIS) PROVIDES FUNDING COSTS FOR THE WINNEBAGO COUNTY JAIL (" HEREIN AFTER -WCJ") AND THE COUNTY IS INVOLVED IN ESTABLISHING THE GENERAL POLICIES, PRACTICES, AND PROCEDURES UNDER WHICH THE JAIL OPERATES.

5.) DEFENDANTS MEYER, GARY ARIBIS (THE WCJ DIRECTOR), AND THREW WINNEBAGO COUNTY BOARD OF COMMISSIONERS, WAS EACH RESPONSIBLE FOR SETTING THE GENERAL POLICIES, PRACTICES, AND PROCEDURES WHICH WERE RESPONSIBLE FOR THE BUDGETARY CONSTRAINT IN DENYING PLAINTIFF ACCESS TO NECESSARY OUTSIDE PHYSICAL AND OCCUPATIONAL THERAPY PROGRAMS AND IN ACCORDANCE WITH DR. HUSSAIN AND DR. CRAIG'S RECOMMENDATIONS (AS DESCRIBED IN PARAGRAPHS 2.) B.)-D.)). SUCH ACTIONS BY THE DEFENDANTS CROSSED INTO THE REALM OF DELIBERATE INDIFFERENCE TO PLAINTIFF'S SEROUS MEDICAL NEEDS AND INEVITABLE SET THE STAGE OF PERMANENTLY CRIPPLING THE PLAINTIFF.

6.) IMMEDIATELY AFTER THE DEFENDANTS (AS NAMED IN PARAGRAPH 5) REFUSED TO TRANSFER PLAINTIFF TO THE RIVER BLUFF NURSING HOME BOTH OF PLAINTIFF'S ATTENDING PHYSICIANS (DR. HUSSAIN AND DR. CRAIG) REPEATEDLY MADE DILIGENT ATTEMPTS TO GET PLAINTIFF TRANSFERRED, INSTEAD, TO THE ROCKFORD MEMORIAL HOSPITAL REHABILITATION UNIT BECAUSE IN DR. HUSSIN'S PROFESSIONAL

5

MEDICAL OPINION, THE SEVERITY OF PLAINTIFF'S INJURIES AND THE
LACK OF REHAB EQUIPMENT AND TRAINED PHYSICAL THERAPISTS AT
THE RSAH RENDERED IT INCAPABLE OF BEING ABLE TO PROVIDE THE
REASONABLE LEVEL OF REHABILITATION THERAPIES THAT IS NEEDED TO
HELP PLAINTIFF'S MEDICAL CONDITION AND MORE IMPORTANTLY,
ROCKFORD MEMORIAL HOSPITAL (RMH) WAS MORE EQUIPPED AND
BETTER TRAINED IN THE FIELD OF PHYSICAL AND OCCUPATIONAL
THERAPY. (REFER TO FOOTNOTE)[*].

7.) THE DEFENDANTS (AS NAMED IN PARAGRAPH #5) DELIBERATELY,
CONSCIOUSLY, AND REPEATEDLY DENIED THE PHYSICIAN'S
RECOMMENDATIONS TO TRANSFER PLAINTIFF TO ROCKFORD MEMORIAL
HOSPITAL BECAUSE OF BUDGETARY CONSTRAINT AND CONCERNS.

8.) THAT FROM JULY 1999 TO NOVEMBER 1999, WHILE PLAINTIFF WAS A
PATIENT AT RSAH, AND RECEIVING AROUND THE CLOCK MEDICAL
TREATMENT, HE WAS FREQUENTLY VISITED BY A "JANE DOE" SOCIAL
WORKER ON THE ORTHOPEDIC FLOOR.

9.) THE SOCIAL WORKER ADVISED PLAINTIFF OF THE DECISIONS MADE
BY THE DEFENDANTS (AS DESCRIBED IN PARAGRAPHS # 1TO 3) AND THAT
THERE EXISTED A BELLIGERENT CONFLICT OF INTEREST BETWEEN HIS

---

[*] Plaintiff's physicians made repeated r recommendations to transfer him between the
dates of October  ?, 1999 to November  ?, 1999.

(PLAINTIFF'S) PHYSICIAN'S MEDICAL RECOMMENDATIONS (AS DESCRIBED
IN PARAGRAPH # 2A TO E) AND WSCD AND THE WINNEBAGO COUNTY JAIL
(WCJ) BUDGETARY CONSTRAINT WHICH ALLEGEDLY TRIGGERED THE
DENIAL OF THE PHYSICIAN'S REQUEST. THE SOCIAL WORKER ("JANE
DOE") WENT ON TO ADVISE PLAINTIFF AND HIS WIFE TO FILE FOR PUBLIC
AID AND ASSISTANCE TO SEE IF THEY WOULD HELP DEFRAY THE COST
FOR THE MEDICAL TREATMENTS THAT HE NEEDED. UNFORTUNATELY,
AFTER HAVING DOING SO, PLAINTIFF WAS DENIED ASSISTANCE.


10.) APPROXIMATELY A WEEK OR MORE LATER (AFTER HAVING BEEN
DENIED PUBLIC AID AND ASSISTANCE) PLAINTIFF ASKED BOTH OF HIS
ATTENDING PHYSICIANS (DR. HUSSAIN AND DR. CRAIG) TO EXPLAIN TO
HIM, IN DETAILS, THE DIFFERENCE BETWEEN RSAH'S PHYSICAL THERAPY
UNIT AND THE VARIOUS OTHER OUTSIDE FACILITIES THEY SOUGHT TO
TRANSFER HIM TO (AS DESCRIBED IN PARAGRAPH #6) AND THE BENEFITS
OF SUCH OTHER FACILITIES AND DISADVANTAGES OF BEING AT THE
RSAH. THE PHYSICIANS EXPLAINED THE FOLLOWING:

    A.) THEY RECOGNIZED AND MEDICALLY ACKNOWLEDGED
        PLAINTIFF AS AN INCOMPLETE QUADRIPLEGIA WITH SEROUS
        MEDICAL NEEDS OF PHYSICAL AND OCCUPATIONAL THERAPY
        TO HELP HIM CURB HIS PARALYSIS CONDITION AND AVOID OR
        PREVENT PERMANENT IMMOBILITY.

B.) BOTH PHYSICIANS (DR. HUSSAIN AND DR. CRAIG)

SUBSEQUENTLY MADE PROFESSIONAL AND NECESSARY

RECOMMENDATIONS FOR PLAINTIFF TO BE IMMEDIATELY

TRANSFERRED FROM THE ROCKFORD SWEDISH AMERICAN

HOSPITAL ("HEREINAFTER-RSAH") (WHERE PLAINTIFF-A

PRETRIAL DETAINEE WITH MASSIVE GUNSHOT WOUNDS-WAS

STAYING AT THE TIME AND RECEIVING AROUND THE CLOCK

MEDICAL TREATMENT) AND TO A REHABILITATIONS FACILITY

THAT HAVE MORE EFFICIENT EQUIPMENT AND TRAINED

THERAPISTS IN THE FIELD OF PHYSICAL THERAPY AND

OCCUPATIONAL THERAPY BECAUSE THE RASH WASN'T

ADEQUATELY EQUIPPED TO PROVIDE HIM (PLAINTIFF) WITH THE

PROPER MEDICAL TREATMENT AND IN ACCORDANCE WITH DR.

HUSSAIN AND DR. CRAIG'S RECOMMENDATIONS.

C.) THE PHYSICIANS DISCUSSED TRANSFERRING PLAINTIFF TO THE

RIVER BLUFF NURSING HOME STROKE VICTIMS REHAB

PROGRAM FOR THE PURPOSED OF RECEIVING PHYSICAL AND

OCCUPATIONAL THERAPY. THIS WAS DEEMED TO BE A MORE

ADEQUATELY EQUIPPED FACILITY.

D.) THE PHYSICIANS DETERMINED, AND SO STIPULATED, THAT IF

PLAINTIFF DID NOT (AND DO NOT) RECEIVE THE

RECOMMENDATION (CONTRARY TO RSAH), ETC., AND MASSAGE

THERAPISTS FOR FLEXIBILITIES.

8

e.) AND THAT THE BENEFITS OF A VIGOROUS PHYSICAL THERAPY
AND OCCUPATIONAL THERAPY REHAB PROGRAM WHILE IN THE
EARLY STAGES OF HIS (PLAINTIFF'S) INJURIES WILL INCREASE
PLAINTIFF'S CHANCES TO WALK AGAIN, TO HAVE FULL USE OF
HIS RIGHT SHOULDER, ARM, HAND AND FINGERS, PREVENT
FREQUENT SPASMS, PREVENT OSTEOPOROSIS, PREVENT VENOUS
THROMBOSIS, AND PREVENT COLLAGEN SCAR TISSUE FROM
PERMANENT WEAKEN MUSCLES, ETC.

11.) AFTER REPEATEDLY REFUSING TO TRANSFER PLAINTIFF (AS
DESCRIBED IN PARAGRAPH #10) ARRANGEMENTS WERE MADE TO
TRANSFER PLAINTIFF TO THE INFIRMARY AT THE WINNEBAGO COUNTY
JAIL.

12.) THAT ON NOVEMBER 11, 1999 DR. HUSSAIN DRAFTED A MEDICAL
SUMMARY DISCHARGE REPORT OF PLAINTIFF'S SIX ONGOING AREAS OF
IMMEDIATE CONCERNS AND WITH RECOMMENDATIONS OF SPECIFIC
TREATMENT FOR, AND CLOSE OBSERVATION OF, THE FOLLOWING:

1.) **QUADRIPLEGIA**- CONTINUES PHYSICAL AND
OCCUPATIONAL THERAPY IN 3 TO 4 UNITS, 5 TO 6
DAYS PER-WEEK.

2.) **WOUND**- POSTERIOR RIGHT SHOULDER; CONTINUE TREATMENT OF CLEANSING OF BANDAGES TO THAT AREA.

3.) **A NEUROGENIC BLADDER-** RECOMMENDATION TO MANAGE HIS FOLEY CATHETER AND MAKE PLANS FOR THE REMOVAL OF FOLEY CATHETER. ALSO WARNED OF THE CONTINUOUS RISK OF BLADDER STONES AND URINARY TRACT INFECTIONS.

4.) **SPASTICITY**- HE [PLAINTIFF] CONTINUES TO HAVE PAIN, WHICH IS FELT TO BE SECONDARY TO HIS SPASMS RESULTING FROM THE QUADRIPLEGIA. ALSO RECOMMENDED CONTINUATION ON BACLOFEN.

5.) **THROMBEMBOLIC RISK-** CONTINUES TO HAVE A RISK OF THROMBEMBOLIC PHENOMENON FROM THIS QUADRIPLEGIA AND IMMOBILITY. FROM DAY ONE WHILE HERE [RSAH] PATIENT [PLAINTIFF] HAS BEEN DEPT ON ANTICOAGULATION. THE DOSE HAD TO BE PERIODICALLY READ ADJUSTED WHEN HE WAS USING ANTIBIOTICS FOR HIS URINARY TRACT INFECTION. HISPROTHROMBIN TIME AND INR ARE NOW STABLE AND WE WOULD LIKE TO KEEP THE READING OF THE INR BETWEEN 2.5 TO 3.0 FOR THE

PRESENT. HIS WARFIN WILL CONTINUE FOR AN

INDEFINITE PERIOD OF TIME.

6.) **NEUROGENIC COLON**-HIS [PLAINTIFF] COLON

MOBILITY HAS BEEN IMPROVED AND HE HAS NOW

NEEDED THE DOCUSATE CALCIUM 2.40MG; WHICH

HAS RESULTED IN A BOWEL MOVEMENT ON THE

AVERAGE OF 2 TO 3 TIMES A WEEK.

13.) THAT ON NOVEMBER ? 1999 PLAINTIFF WAS TRANSFERRED TO THE

WINNEBAGO COUNTY

JAIL'S INFIRMARY; WHERE HE WAS SUBSEQUENTLY HOUSED AT

THROUGHOUT THE DURATION OF HIS CRIMINAL TRIAL.

**B. INADEQUATE THERAPEUTIC EQUIPMENT AND SUPPLIES.**

14.) THAT ON DECEMBER ? 1999 WINNEBAGO COUNTY JAIL HIRED AN

OUTSIDE CONTRACTOR PHYSICAL THERAPIST; MR. ARTHUR, TO COME

INTO THE JAIL AND WORK WITH PLAINTIFF FOR 45 MINUTES 5 DAYS PER-

WEEK.

15.) PLAINTIFF WAS ON BED-REST 24-HOURS A DAY, 7 DAYS A WEEK,

AND WITH THE ONLY EXCEPTIONS BEING A LITTLE LAW LIBRARY TIME

AND BRIEF PERIODS OF TIME IN HIS WHEELCHAIR.

16.) DURING PLAINTIFF'S FIRST SESSION WITH THE THERAPIST HE (MR. ARTHUR: THERAPIST) DID A BRIEF PHYSICAL EXAMINATION OF PLAINTIFF IN ORDER TO DETERMINE WHAT WILL BE THE PROPER PHYSICAL AND OCCUPATIONAL THERAPY REHAB PROGRAM TO PUT PLAINTIFF ON.

17.) AFTER THE EXAMINATION HAD CONCLUDED MR. ARTHUR CONVEYED TO PLAINTIFF THAT HE WAS GREATLY FRUSTRATED AND HINDERED IN PROVIDING AND PROFESSIONAL ASSISTANCE THAT IS COMPATIBLE, OR EVEN REASONABLY CLOSE, TO THE TYPE OF HELP THAT HE IS CAPABLE OF GIVING, AND DOES GIVE, TO HIS REGULAR CLIENTS AT THE REHAB CENTER WHERE HE WORK AT BECAUSE WINNEBAGO COUNTY JAIL DOES NOT HAVE ANY THERAPEUTIC EQUIPMENT AND SUPPLIES TO PROVIDE PHYSICAL THERAPY THAT IS COMPATIBLE TO MODERN DAY MEDICAL SCIENCE AND NEEDS, AND THAT THE WINNEBAGO COUNTY JAIL REPEATEDLY REFUSED TO OBTAIN THE NECESSARY EQUIPMENT- EVEN ON PERHAPS A LOAN- DESPITE BEING CONSISTENTLY AND REPEATEDLY ADVISED, BY THE THERAPIST, OR THE CRITICAL NEED OF SPECIFIC EQUIPMENT.

18.) MR. ARTHUR SPOKE TO WINNEBAGO COUNTY JAIL SUPERVISORS (DEFENDANTS MEYER AND ARIBIS) ABOUT GETTING SOME REHABILITATION EQUIPMENT AND SUPPLIES TO WORK WITH PLAINTIFF'S PHYSICAL THERAPY SESSION AT THE INFIRMARY, BUT ONLY TO NO

AVAIL. DEFENDANT ARIBIS DENIED MOST OF THE THERAPIST REQUESTS. IN FACT, THE THINGS MOST NEEDED.

19.) THAT DURING THE PLAINTIFF'S PHYSICAL THERAPY SESSION MR. ARTHUR NOTICED THAT THERE WERE DETERIORATED AND WEAKEN TRICEP MUSCLES ON THE RIGHT ARM THAT WASN'T FUNCTIONING AT ALL (DUE TO SOME OF THE BULLET WOUND INJURIES) AND THAT PLAINTIFF ALSO SUFFERED EXCRUCIATING PAIN IN THE RIGHT-SHOULDER JOINT DURING RANGE OF MOTION EXERCISES.

20.) AFTER ABOUT A MONTH OF PHYSICAL THERAPY SESSIONS DR. (MR.) ARTHUR CONVEYED TO PLAINTIFF THAT BECAUSE OF THE SEVERITY OF HIS (PLAINTIFF) GUNSHOTS ENTRANCE AND EXIT WOUNDS TO HIS RIGHT TRICEPS, AND THE DEVELOPMENT OF COLLAGEN TISSUES IN WHICH HAVE AN EFFECT ON PLAINTIFF'S MOTOR FUNCTIONS IN THE RIGHT ARM, THE RIGHT HAND AND FINGERS WILL BECOME LOCKED INTO A CLAW LIKE POSITION.

21.) DR. ARTHUR RECOMMENDED PLAINTIFF TO UNDERGO RECONSTRUCTIVE SURGERY TO REMOVE COLLAGEN TISSUES IN HIS RIGHT TRICEPS, PLUS NERVES AND MUSCLE DIAGNOSTIC TESTS IN PREPARATION FOR THE SURGERY.

22.) FROM DECEMBER ? 1999 TO JANUARY 21, 2000, AND DUE TO THE LACK OF THERAPEUTIC EQUIPMENTS AND SUPPLIES TO SUPPORT PLAINTIFF'S REHABILITATION PROGRAM (PHYSICAL AND OCCUPATIONAL THERAPIES), DR. ARTHUR WAS GREATLY HINDERED IN PROVIDING THE KIND OF REHAH TREATMENT THAT PLAINTIFF NEEDED TO CURB OR PREVENT PERMANENT DISABILITY, AND ALTHOUGH PLAINTIFF DID RECEIVE, OR REGAIN, MINIMUM MOBILITY FROM THE PHYSICAL THERAPY DR. ARTHUR CLEARLY EXPRESSED TO PLAINTIFF THAT THE ODDS OF HIM (PLAINTIFF) BECOMING PERMANENTLY DISABLED WAS HIGHLY INCREASED, AND LIKELY, DUE TO THE INADEQUATELY EQUIPPED FACILITY [THE WINNEBAGO COUNTY JAIL].

23.) ON JANUARY 24, 2000 DEFENDANTS MEYER AND ARIBIS ARBITRARILY DISCONTINUED THE PHYSICAL THERAPY SESSIONS UPON THE COMMENCEMENT OF PLAINTIFF'S CRIMINAL JURY TRIAL WHICH LASTED FROM JANUARY 24, 2000 TO FEBRUARY 2, 2000 AND ENDED WITH A CONVICTION.

24.) THAT FROM FEBRUARY 2, 2000 TO MARCH 17, 2000, AND AFTER PLAINTIFF HAD BEEN FOUND GUILTY OF HIS CRIMINAL CHARGES, WINNEBAGO COUNTY JAIL SUPERVISORS (DEFENDANTS MEYER AND ARIBIS) PERMANENTLY ENDED [1]PLAINTIFF'S PRESCRIBED PHYSICAL

---

[1]     With the exception of approximately 3-4 more sessions that plaintiff faintly recall receiving during the end of his stay at the WCJ.

THERAPY PROGRAM, THOUGH LIMITED AND INADEQUATE IN WAS, AND
WITHOUT ANY EXPLANATIONS AS TO WHY.

25.) IT IS PLAINTIFF'S BELIEFS AND CONTENTIONS THAT THE
DEFENDANTS (MEYER AND ARIBIS) DISCONTINUED THE PHYSICAL
THERAPY AND OCCUPATIONAL THERAPY SESSIONS BECAUSE PLAINTIFF
WAS NOW CONVICTED AND THEY FELT EVEN MORE INCLINED, AND
RELAXED, WITH ABANDONING THEIR ABSOLUTE RESPONSIBILITY TO
PROVIDE PLAINTIFF WITH ANY TREATMENT WHATSOEVER. IN ADDITION
TO ALREADY HOLDING PERSONAL GRUDGES AND BIASES TOWARDS
PLAINTIFF ANYWAY DUE TO THE CIRCUMSTANCES SURROUNDING HIS
APPREHENSION.

26.) BECAUSE OF DEFENDANTS MEYERS AND ARIBIS' ACTIONS, AND
OMISSIONS, OF DELIBERATELY DISREGARDING AND HINDERING
PRESCRIBED TREATMENT FOR PLAINTIFF'S SEROUS MEDICAL NEEDS,
TREATMENT THAT WAS REPEATEDLY EMPHASIZED AND RECOMMENDED
BY PROFESSIONAL PHYSICIANS, PLAINTIFF SUFFERED, AND CONTINUES
TO SUFFER SERIOUS PHYSICAL AND MENTAL INJURIES; INCLUDING, BUT
NOT LIMITED TO, A REDUCED PROBABILITY THAT HE WOULD EVER FULLY
RECOVER (OR EVEN SIGNIFICANTLY RECOVER) FROM HIS PARALYSIS AND
WILL BE WHEELCHAIR BOUND AND CRIPPLED FOR THE REST OF HIS LIFE.

15

27.) DEFENDANTS MEYER AND ARIBIS WAS BOTH WELL INFORMED AND ADVISED THAT PLAINTIFF WAS AT SERIOUS RISK OF BEING HARMED IF HE WAS NOT ALLOWED TO RECEIVE THE RECOMMENDED TREATMENT AND THERAPY. BUT STILL, THE DEFENDANTS (WHOM OBVIOUSLY HAVE NO MEDICAL TRAINING) DECIDED NOT TO FOLLOW THE PHYSICIANS' RECOMMENDATIONS EVEN THOUGH IT WAS EASILY WITHIN THEIR POWER AND CAPACITY TO ABIDE BY SUCH MEDICALLY NECESSARY RECOMMENDATIONS.

28.) THE REFUSAL OF DEFENDANTS GARY ARIBIS AND RICHARD MEYER TO PROVIDE PLAINTIFF ACCESS TO AN OUTSIDE MEDICAL FACILITY AND REPEATEDLY REFUSING TO OBTAIN THE NECESSARY THERAPEUTIC EQUIPMENT (PURSUANT TO PHYSICIANS' ADVICE) IN ORDER TO PROVIDE ADEQUATE REHAB TREATMENT FOR PLAINTIFF'S DISABILITIES, AS CAUSED BY **MASSIVE AND MULTIPLE GUNSHOTS WOUNDS** UPON APPREHENSION, AND BEING CONSCIOUSLY AWARE OF SUCH IN THE PROCESS, CONSTITUTES SYSTEMATIC AND/OR BLATANT DELIBERATE INDIFFERENCE TO PLAINTIFF'S, A PRETRIAL DETAINEE, SERIOUS MEDICAL NEEDS IN VIOLATION OF THE FOURTEENTH AND EIGHT AMENDMENTS TO THE UNITED STATES CONSTITUTION (WITH THE EIGHTH AMENDMENTS BECOMING APPLICABLE ONCE THE PLAINTIFF WAS CONVICTED). PLAINTIFF FURTHER ASSERTS THAT THESE DEFENDANTS' ACTIONS WERE RECKLESS TO THE CRIMINAL LAW SENSE.

## COUNT 2
## VIOLATIONS OF THE REHABILITATION ACT OF 1973.

29.) PLAINTIFF ASSERTS THAT THE WINNEBAGO COUNTY JAIL

("HEREINAFTER-WCJ") (A LOCAL GOVERNMENTAL ENTITY) RECEIVES

FEDERAL FINANCIAL ASSISTANCE THUS MAKING IT LIABLE UNDER

SECTION 504 OF THE REHABILITATION ACT; 29 U.S.C. 794. PLAINTIFF, AN

INCOMPLETE QUADRIPLEGIA, IS A QUALIFIED INDIVIDUAL WITH A

DISABILITY AS DEFINED IN THE REHABILITATION ACT. PLAINTIFF; SOLELY

BY REASON OF HIS DISABILITY, WAS EXCLUDED FROM THE

PARTICIPATION IN, DENIED THE BENEFITS OF, OR SUBJECTED TO

DISCRIMINATION FROM, THE FOLLOWING PROGRAMS OR ACTIVITIES: (AS

ALLEGED IN COUNT 1, PARAGRAPHS #1 THRU 28, **AND REALLEGED AS IF**

**FULLY SET FORTH HEREIN).** DEFENDANTS MEYER AND ARIBIS

INTENTIONALLY ACTED ON THE BASIS OF PLAINTIFF'S DISABILITY AND

REFUSED TO PROVIDE A REASONABLE MODIFICATION, OR RULE

DISPROPORTIONATELY IMPACT PLAINTIFF AND MODIFICATION OF THE

17

RULE OR POLICY WOULD NOT PLACE AN UNDUE FINANCIAL BURDEN ON WCJ.

30.) PURSUANT TO 28 C.F.R. 35. 130 (B)(I),(I),(II),(III),(IV),(B)(2), (B)(7); DEFENDANTS RICHARD MEYER AND GARY ARIBIS ARE RESPONSIBLE FOR VIOLATING PLAINTIFF'S ABOVE STATED RIGHTS UNDER THE REHABILITATION ACT. DEFENDANTS ACTED BEYOND THE SCOPE OF THEIR EMPLOYMENT THROUGH WRONGFUL ACTS, DUTIES BREACHED WAS NOT OWED TO THE PUBLIC GENERALLY INDEPENDENT OF FACTS OF STATE EMPLOYMENT AND THE COMPLAINED OF ACTIONS INVOLVE MATTERS ORDINARILY WITHIN DEFENDANTS NORMAL AND OFFICIAL FUNCTIONS. DEFENDANTS ACTED IN VIOLATED STATUTORY AND CONSTITUTIONAL LAW.

## COUNT 3

### REFUSAL TO TRANSFER PLAINTIFF'S WINNEBAGO COUNTY JAIL (WCJ) MEDICAL RECORDS CONSTITUTES DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

31.) THAT FROM NOVEMBER 11, 1999 TO MARCH 20, 2000 THE PLAINTIFF'S ATTENDING PHYSICIANS, PHYSICAL THERAPISTS, AND VARIOUS ATTENDING REGISTERED NURSES ALL MADE MEDICAL NOTATIONS, MEDICAL RECOMMENDATION, SURGERY

RECOMMENDATIONS, PRESCRIBED MEDICATION, REHABILITATIONS

PROGRESS NOTES, AND DAILY NURSES' OBSERVATION NOTES OF HIS

(PLAINTIFF'S) SYMPTOMS AND/OR PROGRESSION, ETC.. CONTINUED

REFERENCES TO SUCH MEDICAL RECORDS, HISTORY, AND PROGRESSION

NOTES ARE THEREFORE OF EXTREME AND CRITICAL IMPORTANCE IF

THERE'S TO BE ANY EFFECTIVE AND CONTINUITY OF TREATMENT AND

CURE OF PLAINTIFF'S INJURIES. AND THE LACK OF AVAILABILITY OF

THESE RECORDS TO PLAINTIFF, AND ANY SUBSEQUENT ATTENDING

PHYSICIANS, HAS PROVEN TO BE **DETRIMENTAL** TO PLAINTIFF'S PAST,

PRESENT, AND FUTURE HEALTH.


32.) PLAINTIFF CONTENDS THAT HIS MEDICAL RECORDS THAT WERE

ACCUMULATED DURING HIS STAY AT THE WCJ WILL REVEAL THAT

PLAINTIFF CONTINUOUSLY REQUIRED EXTENSIVE AND CONSISTENT

DOSES OR SPECIFIC PRESCRIPTION MEDICATIONS, ORALLY AND/OR

RECTALLY, FOR THE FOLLOWING DEFORMITIES:

A.) 20MG. BALCOFEN 4 TIMES PER-DAY FOR SPASMS PAIN, 325 MG.

FERROUS SULFATE 2 TIMES PER-DAY FOR TREATMENT OR IRON

DEFICIENCY ANEMIAS, DAVROCET N 100 ONE (1) BEFORE- AND

AFTER- PHYSICAL THERAPY FOR PAIN SUPPRESSION, 2.5MG.

COUMADIN (AND WITH VARIATION OR DOSAGES) FOR THE

PROPHYLAXIS AND TREATMENT OF VENOUS THROMBOSIS

ARTRIAL FIBRILLATION WITH PULMONARY EMBOLISM, 8 MG.

19

ZANAFLEX 2 TIMES PER-DAY FOR CONTROLLING SPASMS, 325

MG. TYLENOL PRN FOR PAIN SUPPRESSION, 100 MG. DOCUSATE

SODIUM FOR BOWEL MOVEMENT, DULCOLAX SUPPOSITORY;

ONE (1) RECTALLY TWICE PER-DAY (OR PRN) FOR BOWEL

MOVEMENTS.

B.) DR. HUSSAIN AND A PHYSICIAN ASSISTANT PERFORMED

PERIODICALLY BLOOD TESTS ON HIM [PLAINTIFF] TO CHECK THE

BLOOD CLOTTING AND PLAINTIFF HAVE BEEN KEPT ON

COUMADIN (ANIT-COAGULATION) TO FIGHT BLOOD CLOTTING

THROUGHOUT HIS STAY AT WCJ.

33.) PLAINTIFF ALSO BELIEVES THAT THE MEDICAL RECORDS SHOW,

OR SHOULD SHOW, DETAILED SPECIFICS OF OTHER TREATMENTS,

EVALUATIONS, DIAGNOSIS, INJURIES, AND RECOMMENDATIONS FOR

CONTINUED PHYSICAL AND OCCUPATIONAL THERAPIES UPON ANY

TRANSFER. ALSO, RECOMMENDATIONS BY DR. ARTHUR TO UNDERGO

RECONSTRUCTIVE SURGERY TO REMOVE SCAR TISSUES AND BULLET

FRAGMENTS FROM HIS RIGHT SHOULDER AND WITH RECOMMENDATIONS

TO UNDERGO MUSCLE DIAGNOSTIC TESTS IN PREPARATION FOR THE

SURGERY. THIS IS JUST TO NAME SOME, BUT NOT ALL, OF THE REPORTS,

NOTES, AND RECOMMENDATIONS, ETC. ANTICIPATED TO BE IN THE

RECORDS, BUT MOST IMPORTANTLY, THESE RECORDS SHOULD CONTAIN

NOTATIONS OF THE BENEFITS AND SIDE-EFFECTS OF ANY MEDICATIONS
PLAINTIFF HAS TRIED.

34.) THE IMPORTANCE OF PROPER MEDICAL RECORDS IS THAT THEY
INCLUDE ALL THINGS NECESSARY FOR A PATIENT'S CARE. SPECIFICALLY,
A MEDICAL CHART SHOULD INCLUDE ALL THINGS PERTINENT TO THE
PATIENT'S COMPLAINTS, TESTS PERFORMED, PHYSICIANS' DIAGNOSIS,
THE TREATMENT UTILIZED, AND WHATEVER FOLLOW-UP CARES THAT
WAS REQUIRED. THE NEED FOR THESE BASIC ELEMENTS IS ESSENTIAL
FOR A "**CONTINUITY OF CARE"** SHOULD THE PATIENT BE SEEN BY
DIFFERENT DOCTORS IN THE FUTURE AND MORE IMPORTANTLY, TO
PROVIDE FUTURE MEDICAL PERSONNEL WITH AN ACCURATE
UNDERSTANDING OF PLAINTIFF'S MEDICAL HISTORY, DIAGNOSIS, AND
MODE OF TREATMENT.

35.) DEFENDANTS DEBRA DECKER AND "JANE DOE" (REGISTERED
NURSE FOR P.R.N) ARE BOTH COLLECTIVELY, AND/OR INDIVIDUALLY,
PERSONALLY RESPONSIBLE FOR TRANSFERRING PLAINTIFF'S WCJ
MEDICAL RECORDS, IN A TIMELY FASHION, TO THE ILLINOIS
DEPARTMENT OF CORRECTIONS ("HEREINAFTER-I.D.O.C.") ONCE
PLAINTIFF WAS TRANSFERRED TO I.D.O.C..

36.) MARCH 20, 2000 WAS WHEN PLAINTIFF WAS TRANSFERRED TO I.D.O.C. AND IT WAS LATER MADE KNOWN TO PLAINTIFF THAT THE DEFENDANTS (AS DESCRIBED IN PARAGRAPH #35) HAD REFUSED TO TRANSFER PLAINTIFF'S MEDICAL RECORDS FROM WCJ TO I.D.O.C.

37.) DEFENDANTS DECKER AND "JANE DOE" ACTIONS, AND/OR OMISSIONS, OF REFUSING TO TRANSFER PLAINTIFF'S WCJ MEDICAL RECORDS CAUSED AN IMMEDIATE DISASTER STEMMING FROM THIS FAILURE; THESE RECORDS WAS, AND REMAINS, CRITICAL TO PLAINTIFF'S PAST, PRESENT, AND FUTURE HEALTH. ESSENTIALLY PLAINTIFF SUFFERED THE FOLLOWING INJURIES RESULTING THEREFORE:

    A.)    DENIAL OF CONTINUED PHYSICAL AND OCCUPATIONAL THERAPIES BECAUSE THERE WAS NO RECENT PAST DOCUMENTATION (MEDICAL RECORDS) AVAILABLE THAT WOULD HISTORICALLY SUBSTANTIATE THE NEED OF SUCH THERAPIES, AND THIS ULTIMATELY HINDERED AND/OR PRECLUDED, PLAINTIFF'S ABILITY TO CURB AND PERHAPS "CURE" HIS PARALYSIS AND, IN ESSENCE, MADE IT MORE LIKELY THAN NOT THAT PLAINTIFF WILL BE CRIPPLED OR PARALYZED FOR THE REST OF HIS LIFE. (WHEELCHAIR BOUND).

    B.)    DENIAL OF THE PROPER MEDICATIONS TO WHICH TO EFFECTIVELY SUPPRESS EXCRUCIATING PAINS,

MEDICATIONS TO TREAT BLOOD CLOTS AND POOR BLOOD

CIRCULATION, AND THE PROPER MEDICATIONS FOR A

NUMBER OF OTHER SERIOUS ALIMENTS. AS DEFENDANT

CHRISTINE MITCHELL PUTS IT, IN HER VERY OWN WORDS

"THE [PLAINTIFF'S] INMATE'S MEDICAL RECORDS WAS

REVIEWED AND DISCUSSED WITH THE MEDICAL DIRECTOR

AND FOUND THAT THERE WAS NO CLINICAL INDICATION

FOR COUMADIN," (COUMADIN IS A MEDICATION FOR THE

TREATMENT AND PREVENTION OF BLOOD CLOTS).

(DEFENDANT C. MITCHELL MADE HER STATEMENT IN

RESPONSE TO TWO GRIEVANCES; ONE DATED 10-14-2000

AND ONE DATED 4-5-01 THAT PLAINTIFF HAD FILED.)

C.)    DENIAL OF RECOMMENDED, AND NECESSARY,

RECONSTRUCTIVE SURGERY AND SURGERY TO REMOVE

LARGE BULLET FRAGMENTS AND SCAR TISSUES FROM HIS

(PLAINTIFF'S) RIGHT SHOULDER AND BICEP AND TO

PREVENT PLAINTIFF'S RIGHT HAND FROM BECOMING

PERMANENTLY DISABLED. (DR. ARTHUR HAD

RECOMMENDED THE SURGERIES).


38.) THE PLAINTIFF CONTINUES TO SUFFER FROM THESE INJURIES.

23

39.) PLAINTIFF FREQUENTLY MADE DILIGENT ATTEMPTS TO RETRIEVE HIS NECESSARY WINNEBAGO COUNTY JAIL MEDICAL RECORDS BUT ONLY TO NO AVAIL. TO SUPPORT THESE ALLEGATION PLAINTIFF STATES THE FOLLOWING:

A.)     PLAINTIFF REQUESTED THAT THE PINCKNEYVILLE CORRECTIONAL CENTER ("HEREINAFTER-PNKCC") MEDICAL RECORDS SUPERVISOR; JENNIFER GREENE, CONTACT DEFENDANT DECKER AT WCJ MEDICAL RECORDS OFFICE IN REGARDS TO TRANSFERRING PLAINTIFF'S MEDICAL RECORDS OFFICE IN REGARDS TO TRANSFERRING PLAINTIFF'S MEDICAL RECORDS OVER TO I.D.O.C. MRS. GREENE CONVEYED TO THE PLAINTIFF THAT SHE HAVE TRIED TO OBTAIN THE MEDICAL RECORDS BUT ONLY TO NO AVAIL.

B.)     ON OCTOBER 2, 2000 PLAINTIFF'S ATTORNEY, MR. THOMAS A. LILIEN, MAILED A LETTER TO THE WCJ MEDICAL RECORDS OFFICE REQUESTING THAT PLAINTIFF'S MEDICAL RECORDS BE FORWARDED TO I.D.O.C., BUT ONLY TO NO AVAIL.

C.)     ON MARCH 17, 2001 PLAINTIFF FILED A FREEDOM OF INFORMATION ACT REQUEST IN THE WINNEBAGO COUNTY CIRCUIT COURT (THIS WAS THE COUNTY IN WHICH PLAINTIFF WAS HELD AS A PRETRIAL

24

DETAINEE, AND SUBSEQUENTLY CONVICTED, IN)

REQUESTING COPIES OF HIS MEDICAL RECORDS, BUT

ONLY TO NO AVAIL.

D.)     ON MAY 3, 2001 PLAINTIFF SENT DEFENDANT GARY

ARIBIS (DIR. OF THE WCJ) A LETTER (VIA CERTIFIED

MAIL) REQUESTING THAT HE (ARIBIS) ORDER

DEFENDANT DECKER TO TRANSFER PLAINTIFF'S

MEDICAL RECORDS OVER TO I.D.O.C.; PLAINTIFF

NEVER EVEN RECEIVED A RESPONSE.

40.) DEFENDANTS DEBRA DECKER, GARY ARIBIS, AND "JANE DOE'S "

ACTIONS, AND OMISSIONS, OR REFUSING TO TRANSFER PLAINTIFF'S WCJ

MEDICAL RECORDS TO I.D.O.C., AND WHILE BEING CONSCIOUSLY AWARE

OF PLAINTIFF'S CONTINUOUS SERIOUS MEDICAL NEEDS IN THE PROCESS,

DEMONSTRATES A SUBSTANTIAL RISK TO PLAINTIFF'S FUTURE SERIOUS

MEDICAL NEEDS AND THEREBY CONSTITUTING DELIBERATE

INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS IN VIOLATION

OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

**COUNT 4**

25

## NEGLIGENCE

41.) DEFENDANT DEBRA DECKER, GARY ARIBIS, "JANE DOE" AND RICHARD MEYER'S ACTIONS, OR INACTIONS, AS DESCRIBED IN COUNTS 1 AND 3, AND REALLEGED AS IF FULLY SET FORTH HEREIN, CONSTITUTES THE TORTS OR NEGLIGENCE UNDER THE LAWS OF THE STATE OF ILLINOIS.

## COUNT 5

## SYSTEMATICE PARTICE OF DENIAL OF PLAINTIFF'S SERIOUS MEDICAL TREATMENT.

A. **INTENTIONALLY DENYING OR DELAYING ACCESS TO PHYSICAL THERAPY.**

42.) ON APRIL 7, 2000, AT 3:30A.M., PLAINTIFF WAS SEEN BY DEFENDANT ALFREDO GARCIA FOR AN INTAKE MEDICAL SCREENING (AT PNKCC) TO DETERMINE WHAT WOULD BE THE BEST TYPE MEDICAL TREATMENTS FOR THE PLAINTIFF DURING HIS STORY AT PNKCC.

43.) DURING THE INTAKE EXAMINATIONS DEFENDANT GARCIA (WHOM IS PNKCC'S MEDICAL DIRECTOR) PROPOSED THE NORMAL BRIEF MEDICAL QUESTION ARE PERTAINING TO PLAINTIFF'S MEDICAL HISTORY AND FUTURE, AND AFTER AN ACCOMPANYING NURSE HAD PERFORMED THE STANDARD BRIEF CHECK OF PLAINTIFF'S VITAL SIGNS DR. GARCIA HAD

26

CONDUCTED A QUICK VISUAL EXAMINATION OF PLAINTIFF'S GUNSHOT

WOUNDS, AND AFTER APPROXIMATELY 2 MINUTES OF PRIMARILY VISUAL

EXAMINATIONS, AND HAVING BARELY TOUCHED PLAINTIFF, DR. GARCIA

(SOLELY A GENERAL PRACTITIONER- NOT A PHYSICAL THERAPIST

SPECIALIST) CONCLUDED THAT "PLAINTIFF IS A PARAPLEGIA-

WHEELCHAIR BOUND-AND WITH SPASMS."


   44.) DURING SAID INTERVIEW PLAINTIFF MADE REQUESTS FOR

PHYSICAL THERAPY AND OCCUPATIONAL THERAPY AND FOR MUSCLE

RELAXANTS MEDICATIONS, PLUS SOME OTHER PAIN SUPPRESSION

MEDICATIONS. DEFENDANT GARCIA RESPONDED TO SUCH REQUESTS BY

SAYING "PINCKNEYVILLE CORRECTIONAL CENTER DOES NOT HAVE A

PHYSICAL THERAPY PROGRAM AND ACCORDINGLY TO YOUR MEDICAL

RECORDS YOU HAVEN'T HAD PHYSICAL THERAPY SINCE YOUR STAY AT

RSAH." AT THAT TIME PLAINTIFF REITERATED THAT HE **HAD** BEEN

RECEIVING SOME PHYSICAL THERAPY AND OCCUPATIONAL THERAPY AT

CERTAIN FACILITIES SINCE HAVE LEFT THE RSAH, AND THAT IT "IS

PRETTY OBVIOUS" THAT HE (PLAINTIFF) WAS IN DESPERATE NEED OF

CONTINUED PHYSICAL AND OCCUPATIONAL THERAPY AND, MORE

IMPORTANTLY, THAT HIS PRIOR PHYSICIAN AND PHYSICAL THERAPIST

HAD CLEARLY ADVISED HIM (PLAINTIFF) THAT IF HE DO NOT RECEIVE

CONTINUOUS PHYSICAL AND OCCUPATIONAL THERAPY HE (PLAINTIFF)

WILL BE SUBJECTED TO SERIOUS RISKS OF BEING PERMANENTLY

PARALYZED AND WHEELCHAIR BOUND AND POSSIBLY DEVELOP

OSTEOPOROSIS AND WILL BE SUBJECTED TO A WIDE RANGE OF

UNNECESSARY PAINS AND SUFFERING.

45.) DR. GARCIA FINALLY CONCEDED TO PLAINTIFF'S OBVIOUS, AND

SERIOUS, MEDICAL NEEDS BY STATING, "YOU ARE RIGHT, PHYSICAL

THERAPY WILL BENEFIT YOU, BUT UNFORTUNATELY PINCKNEYVILLE

CORRECTIONAL CENTER DOES NOT OFFER [OR HAVE] PHYSICAL

THERAPY." DR. GARCIA WENT ON TO STATE THAT HE WAS BAFFLED AS TO

WHY DIXON CORRECTIONAL CENTER (A MORE ADEQUATELY EQUIPPED

PHYSICAL THERAPY CAPABLE FACILITY- WHERE PLAINTIFF WAS HOUSED

PRIOR TO PNKCC) HAD TRANSFERRED PLAINTIFF TO A **NONE** EQUIPPED

PNKCC.

46.) IMMEDIATELY; AFTER PLAINTIFF'S INTAKE EVALUATION DR.

GARCIA FOUND IT NECESSARY TO RECOMMEND, AND ORDERED, A

NUMBER OF DIFFERENT MEDICATIONS AND TREATMENTS FOR PLAINTIFF.

47.) ON APRIL 8, 2000 PLAINTIFF FILED A WRITTEN GRIEVANCE

WHEREIN HE **REQUESTED**, AND **STRESSED**, THE NECESSITY OF BEING

TRANSFERRED TO ANOTHER I.D.O.C. FACILITY OR PERHAPS TO AN

OUTSIDE FACILITY IN ORDER TO RECEIVE PHYSICAL AND OCCUPATIONAL

THERAPIES AND OTHER ONCE PRESCRIBED MEDIATIONS THAT PNKCC

28

WAS INCAPABLE OF PROVIDING, AND IN WHICH TO HELP HIM   REGAIN

BACK MOBILITY AND SUPPRESS CHRONIC AND EXCRUCIATING PAINS AND

PREVENT PERMANENT IMMOBILITY.


48.) ON INFORMATION AND BELIEF, WHEN PLAINTIFF FILED HIS

GRIEVANCE THE GRIEVANCE OFFICE, DEFENDANT T. MURRY, CALLED THE

MATTER TO THE ATTENTION OF DEFENDANTS GUY PIERCE (PNKCC'S

WARDEN), KAREN MC KINNEY (PNKCC'S ASST. WARDEN), CHRISTINE

MITCHELL (PNKCC'S HEALTH CARE UNIT ADMINISTRATOR), AND DR.

GARCIA FOR REVIEW. EACH OF THESE INDIVIDUALS POSSESSED THE

CAPACITY (INDIVIDUALLY AND/OR COLLECTIVELY), AND OBLIGATION, TO

CORRECT THE MISTREATMENT AS ALLEGED IN PLAINTIFF'S GRIEVANCE

(EXHIBIT #1-2) ONCE IT WAS BROUGHT TO THEIR ATTENTION. BUT

NEITHER OF THESE DEFENDANTS TOOK ANY STEPS TO CURB THE

CONTINUOUS DENIAL OF PLAINTIFF'S NECESSARY, AND ONCE

PRESCRIBED, MEDICAL TREATMENT. IN FACT, ON JUNE 13, 2000

DEFENDANTS T. MURRY AND GUY PIERCE CONCURRED WITH, AND CO-

SIGNED, THE DENIAL OF PLAINTIFF'S GRIEVANCE AND, IN ESSENCE, BY

DOING SO EXPRESSLY CONDONED AND ENCOURAGED THE CONTINUED

DENIAL OR PROPER MEDICAL TREATMENT FOR PLAINTIFF AND DENIED

ANY CORRECTIVE RELIEF SOUGHT.


29

49.) LATER, DEFENDANT DONALD N. SNYDER, JR. (I.D.O.C . DIRECTOR), AFTER HAVING BEEN PERSONALLY A BREASTED OF THE FACTS OF PLAINTIFF'S GRIEVANCE, CO-SIGNED THE DENIAL OF PLAINTIFF'S APPEAL WHEREIN PLAINTIFF PRAYED TO THE DIRECTOR (DEFENDANT SNYDER) TO OVER RULE THE ACTIONS OF DEFENDANTS MURRY AND PIERCE AND INSTRUCT CORRECTIVE ACTIONS IN THE FORM OF PROPER MEDICAL TREATMENT.

50.) PLAINTIFF MADE MANY DILIGENT ATTEMPTS TO RECEIVE PHYSICAL THERAPY AND OCCUPATIONAL THERAPY BY FILING MANY GRIEVANCES AND WRITING NUMEROUS LETTERS TO PRISON OFFICIALS (CERTAIN DEFENDANTS) REQUESTING PROPER MEDICAL TREATMENT (PLEASE **REFER TO TABLE OF EVIDENCE EXHIBITS** FOR COPIES OF SAME). UNFORTUNATELY, THE DEFENDANTS (AS NAMED IN PARAGRAPH # 48) REPEATEDLY DENIED PLAINTIFF'S RE QUEST FOR OVER A 4 MONTH PERIOD OF TIME AND WHILE SOMETIMES [MORE OFTEN THAN NOT] EXHIBITING SARCASMS, AGITATION, BELLIGERENCE, BLATANT DISRESPECT, AND HOSTILITIES IN THEIR VERBAL AND /OR WRITTEN RESPONSES, (THE LATTER REFERRING TO DEFENDANT MITCHELL, MC KINNEY AND GARCIA).

51.) FROM APRIL 7, 2000 TO AUGUST 8, 2000, PLAINTIFF SUBMITTED MANY SICK-CALL REQUEST SLIPS COMPLAINING OF VARIOUS

EXCRUCIATING PAINS, MUSCLE SPASMS, JOINT PAINS, MUSCLE SKELETAL

PAINS, AN OTHER COMPLICATIONS RELATING TO HIS PARALYSIS AND

WHICH WAS THE INEVITABLE RESULTS OF BEING ABRUPTLY TAKEN

COMPLETELY OFF OF, AND DENIED, PHYSICAL AND OCCUPATIONAL

THERAPIES; AND PLAINTIFF WAS FREQUENTLY SEEN BY MEDICAL STAFF,

INCLUDING DR. GARCIA, BUT THE END RESULTS WAS ALWAYS THE SAME-

NO TREATMENT OR SEVERELY INADEQUATE TREATMENT.

## B. INADEQUATE STAFF, FACILITIES, EQUIPMENT, AND SUPPLIES NECESSARY FOR PROPER MEDICAL CARE.

52.) ON AUGUST 8, 2000, AT 10:00A.M, PLAINTIFF WAS FINALLY SEEN BY

A PHYSICAL THERAPIST (DAN LAVER) TO UNDERGO AN EVALUATION FOR

PLACEMENT BACK ON AN EXTENSIVE REHABILITATION PROGRAM OF

PHYSICAL AND OCCUPATIONAL THERAPY. DURING THIS EVALUATION,

AND INTERVIEW, PHYSICAL THERAPIST DAN LAVER THOROUGHLY

CONFIRMED PLAINTIFF'S INJURIES AND PARALYSIS AND REAFFIRMED THE

CRUCIAL NEED FOR AN "IMMEDIATE," AND CONTINUOUS, PHYSICAL

THERAPY AND OCCUPATIONAL THERAPY PROGRAM IN ORDER TO HELP

RESTORE SOME FLEXIBILITY, STRENGTH, AND ULTIMATELY ENABLE HIM

(PLAINTIFF) TO REGAIN HIS MOBILITY'S.

53.) AFTER PHYSICAL THERAPIST LAVER'S ASSESSMENT OF PLAINTIFF

HE (LAVER) EXPRESSED TO THE PLAINTIFF THAT PNKCC DOES NOT HAVE

ADEQUATE PHYSICAL THERAPY FACILITIES, EQUIPMENT, SUPPLIES, NOR

STAFFING TO PROVIDE ADEQUATE REHAB PROGRAMS THAT IS

NECESSARY FOR PLAINTIFF'S CONDITIONS, AND THEREFORE HE (LAVER)

WAS GREATLY LIMITED TO ONLY BEING ABLE TO SEE PLAINTIFF TWICE

PER-WEEK AND TO PERFORM BASIC ISOMETRIC AND ISOTONIC AND

CALISTHENICS (BODY-WEIGHT EXERCISE). THIS LIMITATION, AND

RESTRICTED ABILITY, LASTED FROM AUGUST 8, 2000 TO OCTOBER ? 2000.


**C. DELIBERATELY DELAYING OR DENYING ONCE PRESCRIBED**

**MEDICATION.**

    55.) ON APRIL 6, 2000, AT 3:20P.M., UPON PLAINTIFF'S ARRIVAL AT

PNKCC, PLAINTIFF IMMEDIATELY PUT DEFENDANT GARCIA ON NOTICE OF

HIS SERIOUS MEDICAL NEEDS FOR BALCOFEN, 20MG.


    56.) ON APRIL 7, 2000, AT 3:30P.M.; PLAINTIFF WAS SEEN BY DEFENDANT

GARCIA FOR INMATES' INTAKE EXAMINATION. DURING THIS TIME

DEFENDANT DR. GARCIA TOOK NOTICE, AND ACKNOWLEDGED, THAT

PLAINTIFF WAS SUFFERING FROM VIOLENT MUSCLE SPASMS AND

CORRECTLY DEEMED PLAINTIFF TO BE CONTINUOUSLY IN, AND

SUSCEPTIBLE, TO SERIOUS PAIN. DEFENDANT GARCIA, WHILE

CONSCIOUSLY KNOWING THAT PLAINTIFF WAS IN SERIOUS PAIN FROM

THE FREQUENT MUSCLE SPASMS, ARBITRARILY AND WITHOUT ANY

LEGITIMATE JUSTIFICATIONS, DELAYED GIVING PLAINTIFF ONCE

PRESCRIBED, AND NECESSARY, MEDICATION (BALCOFEN) TO SUPPRESS

THE PAINS AND SPASMS UNTIL APRIL 25, 2000. SO FOR 18 DAYS PLAINTIFF

WAS LEFT TO SQUABBLE IN PAIN AND SPASMS-PAINS THAT WAS SO

INTENSE THAT IT HINDERED PLAINTIFF'S ABILITY TO PERFORM HIS DAILY

TASKS (THE ONES THAT HE WAS OTHERWISE CAPABLE OF PERFORMING);

EVEN SOMETIMES SLEEP.


57.) ON JUNE 26, 2000, AT 4:40P.M., PLAINTIFF WAS SEEN BY DEFENDANT

DR. GARCIA PERTAINING TO A FOLLOW-UP SICK-CALL REQUEST

COMPLAINING OF MUSCLE SPASMS AND THE SUBSEQUENT NEED FOR THE

RENEWAL OF THE MEDICATION "BALCOFEN" TO SUPPRESS THESE

VIOLENT AND PAINFUL MUSCLE SPASMS.


58.) DR. GARCIA ACKNOWLEDGED THAT PLAINTIFF'S MEDICATION

(BALCOFEN) HAD BEEN DISCONTINUED AND FURTHER ACKNOWLEDGED

THAT HE (PLAINTIFF) WAS IN GREAT PAIN FROM SUCH MUSCLE SPASMS.

NEVERTHELESS; DEFENDANT DR. GARCIA TOTALLY, AND BLATANTLY,

DISREGARDED PLAINTIFF'S NEEDS FOR SUCH MEDICATION TO BE RE-

ORDERED. AS PLAINTIFF BEGGED AND INSISTED DR. GARCIA THEN WENT

ON TO HURDLE VERY BELITTLING INSULTS AND OBSCENITIES AT THE

PLAINTIFF IN A VERY BELLIGERENT TONE OF VOICE, AND WELL WITHIN

33

HEARING RANGE OF PLAINTIFF'S PEERS AND OTHER NURSING STAFF. (SEE FOOTNOTE)

59.) IMMEDIATELY AFTER PLAINTIFF AND GARCIA'S ENCOUNTER (AS DESCRIBED IN PARAGRAPH #58) DEFENDANT GARCIA MALICIOUSLY DISCONTINUED PLAINTIFF'S BALCOFEN FROM JUNE 26, 2000 (THE DATE OF THE ENCOUNTER) TO AUGUST 4, 2000 AND THEREBY INTENTIONALLY, WILLFULLY, AN WANTONLY SUBJECTING PLAINTIFF TO MORE THAN A MONTH LONG OF CONTINUOUS AND EXCRUCIATION PAIN AND SUFFERING CAUSED BY VIOLENT MUSCLE SPASMS WHICH, IN TURN, CAUSED NUMEROUS OF DIFFICULTIES, SUCH AS: 1) INTERFERENCE WITH SLEEP, 2.) INTERFERENCE WITH DAILY READING, 3.) KNEED JOINT PAINS, 4.) SHOULDER JOINT PAIN, 5.) WRIST JOINT PAIN, AND SEVERE HAND CONTRACTION, 6.) FREQUENTLY SHAKING AND TREMBLING, 7.) DETERRENCE FROM DOING DAILY FLEXIBILITY EXERCISE, AND 8.) THE INABILITY TO AID IN HIS OWN DAILY LIVING ACTIVITIES, ETC. DURING SAID DELAY PLAINTIFF REPEATEDLY SUBMITTED SICK-CALL REQUESTS TO BE PUT BACK ON BALCOFEN, BUT ONLY TO NO AVAIL.

---

During the encounter (as described in paragraphs 57-58) plaintiff was also suffering from obstruction of swallowing and breathing difficulties-which was also discussed during the evaluation, and Dr. Garcia called plaintiff **"A Piece of Shit"** which was easily over heard by other inmates present in the health care unit.

60.) ON OCTOBER 15, 2000, AT 2:30P.M., PLAINTIFF SEVERELY TWISTED HIS RIGHT KNEE AND SIMULTANEOUSLY TRIGGERED SWELLING IN THE KNEE AND RIGHT HIP FROM FALLING OUT OF HIS WHEELCHAIR.

61.) LATER THAT SAME DAY, AT 4:30P.M., PLAINTIFF WAS SEEN BY AN UNKNOWN REGISTERED NURSE ABOUT THE INJURIES (AS DESCRIBED IN PARAGRAPH #60) HE SUB-STAINED. THE NURSE MADE OBSERVATIONS AND RECEIVED VERIFICATIONS (FROM A CORRECTIONAL OFFICER) AS TO THESE INJURIES AND THE MANNER IN WHICH THEY WERE ACQUIRED. THE NURSE IMMEDIATELY RECOMMENDED PLAINTIFF TO BED-REST, ICE FOR THE SWELLING, AND TO KEEP THE RIGHT LEG ELEVATED.

62.) ON OCTOBER 16, 2000, AT 7:00A.M. PLAINTIFF'S CELLMATE (LARRY UPCHURCH) VERBALLY PUT DEFENDANT SCOTT WYCISKALLA ON NOTICE THAT BECAUSE PLAINTIFF HAD SUFFERED A SEVERE INJURY (AS DESCRIBED IN PARAGRAPH #60) HE (PLAINTIFF) WASN'T ABLE TO MOVE ON HIS OWN AND THAT HE NEEDED FOR WYCISKALLA TO OPEN HIS (PLAINTIFF'S) ASSIGNED WHEELCHAIR PORTER CELL DOOR SO THAT EH ASSIGNED PORTER CAN HELP HIM (PLAINTIFF) GET IN HIS WHEELCHAIR TO GET HIS MORNING MEDICATION (BALCOFEN(.PLAINTIFF ALSO TOLD WYCISKALLA THAT HE (PLAINTIFF) NEEDED HELP WHEN WYCISKALLA HAD PEERED INTO HIS CELL TO ASK PLAINTIFF "WAS HE [PLAINTIFF] GOING TO GET UP AND GET HIS MORNING MEDS [MEDICATION]."

35

DEFENDANT WYCISKALLA RESPONDED TO PLAINTIFF'S REQUEST FOR THE ASSISTANCE OF HIS ASSIGNED WHEELCHAIR PORTER (OR ANY PORTER FOR THAT MATTER) WITH OBSCENITIES AND BELLIGERENCE-BUT NOT WITH HELP.

63.) DUE TO DEFENDANT WYCISKALLA'S DISREGARDS AND INTERFERENCE WITH PLAINTIFF BEING ABLE TO GET HIS MEDICATION (BALCOFEN) HE (PLAINTIFF) MISSED THE 8:00A.M. AND 12:00P.M., MEDICATION LINE, WHICH SUBSEQUENTLY LED (BY SYSTEMATIC POLICY) TO THE DISCONTINUATION[1] OF HIS NECESSARY MEDICATION FORM OCTOBER 16, 2000 TO NOVEMBER 10, 2000.

64.) FROM OCTOBER 16, 2000 TO NOVEMBER 10, 2000 PLAINTIFF SUFFERED FREQUENTLY FROM EXCRUCIATING PAINFUL MUSCLE SPASMS AND OTHER DISCOMFORTING DIFFICULTIES (AS DESCRIBED IN PARAGRAPH #59) THAT COULD HAVE BEEN MINIMIZED OR PERHAPS EVEN TOTALLY PRECLUDED HAD HE NOT BEEN TAKEN OFF OF THE BALCOFEN (AS DESCRIBE IN PARAGRAPH #63). SUCH SPASMS INTERFERED WITH, OR HINDERED, PLAINTIFF'S ABILITY TO EFFECTIVELY PERFORM VARIOUS PHYSICAL THERAPY EXERCISES. DURING THIS PERIOD PLAINTIFF REPEATEDLY COMPLAINED, AND REITERATED HIS NEEDS, TO DEFENDANT DR. GARCIA AND PHYSICAL THERAPIST ASSISTANT; VALERIA BARTINKSI,

---

[1]     There existed a well-known policy at the PNKCC that if a prisoner missed his prescribed medication more than 2 times, the medication is automatically discontinued by the nursing staff and/or Doctors.

FOR THE BALCOFEN, BUT ONLY TO NO AVAIL, AND THIS BEING DESPITE
THE FACT THAT VALERIA SUPPORTED PLAINTIFF'S REQUEST TO
DEFENDANT GARCIA.

65.) IT IS PLAINTIFF'S BELIEFS, AND CONTENTIONS, THAT DEFENDANT
GARCIA HAD NO JUSTIFIABLE REASONS TO DISCONTINUE, OR DELAY IN
IMMEDIATELY REORDERING, HIS (PLAINTIFF'S) MEDICATION (BALCOFEN)
OTHER THAN TO KNOWINGLY SUBJECT PLAINTIFF TO THE WANTON AND
UNNECESSARY INFLICTION OF PAIN.

**D. DELAYING ACCESS TO ADEQUATE AND MEDICALLY NECESSARY
PROSTHETIC DEVICES.**

66.) ON APRIL 18, 2000, AT 1:00P.M., PLAINTIFF WAS SEEN BY
DEFENDANT DR. GARCIA PERTAINING TO HIS (PLAINTIFF'S) WORN DOWN,
AND RAGGEDY, PROSTHETIC RIGHT HAND AND WRIST DEVICE. THIS IS A
DEVICE THAT WAS PRESCRIBED BY PLAINTIFF'S PHYSICAL THERAPIST;
CRAIG SCOTT, DURING HIS STAY AT RSAH. THIS PROSTHETIC DEVICE (A
WRIST AND HAND BRACE) IS USED TO STRAIGHTEN OUT PLAINTIFF'S
RIGHT HAND AND WRIST, WHICH IS CONSTANTLY IN A CLAW-LIKE
CONTRACTION OR A WRIST DROP POSITION. THE BENEFITS OF SUCH A
BRACE IS TO ENCOURAGE FLEXIBILITY, PREVENT PERMANENT WRIST
DROP, AND TO PROVIDE BLOOD CIRCULATION IN THAT AREA. DR. GARCIA

37

OBSERVED AND ACKNOWLEDGES THAT PLAINTIFF'S RIGHT HAND AND
WRIST BRACE WAS WORN DOWN AND CRACKED. DR. GARCIA THEN
RECOMMENDED PLAINTIFF TO SEE A PROSTHETIC SPECIALIST TO EITHER
FIX THE OLD BRACE OR ORDER A NEW ONE. HOWEVER, DR. GARCIA
NEVER EXPEDITED OR FOLLOWED-UP ON HIS OWN RECOMMENDATION.

67.) BETWEEN APRIL 18, 2000 AND SEPTEMBER 12, 2000 PLAINTIFF
SUBMITTED NUMEROUS COMPLAINTS TO PRISON MEDICAL PERSONNEL
(INCLUDING DEFENDANT GARCIA) REGARDING HAVING THE BRACE
FIXED.

68.) ON SEPTEMBER 12, 2000 PHYSICAL THERAPIST DAN LAVER (AT
PKNCC) ATTEMPTED, VERY PERFUNCTORILY, TO FIX PLAINTIFF'S BRACE
WITH SOME FLIMSY AND UNSTABLE STICKS AND SOME ORDINARY MULTI-
PURPOSE MEDICAL TAPE. THIS ARRANGEMENT ONLY HELD-UP UNTIL
SEPTEMBER 28, 2000 AND THAT'S WHEN THE WHOLE BRACE COMPLETELY
COLLAPSED.

69.) FROM APRIL 18, 2000 TO SEPTEMBER 28, 2000 DEFENDANT GARCIA'S
ACTIONS, OR INACTIONS, OF NOT EXPEDITING AND FOLLOWING THROUGH
ON HIS OWN RECOMMENDATION FOR PLAINTIFF'S RIGHT WRIST AND

HAND BRACE TO BE FIXED BY A PROSTHETIC SPECIALIST LEFT PLAINTIFF

SUBJECTED TO UNNECESSARY PAIN AND DISCOMFORT FOR AN EXTENDED

PERIOD AND DEFENDANT GARCIA WAS CONSCIOUSLY AWARE OF SUCH IN

THE PROCESS AND HIS ACTIONS, OR INACTIONS, WERE DELIBERATE.

70.) ON AUGUST 23, 2000, AT 4:18P.M., PLAINTIFF WAS SEEN ON A SICK-

CALL LINE TO SEE DEFENDANT GARCIA REGARDING MULTIPLE

COMPLAINTS OF HIS BROKEN WHEELCHAIR, RIGHT LEG REST, LOCK PINS

AND IF THIS WAS NOT FIXED IMMEDIATELY IT INEVITABLY LEFT

PLAINTIFF SUBJECT TO A SERIOUS RISK OF PRESENT AND FUTURE HARM.

HE (PLAINTIFF) CLEARLY EXPRESSED TO DEFENDANT GARCIA THAT "ON

MANY OCCASIONS, AS HIS WHEELCHAIR PORTER PUSHED HIM FORM

PLACE-TO-PLACE, THE RIGHT LOCK PIN OF THE LEG-REST CAUSING THE

LEG-REST TO CONTINUOUSLY SWING WIDE RIGHT WITH HIS RIGHT LEG

HYPER EXTENDING BACKWARDS, AND ON SOME OCCASIONS, ALMOST

THRUSTING HIM FORWARD OUT OF THE WHEELCHAIR." IN ADDITION,

PLAINTIFF SOUGHT (BY WAY OF DR. GARCIA) A WHEELCHAIR WITH A

RETRACTABLE ARMREST IN ORDER TO MAKE IT EASIER TO TRANSFER IN

AND OUT OF THE WHEELCHAIR WITHOUT THE RISK OF FALLING.

71.) DEFENDANT GARCIA, AFTER HEARING PLAINTIFF'S COMPLAINTS

(AS DESCRIBED IN PARAGRAPH #70), BRIEFLY EXAMINED THE RIGHT LEG-

REST LOCK PIN OF PLAINTIFF'S WHEELCHAIR AND ULTIMATELY AGREED

WITH PLAINTIFF; THAT THE FAULTY LEG-REST POSED A SERIOUS RISK OF GREATLY BODILY HARM AND NEEDS TO BE REPAIRED SOON.

72.) DEFENDANT GARCIA SUBSEQUENTLY RECOMMENDED PLAINTIFF TO SEE A WHEELCHAIR REPAIR MAN TO GET THE BROKEN PINS ON THE LEG-REST FIXED AND ALSO ORDERED A WHEELCHAIR WITH RETRACTABLE ARM RESTS. AT THAT TIME PLAINTIFF IMMEDIATELY REQUESTED TO BORROW ONE OF THE "MANY" WHEELCHAIRS THAT WERE IN GOOD CONDITION, AND BEING KEPT IN THE STORAGE ROOM AT PNKCC, UNTIL HIS WHEELCHAIR GETS FIXED OR REPLACED WITH A NEW ONE. DEFENDANT GARCIA, WITHOUT GIVING IT MUCH THOUGHT AT ALL, SUSPICIOUSLY QUICKLY DENIED SUCH REQUEST AND WHILE KNOWING THAT EACH MOMENT IN THE FAULTY WHEELCHAIR POSED A SERIOUS RISK FOR INJURY.

73.) ON SEPTEMBER 2000, PLAINTIFF WAS SEEN BY DEFENDANT "JOHN DOE" (WHEELCHAIR REPAIR COMPANY MAN) PERTAINING TO FIXING HIS (PLAINTIFF'S) WHEELCHAIR LEG-REST AND TO GET AN ESTIMATION ON THE SIZES FOR THE NECESSARY PARTS. AFTER DEFENDANT "JOHN DONE" DID THE SIZE ESTIMATION HE WENT ON TO MAKE NOTICE OF THE DANGER OF SUCH A FAULTY WHEELCHAIR BUT HE NEVER TOOK ANY STEPS TO GIVE/GET PLAINTIFF AN ALTERNATIVE WHEELCHAIR (PENDING THE REPAIRS) TO PREVENT FUTURE INJURIES. PLAINTIFF CONTENDS THAT, AS A REPAIRMAN AND REPRESENTATIVE OF

THE WHEELCHAIR REPAIR COMPANY, IT WOULD HAVE INEVITABLY

BECAME PART OF THIS RESPONSIBILITY TO TAKE WHATEVER STEPS

NECESSARY TO PREVENT A CLIENT, CUSTOMER, OR PATIENT, FORM BEING

INJURED BY A PRODUCT THAT HE WOULD HAVE BEEN RESPONSIBLE FOR

FIXING AND IN THE MEANWHILE KNEW WAS FAULTY AND CONTINUED

USE WAS DANGEROUS.

74.) ON OCTOBER 15, 2000, AT APPROXIMATELY 2:30P.M., AS PLAINTIFF

ATTEMPTED TO TRANSFER FROM HIS WHEELCHAIR OVER TO A TOILET

(WHEREIN DURING SUCH MOTIONS) THE RIGHT LET-REST SWUNG WIDE

RIGHT THEREBY CAUSING PLAINTIFF'S RIGHT LEG AND KNEE TO

HYPEREXTEND BACKWARDLY AND THRUSTING HIM OUT OF THE

WHEELCHAIR. THIS FALL WAS THE PROXIMATE CAUSE OF VERY PAINFUL

INJURIES, AND SEVERE SWELLING, TO PLAINTIFF'S RIGHT KNEE, HIP, AND

BUTTOCK AREA. THESE INJURIES WERE SERIOUS AN REQUIRED MEDICAL

TREATMENT-INCLUDING EXCLUSIVE BED-REST WHICH, IN TURN, CAUSED

PLAINTIFF TO MISS SEVERAL PHYSICAL THERAPY SESSIONS,

MEDICATIONS LINES AND SOME MEALS.

75.) ON OCTOBER 24, 2000 PLAINTIFF WAS SEEN BY THE PHYSICAL

THERAPIST; DAN LAVER, FOR SCHEDULED PHYSICAL THERAPY SESSIONS.

MR. LAVER MADE A FINDING; AFTER PERFORMING A MC MURRAY'S TEST

ON PLAINTIFF FOR MEASUREMENT OF RANGE OF MOTION ("R.O.M.") OF

RIGHT KNEE, THAT PLAINTIFF SUFFERED RIGHT KNEE JOINT PAIN WITH

LOUD CLICKING SOUNDS, KNEW SWELLING, AND JOINT EFFUSION AND

THEREBY CREATING DIFFICULTIES WITH TRANSFERRING FROM THE

WHEELCHAIR BECAUSE OF LIMITED RANGE PROBLEMS. DAN LAVER WENT

ON TO RECOMMEND PLAINTIFF TO SEE DEFENDANT GARCIA TO UNDERGO

A DIAGNOSTIC TESTING (X-RAYS ON THE KNEE).

   76.) ON OCTOBER 30, 2000 PLAINTIFF UNDERWENT X-RAYS OF THE

RIGHT KNEE. ON NOVEMBER 10, 2000 PLAINTIFF WAS SEEN BY DEFENDANT

GARCIA TO GO OVER THE X-RAYS OF HIS RIGHT KNEE AND THE

RADIOGRAPHIC IMAGES REVEALED THAT PLAINTIFF HAVE OSTEOPOROSIS

AND AN AGGRESSIVE LESION (INFECTIOUS VERSUS MALIGNANT) OF THE

RIGHT KNEE JOINT.

   77.) ON NOVEMBER 2, 2000 PLAINTIFF WAS SEEN BY PHYSICAL

THERAPIST; DAN LAVER, FOR A SCHEDULED PHYSICAL THERAPY SESSION.

AND AFTER PERFORMING A MC MURRY'S TEST ON PLAINTIFF FOR

MEASUREMENT OF R.O.M. OF THE RIGHT KNEE MR. LAVER FOUND THAT

PLAINTIFF CONTINUES TO SUFFER RIGHT KNEE DYSFUNCTION AND PAIN

AND STILL ENCOUNTERED DIFFICULTIES WITH TRANSFERRING IN AND

OUT OF THE WHEELCHAIR. ULTIMATELY, MR. LAVER WENT ON TO

RECOMMEND PLAINTIFF TO RECEIVE A WHEELCHAIR WITH RETRACTABLE

OR REMOVABLE ARMS AND RIGHT ELEVATING SWING AWAY LEG-REST

42

(SUCH WAS DEEMED THERAPEUTIC FOR VARIOUS REASONS). SUCH RECOMMENDATIONS WERE REFERRED TO DEFENDANT GARCIA WHOM WAS RESPONSIBLE FOR ORDERING ANY PROSTHETIC DEVICES. ONE AGAIN, HOWEVER, DEFENDANT GARCIA NEVER EXPEDITED OR FOLLOWED THROUGH ON LAVER'S RECOMMENDATIONS EVEN AFTER HAVING BEEN REPEATEDLY ADVISED BY MR. LAVER (THE THERAPIST), AND THE PLAINTIFF HIMSELF, OF SUCH SERIOUS MEDICAL NEEDS.

**E. DELAYING OR DENYING ACCESS TO NEUROSURGEON SPECIALIST/TREATMENT.**

78.) DURING THE MONTH OF MAY 2000 PLAINTIFF COMPLAINED TO MEDICAL STAFF OR OBSTRUCTION OF BREATHING AND SWALLOWING COMPLICATION, PARTICULARLY      WHEN LAYING DOWN ON HIS BUNK AND SOMETIMES WHILE SLEEPING. IN ADDITION, PLAINTIFF ALSO SUFFERED FROM, AND COMPLAINED OF, BLACKOUTS AND SOMETIMES CHOKING ON FOOD WHEN EATING.

79.) SUBSEQUENTLY, ON MAY 26, 2000 PLAINTIFF ENDED UP SEEING DEFENDANT DR GARCIA (A GENERAL MEDICAL PRACTITIONER; NOT A NEUROSURGEON) ABOUT SAID COMPLAINTS. DR. GARCIA BRIEFLY EXAMINED PLAINTIFF'S NECK AND THEN ORDERED X-RAYS OF THE NECK.

43

80.) ON JUNE 2, 2000 PLAINTIFF'S X-RAYS OF HIS NEXT WAS COMPLETED

AND IT WAS LATER MADE KNOWN TO PLAINTIFF THAT THE

RADIOLOGICAL REPORT (X-RAYS) REVEALED THE FOLLOWING: "2

METALLIC BODIES (BULLET FRAGMENTS) IN THE SOFT TISSUES OF THE

RIGHT SIDE OF THE NECK AND RIGHT SUPRACLAVICULAR REGION; WITH A

HISTORY OF SWELLING IN THAT AREA.

81.) ON JUNE 17, 2000 PLAINTIFF WAS ON SICK-CALL LINE TO SEE A

REGISTERED NURSE REGARDING HIS CONSISTENT COMPLAINTS OF

BREATHING AND FOOD SWALLOWING COMPLICATIONS (AS DESCRIBED IN

PARAGRAPH #78). THE NURSE EXAMINED PLAINTIFFS THROAT AND TOOK

NOTICE THAT THERE WERE WHITE PATCHES IN HIS THROAT AND

RECOMMENDED HIM (PLAINTIFF) TO DEFENDANT GARCIA FOR FOLLOW-

UP CARE.

82.) ON JUNE 26, 2000 PLAINTIFF WAS SEEN BY DEFENDANT GARCIA

PERTAINING TO SAID COMPLICATIONS (AS DESCRIBED IN PARAGRAPH #81)

AND FOR THE PURPOSE OF GOING OVER THE X-RAY RESULTS (AS

DESCRIBED IN PARAGRAPH #80). DEFENDANT GARCIA DID A PHYSICAL

HANDS-ON EXAMINATION OF PLAINTIFF'S NECK AS TO FIND THE

PHYSICAL PRESENCE AND APPROXIMATE LOCATIONS OF THE BULLET

FRAGMENTS. AT ONE POINT DURING THIS EXAMINATION PLAINTIFF FELT

44

A VERY SHARP PAIN (AS WOULD BE INDICATIVE OF THE LOCATION OF THE BULLET FRAGMENTS).

83.) DR. GARCIA CONFIRMED THAT UPON REVIEWING THE X-RAYS CHART IT SHOWED A LARGE BULLET FRAGMENT AROUND THE AREA OF THE NECK'S INTERNAL SOFT TISSUES, ON THE RIGHT SIDE OF THE SUPRACLAVIULAR, AND THAT IT MAY BE PRESSED AGAINST THE TRACHEA, OR PHARYNX, WHICH MAY BE THE CAUSE OF PLAINTIFF'S COMPLICATIONS (AS DESCRIBED IN PARAGRAPH #80).

84.)IMMEDIATELY AFTER DR. GARCIA'S CONFIRMATIONS PLAINTIFF REQUESTED FOR MEDICAL TREATMENT AND/OR SURGERY TO REMOVE THE PAIN CAUSING BULLET AND TO SEE A NEUROSURGEON SPECIALIST TO PERFORM THE APPROPRIATE TESTS AND /OR OPERATIONS. DEFENDANT GARCIA RESPONDED TO PLAINTIFF'S REQUESTS WITH OBSCENITIES AND HOSTILITIES, AND WITHOUT ANY LEGITIMATE REASON OUTRIGHT DENIED PLAINTIFF'S REQUESTS.

85.) PLAINTIFF REPEATEDLY MADE DILIGENT ATTEMPTS TO OBTAIN MEDICAL TREATMENT FORM A NEUROSURGEON SPECIALIST FOR THE SERIOUS AND CHRONIC NECK PROBLEMS BY REPEATEDLY SENDING LETTERS DIRECTLY TO DEFENDANTS DONALD N. SNYDER (I.D.O.C. DIRECTOR), GUY PIERCE (PKNCC WARDEN), MC KINNEY (PKNCC ASST.

WARDEN), CHRISTINE MITCHELL (HEALTH CARE UNIT ADMINISTRATOR AT PKNCC), AND DR. GARCIA, BUT ONLY TO NO AVAIL. IN FACT, IT WASN'T UNTIL AFTER PLAINTIFF'S ATTORNEY AND FAMILY HAD CONTACTED CERTAIN OF THESE DEFENDANTS THAT CERTAIN DEFENDANTS FINALLY DECIDED TO CHANGE THEIR POSITIONS CONCERNING PLAINTIFF'S MEDICAL COMPLAINTS- BUT BY THEN THE DAMAGE HAD ALREADY BEEN DONE AND FOR THE MOST PART IRREPARABLE.

86.) ON AUGUST 23, 2000 PLAINTIFF WAS ON A SICK-CALL LINE TO SEE DEFENDANT GARCIA ABOUT BEING EVALUATED BY A NEUROSURGEON SPECIALIST. DEFENDANT GARCIAL ULTIMATELY CONVEYED TO PLAINTIFF THAT HE WOULD RECOMMEND HIM (PLAINTIFF) TO SEE A NEUROSURGEON SPECIALIST TO UNDERGO PRE-OPERATIVE NECK INTERNAL NERVES AND MUSCLES TESTS IN PREPARATION FOR BULLET FRAGMENTS REMOVAL OPERATION OR ELECTIVE SURGERY. AT THAT TIME PLAINTIFF EXPRESSED CONCERNS THAT "SURGERY OF SUCH MAJOR MAGNITUDE, WHERE THERE WILL BE INCISIONS AROUND VITAL AREAS OF INTERNAL JUGULAR VEINS, ARTERIES, AND ARTERIOLES OR CAPILLARIES OF THE NECK, ONE LITTLE MISTAKE COULD PROVE FATAL," AND SINCE PNKCC WAS NOT ADEQUATELY EQUIPPED, *NOT STERILE, FOR SUCH DELICATE OPERATION PLAINTIFF INQUIRED ABOUT THE OPERATION TAKING PLACE AT AN OUTSIDE HOSPITAL. DEFENDANT GARCIA, WITH A

---

*     The PNKCC does not even have an operating room.

**THEATRICAL** GRIN ON HIS FACE, RECOMMENDED SURGERY AT THE
PRISON.

87.) ON SEPTEMBER 26, 2000 PLAINTIFF HAD A 9:30A.M. CALL PASS FOR
THE PRISON'S "**SURGERY CLINIC**". PLAINTIFF ARRIVED AT THE PRISON'S
HEALTH CARE UNIT UNDER THE IMPRESSION THAT A NEUROSURGEON
SPECIALIST HAD BEEN CALLED IN TO PERFORM PREOPERATIVE
DIAGNOSTIC TESTS. HOWEVER, DEFENDANT GARCIA HAD A CHANGE OF
MIND SOMEWHERE ALONG THE LINE BECAUSE WHEN PLAINTIFF GOT TO
THE PRISON'S HOSPITAL DR. GARCIA (WHOM IS NOT QUALIFIED AS A
NEUROSURGEON) CONVEYED TO PLAINTIFF ANIMOSITIES AND
HOSTILITIES TOWARD PLAINTIFF TIME-AFTER-TIME) WAS GOING TO
PERFORM SURGERY ON HIM. IT WAS THEREFORE UNDER THESE MOST
COMPELLING CIRCUMSTANCES THAT PLAINTIFF REFUSED THE SURGERY
BY DEFENDANT GARCIA.

88.) PLAINTIFF IMMEDIATELY BEGAN FILING WRITTEN GRIEVANCES
AND LETTERS TO DEFENDANTS PIERCE, MITCHELL, AND MC KINNEY
REQUESTING TO SEE A NEUROSURGEON SPECIALIST, BUT ONLY TO NO
AVAIL (PLEASE REFER TO TABLET OF EVIDENCE FOR ATTACHED
GRIEVANCES AND LETTERS).

89.) DEFENDANT GARCIA'S ACTIONS IN ATTEMPTING TO PERFORM AN INTERNAL NECK SURGERY WITHOUT BEING A QUALIFIED NEUROSURGEON SPECIALIST SHOCKED THE CONSCIENCE OF MANKIND. ADDITIONALLY, BECAUSE GARCIA REFUSED TO FOLLOW THROUGH ON HIS OWN PURPORTED RECOMMENDATIONS TO HAVE PLAINTIFF ARRANGED TO SEE A NEUROSURGEON SPECIALIST HE DEMONSTRATED A GROSS DELIBERATE IN DIFFERENCE TO THE SERIOUS MEDIAL NEEDS OF THE PLAINTIFF WHOM REQUIRED SURGICAL SERVICE BY A QUALIFIED PHYSICIAN.

90.) FROM APRIL 8, 2000 TO JANUARY 2000 PLAINTIFF FILED NUMEROUS OF GRIEVANCES PERTAINING TO THE SYSTEMATIC PRACTICE OF DENIAL OF HIS SERIOUS MEDICAL NEEDS OR TREATMENT (AS ALLEGED THROUGHOUT THIS COUNT). IT IS THE PLAINTIFF'S BELIEFS AND UNDERSTANDING BASED UPON HISTORICAL FACTORS AND PRACTICES OF THE PRISON OFFICIALS, AMONGST OTHER REASONS, THAT WHEN HE FILED HIS GRIEVANCES THE GRIEVANCE OFFICE (DEFENDANT T. MURRY) CALLED THE MATTER(S) TO THE ATTENTION OF DEFENDANT PIERCE, MC KINNEY, MITCHELL, AND GARCIA BUT EACH OF THESE DEFENDANTS COLLABORATED AND THEN MADE THE COLLECTIVE DECISION TO DENY EACH OF THE GRIEVANCES, OR OTHERWISE TURNED A BLIND EYE TO THE ISSUES, AND WITH DEFENDANT DONALD N. SNYDER LATER PERSONALLY CONCURRING WITH EACH OF THE DENIALS. EITHER OF THESE

48

DEFENDANTS COULD HAVE EASILY TAKEN CORRECTIVE MEASURES AND POSSESSED THE AUTHORITY TO DO SO. (REFER TO ATTACHED TABLET OF EVIDENCE EXHIBITS FOR GRIEVANCES AND RESPONSES).

91.)BECAUSE OF THE ACTIONS, OR INACTIONS, OF DEFENDANTS GARCIA, PIERCE, MC KINNEY, MITCHELL, MURRY, AND SNYDER IN CONSCIOUSLY AND REPEATEDLY EXHIBITING DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS BY HINDERING, DELAYING, OR OUTRIGHT DENYING HIS ACCESS TO NECESSARY THERAPIES, EQUIPMENT, PROPER AN ADEQUATE FACILITIES TO ADDRESS HIS (PLAINTIFF'S) SERIOUS MEDICAL NEEDS INSUFFICIENT MEDICAL SUPPLIES (INCLUDING MEDICINES), AND OVERALL CONDONING AND/OR TURNING "DELIBERATELY" A BLIND EYE TO SYSTEMATIC DEFICIENCIES IN THE QUALITY OF MEDICAL CARE NECESSARY FOR PLAINTIFF WHILE AT PKNCC; INCLUDING INADEQUATE AND/OR UNDER TRAINED MEDICAL STAFF TO WHICH COULD PROPERLY ADDRESS PLAINTIFF'S SERIOUS AN URGENT MEDICAL NEEDS CONSTITUTES DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS AND, IN ESSENCE, THE UNNECESSARY INFLICTION OF PAIN IN VIOLATION OF THE EIGHT AMENDMENT TO THE UNITED STATES CONSTITUTION.

**INJURIES**

92.) AS A PROXIMATE CAUSE OF THE DEFENDANTS' ACTIONS, OR INACTIONS, AS DESCRIBED THROUGHOUT THIS COUNT PLAINTIFF SUFFERED PROLONGED, AND UNNECESSARY, EXCRUCIATING PAINS AND DISCOMFORTS, PERMANENT DISABILITIES (PHYSICAL), AND RELATED MENTAL INJURIES, I.E., STRESS, EMBARRASSMENT, HUMILIATION, AND DEPRESSION.

## COUNT 6
## MEDIAL MALPRACTICE

93.) DEFENDANTS GARCIA AND "JOHN DOE'S" (THE GUY FROM THE WHEELCHAIR COMPANY) ACTIONS, OR INACTIONS, AS DESCRIBED THROUGHOUT COUNT 5 AND REALLEGED AS IF FULLY SET FORTH HEREIN CONSTITUTES THE TORTS OF MEDICAL MALPRACTICE UNDER THE LAWS OF THE STATE OF ILLINOIS.

## COUNT 7
## RECKLESS NEGLIGENCE

94.) DEFENDANTS PIERCE, GARCIA, MITCHELL, MCKINNEY, WCYISKALLA, SNYDER, T. MURRY, AND "JOHN DOE'S" (THE GUY FROM THE WHEELCHAIR COMPANY) ACTIONS, OR INACTIONS, AS DESCRIBED THROUGHOUT COUNT 5 AND REALLEGED AS IF FULLY SET FORTH HEREIN

50

CONSTITUTES THE TORTS OF RECKLESS NEGLIGENCE UNDER THE LAWS OF THE STATE OF ILLINOIS.

## COUNT 8
## VIOLATION OF THE REHABILITATION ACT OF 1973

95.) PLAINTIFF AND PARAPLEGIA, IS A QUALIFIED INDIVIDUAL WITH A DISABILITY AS DEFINED BY THE REHABILITATIONS ACT OF 1973 (29 U.S.C. 794ET. SEG.). PLAINTIFF IS QUALIFIED FOR PARTICIPATION IN THE PROGRAMS, ACTIVITIES AND SERVICE AT THE ILLINOIS DEPARTMENT OF CORRECTION ("I.D.O.C."), AND I.D.O.C. RECEIVE FEDERAL FUNDED FINANCIAL ASSISTANCE FOR ALL PROGRAMS SERVICES AND ACTIVITIES AT SAID "STATE GOVERNMENT", AS DEFINED BY THE REHABILITATION ACT ON 1973, THUS MAKING IT LIABLE UNDER SECTION 504 OF THE REHABILITATION ACT; 29 U.S.C. 794

96.) PLAINTIFF ASSERT THAT HE IS AN PARAPLEGIA WITH PARALYSIS TO HIS (PLAINTIFF'S) RIGHT-SHOULDER, ARM, WRIST AND HAND AND WHEELCHAIR BOUND, IS THAT HE (PLAINTIFF) IS BEING EXCLUDED FROM PARTICIPATION IN, AN BEING DENIED THE BENEFITS OF AND SUBJECTED TO DISCRIMINATION IN THE PROGRAMS, SERVICES AND ACTIVITIES AT I.D.O.C. (AS ALLEGED IN **COUNT 5**, PARAGRAPH #42-92 AND REALLEGED AS IF FULLY SET FORTH HEREIN) BECAUSE OF HIS (PLAINTIFF'S) DISABILITY.

51

97.) DEFENDANTS SNYDER, MITCHELL, MC KINNEY, PIERCE AND GARCIA ARE RESPONSIBLE FOR THE DISCRIMINATION AGAINST THE PLAINTIFF (AS DESCRIBED IN PARAGRAPH #96) AND THEY (DEFENDANTS) INTENTIONALLY ACTED ON THE BASIS OF PLAINTIFF'S DISABILITY.

98.) DEFENDANTS (AS DESCRIBED IN PARAGRAPH #97) REFUSED TO PROVIDE A REASONABLE MODIFICATION OR MEANINGFUL ACCOMMODATIONS FOR PLAINTIFF'S DISABILITIES OR DEFENDANT'S RULE DISPROPORTIONATELY IMPACT DISABLE INMATES, AND MORE IMPORTANTLY, THE MODIFICATION OF THE RULE OR POLICY WOULD NOT PLACE AN UNDUE FINANCIAL OR ADMINISTRATIVE BURDEN ON I.D.O.C.

99.) DEFENDANTS (AS NAMED IN PARAGRAPH #97) ACTED BEYOND THE SCOPE OF THEIR EMPLOYMENT THROUGH WRONGFUL ACTS, DUTIES BREACHED WAS NOT OWED TO THE PUBLIC GENERALLY INDEPENDENT OF FACT OF STATE EMPLOYMENT, COMPLAINED OF ACTIONS INVOLVE MATTERS ORDINARY WITHIN DEFENDANT'S NORMAL AND OFFICIAL FUNCTIONS, AND DEFENDANTS HAD A DUTY AND THAT DUTY WAS BREACHED; AND BECAUSE OF THIS BREACH, WAS THE PROXIMATE CAUSE OF PLAINTIFF'S INJURIES (AS REALLEGED IN **COUNT 5**; PARAGRAPHS #42-92) IN VIOLATION OF PLAINTIFF'S RIGHTS UNDER REHABILITATION ACT OF 1973.

52

## COUNT 9
## RETALIATION AND HARRASSMENT

100.) PLAINTIFF FURTHER ASSERTS THAT HE WAS DELIBERATELY SUBJECTED TO A CONTINUOUS PATTERN OF CALCULATED HARASSMENT AND RETALIATION INITIATED AT THE HANDS OF DEFENDANTS MC KINNEY'S AND GARCIA CONDONED BY PIERCE BECAUSE OF THE PLAINTIFF MANY FILED GRIEVANCES AND LETTERS TO THE DEFENDANTS CONCERNING HE (PLAINTIFF) IS BEING DENIED HIS SERIOUS MEDICAL TREATMENTS (AS DESCRIBED IN **COUNT 5**) AND HIS PURSUIT TO REDRESS THE SAID ISSUES (DENIAL OF MEDICAL TREATMENTS) IN THE COURTS.

101.) BEGINNING ON JUNE 5, 2000 AND NOT ENDING UNTIL FEBRUARY 6, 2001, DEFENDANT MC KINNEY, GARCIA, AND PIERCE EACH PERSONALLY PARTICIPATED (INDIVIDUAL AND/OR COLLECTIVELY) IN IMPLEMENTING, DESIGNING OR DICTATING POLICIES OR CUSTOMS WHICH DRASTICALLY AND CONTINUOUSLY BROUGHT PLAINTIFF'S HEALTH AND MENTAL CONDITIONS TO IN HUMANE AND BARBAROUS LEVELS, WHILE STRATEGICALLY USING HARASSMENT TACTICS TO CURTAIL PLAINTIFF'S EXERCISE OF HIS FIRST AMENDMENT RIGHTS AND HIS RIGHT TO ACCESS TO THE COURTS.

102.) THE MALICIOUS POLICIES THAT DEFENDANTS (AS NAMED IN PARAGRAPH #101) IMPLEMENTED WERE ALSO READILY ENFORCED BY DEFENDANTS RONALD D. WILLIAMS, AND SCOTT WYSCISKALLA AND AMONGST OTHER CORRECTIONAL STAFF, WHO IS ALSO UNDER THE INFLUENCE OF DEFENDANTS.

103.) ON JUNE 5, 2000. PLAINTIFF RECEIVED AN INTIMIDATING AND HOSTILE RESPONSE MEMORANDUM FROM DEFENDANT MC KINNEY STATING "IN RESPONSE TO YOURS (PLAINTIFF) LETTERS AND GRIEVANCES TO DEFENDANT PIERCE REGARDING YOUR **MANY** GRIEVANCES FILED IN THE MONTH OF APRIL AND MAY 2000; PLEAS BE ADVISED THAT NONE OF YOUR COMPLAINTS REGARDING RECEIVING MEDIAL TREATMENTS OR TRANSFER TO ANOTHER FACILITY TO RECEIVE SAID TREATMENTS, DOES NOT WARRANT ANY INVESTIGATION OR RECOMMENDATION AS SUCH."

104.) JUNE 2000, DEFENDANT MC KINNEY WAS TOURING PNKCC'S 2 HOUSE B-WING; AND PLAINTIFF HUMBLY ASK MRS. MC KINNEY, "WHY SHE CONSIDER HIS GRIEVANCE PERTAINING TO THE DENIAL MEDICAL TREATMENTS AS MERIT LESS? (AS DESCRIBED IN PARAGRAPH # 103)," IMMEDIATELY, AFTERWARDS, MC KINNEY'S FACIAL EXPRESSIONS CHANGE TO A MEANER AND SEEMINGLY ANGRILY BEING TO PERSONALLY THREATENED THE PLAINTIFF BY SAYING, "PEOPLE LIKE YOU (PLAINTIFF) ARE TROUBLE MAKER, BECAUSE YOU SEEK TO FILE A

MALICIOUS LAWSUIT AGAINST THE ADMINISTRATION AND I HAVE BEEN IN COURT BEFORE AND PLANNED ON NOT BEING IN COURT NO MORE, BECAUSE OF A TROUBLE MAKER LIKE YOU." PLAINTIFF IMMEDIATELY RESPONDED, "HOW YOU KNOW I'M ABOUT TO FILE A LAWSUIT?" MC KINNEY REPLIED, "TRUST ME, I HEARD ABOUT YOU." PLAINTIFF REPLIED, "WARDEN (MC KINNEY) I ONLY ASK FOR A REASONABLE ACCOMMODATION OF MEDIAL CARES." MC KINNEY REPLIED, "SEE, TROUBLE MAKERS THEY USUALLY DO NOT GET WHAT THEY ASKING FOR AND I WILL PERSONALLY SEE TO IT THAT MY OFFICERS MAKE TROUBLE MAKERS LIVES A LIVING HELL." AND STORM OFF THE B-WING.

105.) THIS STATEMENT BY DEFENDANT MC KINNEY (AS DESCRIBED IN PARAGRAPH # 104) CONFUSE AND INSTILL TERROR INTO PLAINTIFF, BECAUSE HE DON'T KNOW WHY WOULD SHE (MC KINNEY) CONSIDER HIM A TROUBLE MAKER FOR WRITING SINCERELY GRIEVANCES ABOUT HIS SERIOUS MEDICAL NEEDS AND BECAUSE OF THIS PLAINTIFF BEING TO BECOME PARANOID OF PNKCC'S STAFF.

106.) ON JUNE 11, 2000 AT APPROXIMATELY 7:30A.M., CORRECTIONAL OFFICER ANNOUNCE OVER THE LOUD SPEAKER "FOR ALL INMATES ON B-WING (2 HOUSE) MORNING MED-LINE TO COME TO THE FRONT OF THE WING"; SO AS THE PLAINTIFF PROCEEDED TO WHEEL HIMSELF UP TO THE FRONT OF THE WING IN HIS WHEELCHAIR, AND NURSE SUTTER LOUDLY

STATED, "THAT ALL INMATES WHO IS GETTING MEDS, MUST BEING THEIR OWN WATER TO TAKE YOU MEDS!"

107.) AFTER THE NURSE ANNOUNCEMENT, (AS DESCRIBED IN PARAGRAPH # 106) PLAINTIFF TURNED HIS WHEELCHAIR AROUND BACK INTO HIS CELL (2 HOUSE B 18) TO GET A SMALL CUP OF WATER, CORRECTIONAL OFFICER CRAIG RAMSEY STORMINGLY APPROACH PLAINTIFF'S CELL DOOR, AND WITH HOSTILE TONE IN HIS (RAMSEY) VOICE, STATED TO PLAINTIFF, "YOU COMING OUT FOR MEDS OR WHAT?" PLAINTIFF RESPONDED, "SIR, I HAVE TO GET SOME WATER FIRST, TO TAKE WITH MY MEDS:"

A.  SO, AS PLAINTIFF WAS COMING OUT HIS CELL C/O RAMSEY MALICIOUSLY STATED. "FUCK YOU ASS HOLE YOU NOT GETTING NO MEDS TODAY" IMMEDIATELY OVER AGGRESSIVELY VIOLENTLY SLAMMED THE IRON CELL DOOR ON PLAINTIFF RIGHT PARALYZED ARM AND RIGHT & LEFT FOOT TOES CAUSING:

B.  SEVERE SWELLING ON RIGHT ARM, EXCRUCIATING PAIN IN RIGHT & LEFT TOES, ALL THESE INJURIES HAD UNBEARABLE PAINS.

108.) DURING THE COURSE OF THIS VICIOUS AND SADISTICALLY INFLICTED ATTACK, RAMSEY SARCASTICALLY STATED, "WHAT YOU GOING TO DO FILE A GRIEVANCE TO THE WARDEN? AND WHILE YOU FILE IT, GIVE ME YOUR I.D. SO I CAN WRITE YOU A TICKET (DISCIPLINARY REPORT), SINCE YOU LIKE COMPLAINING.

109.) PLAINTIFF SUBSEQUENTLY FILED A GRIEVANCE ABOUT THE INCIDENT (AS DESCRIBED IN PARAGRAPH # 108), UNFORTUNATELY, GRIEVANCE WAS DENIED, AND RAMSEY DENIED ALL PLAINTIFF'S ALLEGATION.

110.) BEGINNING ON JUNE 5, 2000 AND NOT ENDING UNTIL FEBRUARY 5, 2001, A SERIES OF CLOSELY RELATED CIRCUMSTANTIAL INCIDENTS, IT IS TO BE BELIEVE THAT DEFENDANT MC KINNEY, PIERCE AND GARCIA ALL PERSONALLY PARTICIPATED OR SUBLIMINALLY PARTICIPATED BEHIND THE SCENE IN IMPLEMENTED PLAIN OR DESIGNS IN USING HARASSMENT TACTICS TO FOLLOW THRU ON MC KINNEY'S THREAT (AS DESCRIBED IN PARAGRAPH # 106). SHE PURPOSEFULLY PUT ALL CORRECTIONAL OFFICERS ON NOTICE OF THE PAIN, IN WHICH CREATED A VERY HOSTILE ENVIRONMENT FOR THE PLAINTIFF, FOR AN EXAMPLE:

      A.    ON JUNE 22, 2000 AT APPROXIMATELY 12:00A.M., CORRECTIONAL OFFICER CRAIG WALLACE CONFISCATED PLAINTIFF'S TELEVISION FOR NO REASON

AT ALL, AND FURTHER WROTE A FABRICATED

DISCIPLINARY CHARGE AGAINST THE PLAINTIFF.

B.   ON JUNE 24, 2000, AT APPROXIMATELY 7:30A.M.,

CAPTAIN SPILLET AS HE WAS MAKING THE MORNING

CELLS INSPECTIONS OF PLAINTIFF'S CELL (2-B 18),

DECIDED TO WRITE THE PLAINTIFF A PETTY

DISCIPLINARY TICKET FOR HAVING A SMALL FACE

TOWEL ON THE FLOOR, BECAUSE OF WARDEN

(DEFENDANT PIERCE) POLICY OF MORNING CELL

SEARCH.

C.   ON JUNE 26, 2000, AT APPROXIMATELY 9:30, THE

PLAINTIFF HAD A CONFERENCE WITH DEFENDANT

GARCIA ABOUT HIS (RUFFIN) CHRONIC DETERIORATING

HEALTH, PLAINTIFF TRIED TO EXPLAIN TO GARCIA

(MEDICAL DOCTOR) THAT THE 2 LARGE BULLETS

FRAGMENT IN CAUSING SWALLOWING AND BREATHING

DIFFICULTIES AND HE WAS HURTING BADLY, AND AT

TIMES SEEM IF HE (RUFFIN) WOULD CHOKE TO DEATH.

DR. GARCIA RESPONDED TO PLAINTIFF WITH A VERY

BELLIGERENT ATTITUDE, AND STATED," I TOLD YOU

MUTHA FUCKER PIECE OF SHIT, THERE IS NOTHING I

CAN DO FOR YOUR REQUEST STATED IN YOUR

GRIEVANCES AND LETTERS!" AFTER THE CONFERENCE,

DOCTOR GARCIA MALICIOUSLY RETALIATED BY DELIBERATELY DISCONTINUE PLAINTIFF'S MANDATORY BACLOFEN 20 MG. FOR APPROXIMATELY A MONTH AND A HALF. DURING THE TIME PLAINTIFF WAS TAKING OFF HIS MEDIATIONS (BACLOFEN), PLAINTIFF SUFFERED SEVERE MUSCULAR SPASMS, MUSCULAR DETERIORATION, EXTREME CONTRACTUAL RIGHT HAND, EXCRUCIATING PAINS THROUGHOUT HIS BODY, AND CHRONIC HEADACHES.

D. ON JUNE 26, 2000, THE PINCKNEYVILLE CORRECTIONAL CENTER'S BUREAU OF IDENTIFICATION OFFICE MYSTERIOUSLY CHANGED PLAINTIFF'S IDENTIFICATION NUMBER FROM THE ORIGINAL **K80541** TO **B73412**, THIS RETALIATION TACTICS CAUSED REACTION THAT UNFORTUNATELY DETER ANY IMPORTANT LEGAL CORRESPONDENCE/AND OTHER INCOMING MAILING COMMUNICATION, BECAUSE OF THIS CHANGE THE MAILROOM HAVE SYSTEMATICALLY TURNED ALL OF PLAINTIFF'S INCOMING MAIL BACK TO SENDER AND WITHOUT NOTIFYING PLAINTIFF OF THIS. PLAINTIFF FURTHER ASSERTS HE FINALLY FOUND OUT ABOUT INCOMING MAILS BEING RETURN THRU A TELEPHONE CONVERSATION WITH HIS FAMILY MEMBER.

59

SUBSEQUENTLY PLAINTIFF HAD TO WRITE BACK ALL OF HIS CORRESPONDENTS THAT HIS (RUFFIN) I.D. NUMBER HAS CHANGED.

E.   ON AUGUST 14, 2000 AT APPROXIMATELY 5:10 A.M., C/O LYNN S. WYSCISKALLA (WIFE OF C/O S. WYSCISKALLA) AT THE R 2 CELL HOUSE BUILDING, SHE WROTE THE PLAINTIFF A FABRICATED DISCIPLINARY TICKET ALLEGING HE (PLAINTIFF) DISOBEYING A DIRECT ORDER AND VIOLATION OF RULES. ON AUGUST 20, 2000 AT 9:35A.M., THE ADJUSTMENT COMMITTEE EXPUNGED TICKETS DUE TO CHANGE NOT SUBSTANTIATED.

F.   ON AUGUST 21, 2000 AT 8:15P.M., C/O MICHEAL R.CRANK AT THE R 2 CELL HOUSE BUILDING , HE WROTE THE PLAINTIFF A FABRICATED DISCIPLINARY TICKETS ALLEGING HE (PLAINTIFF) DISOBEYING A DIRECT ORDER AND VIOLATION FOR RULES ON AUGUST 28, 2000 AT 9:35A.M., THE ADJUSTMENT COMMITTEE EXPUNGED TICKETS DO TO AN ILLINOIS DEPARTMENT RULE WAS A MISUNDERSTANDING.

111.) BEGINNING ON JUNE 5, 2000 AND NOT ENDING UNTIL FEBRUARY 5, 2001, PLAINTIFF HAVE REPEATEDLY BROUGHT TO THE ATTENTION TO DEFENDANTS MC KINNEY, PIERCE, ABOUT THE SERIES OF CLOSELY

RELATED DISCIPLINARY ACTION AND PREJUDICIAL CHANGES IN STATUS

(AS DESCRIBED IN PARAGRAPH #110 A-F), AS THEY (DEFENDANTS) WAS

TOURING THE CELL HOUSES (2 HOUSE B) TOGETHER, AND THE

DEFENDANT RESPONSE WAS, "IF YOU STOP WRITING YOUR GRIEVANCES

AND LETTER COMPLAINTS, THEN YOU MIGHT HAVE YOUR PRIVILEGES

RESTORED OR GET THE MEDICAL TREATMENTS YOU ASK FOR."


112.) ON OCTOBER 5, 2000, PLAINTIFF'S ATTORNEY BARRY LOWY (A.D.A.

ADVOCATED EQUIP FOR EQUALITY) SENT PLAINTIFF A LETTER IN

RESPONSE TO HIS (PLAINTIFF) REQUEST FOR HELP TO SUMMON

PINCKNEYVILLE CORRECTIONAL CENTER ADMINISTRATIONS TO PROVIDE

NEURO-NECK SURGERY TO REMOVE 2 HARMFUL BULLET FRAGMENTS

FROM THE NECK AREA, AND ONCE PRESCRIBED PHYSICAL THERAPY.  THIS

SAME LETTER WAS SIMULTANEOUSLY SENT TO DEFENDANTS MC KINNEY,

PIERCE AND GEORGE DETELLA (ASSISTANT DIRECTOR OF (I.D.O.C.), THE

CONTENT OF THE LETTER ADDRESSES THE FACTS CONCERNING MC

KINNEY'S MEMORANDUM (AS DESCRIBED IN PARAGRAPH # 103) AS AN

EXCUSE TO SIDESTEP GIVEN PLAINTIFF MEDICAL TREATMENTS AN SINCE

PNKCC DOESN'T HAVE AVAILABLE THAT WILL BE ABLE TO (AFTER TO

PLAINTIFF SERIOUS MEDICAL NEEDS, THEN TRANSFER HIM TO ONE THAT

DO.

113.) ON OCTOBER 20, 2000 AT 1:10P.M., C/O SCOTT A. WYSCISKALLA, HE
WROTE PLAINTIFF A FABRICATED DISCIPLINARY TICKETS ALLEGING HE
(PLAINTIFF) VIOLATION DEPARTMENT RULES DAMAGE OR MISUSE OF
PROPERTY, CONTRABAND/UNAUTHORIZED PROPERTY, HEALTH SMOKING
OR SAFETY VIOLATIONS, ON OCTOBER 25, 2000 AT 9:45 A.M. ADJUSTMENTS
COMMITTEE EXPUNGED TICKETS.

114.) AFTER DEFENDANTS RECEIVED THIS LETTERS FROM ATTORNEY
LOWY (AS DESCRIBED IN PARAGRAPH #113), THE HARASSMENT AND
INTIMIDATION ACTIONS INTENSIFIED TO A POINT OF IMPLEMENTING
CONSPIRATORIALLY PLANNED TO DISRUPT ANY LAWSUIT AGAINST THEM
(DEFENDANT) AND TO INSTILL TERROR INTO THE PLAINTIFF, FOR
EXAMPLE:

A. ON DATE OCTOBER 29, 2000, AT 7:35 A.M., DEPENDANT
LIEUTENANT RONALD D. WILLIAM, WAS MAKING HIS DAILY MORNING
CELL SEARCHES, HE (WILLIAM) APPROACHED PLAINTIFF'S CELL HOUSE (2
B 18) AND LOOKING VERY ANXIOUSLY TO CONFISCATED PLAINTIFF'S
PROPERTY WITH OUR A CAUSE. DURING THE TIME OF THIS SEARCH,
PLAINTIFF WAS UP AND CURRENTLY WORKING ON SOME LEGAL
MATTERS, WHEN WILLIAM COME STORMING IN THE CELL HOUSE (2 B18)
AND WITHOUT ANY QUESTIONS CONFISCATED PLAINTIFF'S GREEN
FOLDER, WHICH CONTAINS GRIEVANCES THAT NEED TO BE EXHAUSTED,
LEGAL DOCUMENTS, AND PROPERTY SLIPS. PLAINTIFF (WHO WAS

62

CURRENTLY) SITTING IN HIS WHEELCHAIR) WITH HIS (WILLIAM) SIX FOOT

5 INCHES INTIMIDATION FRAME STARRING AT THE PLAINTIFF WHO WAS

IN GREAT TERROR OR FEAR OF A VIOLENT ASSAULT. WILLIAM THEN

STATED, "SO FUCKING WHAT, YOU SHOULDN'T HAD THEM (LEGAL

DOCUMENT) OUT, WRITE A GRIEVANCE!" AND STORM OUT WITH

PLAINTIFF'S IMPORTANT LEGAL PAPERS. SUBSEQUENTLY, DEFENDANT

WILLIAM FILED A DISCIPLINARY TICKET AGAINST THE PLAINTIFF,

ALLEGING VIOLATIONS DISOBEYING A DIRECT ORDER AND VIOLATION OF

RULES (WARDEN'S MEMO/PROPERTY BOX), BECAUSE OF THE

CONFISCATION OF GRIEVANCES, PLAINTIFF WAS UNABLE TO EXHAUST OR

APPEAL GRIEVANCE TO THE ADMINISTRATION REVIEW BOARD, IN

RELATION TO CERTAIN GRIEVANCES.


115.) PLAINTIFF FILED WRITTEN GRIEVANCES WHEREIN HE

REQUESTED, AND STRESSED, THE NECESSITY TO STOP THE HARASSMENT

AND RETALIATION FOR FILING GRIEVANCES PERTAINING TO THE DENIAL

OF HIS MEDICAL TREATMENT AND HIS (PLAINTIFF) PURSUIT TO SEEK

ACCESS TO THE COURTS.


116.) ON INFORMATION AND BELIEF, WHEN PLAINTIFF FILED HIS

GRIEVANCE THE GRIEVANCE OFFICER, DEFENDANT T. MURRY, CALLED

THE MATTER TO THE ATTENTION OF DEFENDANTS (AS NAMED IN

PARAGRAPH # 102-103) FOR REVIEW. EACH OF THESE INDIVIDUAL

POSSESSED THE CAPACITY (INDIVIDUALLY AND/OR COLLECTIVELY), AND

OBLIGATION, TO STOP THEIR (DEFENDANTS) HARASSMENT AN

RETALIATORY TACTICS, IN WHICH THEY ARE THE ONES THAT INITIATED

SAID TACTICS, BUT NEITHER OF THESE DEFENDANTS TOOK ANY STEPS TO

CURB THEIR OWN RETALIATORY TACTICS AGAINST THE PLAINTIFF. IN

FACT, IT WAS LATER MADE KNOWN, THAT DEFENDANTS T. MURRY AND

PIERCE CONCURRED WITH, AND CO-SIGNED, THE DENIAL OF PLAINTIFF'S

GRIEVANCES AND, IN ESSENCE, BY DOING SO EXPRESSLY CONDONED AND

ENCOURAGED THE CONTINUOUSLY HARASSMENT AND RETALIATION

TACTICS AGAINST THE PLAINTIFF AND DENIED ANY CORRECTIVE RELIEF

SOUGHT.


117.) LATER, DEFENDANT DONALD N. SNYDER, AFTER HAVING BEEN

PERSONALLY A BREASTED OF THE FACTS OF PLAINTIFF'S GRIEVANCES,

CO-SIGNED THE DENIAL, CONDONE IT, OR DELIBERATELY TURN A "BLIND

EYE" OF PLAINTIFF'S APPEAL WHEREIN PLAINTIFF PRAYED TO THE

DOCTOR (DEFENDANT SNYDER) TO OVER RULE THE ACTIONS OF

DEFENDANTS (AS NAMED IN PARAGRAPH #102) AND INSTRUCT

CORRECTIVE ACTION IN FORM OF STOPPING THE MALICIOUS POLICIES OF

HARASSMENT AND RETALIATORY TACTICS AGAINST PLAINTIFF.


118.) PLAINTIFF FURTHER ASSERT THAT, DEFENDANT PIERCE FELT

RELAXED IN A RETALIATORY TRANSFERRED PLAINTIFF TO MCC

(MENARD), A FACILITY HE (PIERCE) CLEARLY KNOW DID NOT HAVE PHYSICAL THERAPY PROGRAM FOR PLAINTIFF TO CONTINUE ON PROPER MEDICAL TREATMENT TO GET BETTER; BECAUSE PLAINTIFF WAS NOW FOUND GUILTY OF ALLEGED DISCIPLINARY TICKET VIOLATIONS AN HE FELT EVEN MORE INCLINED, AND RELAXED, WITH ABANDONING HIS (SNYDER) ABSOLUTE RESPONSIBILITY TO PROVIDE PLAINTIFF WITH ANY TREATMENT WHATSOEVER. IN ADDITION TO ALREADY HOLDING PERSONAL GRUDGES AND BIASES TOWARDS PLAINTIFF ANYWAY DUE TO THE PLAINTIFF'S PERSISTENT FILING OF GRIEVANCES, LETTERS, LAWYERS CONTRACTING DEFENDANTS ABOUT THE DENIAL OF HIS (PLAINTIFF'S) MEDICAL NEEDS AND PLAINTIFF LITIGATION PURSUITS.

119.) ON FEBRUARY 6, 2001, DEFENDANT SNYDER APPROVAL A MAX TRANSFER FOR PLAINTIFF TO THE MENARD CORRECTIONAL CENTER, WHICH IS NOT ADEQUATE EQUIPPED TO PROVIDE REASONABLE MEDICAL TREATMENT FOR PLAINTIFF SERIOUS MEDICAL NEEDS. THEREFORE, DELIBERATELY SUBJECTED PLAINTIFF'S HEALTH TO RAPIDLY DETERIORATE, DUE TO THE DEPRIVATION OF PHYSICAL AND OCCUPATIONAL THERAPY AT MCC. MOREOVER; IT IS ADMINISTRATIVE POLICY THAT THE WARDEN (DEFENDANT SNYDER) BEFORE TRANSFERRING ANY INMATES, ESPECIALLY INMATES WITH SPECIAL HEALTH NEEDS, MUST MAKE SURE THAT THE DESIGNATED FACILITY IS COMPATIBLE (MEDICALLY) WITH INMATES CHRONIC ILLNESSES AND/OR

MEDICAL NEEDS, BEFORE AUTHORIZING SUCH A TRANSFERRED, (ALSO
NOTE PIERCE HAD TO CONSULT WITH DEFENDANT GARCIA, ABOUT
PLAINTIFF'S CONTINUOUS MEDICAL TREATMENT BEFORE TRANSFERRING
PLAINTIFF).

120.) BECAUSE OF THE ACTIONS, OR INACTION, OF DEFENDANTS
PIERCE, SNYDER, MC KINNEY, GARCIA, WILLIAM, WYCISKALLA AND T.
MURRY IN CONSCIOUSLY AND REPEATEDLY PATTERN OF CALCULATED
HARASSMENT AND RETALIATION TACTICS AGAINST THE PLAINTIFF, BY
CONFISCATING PROPERTY AND LEGAL DOCUMENTS, WRITTEN FRIVOLOUS
DISCIPLINARY REPORTS, VERBAL ABUSE, INTIMIDATION, RETALIATORY
TRANSFER, MALICIOUS POLICIES ETC...., OVERALL CONDONING AND/OR
**TURNING** "DELIBERATELY" A BLIND EYE TO THE SYSTEMATIC PRACTICE
OF HARASSMENT AND RETALIATORY MOTIVATED TACTICS AGAINST THE
PLAINTIFF WHILE AT PNKCC; THEREFORE CONSTITUTES "**HARASSMENT**
AND **RETALIATION**" IN VOLITION OF PLAINTIFF'S CIVIL RIGHTS UNDER
THE **FIRST** AND **FOURTEENTH** AMENDMENT TO THE UNITED STATES
CONSTITUTION.

## INJURIES

121.) AS A PROXIMATE CAUSE OF THE DEFENDANTS' ACTINS, OR
INACTIONS, AS DESCRIBED THROUGHOUT THIS COUNT PLAINTIFF
SUFFERED UNNECESSARY PAINS AND DISCOMFORTS AND RELATED

MENTAL INJURIES, I.E., STRESS, EMBARRASSMENT, HUMILIATION, AND DEPRESSION AND PHYSICAL PAINS.

## COUNT 10
## CIVIL CONSPIRACY

122.) PLAINTIFF FURTHER ASSERTS THAT HE WAS DELIBERATELY SUBJECTED TO A CONTINUOUS PATTERN OF CALCULATED PLOT TO CONSPIRED TO VIOLATE HIS (PLAINTIFF) CONSTITUTIONAL RIGHT TO ACCESS TO THE COURT, INTIMATED AT THE HANDS OF DEFENDANTS MC KINNEY'S AND CONDONED BY PIERCE, BY COLLECTIVELY HAVING MEETING OF THE MINDS, TO CONFISCATE PLAINTIFF'S LEGAL DOCUMENTS WHILE KNOWING HE HAD A CRUCIAL DEADLINE OR APPEAL, IN A ATTEMPT TO COVER-UP, THEIR SYSTEMATIC PRACTICE OF DENIAL OF PLAINTIFF'S SERIOUS MEDICAL NEEDS (AS REALLEGED IN COUNT 5) OR PREVENT HIM FORM THE PETITION THE FEDERAL COURT PERTAINING TO DENIAL OF MEDICAL TREATMENT.

123.) DEFENDANTS MC KINNEY AND PIERCE EACH PERSONALLY PARTICIPATED IN IMPLEMENTING, DESIGNING OR DICTATING POLICIES OR CUSTOMS WHICH DELIBERATE INTERFERE WITH PLAINTIFF MANDATORY REQUIREMENT TO EXHAUST ALL "**PRISONER'S GRIEVANCES**" BEFORE FILING A CIVIL RIGHTS LAWSUIT OR OTHERWISE BECAUSE OF DEFENDANT ACTIONS, PLAINTIFF WILL NOT BE ABLE TO BRING CONSTITUTIONAL VIOLATION (AS DESCRIBED IN **COUNT 5**) IN THE FEDERAL COURT. (SEE FOOTNOTE)[*]

124.) THIS MALICIOUS CONSPIRATOR POLICIES THAT DEFENDANT MC KINNEY AND PIERCE IMPLEMENTED WHERE ALSO READILY ENFORCED BY DEFENDANTS RONALD D. WILLIAM, ROBERT A. DAVENPORT.

125.) ON DATE OCTOBER 29, 2000, AT 7:35A.M., DEFENDANT RONALD D. WILLIAM COLLECTIVELY CONCOCTED AND PARTICIPATE IN A COMMON AND CALCULATED SCHEME AND BY HAVING A MEETING OF THE MINDS WITH DEFENDANTS (AS NAMED IN PARAGRAPH #123) TO CONFISCATE PLAINTIFF'S GRIEVANCES (WHICH HAS A CRUCIAL APPEAL DEAD-LINE) AND AMONGST OTHER LEGAL DOCUMENTS (AS REALLEGED IN **COUNT 9**; PARAGRAPH #114 (A)) WHILE CONSCIOUSLY AWARE THAT PLAINTIFF'S GRIEVANCE HAD A CRUCIAL DEAD-LINE FOR APPEALS AND AMONGST

---

[*]    Foot-note: accordingly to the prison Litigation Reform Act, it clearly mandate that all inmates must exhaust all State of Correctional Grievances appeal procedures, before bringing any Civil Rights Lawsuit in the Federal District Court, otherwise prisoner's lawsuit will be subjected to dismissal.

OTHER LEGAL DOCUMENTS THAT WAS CONTAINED IN THE CONFISCATED

GREEN FOLDER, NEEDED TO BE EXHAUSTED (PARTICULARLY

GRIEVANCES) IN ORDER FOR PLAINTIFF TO FILE A CIVIL RIGHT

COMPLAINT IN BOTH STATE AND FEDERAL COURT, BUT INSTEAD

MALICIOUSLY SOUGHT TO **CONSPIRE** TO , "**COVER-UP**" AND

"**CONCEALMENT**" TO VIOLATE PLAINTIFF'S CIVIL RIGHTS 1ST

AMENDMENT RIGHT TO ACCESS TO COURT AND 8TH AMENDMENT RIGHT

TO BE FREE FROM DELIBERATE IN DIFFERENCE TO HIS SERIOUS MEDICAL

NEEDS.

126.) THE CONFISCATED LEGAL DOCUMENTS (AS DESCRIBED IN

PARAGRAPH # 114) OF PLAINTIFF, WILL REVEAL THE FOLLOWING:

A.)   ON SEPTEMBER 21, AND 28, 2000, PLAINTIFF FILED

GRIEVANCES PERTAINING TO: " DENIAL OF ACCESS TO

NEUROLOGIST SPECIALIST FOR NECK EXAMINATION

AND TO UNDERGO DIAGNOSTIC PREPARATION TESTS

TO UNDERGO INTERNAL NECK SURGERY TO REMOVE 2

HARMFUL BULLET FRAGMENTS EMBEDDED IN THE

SOFT-TISSUES OF THE RIGHT SIDE OF PLAINTIFF'S

NECK." (PLEASE NOTE- BECAUSE THIS SAID

GRIEVANCES WAS CONFISCATED, PLAINTIFF NEVER

HAD THE CHANCE TO TIMELY EXHAUST GRIEVANCE.)

B.)   AFFIDAVITS FORM FELLOW INMATES WHO WAS BEING

HOUSED IN PNKCC'S 2 HOUSE B-WING, THEY ALL HAVE

SWORN UNDER THE PENALTY OF PERJURY, THAT

PNKCC'S MEDICAL STAFFS AND ADMINISTRATION

STAFFS WAS DELIBERATELY INDIFFERENCE TO

PLAINTIFF'S SERIOUS MEDICAL NEEDS AND THE

SUBSTANTIAL INJURIES HE SUSTAINED. THESE

AFFIDAVITS ARE NEEDED TO SUPPORT PLAINTIFF'S

CIVIL RIGHTS LAWSUIT IN THE FEDERAL COURT. (AS

DESCRIBED IN **COUNT 5-8**)

127.) PLAINTIFF FILED A WRITTEN GRIEVANCE WHERE IN HE

REQUESTED AND STRESSED, THE NECESSITY TO HAVE BACK HIS

(PLAINTIFF) CONFISCATED LEGAL DOCUMENTS (AS DESCRIBED IN

PARAGRAPH #127A & B); SO PLAINTIFF LAW LITIGATE THIS CASE.,

UNFORTUNATELY TO NO AVAIL. (REFER TO TABLE OF EVIDENCES FOR

COPIES OF GRIEVANCES.)

128.) PLAINTIFF FURTHER ASSERT THAT HE TIMELY SUBMITTED

SEVERAL GRIEVANCES TO THE I.D.O.C. DIRECTOR (DEFENDANT SNYDER)

FOR AN APPEAL THE DENIAL OF HIS (PLAINTIFF'S) GRIEVANCES FROM

PNKCC'S LEVEL, WHERE BOTH DEFENDANTS PIERCE AND T. MURRY CO-

SIGNED THE DENIAL OF SAID GRIEVANCES. STRANGELY, SNYDER
REPEATEDLY REFUSED TO ANSWER SAID TIMELY FILLED GRIEVANCES;
PLAINTIFF MADE A DILIGENT ATTEMPTS TO EXHAUST HIS GRIEVANCES
AT ADMINISTRATIVE REVIEW BOARD OF I.D.O.C., IN WHICH SNYDER IS
THE DIRECTOR OVER, ONLY TO NO AVAIL.

A.    PURSUANT TO ILLINOIS ADMINISTRATION CODE TITLE
      20 504.810, "AFTER A COMMITTED PERSON HAVE
      EXHAUST SAID GRIEVANCE AT THE INSTITUTIONAL
      LEVEL, AFTER RECEIVING RESPONSE FROM THE
      ADMINISTRATION OFFICE ("WARDEN"), COMMITTED
      PERSON HAS A 30 DAY DEADLINE TO FILE/OR EXHAUST
      GRIEVANCES AT THE ADMINISTRATIVE REVIEW BOARD
      ("A.R.B."); WHEN COMMITTED PERSON'S DECISION TO
      FORWARD ATTACHED COPIES OF GRIEVANCES WITH 30
      WORKING DAYS OF RECEIPT OF REPORT AND
      RECOMMENDATION OVER TO THE "A.R.B." SHALL BE
      SUBMITTED DIRECTLY TO THE DIRECTOR (DEFENDANT
      SNYDER) AND THE A.R.B SHALL SUBMIT IT'S
      RECOMMENDATION WITHIN 30 DAYS OF RECEIPT OF THE
      GRIEVANCE."

B.    PURSUANT TO 730 ILCS 5/3-8-8(A) ET. SEG., CLEARLY
      MANDATES THAT "THE DIRECTOR [OF THE ILLINOIS
      DEPARTMENT OF CORRECTIONAL] SHALL ESTABLISH

71

PROCEDURES TO REVIEW THE GRIEVANCES OF

COMMITTED PERSONS. THE DIRECTOR MAY ESTABLISH

ONE OR MORE ADMINISTRATIVE REVIEW BOARD

WITHIN THE DEPARTMENT TO REVIEW GRIEVANCES. A

COMMITTED PERSON'S RIGHT TO FILE GRIEVANCE

SHALL **NOT** BE RESTARTE

129.) AFTER PLAINTIFF MADE DILIGENT ATTEMPTS TO EXHAUST HIS

GRIEVANCES (AS DESCRIBED PARAGRAPH #128), DEFENDANT SNYDER

CONTINUE TO ATTEMPT TO SUPPRESSED AND CONSPIRE TO **"COVER-UP"**

THE FACTS STATED IN GRIEVANCES AND PREVENT PLAINTIFF FORM

SEEKING ACCESS TO COURT, BY NOT OR DELIBERATELY INTERFERENCE

WITH PLAINTIFF'S RIGHT TO EXHAUST HIS GRIEVANCES. MORE OVER, THE

FOLLOWING GRIEVANCES THAT SNYDER REFUSE TO ANSWER WILL

REVEAL:

A.    ON JULY 24, 2000, PLAINTIFF FILED GRIEVANCE

PERTAINING TO: "DR. GARCIA'S DEROGATIVE

COMMENTS TOWARDS PLAINTIFF AND DENIAL OF HIS

PRESCRIBED BALCOPHEN MEDICATION." ON OCTOBER

20, 2000, DEFENDANT PIERCE CO-SIGNED DENIAL OF

GRIEVANCE; ON OCTOBER 23, 2000, DEFENDANT PIERCE

CO-SIGNED DENIAL OF GRIEVANCE; ON OCTOBER 23,

2000, PLAINTIFF APPEAL GRIEVANCE TO A.R.B. TO NO

AVAIL.

B.    ON AUGUST 21, 2000, PLAINTIFF FILED GRIEVANCE

PERTAINING TO: "PLAINTIFF REQUEST TO RECEIVE

PROPER MEDICAL TREATMENT TO HAVE SURGERY TO

REMOVE HARMFUL BULLETS FRAGMENTS THAT

EMBEDDED IN HIS INTERNAL SOFT-TISSUE IN THE NECK

AND DR. GARCIA'S VERBAL ABUSE AND HOSTILE

COMMENTS TOWARDS PLAINTIFF'S SERIOUS MEDICAL

NEEDS; SUCH AS DR. GARCIA CALLING HIM, "**A PIECE**

**OF SHIT**" ON NOVEMBER 13, 200-, PLAINTIFF APPEAL

GRIEVANCE TO A.R.B. TO NO AVAIL.

C.    ON OCTOBER 12, 2000, PLAINTIFF FILED GRIEVANCE

PERTAINING TO: "PNKCC INADEQUATE EQUIP TO

PROVIDE PROPER PHYSICAL THERAPY FOR PLAINTIFF'S

SERIOUS MEDICAL NEEDS." ON DECEMBER 17, 2000,

PIERCE CO-SIGNED DENIAL OF GRIEVANCE. ON

DECEMBER 19, 2000, PLAINTIFF APPEAL GRIEVANCE TO

A.R.B. TO NO AVAIL.

130.) PLAINTIFF FURTHER ASSERT THAT, MALICIOUS AND

CONSPIRATORIALLY ACTION BY DEFENDANT SNYDER DELIBERATELY

ATTEMPTS TO **"COVER-UP"** AND **"CONCEAL"** THE SYSTEMATIC PRACTICE

OF DENIAL OF PLAINTIFF'S SERIOUS MEDICAL TREATMENT AT PNKCC, BY

REFUSING TO EXHAUST PLAINTIFF'S GRIEVANCES (AS DESCRIBED IN

PARAGRAPH #129A-C); PLAINTIFF AN INDIGENT INMATE, FILE A **"WRIT OF**

**MANDAMUS"**[*] IN THE RANDOLPH COUNTY CIRCUIT COURT, PURSUANT TO

ILLINOIS COMPLIED STATURE, 730 ILCS 5/3-8-8, "TO COMPELLED

DEFENDANT SNYDER TO CAUSE THE A.R.B. TO ANSWER AND/OR HOLD A

HEARING ON ALL PLAINTIFF'S GRIEVANCES THAT WAS TIMELY FILED

WITH HIM (SNYDER)," HOWEVER, SNYDER WENT THRU GREAT LENGTH TO

CONCEAL THE VIOLATION OF PLAINTIFF'S RIGHTS BY HIRING THE

ASSISTANT ATTORNEY GENERAL, MICHEAL J. MC GEE  TO DENIAL TO

HOLD HEARING OF GRIEVANCES, AS STATED IN HIS (MC GEE) MOTION TO

DISMISS PLAINTIFF'S MANDAMUS. BUT UNFORTUNATELY, TO

UNSATISFACTORY CONCLUSION, THE COURT DISMISSED PLAINTIFF'S

MANDAMUS, ON MARCH 21, 2002.


131.) ON JANUARY 29, 2001, PNKCC'S CORRECTIONAL OFFICE

CONFISCATED PLAINTIFF'S FOLDER WITH VARIOUS GRIEVANCES AND

LEGAL DOCUMENTS ON THE GROUNDS OF AN ALLEGED DISCIPLINARY

INFRACTION. (PEASE NOTE-THE FOLDER CONTAINED UNEXHAUSTED

GRIEVANCES WITH A CRUCIAL DEADLINE.)

---

[*] Footnote: On January 10, 2002, plaintiff filed writ of Mandamus, case <u>Ruffin Vs. Snyder</u>, case no. 02-MR-3, (Randolph-County) and assist. Att. Gen. Micheal J. Mc Gee filed his motion to dismiss on February 25, 2002.

132.) ON JANUARY 30, 2001 PLAINTIFF WAS SEEN BY THE ADJUSTMENT COMMITTEE; DEFENDANT DAVENPORT ABOUT THE ALLEGED DISCIPLINARY TICKET. THEIR PLAINTIFF CONVEYED TO DAVENPORT THE **NECESSITY** TO HAVE HIS UNEXHAUSTED GRIEVANCES AND AMONGST OTHER LEGAL DOCUMENT (AS DESCRIBED IN PARAGRAPH # 131) BECAUSE OF A CRUCIAL DEADLINE AND HE (PLAINTIFF) REALLY NEED TO FILE SAID DOCUMENTS AS SOON AS POSSIBLE, BUT DAVENPORT TOTALLY DISREGARDED PLAINTIFF'S REQUEST AND IN A HOSTILE VOICE STATED, "YOU (PLAINTIFF) GET YOUR PAPER WHEN WE FEEL LIKE IT OR YOU MAY NEVER GET IT, TO FILE YOUR LAWSUIT."

133.) PLAINTIFF CONTINUE TO PLEAD WITH DEFENDANTS DAVENPORT, TO GIVE HIM THE ENVELOPE, THAT HAVE VARIOUS LEGAL DOCUMENTS WITH CRUCIAL DEADLINES (PLEASE-NOTE THAT CONFISCATED LEGAL DOCUMENT WAS IN THE SAME ROOM, WHERE PLAINTIFF WAS HAVING HIS DISCIPLINARY HEARING AT.) MORE IMPORTANTLY DEFENDANT DAVENPORT KNEW THAT SUCH DOCUMENTS WAS AT THEIR DISPOSAL, WHEN PLAINTIFF REQUESTED FOR IT.) PARTICULARLY-GRIEVANCE THAT HAD AN 30 DAYS APPEAL TIME LIMIT.

134.) THE CONFISCATED GRIEVANCE (AS DESCRIBED IN PARAGRAPH #133) OF PLAINTIFF, WILL REVEAL THE FOLLOWING:

A.   ON OCTOBER 2, 2000, PLAINTIFF'S GRIEVES THAT, "A CONTINUE INADEQUATE MEDICAL FACILITY AND STAFF CONCERNING PHYSICAL THERAPY REHABILITATION PROGRAM, SUBJECTING HIM TO DETERIORATION MUSCULAR UPPER & LOWER EXTREMITY AND HIGH MOTOR FUNCTION IMMOBILITY'S." ON DECEMBER 29, 2000, DEFENDANT PIERCE CONDONE THE DENIAL OF MEDICAL TREATMENT A CONSIGNED DENIAL OF GRIEVANCE.

B.   ON OCTOBER 12, 2000, PLAINTIFF'S GRIEVES THAT, "PNKCC INADEQUATELY PHYSICAL THERAPY REHAB FACILITY, VIOLATION OF THE EIGHT AMENDMENT "CRUEL AND UNUSUAL PUNISHMENT" AN HIS REQUEST FOR TRANSFER TO AN ADEQUATELY EQUIP MEDIAL FACILITY TO RECEIVE THERAPY." ON DECEMBER 17, 2000, DEFENDANT PIERCE CONDONES THE VIOLATION AND CO-SIGNED DENIAL OF GRIEVANCE.

C.   ON OCTOBER 14, 2000, PLAINTIFF'S GRIEVES THAT, "HE NEED PRESCRIBED COUMADIN MEDICATION TO COMBAT OR PREVENT BLOOD CLOTTING AND HIS RISK

OF THROMBOEMBOLIC PHENOMENON." ON JANUARY 12,

2001, DEFENDANT PIERCE CONDONES THE DENIAL THE

MEDS AND CO-SIGNED DENIAL OF GRIEVANCE.

D.    ON NOVEMBER 3, 2000, PLAINTIFF'S GRIEVES THAT, " ON

OCTOBER 15, 2000 HIS WHEELCHAIR BROKE AND HE

INJURED AS A RESULT OF IT. HE WAS BEDRIDDEN FOR

SIX DAYS. HE DID NOT RECEIVE HIS MEDICATION

BECAUSE THE OFFICER REFUSED TO GET HIM HELP TO

TRANSFER INTO HIS WHEELCHAIR, AND THAT DR.

GARCIA TOOK HIM OFF HIS MEDICATION WITHOUT

FIRST CONSULTING WITH HIM." ON JANUARY 4, 2001,

DEFENDANT PIERCE CO-SIGNED DENIAL OF GRIEVANCE

AND CONDONE THE DENIAL MEDICAL CARE AND

STAFF'S MISCONDUCT.


135.) ON FEBRUARY 23, 2001, AT THE MENARD CORRECTIONAL CENTER,

WHERE THE PLAINTIFF WAS CURRENTLY BEING HOUSED (NORTH II

"A.D.A." C-WING CELL 7) [PLEASE NOTE PLAINTIFF WAS TRANSFERRED

FROM PNKCC TO MENARD ON FEBRUARY 6, 2001], CORRECTIONAL

OFFICER HOFFMAN, AND PARALEGAL; DEFENDANT ELISA REA,

APPROACHED PLAINTIFF'S CELL HOUSE WITH HIS **LATE TRANSFER**

LEGAL STORAGE FORM PNKCC. THEIR PLAINTIFF WAS ALLOWED TO SORT

77

THOUGHT HIS LEGAL PROPERTY AND SELECT THE MATERIALS NEEDED.

PLAINTIFF RETAINED HIS CONFISCATED GRIEVANCES (AS DESCRIED IN

PARAGRAPH #114(A), 126 (A)(B), 134(A)(B)(C)) AND AMONGST OTHER LEGAL

MATERIALS THAT DEFENDANT DAVENPORT FINALLY DECIDED TO

TRANSFER OVER TO THE PLAINTIFF.


136.) IMMEDIATELY, ON FEBRUARY 24, 2001, PLAINTIFF MADE A

DILIGENT ATTEMPTED TO APPEAL GRIEVANCE TO DEFENDANT SNYDER

TO BE EXHAUSTED, BUT UNFORTUNATELY, ON FEBRUARY 26, 2001,

DEFENDANT SNYDER REFUSED TO HOLD A HEARING ON ALL GRIEVANCES

(AS DESCRIBED IN PARAGRAPH #114 (A), 127(A)(B), 134(A)(B)(C)(D)), ON THE

GROUNDS THAT "GRIEVANCES WAS NOT SUBMITTED IN THE TIME FRAME

OUTLINED IN DEPARTMENT RULE 504; THEREFORE, ISSUE WILL NOT BE

ADDRESSED FURTHER."


137.) PLAINTIFF HAVE FILED WRITTEN GRIEVANCES WHEREIN HE

REQUESTED, AND STRESSED, THE NECESSITY TO **STOP** THE **CONSPIRACY**

PRACTICES (AS REALLEGED THROUGHOUT THIS **COUNT**) **AGAINST**

PLAINTIFF, BUT ONLY TO NO AVAIL. ALTHOUGH THE MATTERS WAS

BROUGHT TO DEFENDANTS ATTENTION, BUT NEITHER OF THESE

DEFENDANTS TOOK ANY STEPS TO CURB THEIR OWN CONSPIRACY

TACTICS AGAINST HIM. LATER, DEFENDANT SNYDER PERSONALLY
CONDONES THE COVER UP TACTICS.

    138.) BECAUSE OF THE ACTION, OF DEFENDANTS SNYDER, PIERCE, MC
KINNEY, WILLIAM AND DAVENPORT, IN CONSCIOUSLY AND REPEATEDLY
PATTERNS OF CONFISCATING AND DELIBERATELY DELAYING PLAINTIFF'S
ACCESS TO LEGAL DOCUMENTS, WHILE BEING CONSCIOUSLY AWARE
THAT HE HAD A CRUCIAL DEADLINES, NOT ALLOWING HIM (PLAINTIFF)
TO EXHAUST GRIEVANCES AND/OR REFUSAL TO RESPONDED TO TIMELY
FILED GRIEVANCES, REVEALS THAT DEFENDANT ARE **CO-CONSPIRATORS**
IN A WELL THOUGHT OUT SOPHISTICATED WELL THROUGHOUT PLAN,
AND BY HAVING A MEETING OF THE MINDS TO UTILIZE SAID
**CONSPIRATOR** TACTICS AND TO DEPRIVE PLAINTIFF OF HIS
CONSTITUTIONAL RIGHT TO ACCESS TO COURT AND HAD AN MUTUALLY
AGREEMENT TO "**CONCEAL**" AN "**COVER UP**" THEIR (DEFENDANTS)
DENIAL OF HIS (PLAINTIFF) PRESCRIBED **MEDICAL CARE** (AS DESCRIBED
IN **COUNT #5**) AND BEING CONSCIOUSLY AWARE OF SUCH IN THE
PROCESS, CONSTITUTES A **CONSPIRACY** TO VIOLATE PLAINTIFF'S CIVIL
RIGHTS UNDER THE **FIRST** AND **FOURTEENTH** AMENDMENT TO THE
UNITED STATES CONSTITUTION.

## COUNT 11

### SYSTEMATIC PRACTICE DENIAL OF PLAINTIFF
### SERIOUS MEDICAL TREATMENT AT MENARD ("MCC")
### A. INTENTIONALLY DENYING ACCESS TO PHYSICAL THERAPY.

**139.)** ON FEBRUARY 6, 2001, AT 5:30 P.M., PLAINTIFF WAS ON TRANSFER FROM "PNKCC" SEGREGATION TO MENARD CORRECTIONAL CENTER (HEREIN AFTER- "MCC") INFIRMARY, THERE, PLAINTIFF WAS SEEN BY DR.MCENTYRE FOR AN INTAKE MEDICAL SCREENING TO DETERMINE HIS (PLAINTIFF) ADMISSION INTO THE INFIRMARY AND WHO WILL MAKE THE FINAL DETERMINATION ON, WHAT WOULD BE THE BEST TYPE OF CONTINUED MEDICAL TREATMENTS FOR THE PLAINTIFF DURING HIS STAY AT MCC.

**140.)** DURING THE INTAKE EXAMINATIONS, DR.MCENTYRE PROPOSED THE NORMAL BRIEF MEDICAL QUESTIONNAIRE PERTAINING TO PLAINTIFF'S MEDICAL HISTORY AND FUTURE. AND AFTER AN ACCOMPANYING NURSE HAD PERFORMED THE STANDARD BRIEF CHECK OF PLAINTIFF'S VITAL SIGNS DR. MCENTYRE HAD CONDUCTED A QUICK VISUAL EXAMINATION OF PLAINTIFF'S GUNSHOT WOUNDS, AND HAVING BARELY TOUCHED PLAINTIFF, AND CONCLUDED THAT "PLAINTIFF IS A RIGHT SIDE HEMI- PARESIS- WHEELCHAIR BOUND -AND WITH IMPAIRED DYSFUNCTIONAL MOVEMENTS IN HIS RIGHT - UPPER AND LOWER EXTREMITY AND WITH MASSIVE MUSCULAR ATROPHY AND WITH SPINAL CORD INJURY."

**141.)** DURING SAID INTERVIEW PLAINTIFF MADE REQUEST FOR HIS MANDATORY PRESCRIBED PHYSICAL THERAPY AND OCCUPATIONAL THERAPIES AND FOR MUSCLE RELAXANTS MEDICATIONS, PLUS SOME OTHER PAIN SUPPRESSION MEDICATIONS. DR. MCINTYRE RESPONDED TO SUCH REQUESTS BY SAYING " I CAN'T MAKE THAT CALL, BUT YOU (PLAINTIFF) WILL SEE THE MEDICAL DIRECTOR (" DEFENDANT FEINER MAN") FOR YOUR CONTINUATION OF YOUR MEDICAL TREATMENT DURING YOUR STAY AT "MCC."DR MCINTYRE ALSO CONCEDED TO PLAINTIFF'S OBVIOUS, AND SERIOUS, MEDICAL NEEDS BY STATING, "PHYSICAL THERAPY MIGHT BE ABLE TO HELP YOU, BUT MCC DOES NOT OFFER [OR HAVE] PHYSICAL THERAPY."

**142.)** IMMEDIATELY AFTER PLAINTIFF'S INTAKE EVALUATION DR.MCENTYRE FOUND IT NECESSARY TO RECOMMEND, AND ORDERED, EGG CRATE MATTRESS AND PAIN MEDICATION AND FOR PLAINTIFF TO SEE MEDICAL DIRECTOR FEINER MAN,

**143.)** ON FEBRUARY 7, 2001AT 8:30 A.M., PLAINTIFF WAS SEEN BY DEFENDANT ADRIAN FEINER MAN[1] FOR PREPARATION TO TRANSFER PLAINTIFF OVER TO NORTH II "A. D. A." SEGREGATION (WING AND TO DETERMINE WHAT WOULD BE

---

[1]-FOOT-NOTE: DR FEINERMAN WAS ACCOMPAY BY SEVERAL OTHER DOCTORS AND NURSES

THE TYPE OF CONTINUED MEDICAL TREATMENTS FOR THE PLAINTIFF DURING HIS STAY IN SEGREGATION STATUS AT MCC.

**144.)** DURING THE INTAKE EXAMINATION DEFENDANT FEINER MAN (WHOM IS MCC'S MEDICAL DIRECTOR) PROPOSED THE NORMAL BRIEF MEDICAL QUESTIONNAIRE PERTAINING TO PLAINTIFF'S MEDICAL HISTORY AND FUTURE. AND PLAINTIFF CRIPPLING CONDITIONS, AND AFTER APPROXIMATELY 2 MINUTES OF PRIMARY VISUAL EXAMINATION S, AND HAVING NOT TOUCHED PLAINTIFF AT ALL, DR. FEINER MAN (NOT A PHYSICAL THERAPIST SPECIALIST) CONCLUDED THAT "PLAINTIFF IS A RIGHT-HEMIPARESIS - WHEELCHAIR BOUND - WITH SPINAL CORD INJURY FROM GUNSHOT WOUNDS"

**145.)** DURING SAID INTERVIEW PLAINTIFF MADE REQUESTOR PHYSICAL THERAPY AND OCCUPATIONAL THERAPY. DEFENDANT FEINER MAN RESPONDS TO SUCH REQUESTS BY SAYING " MENARD CORRECTIONAL CENTER DOES NOT HAVE PHYSICAL THERAPY AND WHY ARE YOU HERE FOR WHAT DISCIPLINARY VIOLATION THAT PUT YOU (PLAINTIFF) IN SEGREGATION?"
 AT THAT TIME PLAINTIFF REITERATED THAT HE (PLAINTIFF) HE HAD BEEN RECEIVING PHYSICAL THERAPY AT PNKCC, AND THAT IT "IS PRETTY OBVIOUS"THAT HE (PLAINTIFF) WAS IN DESPERATE NEED OF CONTINUED PHYSICAL THERAPY REGIME PROGRAM AND, MORE IMPORTANTLY, THAT HIS PRIOR OF TRANSFERRING TO MCC, HE (PLAINTIFF) WAS 0N VIGOROUS PHYSICAL THERAPY REGIME UNDER THE GUIDANCE OF A PROFESSIONAL PHYSICAL THERAPIST SPECIALIST WHO CLEARLY ADVISED HIM (PLAINTIFF) THAT REGIME ("PT") WAS SPECIFICALLY DESIGNED TO HELP PLAINTIFF' TO REGAIN BACK MOBILITIES AND STRAIGHT IN AREAS OF PARALYSIS- PARTICULARLY RIGHT - UPPER AND LOWER EXTREMITIES AND THAT IF HE (PLAINTIFF ) DOES NOT RECEIVE CONTINUOUS PHYSICAL THERAPY HE (PLAINTIFF) WILL BE SUBJECTED TO SERIOUS RISK OF BEING PERMANENTLY PARALYZED [" NOT BEING ABLE TO WALK AGAIN OR REGAIN BACK FULL USE OF RIGHT- HAND, ARM AND SHOULDER "] AND WHEELCHAIR BOUND AND WILL BE SUBJECTED TO A WIDE RANGE OF UNNECESSARY PAINS AND SUFFERING.

**146.)** DR. FEINER MAN FINALLY CONCEDED TO PLAINTIFF'S OBVIOUS AND SERIOUS, MEDICAL NEEDS BY STATING " WELL, PHYSICAL THERAPY MIGHT HAD BENEFITTED YOU, BUT IT IS YOUR FAULT YOU GOT IN TROUBLE AT PNKCC FOR ALLEGED VIOLATION OF INSTITUTIONAL RULES AND THEY TRANSFERRED, YOU TO MCC, THAT DOES NOT HAVE PHYSICAL THERAPY AND IF YOU WOULD HAVE BEHAVED YOURSELF; YOU WOULD STILL BE RECEIVING PHYSICAL THERAPY. NOW YOU MUST SUFFER THE CONSEQUENCES OF YOUR ACTIONS."

**147.)** IMMEDIATELY AFTER PLAINTIFF'S EVALUATION DR.FEINERMAN DISCONTINUED HIS (PLAINTIFF'S) EGG CRATE MATTRESS, ON THE GROUNDS OF MCC'S FIRE HAZARD POLICY IN THE SEGREGATION UNIT (NORTH II "A. D .A" WING) WHERE THE PLAINTIFF WILL BE HOUSED AT, AND ORDERED, A NUMBER OF DIFFERENT MEDICAL FOR PLAINTIFF.

**148.)** ON FEBRUARY 15,2001, PLAINTIFF FILED WRITTEN GRIEVANCES WHERE HE REQUESTED AND STRESSED, THE NECESSITY OF BEING TRANSFERRED TO ANOTHER FACILITY I. D. O. C ("AMERICAN WITH DISABILITY ACT [A. D. A] EQUIPPED FACILITY") FACILITY OF PERHAPS TO AN OUTSIDE FACILITY IN ORDER TO RECEIVE PHYSICAL THERAPY "THAT AS ONCE PRESCRIBED" THAT MCC WAS INCAPABLE OF PROVIDING, D IN WHICH TO HELP HIM REGAIN BACK MOBILITIES AND SUPPRESS CHRONIC AND EXCRUCIATING PAINS AND PREVENT PERMANENT IMMOBILITIES.

**149.)** ON INFORMATION AND BELIEF, WHEN PLAINTIFF FILED HIS GRIEVANCE THE GRIEVANCE OFFICER, DEFENDANT MAVIS WITTENBORN (IT IS LATER KNOWN SHE GOT MARRIED AND CHANGED HER MAIDEN NAME TO "GROSS") CALLED THE MATTER TO THE ATTENTION OF DEFENDANTS ROGER COWEN (MCC'S WARDEN), JONATHAN A WALLS (MCC'S ASST. WARDEN /A. D. A CORD. AND LATER HE BECAME MCC'S WARDEN) PAM GRUBMAN (MCC'S HEALTH CARE UNIT ADMINISTRATOR) AND DR. FEINER MAN FOR REVIEW, EACH OF THESE INDIVIDUALS POSSESSED THE CAPACITY (INDIVIDUAL AND / OR COLLECTIVELY) AND OBLIGATION, TO CORRECT THE MISTREATMENT ALLEGED IN PLAINTIFF'S GRIEVANCE (AS DESCRIBED IN PARAGRAPH GRIEVANCE WAS BROUGHT TO THEIR ATTENTION  # 144-147. ONCE IT WAS BROUGHT TO THEIR ATTENTION, BUT NEITHER OF THESE DEFENDANTS TOOK ANY STEPS TO CURB THE CONTINUOUS DENIAL OF PLAINTIFF'S NECESSARY, AND ONCE PRESCRIBED, MEDICAL TREATMENT, IN FACT, ON MARCH 13, 2001, DEFENDANT S MARVIS WITTENBORN AND ROGER COWEN CONCURRED WITH, AND CO- SIGNED, THE DENIAL OF PLAINTIFF'S GRIEVANCE AND, IN ESSENCE, BY DOING SO EXPRESSLY CONDONED AND ENCOURAGED THE CONTINUED DENIAL OF PROPER MEDICAL TREATMENT FOR PLAINTIFF AND DENIED ANY CORRECTIVE RELIEF SOUGHT.

**150.)** LATER, DEFENDANT SNYDER, AFTER PLAINTIFF APPEAL THE DENIAL OF HIS GRIEVANCE (AS DESCRIBED IN PARAGRAPH # 146) WHEREIN PLAINTIFF PRAYED TO THE DIRECTOR (DEFENDANT SNYDER) TO OVER RULE THE ACTIONS OF DEFENDANTS WITTENBORN AND COWEN AND INSTRUCT CORRECTIVE ACTIONS OF THE FORM OF PROPER MEDICAL TREATMENT. SNYDER REFUSED TO RESPOND TO THE GRIEVANCE AND AFTER PLAINTIFF MADE A DILIGENT ATTEMPT TO APPEAL THE DENIAL OF HIS DENIAL OF HIS GRIEVANCE, TO NO AVAIL, MOREOVER, SNYDER
EVEN TRIED TO "COVER-UP AND CONCEAL" THE MISTREATMENT TO PLAINTIFF BY DENYING THE FACT THAT HE NEVER RECEIVED PLAINTIFF'S GRIEVANCE, [2]AND OVERALL CONDONING AND / OR TURNING "DELIBERATELY" A BLIND EYE TO THE DENIAL OF PLAINTIFF'S SERIOUS MEDICAL NEEDS

---

[2]FOOTNOTE: ON JANUARY 10, 2002, PLAINTIFF FILED A WRIT OF MANDAMUS (AS DESCRIBED IN COUNT 10)

**152.)** ON FEBRUARY 27, 2001, AT 8:40 A. M., DEFENDANT FEINER MAN, CONCERNING PLAINTIFF'S SICK -CALL REQUEST SLIP COMPLAINING OF BEING DENIED PHYSICAL AND OCCUPATIONAL THERAPY (HEREIN AFTER-P, SAW PLAINTIFF. T. / AND O. T) AND OF VARIOUS EXCRUCIATING PAINS, MUSCLE ATROPHY, MUSCLE SPASMS, JOINT PAINS MUSCLO SKELETAL PAINS, AND OTHER COMPLAINTS RELATING TO HIS PARALYSIS AND WHICH WAS THE INEVITABLE RESULTS OF BEING ABRUPTLY TAKEN COMPLETELY OFF OF, DENIED, P. T. AND O. T; FEINER MAN SEEN THE PLAINTIFF AT HIS CELL HOUSE 9NORTH II C-7), (PLEASE NOTE- THE WHOLE MEDICAL EVALUATION WAS EASILY HEARD BY OTHER INMATES BEING HOUSED ON NORTH II C- WING.)

**153.)** DURING THE SICK- CALL LINE, PLAINTIFF MADE REQUESTS FOR P. T AND O. T AND REITERATE THE VARIOUS EXCRUCIATING PAINS WHICH WAS THE INEVITABLE RESULTS OF BEING ABRUPTLY TAKEN COMPLETELY OFF "P. T AND O. T" (AS DESCRIBED IN PARAGRAPH
#151); DEFENDANT FEINER MAN RESPONDED TO SUCH REQUEST BY SAYING, "WELL, I TOLD YOU BEFORE THAT MCC DOES NOT HAVE P. T AND ACCORDINGLY TO THE CORRECTIONAL OFFICERS, YOU (PLAINTIFF) ARE IN SEGREGATION, BECAUSE YOU (PLAINTIFF) ALLEGEDLY USED YOUR LEG BRACE TO MAKE A "SHANK" OUT OF IT AND THEREFORE IT IS YOUR FAULT YOU (PLAINTIFF) WAS TRANSFERRED HERE IN (MCC) AND NOT RECEIVING P. T AND O. T; AND IF YOU WILL HAVE BEHAVED YOURSELF, YOU (PLAINTIFF) WILL BE IN PNKCC RECEIVING P. T AND O. T; AND MOREOVER, I (FEINER MAN) WILL NOT ORDER YOU TO BE TRANSFERRED TO ANOTHER FACILITY TO RECEIVE P. T AND O. T: THAT'S FINAL"

**154.)** AT THAT TIME, PLAINTIFF AGAIN REITERATED TO DR. FEINER MAN, THAT HE (PLAINTIFF) HAD BEEN PURPOSELY PUT ON A WELL DRAFTED OUT P. T AND O. T PROGRAM, BY PNKCC'S PHYSICAL THERAPIST SPECIALIST FOR PLAINTIFF'S BENEFIT, AND THAT IT " IS PRETTY OBVOIUS" THAT HE 9PLAINTIFF WAS IN DESPERATE NEED OF CONTINUED " P. T AND O. T (ESPECIALLY IN LIGHT OF THE FACTS THAT PLAINTIFF HAVE BEEN PRIOR NEGLECTED OF RECEIVING P. T AND O. T AS DESCRIBED IN COUNTS 1, 2 AND 5) OR OTHERWISE HE (PLAINTIFF) WILL BE SUBJECTED TO A WIDE RANGE OF UNNECESSARY PAINS AND SUFFERING.

**155.)** DR. FEINER MAN FINALLY CONCEDED TO PLAINTIFF OBVIOUS, AND SERIOUS, MEDICAL NEEDS BY STATING " P .T PROBABLY WILL BENEFIT YOU, BUT YOU (PLAINTIFF) HERE IN MCC, SO YOU HAVE TO DO YOUR OWN P. T OR OTHERWISE YOUR TROUBLE MAKING ASS NEED A NEW **"SPINAL CORD"**; (FEINER MAN STATED THIS IN A SARCASTIC AGITATION, BELLIGERENCE, BLATANT DISRESPECT AND HOSTILE MANNER TOWARD PLAINTIFF) (FOOTNOTE)

FOOTNOTE; DR FEINER MAN NEVER TOUCHED OR PHYSICALLY EXAMINED
PLAINTIFF THROUGHOUT THE EVALUATION.
#155 PLAINTIFF FURTHER ASSERT THAT HE WAS UNLAWFULLY SUBJECTED TO
PAY THE $2.00 MEDICAL CO- PAYMENT FEES FOR HIS (PLAINTIFF) SICK CALL
REQUESTS (AS DESCRIBED IN PARAGRAPH # 151) AND THIS POLICY[3] WAS
READILY ENFORCED BY THE MCC'S IN CHARGING PLAINTIFF $ 2.00 CO-
PAYMENT, ACCORDING TO I. D. O. C RULES AND REGULATION OF EXEMPT
CHRONIC ILLNESS INMATES ARE THE FOLLOWING CONDITIONS.

A.) MENTAL HEALTH SERVICES;
B.) CRISIS INTERVENTION;
C.) INFIRMARY SERVICES;
D.) R AND C INTAKE EXAMINATIONS;
E.) 2-YEAR DENTAL EXAMINATION;
F.) CHRONIC CLINICAL APPOINTMENTS;
G.) LABORATORY /X RAYS SERVICES ORDERED BY A PRACTIONER OR REQUIRED
BY ADMINISTRATIVE DIRECTIVE
H.) EMERGENCY RESPONSE:
I.) ALL PRACTIONER ORDERED FOLLOW-UP AND OUTPATIENT TREATMENTS

**156.)** PLAINTIFF ALSO ASSERTS THAT M.C.'S HEALTH CARE UNIT ("H .C. U"0
PROVIDED DEFINITION FOR EMERGENCY HEALTH CARE AS". ANY HEALTH
RELATED ISSUE THAT IS A POTENTIALLY SERIOUS SITUATION THAT ARISES
SUDDENLY AND THREATENS THE LIFE, USE OF LIMB OR EYESIGHT OF AN
INMATE. IT MAY ALSO BE CONSIDERED A PROBLEM THAT HAS AN ACUTE ONSET
OF SYMPTOMS THAT CANNOT WAIT UNTIL THE NEXT SCHEDULED CALL LINES.
ACUTE CONSENTS ISSUES WILL BE DETERMINED EMERGENCY VERSUS NON-
EMERGENCY BY A PHYSICIAN, DENTIST, NURSE PRACTIONER, PHYSICIAN
ASSISTANT OR NURSE STAFF AT THE TIME OF ASSESSMENT." MORE OVER IT IS
PLAINTIFF'S BELIEF HE FITS THE CRITERIA (AS DEFINE IN I. D. O. C RULE AND
REGULATION.) EXEMPTION FROM THE MEDICAL CO- PAYMENT FEES, BECAUSE
HE? (PLAINTIFF) IS PARAPLEGIA AND SUFFER CHRONIC (EXCRUCIATING PAINS
RELATED TO HIS PARALYSIS (AS DESCRIBED IN PARAGRAPH #150) AND BEING
OFF P. T AND O. T PLAINTIFF RISK OF BEING PERMANENTLY DISFIGUREMENT.
PRIOR TO TRANSFERRING TO M.C., PLAINTIFF RISK WAS ON THE CHRONIC CLINIC
APPOINTMENTS AT PNKCC, FOR P. T AND O. T PROGRAMS, AND AT PNKCC HE
(PLAINTIFF) WAS EXEMPT FROM THE MEDICAL CO- PAYMENT FEES OF $2.00

**157.)** IT WAS LATER DISCOVERED BY PLAINTIFF, AFTER RETRIEVING HIS
GRIEVANCES' RESPONSES THAT DEFENDANTS PAM GRUBMAN AND ALAN

---

[3]ILLINOIS STATE PUBLIC ACT 91-912, WHICH WAS SIGNED BY GOVERNOR RYAN THAT" ANY NON-
INDIGENT INMATE IN I. D. O. C FACILITY THAT RECEIVES MEDICAL OR DENTAL SERVICES ON A
NON- EMERGENCY BASIS AT THE FACILITY WILL PAY A CO- PAYMENT TO THE DEPARTMENT S
AN INMATE WHO HAS A CHRONIC ILLNESS (AS DEFINED BY I .D. O .C RULES AND REGULATION IS
EXEMPT FROM THE $ 2.00 CO- PAYMENT FOR TREATMENT OF CHRONIC ILLNESS $ 2.00

FRENTZEL (ASSISTANT. WARDEN / A. D. A CO-ORD) REQUESTED TO RECEIVE P. T
AND O. T IN WHAT APPEARED AS OBVIOUS ATTEMPTS TO JUSTIFIED DENIAL OF
PLAINTIFF'S MEDICAL NEEDS. GRUBMAN STATED " THAT SHE REVIEWED
PLAINTIFF'S MEDICARE RECORDS INDICATES HIS (PLAINTIFF) LAST P. T
TREATMENT WAS ON NOVEMBER 16, 2000 AND PLAINTIFF REFUSED EVALUATION
ON JANUARY 6, 2001" AND DEFENDANT FRENTZEL STATED, "PLAINTIFF HAS HAD
ALL RESTORATIVE SERVICES (P .T & 0. T) PROVIDED IMMEDIATELY POST INJURY
AND ADDITIONAL P. T HAS NOT BEEN MEDICALLY RECOMMENDED." TO THE
CONTRARY, PLAINTIFF ASSERT THAT HIS MEDICAL RECORDS WILL REVEAL
THAT HE (PLAINTIFF) HAVE BEEN RECEIVING P. T ON MANY OCCASIONS AFTER
NOVEMBER 16, 2000 AND PLAINTIFF'S PRIOR PHYSICAL THERAPIST AT PNKCC
CLEARLY RECOMMENDED AND / OR HAD PLAINTIFF'S ON A VIGOROUS
PRESCRIBED P. T PROGRAM, THAT WAS STILL IN EFFECT UP UNTIL HIS
(PLAINTIFF) TRANSFER TO MCC.

**158.)** PLAINTIFF MADE MANY DILIGENT ATTEMPT TO RECEIVE P. T AND O. T BY
FILING MANY GRIEVANCES AND WRITING NUMEROUS LETTERS TO PRISONS
OFFICIALS (CERTAIN DEFENDANTS) REQUESTING PROPER MEDICAL TREATMENT
(PLEASE REFER TO TABLET OF EVIDENCE EXHIBITS FOR COPIES OF SAME).
UNFORTUNATELY, THE DEFENDANTS (AS NAMED IN PARAGRAPH #148- 157)
REPEATEDLY DENIED PLAINTIFF'S REQUESTS UP UNTIL THE TIME OF DRAFTING
UP THIS COMPLAINT AND WHILE SOMETIMES [MORE OFTEN THAN NOT]
EXHIBITING SARCASM, AGITATION, BELLIGERENCE, BLATANT DISRESPECT, AND
HOSTILITIES IN THEIR VERBAL AND / OR WRITTEN RESPONSES.

**158.)** FROM FEBRUARY 6, 2001 TO PRESENT, PLAINTIFF SUBMITTED MANY SICK
CALL REQUEST SLIPS COMPLAINING OF VARIOUS EXCRUCIATION PAINS,
MUSCLE SPASMS, BLOOD-CLOTTING IN THE LEGAREAS, JOINT PAINS, MUSCLO
SKELETAL PAINS, MUSCULAR DETERIORATION RIGHT- HAND, WRIST, SHOULDER
AND ARM DISFIGURATION, AND OTHER COMPLICATIONS RELATING TO HIS
PARALYSIS AND WHICH WAS INEVITABLE RESULTS OF BEING ABRUPTLY TAKEN
COMPLETELY OFF OF AND DENIED, P. T AND O. T; AND PLAINTIFF WAS
FREQUENTLY SEEN BY MEDICAL STAFF, INCLUDING DR. FEINER MAN, BUT THE
RESULTS WAS ALWAYS THE SAME - NO TREATMENT OR SEVERELY INADEQUENT
TREATMENT.
B. DELAYING OR DENYING ACCESS TO NEUROSURGEON SPECIALIST /
TREATMENT,

**160.)** DURING THE MONTH FEBRUARY, 2001 PLAINTIFF COMPLAINED TO MEDICAL
STAFF OF OBSTRUCTION OF BREATHING AND SWALLOWING COMPLAINTS, (A
CONTINUOUS / AND CHRONIC SYMPTOMS OF THE 2 BULLET FRAGMENTS IN
PLAINTIFF'S RIGHT SIDE OF KIS NECK AS DESCRIBED IN COUNT 5; PARAGRAPH #
79 - 92); IN ADDITION PLAINTIFF ALSO SUFFERED FROM, AND COMPLAINED OF,
BLACK- OUTS AND SOMETIMES CHOKING ON WHEN EATING.

**161.)** SUBSEQUENTLY, ON FEBRUARY 27, 2001, PLAINTIFF ENDED UP SEEING DEFENDANT DR. FEINER MAN ABOUT SAID COMPLAINTS (AS DESCRIBED IN PARAGRAPH # 158.) DE. FEINER MAN BRIEFLY EXAMINED PLAINTIFF'S NECK (MAINLY VISUAL) AND MADE THE FINDING (FALSELY) THAT "THERE IS NO MEDICAL INDICATOR OF PLAINTIFF IS HAVING DIFFICULTY WITH BREATHING OR SWALLOWING, OR MEDICAL INDICATOR FOR BULLETS REMOVAL FROM NECK." BASICALLY, DR FEINER MAN FAILURE TO CONSULT NECESSARY TESTS AND / OR REFER PLAINTIFF TO BE EXAMINE BY A NEUROSURGEON SPECIALIST THAT HIS (PLAINTIFF) TO BE EXAMINE BY A NEUROSURGEON SPECIALIST THAT HIS (PLAINTIFF) SYMPTOMS CALLS FOR.

**162.)** ON MARCH11, 2001, AT 2:30 A. M PLAINTIFF WAS SUFFERING SOME SEVERED DIFFICULT OF CHOKING AND BREATHING, AFTER TAKING SOME HYDROCIL INSTANT (NATURAL FIBER LAXATIVE) CONSTIPATION MEDICATION PRESCRIBEDBY DEFENDANT STEPHEN DOUGHERTY, PLAINTIFF #158 AND COUNTS) WAS GREATLY AGITATED BY THE THICK POWDER LIKE MEDICATION (HYDROCIL INSTANT) AND BECAUSE OF BOTH DR. DOUGHERTY AND FEINER MAN REFUSED TO CONDUCT NECESSARY TESTS, THAT PLAINTIFF'S SYMPTOMS CALLS FOR, THEREFORE DELIBERATELY SUBJECTING PLAINTIFF TO SERIOUS RISK OF DEATH AND / OR UNWANTON EXCRUCIATING PAIN AND SUFFERING .(FOOTNOTE)

**163.)** PLAINTIFF ALSO ASSERT THAT DR. DOUGHERTY COMPLETELY DISREGARDED PLAINTIFF'S MULTIPLE COMPLAINTS OF THE AGITATED SYMPTOMS THAT IS THE RESULT OF NON - TREATMENT FROM HIS NECK INJURIES (INTERNAL) AND MOREOVER, PRIOR TO DOUGHERTY PRESCRIBED PLAINTIFF THE " HYDROCIL INSTANT" WAS CONSCIOUSLY AWARE OF DR. GARCIA'S RECOMMENDATIONS AND FINDING PERTAINING TO PLAINTIFF'S CHRONIC NECK COMPLICATIONS (AS DESCRIBED IN COUNT 5; PARAGRAPHS # 79-90) AFTER REVIEWING
FOOTNOTE: PLAINTIFF ASSERT THAT HE WILL ELABORATE MORE ABOUT THE INCIDENT THAT OCCURRED ON THIS MARCH 11, 2001 AT 2:30 A. M, LATER ON IN THIS COMPLAINT.
HIS (PLAINTIFF"S) MEDICAL RECORDS, BUT WAS DELIBERATELY DIFFERENT TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

**164.)** FROM FEBRUARY 2001 TO PRESENT, PLAINTIFF HAVE MADE MANY DILIGENT ATTEMPTS TO OBTAIN MEDICAL TREATMENT FROM A NEUROSURGEON SPECIALIST FOR THE SERIOUS AND CHRONIC NECK PROBLEMS BY REPEATEDLY FILED MULTIPLE WRITTEN GRIEVANCES AND / OR SENDING LETTERS, WHERE IN HE REQUESTED, AND STRESSED, THE NECESSITY FOR MEDICAL TREATMENT AND / OR SURGERY AND STRESSED, THE NECESSITY FOR MEDICAL TREATMENT AND / OR SURGERY TO REMOVE THE PAIN CAUSING BULLETS AND TO SEE A NEURO-SURGEON TO PERFORM THE APPROPRIATE TESTS AND / OR OPERATIONS, ONLY TO AVAIL.

**165.)** ON INFORMATION AND BELIEF, WHEN PLAINTIFF FIELD HIS GRIEVANCES (PLEASE REFER TO TABLET OF EVIDENCE EXHIBITS FOR COPIES OF SAME) THE GRIEVANCE OFFICER, DEFENDANTS MAVIS WITTENBORN CALLED THE MATTER TO THE  ATTENTION OF DEFENDANT COWEN, WALLS, GRUBMAN, DOUGHERTY, AND FEINER MAN FOR REVIEW. EACH OF THESE INDIVIDUALS POSSES THE CAPACITY (INDIVIDUAL AND / OR COLLECTIVELY) AND OBLIGATION TO CORRECT THE MISTREATMENT AS ALLEGED IN PLAINTIFF'S GRIEVANCES ONCE IT WAS BROUGHT TO THEIR ATTENTION. BUT NEITHER OF THESE DEFENDANTS TOOK ANY STEPS TO CURB THE CONTINUOUS DENIAL OF PLAINTIFF'S NECESSARY MEDICAL TREATMENT. IN FACT, DEFENDANTS WITTENBORN AND COWEN AND WALLS CONCURRED WITH, AND CO-SIGNED, THE DENIAL OF PLAINTIFF'S GRIEVANCES AND, IN ESSENCE, BY DOING SO EXPRESSLY CONDONED AND ENCOURAGED THE CONTINUED DENIAL OF PROPER MEDICAL TREATMENT FOR PLAINTIFF AND DENIED ANY CORRECTIVE RELIEF SOUGHT.

**166.)** LATER, DEPARTMENT DONALD N. SNYDER, JR (I. D. O. C DIRECTOR), AFTER HAVING BEEN PERSONALLY ABREASTED OF THE FACTS OF PLAINTIFF'S GRIEVANCES, EITHER REFUSED TO ANSWER AND / OR CO- SIGN THE DENIAL OF PLAINTIFF'S APPEAL WHEREIN PLAINTIFF PRAYED TO THE DIRECTOR (DEFENDANT SNYDER) TO OVER RULE THE ACTIONS OF DEFENDANTS COWEN, WALLS, AND WITTENBORN AND INSTRUCT CORRECTIVE AND / OR TURNING "DELIBERATELY" A BLIND EYE TO DEFICIENCIES IN THE QUALITY OF MEDICAL CARE NECESSARY FOR PLAINTIFF WHILE AT M.C.;

**201.)** THE DEFENDANTS' (AS DESCRIBED IN PARAGRAPH # 198) RACIAL DISCRIMINATION ACTIONS, WAS BEYOND THE SCOPE OF THEIR EMPLOYMENT THROUGH WRONGFUL ACTS, DUTIES BREACHED WAS NOT OWED TO THE PUBLIC GENERALLY INDEPENDENT OF FACT OF STATE EMPLOYMENT AND COMPLAINED OF ACTIONS (AS DESCRIBED IN PARAGRAPH # 200) INVOLVED MATTERS ORDINARY WITH IN DEFENDANT'S NORMAL AND OFFICIAL FUNCTIONS.

**202.)** PLAINTIFF FILED MULTIPLE WRITTEN GRIEVANCES WHEREIN HE **REQUESTED** AND **STRESSED**, THE REPEATEDLY VIOLATION OF HIS (PLAINTIFF'S) RIGHT NOT TO BE DENIED OR EXCLUDED FORM PARTICIPATION IN AND BEING DENIED THE BENEFITS OF, AND SUBJECTED TO DISCRIMINATION IN PROGRAMS SERVICES, AND ACTIVITIES (PARTICULARLY-PHYSICAL THERAPY AND EGG CRATE MATTRESS) AT MCC.

**203.)** ON INFORMATION AND BELIEF, WHEN PLAINTIFF FILED HIS GRIEVANCES, THE GRIEVANCE OFFICER, DEFENDANT WITTENBORN, CALLED THE MATTER TO THE ATTENTION OF DEFENDANTS (AS DESCRIBE IN PARAGRAPH #198) FOR REVIEW. EACH OF THESE INDIVIDUALS POSSESSED THE CAPACITY (INDIVIDUALLY AND/OR COLLECTIVELY), AND OBLIGATION, TO CORRECT THE MISTREATMENT AS ALLEGED IN GRIEVANCES ONCE IT WAS BROUGHT TO THEIR ATTENTION. BUT NEITHER OF THESE DEFENDANTS TOOK ANY STEPS TO CURB

THE CONTINUOUS PRACTICE OF RACIAL DISCRIMINATION AGAINST PLAINTIFF AN AFRICAN-AMERICAN FROM ACCESS TO HIS EGG CRATE MATTRESS AND P.T. WHILE ALLOWING WHITE INMATES ENJOYED THE SAME PROGRAMS THAT ARE DENIED TO PLAINTIFF. IN FACTS, DEFENDANT WITTENBORN (WHITE) AND COWEN CONCURRED WITH, AND CO-SIGNED, THE DENIAL OF PLAINTIFF'S GRIEVANCES AND, IN ESSENCE, BY DOING SO EXPRESSLY CONDONED AN ENCOURAGE THE CONTINUE RACIAL DISCRIMINATION AGAINST PLAINTIFF.

**204.)** LATER, DEFENDANT SNYDER (I.D.O.C. DIRECTOR), AFTER HAVING BEEN PERSONALLY A BREASTED OF THE FACTS OF PLAINTIFF'S GRIEVANCE, CO-SIGNED THE DENIAL OF PLAINTIFF'S APPEAL WHEREIN PLAINTIFF PRAYED TO THE DIRECTOR (DEFENDANT SNYDER) AN **WHITE/EUROPEAN** TO OVER RULE THE ACTIONS DEFENDANTS (AS DESCRIBED IN PARAGRAPH #198) AND INSTRUCT TO STOP THE RACIAL DISCRIMINATION AGAINST THE PLAINTIFF. ON THE CONTRARY SNYDER CONDONE IT AND "DELIBERATELY" TURNING A BLIND EYE ON SAID VIOLATION.

**205.)** DEFENDANTS (AS DESCRIBED IN PARAGRAPH # 198) HAD A DUTY TO TREAT ALL INMATES BOTH BLACKS AND WHITES THE SAME, BY ALLOW ALL INMATES WHO ARE IN THE SAME CONDITION, **ACCESS** TO ALL PROGRAM, SERVICE AND ACTIVITIES AT MCC; AND THAT DUTY WAS BREACHED BY DEFENDANTS. PLAINTIFF ASSERTS THAT THE DEFENDANTS BREACH OF RACIAL BIAS WAS THE PROXIMATE CAUSE OF PLAINTIFF'S INJURIES AND DEFENDANTS ACTS VIOLATES THE **FEDERAL TITLE VII OF 1964 CIVIL RIGHTS ACT OF RACIAL DISCRIMINATIONS** AND **"EQUAL PROTECTION CLAUSE"** OF THE **14 AMENDMENT** RIGHTS OF THE UNITED STATES CONSTITUTION.

### INJURIES

**206.)** AS A PROXIMATE CAUSE OF THE DEFENDANTS' ACTIONS OR INACTIONS, AS DESCRIBED THROUGHOUT **THIS COUNT** PLAINTIFF SUFFERED PROLONGED, AND UNNECESSARY, EXCRUCIATING PAINS AND DISCOMFORTS, PERMANENT DISABILITIES (PHYSICAL), AND RELATED MENTAL INJURIES; I.E., STRESS, EMBARRASSMENT, HUMILIATION, AND DEPRESSION.

### COUNT 16
### VILOLATION OF THE REHABILIATION ACT OF 1973

**207.)** PLAINTIFF AND **PARAPLEGIA,** IS A QUALIFIED INDIVIDUAL WITH A DISABILITY AS DEFINED BY THE REHABILITATION ACT OF 1973 (29U.S.C. 794 ET. SEG.) PLAINTIFF IS QUALIFIED FOR PARTICIPATION IN THE PROGRAMS, ACTIVITIES AND SERVICES AT THE ILLINOIS DEPARTMENT OF CORRECTION ("I.D.O.C."). I.D.O.C. RECEIVES **FEDERAL FUNDED FINANCIAL** ASSISTANCE FOR ALL PROGRAMS, SERVICES AND ACTIVITIES AT SAID **"STATE GOVERNMENT",** AS DEFINED BY THE REHABILITATION ACT OF 1973 (29U.S.C. 794ET.SEG). THUS

MAKING IT LIABLE UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973, 29U.S.C. 794 ET. SEG.

**208.)** BEGINNING ON FEBRUARY 8, 2001 TO PRESENT DAY DEFENDANTS SNYDER, COWEN, WALLS, FEINERMAN, GRUBMAN, FRENTZEL AND KNOP AND ELISA REN (LAW LIBRARY CLERK) EACH PERSONALLY PARTICIPATED, (INDIVIDUALLY AND/OR COLLECTEDLY) IN IMPLEMENTING, DESIGNING OR DICTATING POLICIES OR CUSTOMS WHICH CREATED AN ENVIRONMENT THAT'S DELIBERATELY SUBJECTED PLAINTIFF, **AN PARAPLEGIA** TO BEING EXCLUDED FROM PARTICIPATION IN, AND BEING DENIED THE BENEFITS OF, AND SUBJECTED TO DISCRIMINATION IN **VARIOUS** PROGRAMS, SERVICES AND ACTIVITIES, AT I.D.O.C., BECAUSE OF HIS (PLAINTIFF'S)DISABILITIES, AND SUCH POLICIES IMPLEMENTED WERE ALSO READILY ENFORCED BY DEFENDANTS MAUE AND ELISA REA.

**209.)** PLAINTIFF'S FURTHER ASSERTS THAT HE IS A PARAPLEGIA WITH PARALYSIS TO HIS (PLAINTIFF'S) RIGHT- SHOULDER, ARM, WRIST AND HAND, AND MORE OVER WHEELCHAIR BOUND, IS BEING EXCLUDED FROM PARTICIPATION IN, AND BEING DENIED THE BENEFITS OF AND SUBJECTED TO DISCUSSION IN THE FOLLOWING PROGRAMS, SERVICES AND ACTIVITIES AT I .D. O. C:

**A.)** DEFENDANT (AS NAMED IN PARAGRAPH #207) REFUSED TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO SHOWER CHAIR TO ACCOMMODATE PLAINTIFF'S DISABILITIES. FOR EXAMPLE, THE SO CALLED SHOWER CHAIR FOR DISABLE INMATES IS NON OTHER THAN A"POTTY CHAIR" ON WHEELS AND HAS NO BREAKS OR FUNCTION CUPS TO PREVENT DESTABILIZING OR OTHER PRISONERS WITH DISABILITIES ON HIS HOUSING WING (NORTH II C- WING). DUE TO THE LARGE OPENING IN THE CENTER OF SAID CHAIR AND THE NARROWNESS OF PLAINTIFF'S BUTTOCKS HE IS SUBJECTED TO FALLING THROUGH THE CENTER OF THE SAID CHAIR. TO TRY TO STABILIZE THE SAID CHAIR, STAFF HAS STRAPPED THE UPPER PART OF THE CHAIR ON THE BARS IN THE SHOWER. IN TAKING THIS ACTION THEY (STAFF) HAVE STRAPPED SAID CHAIR RIGHT OVER THE DRAIN THAT'S INFESTED WITH DIRT, HAIR, GREASE, MUCOUS E. T .C THAT IS STUCK OUTSIDE OF THE DRAIN AND INSIDE (WHICH IS CAUSED BY STAFF NOT CLEANING AND MOPPING OR SWEEPING THE SHOWER AREA.) INEVITABLY CAUSED THE INFESTED WATER TO BACK UP AND FLOOD THE SHOWER AREA, FROM THE PRISONER WHO SHOWERED BEFORE PLAINTIFF. THEREFORE MAKING IT IMPOSSIBLE FOR PLAINTIFF TO KEEP THE SAID INFESTED WATER FROM TOUCHING HIS FEET. MORE OVER, THE SHOWERHEAD ON THE SHOWER SPRAYER, WHICH IS HOOKED TO AN EXTENSION OF HOSE (WHICH PRIMARY PURPOSE IS FOR DISABLE PRISONER TO USE) HAS BEEN BROKEN FOR YEARS WITH DEFENDANTS' KNOWLEDGE OF THE SAID SHOWER HEAD. THIS SHOWERHEAD LACKS ONE MISSING SCREW AND BECAUSE IT HAS NOT BEEN REPLACED THERE IS NO PLACE I CAN HANG THE SHOWER HEAD SO THAT THE WATER CAN COME DOWN ON PLAINTIFF, SO HE CAN WASH HIS (PLAINTIFF'S)

BODY. AND MORE IMPORTANTLY PLAINTIFF HAVE A PARALYZE AND / OR RIGHT
CONTRACTURE HAND AND WEARS A HAND BRACE, WHICH MAKES TRYING TO
HOLD THE SHOWER IN HIS GOOD HAND IMPOSSIBLE. FURTHER MORE, THERE IS
NO MIRROR BOLTED TO THE SHOWER AREA OR A. D. A CELLS ON NORTH II C-
WING "A. D. A" SEGREGATION UNIT. THIS PREVENTS PLAINTIFF FROM BEING
ABLE TO HOLD A SMALL SHAVE WITH HIS ("PLAINTIFF") ONE GOOD- HAND
(LEFT) AT THE SAME- TIME PLAINTIFF'S ALSO ASSERTS THAT HE IS BEING ABLE
TO HOLD A SMALL MIRROR OF A SIZE 2 INCHES, IN HIS (PLAINTIFF) ONE GOOD
HAND (LEFT) AT THE SAME TIME PLAINTIFF'S ALSO ASSERTS THAT HE IS BEING
DENIED MEANINGFUL ACCESS TO SHOWER OR AN ALTERNATIVE METHOD TO
ADEQUATELY CLEAN HIMSELF. PLAINTIFF HAVE A CURRENTLY A NEUROGENIC
BLADDER CHRONIC PROBLEM SUCH AS: IF HE DRINKS TOO MUCH WATER
BEFORE HE GOES TO BED AND SLEEPS, HE (PLAINTIFF) SOMETIMES URINATES ON
HIMSELF AS A RESULT OF THIS PLAINTIFF HAVE BEEN FORCED TO GO THROUGH
A HORRIFYING BARBARIC DISPLAY OF HUMILIATION AND DEGRADING
METHODS TO MERELY ENABLE HIMSELF TO WASH HIS SKIN. PLAINTIFF IS ONLY
GRANTED (1) SHOWER A WEEK (PARTICULARLY - ON SATURDAYS FOR
APPROXIMATELY 20 MINUTES); THE REST OF THE WEEK HE (PLAINTIFF) IS
FORCED TO WASH IN HIS CELL. HOWEVER, DUE TO HIS (PLAINTIFF) SPINAL CORD
HE IS UNABLE TO LIFT HIS LOWER EXTREMITIES (BUTTOCKS) AND WASH
HIMSELF AT THE SAME TIME, AS PLAINTIFF ONLY HAS (1) GOOD HAND (LEFT).
ALSO HE  (PLAINTIFF) IS UNABLE TO WASH HIMSELF IN THE SINK WHILE SITTING
IN HIS WHEELCHAIR. PLAINTIFF HAS TO GET OUT OF HIS WHEELCHAIR, AND
ONTO THE FLOOR AND DRAG HIMSELF TO THE TOILET. AS PLAINTIFF CANNOT
REACH THE SINK FROM THE FLOOR, HE HAD TO laid DOWN ON THE FLOOR AND
WASH HIMSELF (PLAINTIFF) WITH THE UNSANITARY WATER FROM THE TOILET
BOWL. PLAINTIFF SOMETIMES SUFFERS BED SORES AND SKIN BREAKAGES THAT
CAUSES BLEEDING ON HIS BUTTOCKS AREA.

**B.)** DEFENDANT (AS NAMED IN PARAGRAPH # 207) REFUSED TO PROVIDE A
REASONABLE AND MEANINGFUL ACCESS TO SICK-CALL SCREENING
PROCEDURE TO ACCOMMODATE PLAINTIFF AND OTHER DISABLED PRISONERS
BEING HOUSED ON NORTH II C WING " A. D. A"; THE MEDICAL STAFF MAKES
ROUNDS SEVEN DAYS A WEEK ON ALL GALLERIES IN NORTH II "ANNEX"
SEGREGATION BUILDING, EXCEPT THE A. D. A WING (NORTH II C-WING) TO
SCREEN FOR POSSIBLE MEDICAL ATTENTION. BECAUSE MEDICAL STAFF DO NOT
MAKE ROUNDS ON THE A. D. A WING, THERE IS A LONG DELAY IN GETTING
MEDICAL ATTENTION CAUSING ME TO SUFFER PAIN NEEDLESSLY (REFER TO
COUNT II; PARAGRAPH # 185-189) (PLEASE NOTE - THAT NORTH II C- WING "A. D.
A" WING, WHERE DISABLE INMATES BEING HOUSED AND OTHER GALLERIES IN
THE NORTH II SEGREGATION BUILDING HOUSED INMATES, WITH NO
DISABILITIES.

**C.)** DEFENDANT (AS NAMED IN PARAGRAPH # 207) REFUSED TO PROVIDE A
REASONABLE AND MEANINGFUL ACCESS TO THE NORTH II SEGREGATION
VISITING ROOM TO ACCOMMODATE PLAINTIFF AND OTHER DISABLED

PRISONERS. FOR EXAMPLE, WHEN CORRECTIONAL STAFF TAKES PLAINTIFF ON HIS VISITS, AND THERE IS A STAIR WAY, BEFORE PLAINTIFF CAN GO IN THE AREA WHERE THE VISITING BOOTHS IS LOCATED AT; PLAINTIFF IS DISABLE AND WHEELCHAIR BOUND AND IT IS IMPOSSIBLE FOR HIM TO ROLL UP THE STAIR WAY AND SOMETIMES ALMOST DROPPED THE PLAINTIFF, FURTHERMORE, IN THE VISITING ROOM AREA, THERE ARE  SEVERAL SMALL VISITING BOOTHS THAT HAS A STEEL STOOL IN THE MIDDLE OF THE BOOTH, THESE BOOTHS ARE SPECIFICALLY MADE FOR HEALTHY AND WALKING PRISONERS NOT FOR DISABLED AND WHEELCHAIR BOUND PRISONERS, AND M.C. DOES NOT ANY WHEELCHAIR ACCESSIBLE BOOTHS. ALTHOUGH PLAINTIFF WAS FORCED TO USE THE LAWYER BOOTHS WHICH ARE NOT WHEELCHAIR ACCESSIBLE, BUT CORRECTIONAL STAFF MANAGED TO SQUEEZE PLAINTIFF IN HIS WHEELCHAIR IN THE COMPACTED BOOTH, WHICH ALSO HAS A STATIONERY STEEL STOOL IN THE MIDDLE OF THE SAID VISITING BOOTH, HOWEVER, THERE IS A SMALL SPACE ON THE SIDES OF THE STOOL, BUT PLAINTIFF IS "DELIBERATELY" SUBJECTED TO EXCRUCIATING PAINS, BECAUSE HIS LOWER EXTREMITIES ("KNEES") IS PRESS HARD AGAINST THE STEEL STOOL, WHILE HE (PLAINTIFF) ATTEMPTS TO TALK TO HIS LOVED ONES BY LEANING OVER TO THE VOICE BOX MONITOR THAT IS IN THE MIDDLE OF THE BOOTH ATTACHED TO A THICK "BULLET PROOF- LIKE" GLASS, WHILE STRAINING HIS NECK (PLEASE NOTE - PLAINTIFF HAS A LARGE BULLET FRAGMENT EMBEDDED IN HIS C6;C7 SPINAL CORD AND SOMETIMES PLAINTIFF'S FAMILY COULD NOT HEAR HIM AT TIMES, BECAUSE HE (PLAINTIFF) IS NOT ABLE TO SPEAK DIRECTLY INTO THE VOICE BOX, THIS OCCURRED ON JUNE 9, 2001 AUGUST 25-26, 2001, OCTOBER 7, 2001, E. T. C.. SEVERE MORE OTHER DAYS. THEREFORE THE VISITING ROOM IS BUILT ONLY FOR HEALTHY PRISONERS, NOT FOR DISABLED WHEELCHAIR BOUND PRISONERS.

**D.)** DEFENDANTS (AS NAMED IN PARAGRAPH # 207) REFUSED TO PROVIDE REASONABLE AND MEANINGFUL ACCESS TO SEGREGATION UNIT YARD. BECAUSE PLAINTIFF AND OTHER DISABLED / WHEELCHAIR BOUND PRISONERS DELIBERATELY SEPARATED OR NOT ALLOWED TO CONGREGATE ON A SINGLE YARD TO PARTICIPATE IN GROUP RECREATION ACTIVITIES SUCH AS, BASKETBALL GAMES, CARD PLAYING OR JUST SOCIAL ACTIVITIES E T C. CORRECTIONAL STAFF SEPARATE ALL DISABLE WHEELCHAIR BOUND PRISONERS BEING HOUSED ON NORTH II C WING ON SEG. STATUS, NOT ANY ON PROTECTIVE CUSTODY STATUS; THEREFORE THERE WAS NO SECURITY INTEREST INVOLVED AND MOREOVER, HEALTHY PRISONERS WHO ARE IN SEGREGATION STATUS, WHO ALSO BEING ON THE NORTH II SEGREGATION ANNEX BUILDING IS ALLOWED TO CONGREGATE ON THE SAME YARD TO PLAY BASKETBALL AND OTHER RECREATIONAL ACTIVITIES ON THE SAME YARD TOGETHER, BUT NOT DISABLE PRISONERS FURTHERMORE, MCC DO NOT HAVE WHEELCHAIR ACCESSIBLE TOILET FACILITY ON THE SEGREGATION YARD. THE TOILET FACILITY ON THE SEGREGATION YARD. THE TOILET FACILITY IS DESIGNED ONLY FOR HEALTHY WALKING PRISONERS, PLAINTIFF WAS IN NEED TO USE THE TOILET FACILITY BADLY, BUT BECAUSE OF THE NARROWNESS OF THE GATE WAY AREA LEADING TOWARDS THE TOILET FACILITY AND THERE IS

A STEP TO THE TOILET AREA, MAKING IT IMPOSSIBLE FOR PLAINTIFF'S
WHEELCHAIR TO FIT THROUGH THERE, THEREFORE, PLAINTIFF WAS FORCED TO
CALL FOR CORRECTIONAL STAFF TO TAKE HIM INSIDE TO USE THE TOILET
FACILITY INSIDE, BUT SUCH SAID STAFF REFUSED TO BRING PLAINTIFF BACK
OUT TO YARD ONCE HE HAD FINISHED AND DELIBERATELY CONTINUED HIS
(PLAINTIFF) YARD - TIME.

**E.)** DEFENDANTS (AS NAMED IN PARAGRAPH #207) REFUSED TO PROVIDE A
REASONABLE AND MEANINGFUL ACCESS TO THE SERVICES OF WHEELCHAIR
ACCESSIBLE TRANSPORTATIONAL VAN MOREOVER ON THE FOLLOWING DATES
MARCH 2, 2001 AT 2:00 A. M, PLAINTIFF HAD AN COURT WRIT TO HAVE KANE
COUNTY COURTHOUSE, AT WHICH TIME CORRECTIONAL OFFICERS WESTERN
MAN AND ROWLAND PROCEEDED TO PUT ON MANY STEEL HAND- CUFFS AND
CHAINS WITH A MEDICAL BLACK BOX RESTRAINTS ON HIM (PLAINTIFF);
PLAINTIFF IMMEDIATELY ADVISED THE OFFICERS THAT HE NEEDED
REASONABLE ACCOMMODATION FOR HIS DISABILITIES PROPHESIES SUPPORT
DEVICES (PARTICULARLY- RIGHT HAND / WRIST AND FOOT / AND LEG SPLINTS ,)
THESE DEVICES ARE NECESSARY TO PREVENT MUSCULAR HAND CONTRACTION
OR RIGHT CLAW LIKE HAND AND WRIST DROP AND PREVENT FOOT DROP AND
ENCOURAGE CIRCULATION IN THE FOOT. MORE OVER, SUCH PROSTHETIC
DEVICES SUPPORTS PLAINTIFF DISABILITIES AND SUPPRESS PAINS, BUT
UNFORTUNATELY, THE OFFICER WAS INSTRUCTED TO DISREGARD MEDICAL
SPLINTS BECAUSE THE RESTRAINTS WILL NOT FIT OVER THE SPLINTS (PLEASE
NOTE- PLAINTIFF WAS AT AN ADA FACILITY [PNKCC] AND THERE, WHEN
PLAINTIFF WOULD GO ON COURT WRIT, THE SECURITY STAFF WOULD
ACCOMMODATE PLAINTIFF NEED FOR MEDICAL SPLINTS, BY USING PLASTIC
PLEXUS-CUFF RESTRAINTS TO FIT OVER THE SPLINT, ALSO HAVE A
WHEELCHAIR ACCESSIBLE TRANSPORTIONAL VAN AND PROCEEDED TO HAND -
CUFF PLAINTIFF WITHOUT HIS HAND AND FOOT-SPLINTS, BY USING A MEDICAL
BLACK BOX THAT INEVITABLY CUT OF CIRCULATION AND CAUSED SEVERE
EXCRUCIATING PAINFUL RIGHT- HAND AND WRIST CONTRACTIONS AND THE
RIGHT FOOT BEGAN TO SWELL UP ON PLAINTIFF FURTHER, OFFICERS, BEGUN TO
WHEEL PLAINTIFF TO THE FRONT OF MENARD'S PARKING LOT , IN HIS
WHHELCHAIR . THEN THE OFFICERS OPEN DOORS ON A TRANSPORTATIONAL
VAN FOR INMATES THAT CAN WALK (NOT FOR WHEELCHAIR DISABLED BOUND
INMATES) AND BEGUN TO PICK PLAINTIFF UP OUT OF HIS WHEELCHAIR BY HIS
NECK AND SHOULDERS AND LEGS TOSS   HIM (PLAINTIFF) ON THE FLOOR OF THE
VAN, THEN PROCEED TO DRAG PLAINTIFF ACROSS THE FLOOR OF THE VAN BY
HIS SHOULDER (PLEASE NOTE - THIS PULLING ON PLAINTIFF SHOULDER CAUSED
OR AGITATED CHRONIC INJURIES TO THE RIGHT SHOULDER JOINT AREA,
BECAUSE OF THE MULTIPLE BULLET FRAGMENTS ENCAPSULATED AROUND
THAT AREA )
TO VANS SEAT AND THEN PICK PLAINTIFF OFF THE (* THE DRAGGING OF THE
PLAINTIFF CAUSING SCRAPES AND ABRASION) AND PUT HIM IN THE VAN SEAT,
THAT IS NOT STABILIZE TO SUPPORT PLAINTIFF'S DISABILITIES. PLAINTIFF WAS
FORCED TO ENDURE AN APPROXIMATELY 16 HOURS TO 20 HRS ROUND TRIP OF

CONTINUOUSLY BOUNCING AROUND, SEAT BELT INADEQUATELY, BUMPING HIS HEAD AGAINST THE VAN'S WINDOW EVERY TIME THE VAN HIT A BUMP, AFTER A LONG ROAD TRIP, PLAINTIFF SUFFER SEVERE HEADACHE, SORE TAILBONE, AND BUTTOCKS SCRATCHES FROM BEING DRAGGED, SWOLLEN LOWER EXTREMITIES, SWOLLEN RIGHT HAND, AND SEVERE PAINFUL CLAW-LIKE CONTRACTION, AND RIGHT- HAND ALSO REVEALS A PALE GREENISH COLOR, PLAINTIFF FURTHER ASSERTS THAT THE SAME DISCRIMINATION REPEATEDLY OCCURRED FROM MARCH 2, 2001 TO APRIL 4, 2001, EVERY TIME PLAINTIFF WENT ON COURT WRITS (PLEASE NOTE- IN JANUARY, 2001 MCC BORROWED PNKCC'S VAN)

**F.)** DEFENDANT (AS NAMED IN PARAGRAPH #207) REFUSED TO PROVIDE A REASONABLE AND MEANING ACCESS TO PHYSICIAN'S MEDICAL PRESCRIBED PROSTHETIC DEVICES THAT IS NEEDED TO SUPPORT PLAINTIFF'S DISABILITIES, PLAINTIFF ASSERT THAT HE IS FORCED TO BE WITHOUT HIS (PLAINTIFF) RIGHT - HAND AND WRIST SPLINT AND RIGHT- FOOT AND LOWER LEG SPLINT, EVERY TIME HE GOES TO HIS (PLAINTIFF) CELLHOUSE (NORTH II C- WING) TO GO ON A CALL PASSES OR / AND OTHER MISCELLANEOUS ACTIVITIES AROUND THE MCC; THE CORRECTIONAL STAFF HAVE TO PUT HAND- CUFF ON ALL INMATES IN THE SEGREGATION UNIT, BEFORE THEY COME OUT OF THEIR CELL HOUSES AS MCC POLICY. THESE SHACKLES RESTRAINT ARE PUT ON BOTH PLAINTIFF'S RIGHT AND LEFT WRISTS AND ANKLES MAKING IT IMPOSSIBLE FOR PLAINTIFF TO WEAR HIS SPLINTS. FURTHER MORE PLAINTIFF REITERATE THAT WHEN HE GOES ON HIS (PLAINTIFF) COURT WRITS, HE IS FORCED TO DO WITHOUT HIS SPLINTS OVER A 14 TO 16 HOUR PERIOD OF TIME, LEAVING PLAINTIFF TO SQUABBLE IN EXCRUCIATING PAINS, RIGHT- HAND AND WRIST CONTRACTIONS SWOLLEN RIGHT LOWER EXTREMITY (LEG AND FOOT), THIS PROSTHETIC DEVICES (WRIST / HAND AND FOOT / LOWER LEG SPLINT) IS USED TO STRAIGHTEN OUT PLAINTIFF'S PARALYZE RIGHT HAND AND WRIST WHICH IS CONSTANTLY IN CLAW - LIKE FOOT DROP FOR PARALYSIS LOWER EXTREMITIES. THE BENEFIT OF SUCH DEVICES IS TO ENCOURAGE FLEXIBILITY, PREVENT PERMANENT WRIST DROP, AND TO PROVIDE BLOOD CIRCULATION IN THOSE AREAS. HOWEVER, WHILE PLAINTIFF IS IN HIS CELL HE WEARS SUCH DEVICES FROM 18 TO 12 HOURS A DAY

**G.)** DEFENDANT (AS NAMED IN PARAGRAPH #207) REFUSED TO PROVIDE A REASONABLE ANDS MEANINGFUL ACCESS TO A WHEELCHAIR ACCESSIBLE RAMP ON THE "NORTH II ANNEX BUILDING FOURTH FLOOR A. D. A C WING SEGREGATION UNIT" AT THE M.C." PLAINTIFF ASSERTS THAT ON MARCH 8 2001, THERE WAS A FIRE ON NORTH II C WING. UNFORTUNATELY BECAUSE THERE ARE NO WHEELCHAIR ACCESSIBLE RAMP OFF THE FORTH FLOOR C- WING, THE CORRECTIONAL STAFF HAD TO EVACUATE ALL THE HEALTHY / WALKING INMATES THAT WERE ON C - WING DOWN TO THE THIRD FLOOR AND PUT ALL THE DISABLED WHEELCHAIR BOUND INMATES INCLUDING THE PLAINTIFF IN THE FOURTH FLOOR SHOWER AREA, SUBJECTING THE DISABLE INMATES TO IN HAVE SMOKE CAUSING CHOKING AND COUGHING, (ALTHOUGH THERE ARE

ELEVATOR ON THE FOURTH FLOOR, BUT CANNOT BE USED DURING A FIRE, ACCORDING TO FIRE HAZARD POLICY.)

**H.)** DEFENDANT (AS NAMED IN PARAGRAPH #207) REFUSED TO PROVIDE REASONABLE AND MEANINGFUL ACCESS TO HIS (PLAINTIFF'S) TYPEWRITER TO ASSIST HIM WRITING SPECIFIC LEGAL DOCUMENTS TO COURT, WHICH CLEARLY STATES ALL FILED LEGAL DOCUMENTS MUST BE FILED IN A LEGIBLE MANNER. HOWEVER PLAINTIFF IS PARALYZED IN RIGHT - HAND (WRITING HAND), BUT STRUGGLE TO WRITE WITH LEFT - HAND; AND HIS (PLAINTIFF) WRITING IS AT TIMES UNLEGIBLE, PLAINTIFF HAD TO PAY OTHER INMATES TO NEATLY WRITE LEGAL DOCUMENTS OR SEND AND HAVE FAMILY MEMBERS TO TYPE SAID LEGAL DOCUMENTS FOR HIM. ALTHOUGH, M.C. LAW LIBRARY HAS TYPEWRITERS OR HAS STAFF TO TYPE LEGAL DOCUMENTS FOR HEALTHY INMATES, BUT NOT THE DISABLE INMATES.

**210.)** PLAINTIFF FURTHER ASSERTS THAT THE DEFENDANT (AS NAMED PARAGRAPH #207) INTENTIONALLY ACTED ON THE BASIS OF HIS (PLAINTIFF) DISABILITY (AS DESCRIBED IN PARAGRAPH 209A-H); DEFENDANT REFUSED TO PROVIDE A REASONABLE MODIFICATIONS AND OR RULE DISPROPORTIONATELY IMPACTS DISABLE PRISONERS, HOWEVER, THE MODIFICATION OF THE RULE OR POLICY WOULD NOT PLACE AN UNDUE FINANCIAL OR ADMINISTRATIVE BURDEN ON ILLINOIS DEPARTMENT OF CORRECTION (I. D. O. C).

**211.)** DEFENDANT (AS NAMED PARAGRAPH #207) ACTED BEYOND THE SCOPE OF THEIR DEFENDANTS EMPLOYMENT THROUGH WRONGFUL ACTS AND DUTIES BREACHED, WAS NOT OWED TO THE PUBLIC GENERALLY INDEPENDENT OF FACTS OF STATE EMPLOYMENT, AND PLAINTIFF'S COMPLAINED FACTIONS (AS DESCRIBED IN PARAGRAPH # 209 A-H) INVOLVED MATTERS ORDINARY WITHIN NORMAL AND OFFICIAL FUNCTIONS

**212.)** PLAINTIFF ASSERTS THAT HE A PARAPLEGIA, AND WAS DENIED THE BENEFITS OF OR SUBJECTED TO DISCRIMINATION UNDER THE PROGRAMS, ACTIVITIES AND SERVICES AT I. D. O. C (AS DESCRIBED IN PARAGRAPH #209 A- H) SOLELY BECAUSE OF PLAINTIFF'S DISABILITY.

**213.)** FROM FEBRUARY 2001 TO PRESENT, PLAINTIFF HAS FILED NUMEROUS OF GRIEVANCES PERTAINING TO THE DENIAL OF THE BENEFITS OF, BEING EXCLUDED FROM PARTICIPATION IN OR SUBJECTED TO DISCRIMINATION UNDER THE PROGRAMS, ACTIVITIES AND SERVICES AT I. D. O. C (AS DESCRIBED IN PARAGRAPH # 209 A- H) SOLELY BECAUSE OF PLAINTIFF'S DISABILITY IT IS THE PLAINTIFF'S BELIEF AND UNDERSTANDING BASED UPON HISTORICAL FACTORS AND PRACTICES OF THE PRISON OFFICIALS, AMONGST OTHER REASONS, THAT WHEN HE FILED HIS GRIEVANCES, THE GRIEVANCE OFFICER (DEFENDANT WITTENBORN ) CALLED THE MATTER(S) TO THE ATTENTION OF DEFENDANT (AS NAMED IN PARAGRAPH #207), BUT EACH OF THESE DEFENDANTS CORROBORATE AND THEN MADE THE COLLECTIVE DECISION TO DENY EACH OF THE

GRIEVANCES, OR OTHERWISE TURNED A BLIND EYE TO THE ISSUES, AND WITH
DEFENDANT DONALD N SNYDER LATER PERSONALLY CONCURRING WITH EACH
OF THE DENIALS EITHER OF THESE DEFENDANTS COULD HAVE EASILY TAKEN
CORRECTIVELY MEASURES AND POSSESSED THE AUTHORITY TO DO SO (REFER
TO ATTACHED TABLET OF EVIDENCE EXHIBITS FOR GRIEVANCES AND
RESPONSES)

**214.)** BECAUSE OF THE ACTIONS, OR INACTIONS OF DEFENDANT (AS NAMED IN
PARAGRAPH #207) AND I. D. O. C IN CONSCIOUSLY AND REPEATEDLY
DISCRIMINATED OR EXCLUDED PLAINTIFF FROM VARIOUS PROGRAMS,
ACTIVITIES, AND SERVICES AT I. D .O .C (AS ALLEGED THROUGHOUT THIS
COUNT) BASED SOLELY ON PLAINTIFF'S PARAPLEGIA, WITH PARTIAL TO HIS
RIGHT- SHOULDER, ARM, WRIST, AND HAND CONDITION, AND OVERALL
ILLINOIS DEPARTMENT OF CORRECTION IS A FEDERALLY FUNDED PROGRAM,
AND OVERALL THE DEFENDANT REFUSAL TO PROVIDE REASONABLE
MODIFICATION OR MEANINGFUL ACCESS TO PROGRAMS, SERVICES OR
ACTIVITIES TO ACCOMMODATE PLAINTIFF'S DISABILITY CONSTITUTES,
VIOLATION OF 504 REHABILITATION ACT OF 1973 (29 UNITED STATES
CONSTITUTION 794 ET SEQ), THIS MAKING IT LIABLE UNDER SECTION 504 OF THE
REHABILITATION ACT OF 1973;29 US . C & 794 ET SEQ
INJURIES.

**215.)** AS A PROXIMATE CAUSES OF THE DEFENDANTS' ACTIONS OR INACTIONS,
AS DESCRIBED THROUGHOUT THIS COUNT PLAINTIFF SUFFERED PROLONGED,
AND UNNECESSARY, EXCRUCIATING PAINS, AND DISCOMFORTS, PERMANENT
DISABILITIES, AND RELATED MENTAL INJURIES, i.e., STRESS, EMBARRASSMENT,
HUMILIATION, AND DEPRESSION.


## COUNT 17
## RETALIATION AND HARASSMENT

**216.)** PLAINTIFF FURTHER ASSERTS THAT HE WAS DELIBERATELY SUBJECTED TO
A CONTINUOUS PATTERN OF CALCULATED HARASSMENT AND RETALIATION
INITIATED AT THE HANDS OF DEFENDANTS ELISE REA AND CONDONED BY
MARY WEST (PARALEGAL), COWEN, AND WALLS BECAUSE OF THE PLAINTIFF'S
MANY FILED GRIEVANCES COMPLAINING OF DENIAL OF MEDICAL TREATMENTS
AND / OR DENIAL OF MEANINGFUL ACCESS TO LEGAL SUPPLIES, AND
LITIGATION PURSUITS TO REDRESS THE SAID ISSUES 9 DENIAL OF MEDICAL
TREATMENTS) IN THE COURT (STATE / FEDERAL);

**217.)** BEGINNING ON FEBRUARY, 2001 TO PRESENT, DEFENDANTS WEST, WALLS
COWEN, AND REA EACH PERSONALLY PARTICIPATED (INDIVIDUAL AND / OR

COLLECTIVELY) IN IMPLEMENTING, DESIGNING OR DICTATING POLICIES OR CUSTOMS WHICH DRASTICALLY AND CONTINUOUSLY BROUGHT PLAINTIFF'S HEALTH AND MENTAL CONDITIONS TO INHUMANE AND BARBAROUS LEVELS, WHILE STRATEGICALLY USING HARASSMENT TACTICS TO CURTAIL PLAINTIFF'S EXERCISE OF HIS FIRST AMENDMENT RIGHT.

**OF ACCESS TO THE COURT AND TO THE OTHER HAND, DELIBERATELY USING THE PRISON DISCIPLINARY PROCESS AS RETRIBUTION FOR FILING OF A GRIEVANCE TO VIOLATION OF PLAINTIFF'S FOURTEENTH.**

[1.] **218.)** ON APRIL 24, 200, PLAINTIFF REQUESTED TO HAVE LEGAL DOCUMENTS COPIES, FROM DEFENDANT RE, WHO AT THE TIME WAS MAKING HER LEGAL ROUNDS ON NORTH II C- WING AT M.C. PLAINTIFF GAVE MRS. REA, LEGAL CRIMINAL COMPLAINT AGAINST PNKCC'S MEDICAL STAFF (AS NAMED IN COUNT 5) TO BE COPIED.

**219.)** ON MAY 1, 2001, DEFENDANT REA APPROACHED PLAINTIFF'S CELL HOUSE (NORTH II C-7) WITH LEGAL PAPERS, AND (PLAINTIFF OBSERVED MRS. REA FACIAL EXPRESSION OF ANGER AND AGITATION) STATED " I HEARD ABOUT YOU (PLAINTIFF) FROM MRS. COLLEEN (PNKCC'S PARALEGAL) THAT YOU ARE A TROUBLE MAKER AND INSTIGATOR! AND WE DO NOT LIKE TROUBLE MAKERS WHO CHALLENGE THE STATE, AND THEY NEVER GET WHAT THEY AKS FOR" PLAINTIFF REPLIED " I AM NOT A TROUBLE MAKER, I DOM NOT KNOW WHY MRS. COLLEEN CALLED ME A TROUBLE MAKER." MRS. REA, GAVE PLAINTIFF HIS LEGAL PAPER, AND BELLIGERENTLY STORMED OFF FROM PLAINTIFF'S CELL.

**220.)** THIS STATEMENT BY DEFENDANT REA (AS DESCRIBED IN PARAGRAPH # 219) INSTILLED TERROR AND AROUSING SUSPICION INTO PLAINTIFF, BECAUSE HE (PLAINTIFF) IS FORCED OR HAS TO TOTALLY DEPEND ON THIS LAW CLERK (DEFENDANT REA) FOR ALL HIS LEGAL SUPPLIES, MATERIALS, RESEARCH, BOOKS AND PHOTOCOPIES, AND IF SHE (REA) BELIEVES THAT IF PLAINTIFF FILES A PETITION AGAINST ILLINOIS DEPARTMENT OF CORRECTIONS, THAT HE MAY BE LABELED A "TROUBLEMAKER" AND MAY NOT GIVE PLAINTIFF THE LEGAL MATERIALS HE NEED TO ADDRESS THE COURT, IS MING BLOWING.

**221.)** DURING MAY, 2001, PLAINTIFF REPEATEDLY MADE REQUESTS FOR LEGAL MATERIALS, - PARTICULARLY TYPING PAPERS (8 ½ BY 11) AND LEGAL ENVELOPS, FROM DEFENDANT REA, PLAINTIFF CLEARLY STRESSED THAT IT IS VERY IMPORTANT THAT HE HAVE SUPPLIES TO DRAFT UP CIVIL COMPLAINT, MANDAMUS MOTIONS etc. TO BE FILED IN BOTH STATE AND FEDERAL COURTS; AND MOREOVER TO BE ABLE TO COMMUNICATE WITH HIS (PLAINTIFF'S) VARIOUS ATTORNEY PERTAINING TO HIS ONGOING CRIMINAL TRIALS, IN THE APPELLATE COURT AND STATE COURT: BUT UNFORTUNATELY, DEFENDANT REA WILL DENY PLAINTIFF REQUEST ON GROUND OF MCC'S POLICY THAT "ALL NON-INDIGENT INMATES MUST BUY THEIR OWN LEGAL; SUPPLIES FROM COMMISSARY OR INDIGENT INMATES MUST REQUEST LEGAL SUPPLIES FROM THE COMMISSARY HYGIENE BAG AND / OR IF SUCH INMATE HAS DEADLINES,

THEN LAW CLERK WILL GIVE INMATE SUCH SUPPLIES" (NOTE AT THE TIME OF INCIDENT, AS STATED ABOVE PLAINTIFF WAS ON THE INDIGENT ) (SEE FOOT NOTE)

**222.)** SUBSEQUENTLY PLAINTIFF FILED GRIEVANCE ON DEFENDANT REA DENIAL OF LEGAL SUPPLIES (AS DESCRIBED PARAGRAPH #221); GRIEVANCE OFFICER:" DEFENDANT WITTENBORN BROUGHT MATTER TO THE RESPONSIBLE PARTIES (DEFENDANT COWEN, AND WEST) BUT ONLY TO NO AVAIL.

**223.)** BEGINNING ON APRIL 124 TO PRESENT PLAINTIFF ASSERTS THAT HE WAS DELIBERATELY SUBJECTED TO A CONTINUOS PATTERN OF CALCULATED HARASSMENT AND RETALIATION INITIATED AT THE HANDS OF DEFENDANT REA AND CONDONE BY WEST AND COWEN AND WALLS, FURTHER MORE, DEFENDANT REA'S ACTION OF DELIBERATELY DENYING LEGAL SUPPLIES, VERBAL ABUSE AND DISRESPECT WITHHOLDING LEGAL DOCUMENTS, INTIMIDATIONS AND THREATS AND DENYING PHOTOCOPIES, DENYING ACCESS TO LEGAL BOOKS, AND RETALIATION AGAINST THE PLAINTIFF, IS CLEARLY DEMONSTRATED THROUGH ACCESS OF CLOSELY RELATED CIRCUMSTANTIAL INCIDENTS; IT IS BELIEVED THAT DEFENDANT EACH PERSONALLY PARTICIPATED ( INDIVIDUALLY AND / OR COLLECTIVELY) IN STRATEGICALLY USING HARASSMENT TACTICS TO SABOTAGE PLAINTIFF'S PENDING COMPLAINT AND / OR CURTAIL PLAINTIFF'S EXERCISE OF HIS FIRST AMENDMENT RIGHT OF ACCESS TO THE COURT OR SIMPLY TO ENSTATE AND TO INFLICT MENTAL ANGUISH UPON THE PLAINTIF, IS REVEAL IN THE FOLLOEING INCIDENTS

FOOT- NOTE: HOWEVER, DEFENDANT REA DID GIVE THE PLAINTIFF A SPARSE AMOUNT OF LEGAL SUPPLIES, BUT NOT AN ADEQUATE AMOUNT

**A.)** ON APRIL? 2001. PLAINTIFF HAD TO VOLUNTARY DISMISS HIS WRIT OF MANDAMUS TO COMPELLED DEPENDANTS TO STOP DENYING HIS ONCE PRESCRIBED MEDICAL TREATMENT ONLY HE IS IN SEGREGATION, IN VIOLATION OF ILLINOIS STATE STATURE. PLAINTIFF ASSERTS THAT BECAUSE DEFENDANT REA REPEATEDLY DENIED HIM LEGAL SUPPLIES, HE (PLAINTIFF) WAS NOT ABLE TO MAINTAIN SAID LITIGATION.

**B.)** ON MAY 8, AND 24, 2001, PLAINTIFF FILED GRIEVANCES PERTAINING TO: DEFENDANT REA REPEATEDLY DENYING OR PUTTING RETRICTION ON PLAINTIFF'S LEGAL SUPPLIES, IN WHICH CAUSED A HINDERING IN COMMUNICATING WITH THE COURTS AND / OR ATTORNEY, AND THE FACT THAT DEFENDANT WEST CONDONE THIS DENIAL POLICY "THAT FOR INMATE TO RECEIVE LEGAL SUPPLIES HE MUST HAVE A DEADLINE."

**C.)** ON JULY17, 2001, ON THE 7:00 A. M TO 3:00 P. M SHIFT, DEFENDANT REA WAS TOURING THE NORTH II C- WING, SAID DEFENDANT APPROACHED PLAINTIFF'S CELL (CELL-7) AND PLAINTIFF REQUESTED FOR TYPING PAPERS 8 ½ BY 11 TO DRAFT UP HIS CIVIL RIGHT LAWSUIT. MRS. REA LOOKED AT THE PLAINTIFF WITH

A VERY ANGRY LOOK ON HER FACE AND IN A VERY LOUD VOICE (WHICH COULD
BE HEARD BY OTHER INMATES ON THE C- WING) SAY I'M TIRED OF YOUR ASS
WITH THIS FILING GRIEVANCES ON ME AND THIS TYPING PAPER SHIT!"
PLAINTIFF REPLIED, "AS YOU (REA) KNOW I AM INDIGENT AND HAVE NO OTHER
WAY OF GETTING PAPERS." MRS REA RESPONDED, "FUCK YOU, I DON'T HAVE TO
GIVE YOU SHIT AND IF YOU KEEP FUCKING WITH ME I'LL SEE TO IT THAT ANY
LEGAL WORK YOU HAVE AT THE LAW LIBRARY IS ALWAYS DELAYED,"
PLAINTIFF DID NOT RECEIVE ANY LEGAL SUPPLIES, AS DEFENDANT AND REA
STORMED OFF FROM HIS CELL DOOR.

**D.)** ON JULY 26, 2001, DURING 7:00 A. M TO 3:00 P. M, SHIFT DEFENDANT MADE
ROUNDS ON C - WING AGAIN. WHEN SHE APPROACHED PLAINTIFF'S CELL, SHE
(REA) ASKED " IF PLAINTIFF NEDED ANYTHING." PLAINITIFF'S REPLIED, " I NEED
TYPING PAPER AND AMONGST OTHER LEGAL SUPPLIES TO COMMUNICATE A
LEGAL MATTER TO THE CLERK OF THE COURT." MRS. REA REPLIED, "I'M NOT IN
THE BUSINESS OF GIVING LEGAL SUPPLIES." PLAINTIFF GAVE MRS REA A
WARDEN MEMO (WHICH INMATE GRANT N53705 GAVE TO PLAINTIFF THE DAY
PRIOR) WHICH STATES THAT INDIGENT PRISONERS WHO RUN OUT OF LEGAL
SUPPLIES ISSUED IN THEIR HYGIENE BAGS ARE REQUESTED FOR ADDITIONAL
LEGAL SUPPLIES FROM LAW LIBRARY STAFF." MRS REA AFTER READING THE
WARDEN'S MEMO AND REPLIED, "WELL THE SEGREGATION UNIT HAS A
DIFFERENT POLICY." PLAINTIFF REPLIED, "ARE YOU SAYING STAFF ASSIGNED
TO THE SEGREGATION UNIT CAN OVER RULE THE CHIEF ADMINISTRATIVE
OFFICER AND HIS MEMO." MRS REA GAVE PLAINTIFF THE MEMO BACK THE
SLAMMED THE FOOD- SLOT WITHOUT GIVING HIM (PLAINTIFF) THE LEGAL
SUPPLIES HE REQUESTED, THEREFORE, SUBJECTING PLAINTIFF TO SACRIFICE
AND TRADE HIS MEALS WITH OTHER INMATES TO GET LEGAL SUPPLIES, (THIS
CONVERSATION WAS EASILY OVERHEARD)

**E.)** ON NOVEMBER 6, 2001, AT 1:30 P. M, DEFENDANT REA MADE ROUNDS ON
EWING, WHEN SHE APPROACHED PLAINTIFF'S CELL; IMMEDIATELY PLAINTIFF
SHOWED MRS REA A MOTION (CONCERNING HIM BEING DENIED MEDICAL
TREATMENT) AND THAT HE (PLAINTIFF) NEEDED ENVELOPED AND
PHOTOCOPIES OF GRIEVANCES TO SUPPORT SAID MOTION, MRS, REA READ THE
MOTION, AND BEGIN STATE, "I'M NOT GIVING YOU NO ENVELOPES, TYPING
PAPER OR THE POST- CONVICTION BOOK (SHE LIED CLAIMING SAID BOX IS NOT
IN SEG. UNIT, BUT PLAINTIFF SHOWED PROOF SHE GAVE HIM THIS SAME BOOK
BEFORE) AND MRS. REA FURTHER STATED, " I DON'T GIVE A DAMN ABOUT YOUR
MEDICAL CONDITIONS, THE STATE IS BROKE AND I'M NOT GIVEN YOU NO
PAPERS AND YOU CAN FILED A GRIEVANCE TO WARDEN ABOUT THAT TOO,
SINCE YOU LIKE WRITING GRIEVANCES ON ME." PLAINTIFF DID NOT RECEIVE
THE LEGAL SUPPLIES HE REQUESTED FOR.

**F.)** ON NOVEMBER20, 2001, MRS. REA WHO WAS MAKING HER ROUNDS,
ROUTINELY APPROACHED PLAINTIFF'S CELL 7, AND ONCE AGAIN, SHE (REA)
DENIED PLAINTIFF REQUESTED LEGAL SUPPLIES AND EVEN MORE, MRS REA

FALSELY CHARGED PLAINTIFF OF DESTROYING CASE LOAN, THAT PLAINTIFF EASILY REFUTE, PLAINTIFF ASKED MRS REA, "WHY ARE YOU RETAILIATING AND HARASS ME" MRS. REA REPLIED, "STOP BITCHING, AND WRITING GRIEVANCES ON ME THEN YOU PROBABLY TO GIVE YOU SHIT. AND IF YOU KEEP THIS UP I'M WRITE YOU A DISCIPLINARY TICKET TO GET YOUR T. V PRIVILEDGE TAKING AWAY."

**G.)** FROM APRIL, 2001 TO PRESENT, DEFENDANT REA REPEATEDLY HARASS AND RETAILATED AGAINST THE PLAINTIFF, BY READING HIS LEGAL DOCUMENTS WHEN HE (PLAINTIFF) GIVE TO HER TO BE COPY, DENIED LEGAL SUPPLIES OR GIVE HIM SPARSE LEGAL SUPPLIES NOT ADEQUATE TO DRAFT UP A COMPLAINT, VERBAL AND HOSTILE DISRESPECTFULLY.

**TRAETING THE PLAINTIFF, THREATENING HIM TO FILE DISCIPLINARY TICKET
AGAINST FOR WRITING GRIEVANCES ABOUT HER.**

**224.)** ON NOVEMBER 22, 2001, PLAINTIFF SENT LETTER AND FILED GRIEVANCE, TO DEFENDANT WALLS, REQUESTING FOR HIM TO CURB THE HARASSMENT AND RETAILIATION PRACTICES (AS DESCRIBED IN PARAGRAPH #223 A-G) AGAINST HIM (PLAINTIFF); GRIEVANCE OFFICER, DEFENDANT WITTENBORN BROUGHT MATTER TO ATTENTION TO DEFENDANT WEST, ANDREA, WHO HAVE THE AUTHORITY TO STOP THEIR OWN HARASSMENT TACTICS, (HOSE NOT TO, AND ENCOURAGE THE SAID TACTICS).

**225.)** AFTER PLAINTIFF FILED HIS GRIEVANCES (AS DESCRIBED IN PARAGRAPH # 225) DEFENDANT ELISA REA "DELIBERATELY" AND WHILE STRATEGICALLY USING REITAILITY TACTIC TO CURTAIL PLAINTIFF FIRST AMENDMENT RIGHT OF ACCESS TO COURT, BY USING THE PRISON DISCIPLINARY PROCESS AS RETRIBUTION FOR THE FILING OF A GRIEVANCE AGAINST HER (REA) AND BECAUSE OF PLAINTIFF PETITION FOR WRIT OF MANDAMUS AGAINST DEFENDANT SNYDER, FOR EXAMPLES:

**A.)** ON JANUARY 24.2002, AT 9:00 A. M, DEFENDANT REA FILED A DISCIPLINARY REPORT AGAINST THE PLAINTIFF ALLEGING "THAT PLAINTIFF ALLEGING "THAT PLAINTIFF GAVE FALSE INFORMATION TO EMPLOYEE AND ABUSE OF PRIVILEDGES, THAT WHILE SHE (REA) PROCESSING A COPY REQUEST PICKED UP FROM PLAINTIFF (ON JANUARY 22, 2002) THIS (REA) NOTICED THAT PLAINTIFF HAD WRITTEN ON THE BACK OF ANOTHER LEGAL DOCUMENT AND THAT THIS LEGAL PLAINTIFF HAD HER (REA) NOTARIZED AND COPIED BACK IN APRIL, CONSTITUTES FALSE INFORMATION." ON JANUARY 28, 2002 AT 10:20 A. M, PLAINTIFF WAS SEEN BY THE ADJUSTMENT COMMITTEE FOR FINAL SUMMARY REPORT ON DEFENDANT REA BOGUS TICKET. PLAINTIFF EXPLAINED THAT BECAUSE MRS REA HAVE REPEATEDLY REFUSE TO GIVE HIM TYPING PAPERS, SO HE WAS SUBJECTED TO WRITE ON OLD LEGAL DOCUMNTS THAT HIS ATTORNEY

TOLD HIM (PLAINTIFF) NOT TO FILE AND SHOWED PROOF OF A LETTER OF HIS
ATTORNEY, THE ADJUSTMENT DISMISSED REPORT AGAINST PLAINTIFF.

**B.)** ON JANUARY 31,2002, AT 10:20, DEFENDANT REA FILED A DISCIPLINARY
REPORT AGAINST PLAINTIFF ALLEGING "PLAINTIFF'S BEGAN SAYING "BITCH,"
"DUMB ASS HONKEY," AND THE PLAINTIFF CONTINUED TO DO THIS FOR
SEVERAL MINUTES, AND MRS REA BELIEVED THAT PLAINTIFF WAS
INTENTIONALLY SAYING THESE THINGS TOWARDS HER (REA) ON FEBRUARY
14,2002, 10:10 A. M, PLAINTIFF WAS SEEN BY THE ADJUSTMENT COMMITTEE FOR
FINAL SUMMARY REPORT ON "HE NEVER CALL MRS REA A HONKEY OR A "DUMB
ASSHONKEY" NEITHER DID HE DISGUISE HIS VOICE . MORE IMPORTANTLY, MRS
REA WAS AT CEEL 4, WITH ANOTHER INMATE, PLAINTIFF IS IN CELL7, MINDING
HIS OWN BUSTNESS, AND WHEN REA CAME OVER TO PLAINTIFF HARASSING HIM
WITH NO REASON AT ALL, FURTHER MRS REA WAS ARGUING WITH ANOTHER
INMATE IN CELL 2." AFTER PLAINTIFF SPOKE, HE ASK FOR THE COMMITTEE TO
CALL ALL HIS WITNESS AND THAT INMATE IN CELL 2 SAID HE DIDN'T (NOTE-
INMATE IN CELL 2 RECEIVED A DISCIPLINARY TICKET BASED ON THE SAME
CIRCUMSTANCES). HOWEVER, LUETNENANT KAY A SURMAN TOLD PLAINTIFF
THAT MRS REA FILED AGAINST HIM, HAD NO MERIT, AND ALSO KNOWS THAT
MRS REA HAVE BEEN SENDING THEM (DISCIPLINARY TICKETS) AGAINST
INMATES THEN LIEUTENANT KAY A. SURMAN STATED TO PLAINTIFF "THAT I
KNOW ELISA REA AND I CAN'T JUST EXPUNGE THE TICKET SO I'LL GIVE YOU
ONE MONTH SEGREGATION AND LOSS OF COMMISSARY."

**226.)** PLAINTIFF FILED WRITTEN GRIEVANCES WHERE IN REQUESTED, AND
STRESS, THE NECESSARY TO STOP THE HARASSMENT AND RETAILIATION
TACTICS OF DENYING PLAINTIFF ADEQUATE LEGAL SUPPLIES, AND MATERIAL,
SABOTAGE HIS CASE, HOSTILE AND VERBAL ABUSE, INTIMIDATION AND
THREAT, RETAILAIATION FOR CHALLENGE THE STATE (I. D. O. C) ON MEDICAL
ISSUES OR FILING GRIEVANCE; AND MORE IMPORTANTLY USING THE
DISCIPLINARY PROCESS AS RETRIBUTION FOR THE FILING OF A GRIEVANCES
AGAINST DEFENDANT REA, ON INFORMATION AND BELIEF , WHEN PLAINTIFF
FILED HIS GRIEVANCE THE GRIEVANCE OFFICER; DEFENDANT WITTENBORN,
CALLED THE MATTER TO THE ATTENTION OF DEFENDANTS (AS NAMED IN
PARAGRAPH # 216) FOR REVIEW, EACH OF THESE INDIVIDUALS POSSESSED THE
CAPACITY (INDIVIDUAL AND / OR COLLECTIVELY ) AND OBLIGATION, TO STOP
THEIR HARASSMENT AND RETALIATORY TACTICS, IN WHICH THEY ARE THE
ONES THAT INITIATED SAID TACTICS. BUT NEITHER OF THESE DEFENDANTS
TOOK ANY STEPS TO CURB THE IS OWN RETAILIATION AGAINST PLAINTIFF AND
DENIED ANY CORRCTIVE RELIEF SOUGHT LATER APPEAL, AND HAVING A
MUTUAL AGREEMENT WITH DEFENDANT (AS NAMED IN PARAGRAPH # 217)
ACTIONS AGAINST PLAINTIFF.

**228.)** BECAUSE OF THE ACTIONS, OR INACTIONS, OF DEFENDANTS (AS NAMED IN
PARAGRAPH #226) IN CONSCIOUSLY AND REPEATEDLY PATTERN OF
CALCULATED HARASSMENT AND RETALIATION TACTICS AGAINST THE

PLAINTIFF (AS DESCRIBED IN PARAGRAPH #220, 221, 224A-; 226A-8) E.T.C AND
OVERALL CONDONING AND / OR TURNING "DELIBERATE" A BLIND EYE TO THE
SYSTEMATIC PRACTICE OF HARASSMENT AND RETALIATION MOTIVATED
TACTICS AGAINST THE PLAINTIFF WHILE AT MC; THEREFORE CONSTITUTES
"HARASSMENT AND RETALIATION" IN VIOLATION OF PLAINTIFF'S CIVIL RIGHT
UNDER THE FIRST AND FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION.

## CONCLUSION AND INJURIES

228.) AS APROXIMATE CAUSE OF THE DEFENDANT ACTIONS OR INACTIONS, AS
DESCRIBED THROUGH COUNT 1, 2, 3, 4, 5A TO E, 6, 7, 8, 11A TO H, 12, 13, 14, 15, AND
16, THE PLAINTIFF SUFFERED UNNECESSARY AND CONTINUING INJURIES AND
PAINS, TO THE DRAFTING DATE OF THIS COMPLAINT, IN WHICH A CONTINUOUS
SERIES OF EVENTS GIVES RISE TO CUMULATIVE INJURIES OF PERMENANT
DISABILITIES TO HIS RIGHT- SHOULDER, ARM, WRIST, HAND AND RIGHT LOWER
EXTREMITIES, SUFFERING EXCRUCIATED AN CHRONIC PAIN AND MASSIVE
INTERNAL NECK AREA WITH CONTINUOUS OBSTRUCTION IN BREATHING AND
SWALLOWING  DIFFICULTIES, THE LOST OF WAGER FOR ANY POTENTIAL JOBS,
DEFAMATION OF CHARACTER i.e., STRESS, EMBARRASSMENT, HUMILIATION,
AND DEPRESSION.

## EXHAUSTION

229.) PLAINTIFF HAS EXHAUSTED ALL AVAILABLE ADMISSION REMEDIES PRIOR
TO FILING THIS SUIT BUT ONLY TO HAVE THE REAL ISSUES AVERTED AND THE
GRIEVANCES DENIED (REFER TO TABLET OF EXHIBIT EVIDENCES)

### REQUEST FOR RELIEF

1. A DECLARATION THAT PLAINTIFF'S RIGHTS UNDER THE UNITED STATES
CONSTITUTION AND THE LAWS OF THE STATE OF ILLINOIS WERE VIOLATED.

2.  A INJUNCTIVE RELIEF, PLAINTIFF REALLEGE (AS DESCRIBED IN COUNTS 3; 11;
15: 16; 17) AS IF FULLY SET FORTH HEREIN, UNLESS ENJOINED FROM DOING SO,
DEFENDANT WILL CONTINUE TO WILLFULLY VIOLATE THE RIGHTS OF
PLAINTIFF. THESE CONTINUING VIOLATIONS CONSTITUTES IRREPAIRABLE
INJURIES FOR WHICH PLAINTIFF HAS NO ADEQUATE REMEDY AT LAW.
A. ISSUE AN INJUNCTION ORDERING DEFENDANTS DEBRA DECKER, GARY ARIBIS
AND "JANE DOE" TO:

1. IMMEDIATELY TRANSFER PLAINTIFF'S WINNEBAGO COUNTY JAIL'S MEDICAL
RECORDS, IN WHICH INCLUDES ALL ATTENDING PHYSICIANS,

PHYSICAL THERAPISTS, AND VAROIUS ATTENDING REGISTERING NURSES MEDICAL NOTATIONS, MEDICAL RECOMMENDATIONS, SURGERY RECOMMENDATIONS, PRESCRIBED MEDICATIONS, REHABILITATIONS PROGRESS NOTES, AND DAILY NURSES' OBSERVATION NOTES OF HIS (PLAINTIFF'S) SYMPTOMS AND / OR PROGRESS e. t .c THAT ACCUMULATED NOVEMBER 11, 1999 TO MARCH 20, 2OOO.

**B.** ISSUE AN INJUNCTION ORDERING DEFENDANTS ADRIAN FEINERMAN, PAM GRUBMAN, ALAN FRENTZEL, JONATHAN A. WALLS, ROGER COWEN, AND DONALD N SNYDER OR THEIR AGENTS TO:

**1.** IMMEDIATELY ARRANGEMENT FOR THE PLAINTIFF'S SERIOUS MEDICAL NEEDS FOR PHYSICAL AND OCCUPATION THERAPIES AND / OR OTHER FOLLOW - UP MEDICAL TREATMENTS TO BE EVALUATED BY A PHYSICAL THERAPIES SPECIALIST IN THE TREATMENT AND RESTORATION OF PLAINTIFF'S MOTOR FUNCTION OF HIS RIGHT SHOULDER, ARM, WRIST AND HAND AND RIGHT- LOWER EXTREMITY, TO BE ABLE TO WALK AGAIN.

**2.** CARRY OUT WITHOUT   DELAY THE MEDICAL TREATMENT DIRECTED BY SUCH PHYSICAL THERAPIST SPECIALIST.

**3.** IMMEDIATELY ARRANGE FOR THE PLAINTIFF SERIOUS MEDICAL NEEDS FOR HIM (PLAINTIFF) TO SEE A NEUROSURGEON SPECIALIST TO UNDERGO PRE- OPERATIVE NECK INTERNAL NERVES AND MUSCLES TESTS, COMPUTED TOMOGRAPHY (CI) AND MAGNETIC RESONANCE IMAGING MRI X-RAYS TESTS IN PREPARATION FOR BULLET FRAGMENTS REMOVAL OPERATION OR ELECTIVE SURGERY.

**4.** CARRY OUT WITHOUT DELAY INTERNAL NECK SURGERY DIRECTED BY SUCH NEUROSURGEON SPECIALIST TO UNDERGO PRE-OPERATIVE NECK INTERNAL NERVES AND MUSCLES TESTS, COMPUTED TESTS IN PREPARATION FOR BULLET FRAGMENTS REMOVAL OPERATION OR ELECTIVE SURGERY.

**5.** IMMEDIATELY ARRANGE FOR THE INSTALLATION OF ELECTRONIC SIGNALLING DEVICES SYSTEM IN PLAINTIFF'S CELL HOUSE OR / AND ALTERNATIVE CALL BUTTONS SYSTEM, FOR EMERGENCY PURPOSES.

**6.** IMMEDIATELY ARRANGE FOR THE PLAINTIFF TO HAVE MEDICAL PRIVACY DURING THE DURATION OF HIS (PLAINTIFF'S) SEGREGATION STATUS.

**7.** IMMEDIATELY ARRANGE FOR PLAINTIFF TO HAVE HIS ONCE PRESCRIBED EGG CRATE MATTRESS IN SEGREGATION.

**8.** IMMEDIATELY   ARRANGE TO HIRE ADEQUATE STAFFING (CORRECTIONAL STAFF) ON THE NORTH II C- WING " A. D. A" SEGREGATION UNIT AT MENARD

CORRCTIONAL CENTER, TO PREVENT LONG DELAYS ANY OR INTERFERENCE WITH PLAINTIFF TO SEE PHYSICIANS.

 **9.** IMMEDIATELY ARRANGE FOR THE INSTALLMENT OF ADEQUATE SICK -CALL PROCEDURES, BY HAVING MEDICAL STAFF SCREENING FOR PLAINTIFF'S SICK-CALL REQUESTS OR COMPLAINTS DAILY AND / OR TO HAVE AN ORGANIZE SICK CALL REQUEST SLIP PROCEDURE TO PREVENT LONG DELAYS IN PLAINTIFF TO SEE PHYSICIANS.

**C.** ISSUE AN INJUNCTION ORDERING DEFENDANT COWEN, FEINERMAN, GRUBMAN, KNOP AND MAVE TO

**1.** TO STOPTHEIR RACIAL DISCRIMINATION PRACTICES AGAINST PLAINTIFF BECAUSE HIS AFRICAN- AMERICAN RACE AND IMMEDIATELY ARRANGE FOR PLAINTIFF TO PARTICIPATION IN THE PHYSICAL THERAPY PROGRAM AND / OR TO HAVE HIS (PLAINTIFF'S) EGG CRATE MATTRESS, THAT IS ALREADY ENJOYED BY WHITE INMATES AT THE MENARD CORRECTIONAL CENTER;

**D.** ISSUE AN INJUNCTION ORDERING DEFENDANT I. D. O .C, SNYDER, WALLS, KNOP, COWEN, FEINERMAN, GRUBMAN TO:

**1.** TO IMMEDIATELY ARRANGE TO FIXED THE SHOWER HEAD / OR SPRAYER BROKEN DOWN SCREWS AND FIXED EXTENSION HOSE TO THE SPRAYER ON THE MENARD CORRECTIONAL CENTER'S NORTH II C- WING SHOWER AREA.

**2.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE ACCESS TO A DISABLED PERSON SHOWER CHAIR ON THE NORTH II C - WING "A. D. A" AT MCC.

**3.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO MIRRORS IN THE SHOWER AREA AND CELLS ON THE NORTH II C - WING " A. D. A" AT MCC.

**4.** IMMEDIATELY ARRANGE FOR PLAINTIFF TO SHOWER DAILY ON THE NORTH II C - WING "A. D. A" AT MCC.

**5.** IMMEDIATELY ARRANGE FOR TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO DAILY SICK CALL SCREENING PROCEDURE FOR PLAINTIFF'S MEDICAL COMPLAINTS, ON THE NORTH II C - WING " A. D. A" AT MCC.

**6.** IMMEDIATELY ARRANGE FOR TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO WHHELCHAIR ACCESSIBLE VISITING ROOM BOOTH ON THE NORTH II ANNEX BUILDING SEGREGATION AT MCC.

**7.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MENAINGFUL ACCESS TO WHEELCHAIR ACCESSIBLE TOILET FACILITY ON THE SEGREGATION YARD A MCC.

**8.** IMMEDIATELY ARRANGE FOR PLAINTIFF TO BE A TO PARTICIPATE IN GROUP RECREATION AND ACTIVITIES WITH OTHER DISABLE WHEELCHAIR BOUND INMATES ON THE SAME SEGREGATION YARD AT MCC.

**9.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO MEDICAL PROSTHETIC DEVICES OR THE ALTERNATIVE TO USE SECURITY PLEXI-CUFF RESTRAINS OVER SAID DEVICES, TO ACCOMODATE PLAINTIFF'S DISABILITY.

**10.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO WHEELCHAIR ACCESSIBLE RAMP ON NORTH II C - WING "A. D A" AT MCC.

**11.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO WHEELCHAIR ACCESSIBLE TRANSPORT VAN.

**12.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO PLAINTIFF'S TYPEWRITER TO ACCOMONDATE HIS WRITING DISABILITY, ON THE NORTH II C - WING "A. D .A" AT MCC.

**E.** ISSUE AN INJUNCTION ORDERING DEFENDANT ELISA REA, AND JONATHAN A. WALLS OR THEIR AGENTS TO:

**1. IMMEDIATELY ARRANGE FOR DEFENDANTS TO STOP DENYING PLAINTIFF ACCESS.**

IMMEDIATELY ARRANGE FOR PLAINTIFF TO PARTICIPATE IN GROUP RECREATION AND ACTIVITIES WITH OTHER DISABLED WHEELCHAIR BOUND INMATES ON THE SAME SEGRETATION YARD AT MCC.

$^{1.}$ **10.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO MEDICAL PRO0STHETIC DEVICES OR THE ALTERNATIVEE TO USE SECURITY PLEXI-CUFF RESRAINS OVER SAID DEVICES, TO ACCOMODATE PLAINTIFF'S DISABILITY

**11.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO WHEELCHAIR ACCESSSIBLE RAMP ON THE NORTH II C- WING "A D .A" AT MCC.

**12.** IMMEDIATELY ARRANGE TO PROVIDE REASONABLE AND MEANINGFUL ACCESDS TO WHEELCHAIR ACCESSIBLE TRANSPORTATIONAL VAN.

**13.** IMMEDIATELY ARRANGE TO PROVIDE A REASONABLE AND MEANINGFUL ACCESS TO PLAINTIFF'S TYPEWRITER TO ACCOMODATE HIS WRITING DISABILITY, ON THE NORTH II C WING "A D. A" AT MCC.

**E.** ISSUE AN INJUNCTION ORDERING DEFENDANTS ELISA REA, AND JONATHAN A. WALLS OR THEIR AGENTS TO:

**1.** IMMEDIATELY ARRANGE FOR DEFENDANTS TO STOP DENYING PLAINTIFF ACCESS TO LEGAL SUPPLIES, PHOTOCOPIES, DELAYING ACCESS TO LEGAL DOCUMENTS AND / OR TO PROVIDE REASONABLE AND MEANINGFUL ACCESS LEGAL AID ASSISTANCES.

**2.** IMMEDIATELY ARRANGE FOR DEFENDANTS TO STOP THE VERBAL ABUSE, DISRESPECTFUL CONDUCT, INTIMIDATIONS AND THREATS AND DELIBERATELY USING PRISON DISCIPLINARY PROCESS AS RETRIBUTION FOR THE FILING OF GRIEVANCES, AND MOREOVER, STOP HARASSMENT AND REITELIATION AGAINST THE PLAINTIFF.

**3.** ISSUE AN ORDER REFERRING THE ACTIONS OF DEFENDANTS FEINERMAN AND GRUBMAN OF CRIMINAL NEGLECT OF DISABLE PERSON TO THE INITED STATES ATTORNEY GENERAL AND / OR THE APPROPRIATE STATE LEVEL PROSECUTER FOR THE INVESTIGATION, AND PREPARATIONS, OF CRIMINAL GRAND JURY INDICTMENTS AGAINST EACH NAMED DEFENDANT.

**4.** GRANT THE PLAINTIFF $ 7,000,000.00(SEVEN- MILLION) IN COMPENSATORY DAMAGES JOINTLY AND SEPARATELY AGAINST EACH NAMED DEFENDANTS AND INCLUDING THE WINNEBAGO COUNTY JAIL (WINNEBAGO COUNTY -ILLIONIIS) AND ILLINOIS DEPARTMENT OF CORRECTION

**5.** GRANT THE PLAINTIFF $ 21, 000, 000.00 (TWENTY ONE - MILLION) IN PUNITIVE DAMAGES JOINTLY AND SEPARATLEY AGAINST EACH NAMED DEFENDANT AND INCLUDING THE WINNEBAGO COOUNTY JAIL AND THE ILLINOIS DEPARTMENT OF CORRECTION

**6.** GRANT THE PLAINTIFF $9, 000,000.00 (NINE - MILLION) IN CONTINUING DAMAGES JOINTLY AND SEPARATELY AGAINST EACH NAMED DEFENDANT AND INCLUDING THE WINNEBAGO COUNTY JAIL AND THE IULLINOIS DEPARTMENT OF CORRECTIONS.

**E.** ISSUE AN INJUNCTION ORDERING DEFENDANTS ELISA REA, AND JONATHAN A. WALLS OR THEIR AGENTS TO:

**1.** IMMEDIATELY ARRANGE FOR DEFENDANTS TO STOP DENYING PLAINTIFF ACCESS TO LEGAL SUPPLIES, PHOTOCOPIES, DELAYING ACCESS TO LEGAL DOCUMENTS AND / OR TO PROVIDE REASONABLE AND MEANINGFUL ACCESS LEGAL AID ASSISTANCES.

**2.** IMMEDIATELY ARRANGE FOR DEFENDANTS TO STOP THE VERBAL ABUSE, DISRESPECTFUL CONDUCT, INTIMIDATIONS AND THREATS AND DELIBERATELY USING PRISON DISCIPLINARY PROCESS AS RETRIBUTION FOR THE FILING OF GRIEVANCES, AND MOREOVER, STOP HARASSMENT AND REITELIATION AGAINST THE PLAINTIFF.

**3.** ISSUE AN ORDER REFERRING THE ACTIONS OF DEFENDANTS FEINERMAN AND GRUBMAN OF CRIMINAL NEGLECT OF DISABLE PERSON TO THE INITED STATES ATTORNEY GENERAL AND / OR THE APPROPRIATE STATE LEVEL PROSECUTER FOR THE INVESTIGATION, AND PREPARATIONS, OF CRIMINAL GRAND JURY INDICTMENTS AGAINST EACH NAMED DEFENDANT.

**4.** GRANT THE PLAINTIFF $ 7,000,000.00(SEVEN- MILLION) IN COMPENSATORY DAMAGES JOINTLY AND SEPARATELY AGAINST EACH NAMED DEFENDANTS AND INCLUDING THE WINNEBAGO COUNTY JAIL (WINNEBAGO COUNTY -ILLIONIIS) AND ILLINOIS DEPARTMENT OF CORRECTION

**5.** GRANT THE PLAINTIFF $ 21, 000, 000.00 (TWENTY ONE - MILLION) IN PUNITIVE DAMAGES JOINTLY AND SEPARATLEY AGAINST EACH NAMED DEFENDANT AND INCLUDING THE WINNEBAGO COOUNTY JAIL AND THE ILLINOIS DEPARTMENT OF CORRECTION

**6.** GRANT THE PLAINTIFF $9, 000,000.00 (NINE - MILLION) IN CONTINUING DAMAGES JOINTLY AND SEPARATELY AGAINST EACH NAMED DEFENDANT AND INCLUDING THE WINNEBAGO COUNTY JAIL AND THE IULLINOIS DEPARTMENT OF CORRECTIONS.

TABLET OF EVIDENCES

# EXHIBIT A

:D428 MCC#1

**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

**Donald N. Snyder Jr.**
Director

1301 Concordia Court / P.O.Box 19277 / Springfield , IL. 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

August 11, 2000

Johnny Ruffin
Register No. K-80541
Pinckneyville Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on July 3, 2000, by this office regarding a transfer to Dixon Correctional Center

Based upon a review of the information submitted, this office recommends the grievance be denied. The transfer has been reviewed in accordance with established Department rules and procedures. You may request a transfer after October 6, 2000.

FOR THE BOARD: _____
Terri Anderson
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Donald N. Snyder, Jr.
Director

TA:bls

cc:    Warden Guy Pierce, Pinckneyville C.C.
       Johnny Ruffin, Register No. K-80541
       Chronological File

D428 MCC#1

R2-P-18

## COMMITTED PERSON'S GRIEVANCE REPORT

DATE: 4/8/00   COMMITTEE PERSON: JOHNNY RUFFIN   ID# K80541
(Please print)

PRESENT FACILITY: Pinckneyville   FACILITY WHERE GRIEVANCE ISSUE OCCURRED: Pinckneyville

NATURE OF GRIEVANCE:

____ Personal Property      ____ Mail Handling        TRANSFER DENIAL:           X  Disability
____ Staff Conduct          ____ Dietary              X By Transfer Coordinator  /  Other _____
____ Restoration of         X Medical Treatment       ____ By Institution
     Good Time
____ Disciplinary Report – Date: _____   Where Issued: _____

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to
committed person. Committed person then decides whether or not to forward to Grievance Officer.
Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed
person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of
Grievance: To whom it May Concern, I am writing this letter
of grievance in complete honesty and concern.
Since my transfer from Dixon to here at
Pinckneyville facility, I have recieve misguided
information about certain medical treatment
that suppose specific such as medicine for
muscle relaxation (for spinal cord injuries) physical therapy
(to help with regaining function in right & lower both
extremities. I have been warned that my
Doctors's due to serious injuries to my spinal cord
and back from gun shot inflicted wounds, it is
Mandatory that I recieve those treatments + list
above of my condition could be fatal. It is ironic
that Dixon the facility I was at before transfer here I was
currently recieve treatments of muscle relaxer
for spinal cord injuries + physical therapy at least
twice a week. the result the effect
of me not recieving proper treatment is I'm
been frequently vomiting, short ness of breath,
not able to have a body movement stiffness in
shoulder & legs. Two days ago I had appointment
with Pinckneyville doctor. He personally told me that
they do not have the treatment I need and that
he will refer me to Dixon to recieve the medication
& treatment I need.

Relief
Requested: I'm transfer to Dixon (what I changed risk
for mandatory proper treatment as discuss
above

(Attach additional pages, if necessary)

### COUNSELOR'S RESPONSE

Date Received: 4-11-00

Response: The medical director is addressing your issues of
transfer for physical therapy. You will be notified when

Counselor: _____        T Kinscott        5-2-00
              Signature           Print Name      Date of Response

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present
location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review
Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

a decision is made.

(A2)

(Exhibit A p.3)

Second of all, I will prefer to transfer to Dixon wheelchair facility which do provide proper Medical treatment I need. I also feel my medical patient "A bill of rights" is been violated, because of my resident among general population could harmful to my health due to my partil paralezation I not able to defend myself in an unsuppect incident occurs. Please consider my view point on these issues. I thank for listening to my complaint, hopefully we can come to a reasonable aggreement.

Johnny Ruffin
Johnny Ruffin
JR

EXHIBIT A

(A3)

Date Received: May 2, 2000 _____   Date of Review: June 9, 2000 _____

Committed Person: Johnny Ruffin          5-41                    Number: K80541

Nature of Grievance:  Im is requesting a transfer for medical reasons.

Facts Reviewed:  Im states that he is not receiving proper medical physical therapy at PNKCC. Im feels his condition is getting worse due to no therapy.

Dr Garcia verified that Im was seen on 4/25/00 and was ordered medication. Im was also seen on 5/26/00. PNKCC will be getting a Physical Theriapist.

Recommendations:  Only HCU can determine if a transfer is needed for medical reasons. I recommend grievance be denied. Im can request a transfer on 10/6/00.

Grievance Officer  _____     _____
                          Signature                          Print Name

| CHIEF ADMINISTRATIVE OFFICER'S RESPONSE |
|---|

Date Received: JUN 1 3 2000      ☒ I concur      ☐ I do not concur      ☐ Remand

Comments: _____

_____                          JUN 1 3 2000
     Chief Administrative Officer                          Date

| COMMITTED PERSON'S APPEAL TO THE DIRECTOR |
|---|

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____                          _____
Committed Person's Signature / Number                          Date

DC 5657        Copy:  Original to the Master File              ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                                   1301 Concordia Court, P.O. Box 19277
                                                               Springfield, IL  62794-9277

                          Side 2

**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder, Jr.
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

October 5, 2000

John Ruffin
Register No. K80541
Pinckneyville Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on September 18, 2000, regarding staff conduct, which was alleged to have occurred at Pinckneyville Correctional Center.

The Grievance officer's report and subsequent recommendation dated August 22, 2000 and approval by the Chief Administrative Officer on August 23, 2000 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration.  It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Donald N. Snyder, Jr.
Director

RLR: jam

cc:   Warden Guy Pierce, Pinckneyville Correctional Center
      John Ruffin, Register No. K80541
      Chronological File

(122)

EXHIBIT A P. 5

:D428 MCC#1



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

Pinckneyville Correctional Center / 5835 State Route 154 / Pinckneyville , IL 62274-3410 / Telephone: (618) 357-9722 / TDD: (800) 526-0844

## M E M O R A N D U M

| | |
|---|---|
| **DATE:** | June 23, 2000 |
| **TO:** | RUFFIN, JOHNNY        B73412        R2-B-18 |
| **FROM:** | Guy Pierce, Warden<br>Pinckneyville Correctional Center |
| **SUBJECT:** | Emergency Grievance |

Please be advised that I have reviewed your submitted grievance dated June 22, 2000 concerning your Health Care issues which was received in this office June 22, 2000 and find it does not meet the guidelines for an emergency grievance as set forth in DR-504.840 "Grievance Procedures for Committed Persons."

Your concerns are being addressed by the Health Care Unit and your grievance will be considered and a response given in the date order that it was received

Guy Pierce
W A R D E N

## COMMITTED PERSON'S GRIEVANCE REPORT

DATE: _____ COMMITTEE PERSON: JOHN MILLER III ID#: _____
(Please print)

PRESENT FACILITY: _____ FACILITY WHERE
GRIEVANCE ISSUE OCCURRED: _____

NATURE OF GRIEVANCE:

_____ Personal Property     _____ Mail Handling     TRANSFER DENIAL:       ✓ Disability
_____ Staff Conduct         _____ Dietary           _____ By Transfer Coordinator   X Other UNSAFE
_____ Restoration of        _____ Medical Treatment _____ By Institution            CONDITION
        Good Time
_____ Disciplinary Report – Date: _____           Where Issued: _____

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to
committed person. Committed person then decides whether or not to forward to Grievance Officer.
Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed
person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of
Grievance: This is an EMERGENCY Grievance 540840, Due to
me being house here IN PiNckNeYVille CC# FACiGty I have
Been NEGLECTEd proper MEDicAl treAtMENT, ON JUNE 5 2000
I recieve a MEMORANDUM From AssistANCE WARDEN KAREN McKiNNeY
(A.D. coordinator) that show compLETE disREGARDS towARd
My HEALTH & outside DActor recommENdatioN she clearly
stAted PLEASE he AdvisEd that I have reviewed your (JIM RYFFEN)
griEvANCES iN question ANd have found NONE of them to be ADA
ISsues that would warrANt ANY investigatioN or RECommENdatioN
AS Such. This cleArly a direct ViolAtion of A.D.A SECtioN
503 Prohibition AgAiNst retALiation & coercioN & SEC 502
AMENDMENTS to the rEHABilitatioN ACT.

※ THE FOLLOWING are RECommENdatioNs FrOM SWEdiSH AMericAN
hoSpitAl (the place where I origiNAl WAS diAgNosE) Dc TAMii HUSSAiN
aNd Dr CRAiG rEHAbilitAtioN JANE aLto) recommENd compreHENSiVE
rEHAbilitAtioN with PHySicAl therAPY ANd ORthopedic therApy
dAily, ACTive aSSiSt, rANGE of-MOtioN, rights, de especiAlly
shoulder, to MiNiMizE riSK of adhesive CAPSuLitis, MONitor for
eVidence of autoNomic _____ DysrefLEXiA, examples
would include hyperteNSioN Fever of refLEX brAdycArdiA.
ApparEntly their professioNAl did Not recommENt this
to be sAying soMEthing or LYiNG.

※ REQUEST trANSFER to a FAciLity thAt Not goverN By
the AssT WARdEN (who is determENtAl to My HEALTH and otHer AmputAtteES)

Relief
Requested: MS KAREN McKiNNeY So-cAlLEd ADA cooldiNAtor
Need to leAve ALA MAtter aLoNG ANd leAve this
extreMALy difficult CASE to the reAl professioNAl who know whAt they
doiNg. IEP

(Attach additional pages, if necessary)

### COUNSELOR'S RESPONSE

Date Received: 6/27/00

Response: _____ _____ Judgement of ADA coordinator assigned
by administration cannot be reviewed further by counselor

Counselor: _____                      PD RYKN                    Date: _____
        Signature                        Print Name

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present
location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review
Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

JUN 2000
RECEIVED
PINCKNEYVILLE C.C.
WARDENS OFFICE

GRIEVANCE OFFICER'S REPORT

Date Received: June 27, 2000                    Date of Review: August 22, 2000

Committed Person: Jonny Ruffin          6-214                    Number: B73412

Nature of Grievance:  Staff Conduct.

Facts Reviewed:  Inmate feels that he is not receiving proper medical treatment. Inmate feels that his ADA issues are not being addressed at PNKCC. Inmate wants a transfer.

Issue of transfer and medical concerns has been previously addressed.

AW McKinney, ADA coordinator stated that all of inmate Ruffin's ADA issues have been addressed.

Recommendations:  Grievance denied.

Grievance Officer                                                                      **T.  Murray**
                                Signature                                              Print Name

---

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: _6/23/00_          ☑ I concur      ☐ I do not concur      ☐ Remand

Comments:

                                                                              6/23/00
         Chief Administrative Officer                                          Date

---

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board.  I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____          _____
     Committed Person's Signature / Number                     Date

DC 5657                    Copy  Original to the Master File          ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                                          1301 Concordia Court, P.O. Box 19277
                                                                     Springfield, IL 62794-9277

                                        Side 2

**George H. Ryan**
Governor

**Illinois**
**Department of**
**Corrections**

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

September 22, 2000

John Ruffin
Register No. K80541
Pinckneyville Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on September 15, 2000, regarding a disciplinary report dated June 24, 2000, which was alleged to have occurred at Pinckneyville Correctional Center.

The Grievance officer's report and subsequent recommendation dated August 18, 2000 and approval by the Chief Administrative Officer on August 22, 2000 have been reviewed.

Based on a total review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the infraction and recommends the grievance be denied.

FOR THE BOARD: _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Donald N. Snyder, Jr.
Director

cc:  Warden Guy Pierce, Pinckneyville Correctional Center
John Ruffin, Register No. K80541
Chronological File

## COMMITTEE PERSON'S GRIEVANCE REPORT

DATE: 6/24/00    COMMITTEE PERSON: JOHNNY RUFFIN    ID# B73412
(Please print)

PRESENT FACILITY: PNK    FACILITY WHERE GRIEVANCE ISSUE OCCURRED: K80541

12 - 6/24/00

**NATURE OF GRIEVANCE:**

____ Personal Property    ____ Mail Handling    **TRANSFER DENIAL:**    ____ Disbility
_X_ Staff Conduct    ____ Dietary    ____ By Transfer Coordinator    ____ Other _____
____ Restoration of    ____ Medical Treatment    ____ By Institution
     Good Time
_X_ Disciplinary Report – Date: 6/24/00    Where Issued: PNK CC

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

#### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance: This grievance is regards to a violation of A.DA statue section 503 Prohition against retaliation and coersion

It is obvious the past 2 week has been a direct conspiracy/victimization scheme against a disable inmate. 1) week ago my I.D.R was Change. from K80541 to B73412) this case was reopen in the courtroom. 2) C/o Craig Ramsey slam my disable arm in the door date 6/14/00 3) C/o Craig ___ Wallace convisated my T.V. ___ on date 6/23/00 ___ continue to make threat to convisate my radio + send me to the segregation 4) Captain Spiller gives me a bogus ticket for towel being out of place. the towel was on the hanger rack when I put there N ight before.

It ironic when I started to make complaint about the condition of this facility c/o called A.D.A facility who repeat denies me proper medical treatment and keep a violation program. that was advised by di Jamil Hussain (at surgish american hospital) to prevent irre placeabout damages) This facility continue to j extreme inndifferent towards my medical treatment by responding to my grievance (about medical transfer physical) etc. since this facility do not have a DR 3 month after I sent the complaint about my care. Finaly get a response back. I spoke to the A.D.A coordinator about these issue (medical treatment) letter I sean to her, she response by if my grievance we consider a trouble maker And they usualy do not get what they ask for? This a direct violation of my constitutional right under the 14 Amendment and American with disability act and the supreme court got my back.

Relief Requested: A complete delete of those bogus tickets. A complete investigation of conduct of c/o C Ramsey, C Wallace, Capt. Spiller A.D, A coordinator K Van McKinney, Grievance office (about the delay response) Dr Garcia (denied proper medication) I want a technical expanation about these issue. Thankyou very muEh
(Attach additional pages, if necessary)

---

### COUNSELOR'S RESPONSE

Date Received: 6/26/00

Response: this grievance is regarding a disciplinary report written 6/24/00 advise inmate send directly to grievance

Counselor: P Aiken     P Aiken     6/26/00
     Signature        Print Name        Date of Response

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

officer.

EXHIBIT A P10

**GRIEVANCE OFFICER'S REPORT**

Date Received: July 5, 2000                          Date of Review: August 18, 2000

Committed Person:  Ruffin                    7-29                    Number: B73412

Nature of Grievance:  IDR issued on 6/24/00 by CO Page.

Facts Reviewed:  Inmate feels that his ADA rights are being violated. Inmate claims that on 6/11/00 CO Craig slammed his arm in the door. On 6/22/00 his TV was confiscated and Captain Spiller gave him a bogus IDR for a towel being out of place.  Inmate feels he is not being given proper medical treatment. Inmate wants Bogus IDRs deleted and staff investigated.

Issue of IDR issued on 6/11/00 and Staff conduct has been previously addressed. ( No IDR issued for 6/11/00)

Medical concerns have been previously addressed.

Inmate issued IDR on 6/22/00 by CO Wallace for 403 Disobeying a Direct Order, 304 Insolent and 404 violation of rules. Inmates TV was playing too loud. Inmate had been warned of this on previous occasions. Inmate was found guilty. Inmate stated that he had been told about his radio and TV before, but his TB wasn't loud. Two other staff was a witness to the incident. Inmate received loss of TV for 14 days.

Inmate issued IDR on 6/24/00 by CO Page for 404 violation of rules (Warden's Memo on property box) Staff discovered a towel that was not in compliance with the Warden's Memo. Inmate stated that he was not guilty and the fan knocked his towel on the floor. Inmate was found guilty and given a verbal reprimand.

According to Record Office Supervisor B of I changed inmate's ID number from K80541 to B73412 due to a fingerprint comparison. Inmate was previously incarcerated. Inmate was given his original ID number.

SD428

Recommendations: The Adjustment Committee relied on sufficient evidence to be reasonable satisfied inmate was guilty of the infractions. I recommend grievance be denied. This officer failed to find sufficient evidence to substantiate inmate's allegations of staff misconduct. PNKCC is following proper procedures.

Grievance Officer _____          **T.  Murray**
                              Signature                                          Print Name

| CHIEF ADMINISTRATIVE OFFICER'S RESPONSE |
|---|

Date Received: ___8/22/00___      ☑ I concur      ☐ I do not concur      ☐ Remand

Comments: _____

_____          ___8/22/00___
Chief Administrative Officer                          Date

| COMMITTED PERSON'S APPEAL TO THE DIRECTOR |
|---|

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board.  I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____          _____
Committed Person's Signature / Number                    Date

DC 5657              Copy: Original to the Master File                    ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                                            1301 Concordia Court, P.O. Box 19277
                                                                       Springfield, IL  62794-9277



# Illinois
### Department of
# Corrections

**George H. Ryan**
Governor

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

July 12, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on July 2, 2001, regarding Personal Property (typewriter, 2/12/01), which was alleged to have occurred at Menard Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated June 20, 2001 and approval by the Chief Administrative Officer on June 22, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration.  It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED:_____
Donald N. Snyder, Jr.
Director

cc:    Warden Roger D. Cowan, Menard Correctional Center
       John Ruffin, Register No. K80541
       Chron. File





## Illinois
### Department of
## Corrections

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:     June 20, 2001

TO:       Johnny Ruffin, K80541
          N2-C-7

FROM:     Mavis Wittenborn
          Grievance Officer

SUBJECT:  Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #1127 dated 5/3/01 which was referred to the HCU Administrator, Law Library and ADA Coordinator for additional information. All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he due to his paralysis he can not write with his right hand. He also states he is not receiving proper services from the law library and requests he be permitted to have a typewriter in his cell.

ADA Coordinator reported inmates in disciplinary segregation are not permitted to possess or use typewriters. The inmate orientation manual states, "Typewriters are not available to Segregation inmates or inmates confined to the study cell in the library."

Mary West, Senior Paralegal, was contacted and she states that courts and other agencies accept pleadings and correspondence in hand-written form. Ms. West also states that inmate Ruffin has not shown library staff any paperwork which supports his claim of pending court cases. In the event that inmate Ruffin submits a court order that indicates that his submissions to the court must be typed, we will consider that request at that time.

Due to the above information, this officer recommends grievance be denied.

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF RECEIPT OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____
_____ CONCUR

_____ DO NOT CONCUR

_____
Mavis Gross, Grievance Officer

_____
Roger Cowan, Warden

6/22/01
_____
Date

cc:  Inmate Ruffin
     ADA Coordinator

| 2/6/201 | John Milin | K85591 |
|---|---|---|
| Present Facility MENARD CC | Facility where grievance issue occurred MENARD CC | |

NATURE OF GRIEVANCE

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report - Date

- [ ] Mail Handling
- [ ] Dietary
- [ ] Medical Treatment

- [ ] Transfer Denial
- [ ] By Transfer Coordinator
- [ ] By Institution

Where issued

- [x] Disability
- [x] Other Discrimination of Disable Con (typewriter)

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance: This grievance CC concerning the discrimination against a disable inmate, who has given difficulty communicating Report to the Crts ie Tim Ruffin Box Law Clerk If he can have some one help assist him in communicating with the court because paralysis on his right side which (withdrawn) he do a considerate that handwrite illegible postcard (letter) on his (typewriter) Policy

* Under ADA Title (II) an amendment to the act of PBU this time mandates the provision of accessible equipments, ie (typewriter) and communication lines through out telecommunicatioge network. Reaffirmation of 504 ADA Title (II) provisions disable communication

* I TM Ruffin, am in a type writer for communication only because of my paralysis on my right side which make it difficulty to legibly communicate to the Courts, Doctors and other important correspondent. It is a matter of rights that disable TM or have compatible equipment (typewriter) to P the court to grieve his problem Depriving this communication both (typewriter) It's discriminatory against a known disable TM. Law Library neither other service for disable inmate in so-called ADA segregation. But say they need some court document - in order for the law library to type legal material for a disable inmate. If not this a clear conscious discrimination against a disable inmate, who do effort need assistance, but mental a grave (con...)

Relief Requested: I TM Ruffin ask If the Law Library will help him type legal mail so he can effectively write the Court or If not that INMATE RUFFIN Be allow to use his own type writer that is currently in Menard Coll CR Storage

(Attach additional pages, if necessary)

COUNSELOR'S RESPONSE

Date Received: 2/16/01

Response: Inmates in Seg cannot have Typewriters. Inmate can request assistance from Law Library with Court material. ___

Counselor: [signature]    Print Name J.W. Cadwell    Date of Response 2/18/01

- [ ] Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277

(A36)

(EXHIBIT A-#4-)

COMMITTED PERSON'S GRIEVANCE REPORT

Facility: M___ __ CC          Facility where
                               grievance issue occurred: M___ __ CC

NATURE OF GRIEVANCE

☒ Personal Property        ☐ Mail Handling        ☐ Transfer Denial              ☒ Discipline
☐ Staff Conduct            ☐ Dietary              ☐ By Transfer Coordinator      ☒ Other _need for_
☐ Restoration of Good Time ☐ Medical Treatment    ☐ By Institution                  _Commun Center R_
☐ Disciplinary Report  Date _____              Where issued _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed
         person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go
         directly to Grievance Officer.
PAGE 2 - Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person
         then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance: This grievance is brought under the IDOC Emergency
Grievance Jurisdiction. I JM Ruffin need to have typewriter in his
segregation cell to effectively communicate with his outside doctors
the trial court, an(x) other important correspondence. This claim is raised
under the A.D.A. Title I and pertinent to the communication's Act of 1934
this Act mandates the provision of accessible equipment and
communication tiers 7/01/1000 to communication Network. This applies
all disable inmates will suffer same of a disability that will hinder his
ability to communicate effectively.

* In Ruffin case, he is normally write with his right hand
but to his paralysis on his right side he is not able to write with his
right hand but as you can get he does attempt to write with his left hand, but it's
so sloppy that it hard to decipher such Chicken scratch.

* The imment Danger/Injuries that I will result if this available type writer
is not given (1) that is Mr Ruffin is currently in the C-grade group per se
appeal suppressing an(x) post conviction and civil suit which this court require
all legal matter to be legible (2) outside Doctor will not respond to inmate
Medical Things (3) other correspondence not a problem understanding my
hand writing. So if this facility feel that a type-writer be not given
JM Ruffin will suffer a procedural due process denial on court costs(x) county
with Jacob, and discourage a response to other correspondence.

Relief Requested: JM Ruffin asked that he be permitted his typewriter in cell
while in segregation, to be able to properly communicate with the above
parties, and that he will be able to buy welded-tape Ribbon on commissar
want to be permitted the typewriter ASAP so immediately can make his 361/361 c___

(Attach additional pages, if necessary)

COUNSELOR'S RESPONSE

Date
Received: 2/13/0___
Response: Inmate is in Seg. & not allowed typewriter. JG

Counselor: _[signature]_        Print Name: J.W. Gibb___        Date of Response: 2/14/0___

☐ Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present loca___ or ___
  of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O.
  Box 19277, Springfield, IL 62794-9277

(A37)                                                [EXHIBIT A P 915]



George H. Ryan
Governor

## Illinois
### Department of
## Corrections

Donald N. Snyder, Jr.
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

May 4, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on April 27, 2001, regarding Medical Treatment (neck surgery), which was alleged to have occurred at Menard Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated April 11, 2001 and approval by the Chief Administrative Officer on April 16, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
                Robert L. Radmacher
                Administrative Review Board
                Office of Inmate Issues

CONCURRED: _____
                Donald N. Snyder, Jr.
                Director

cc:   Warden Roger D. Cowan, Menard Correctional Center
      John Ruffin, Register No. K80541
      Chron. File







**Illinois**
Department of
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:      April 11, 2001

TO:        Johnny Ruffin, K80541
           N2-C-7

FROM:      Mavis Wittenborn
           Grievance Officer

SUBJECT:   Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #854 dated 3/29/01 which was referred to the HCU Administrator for additional information. All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he is in need of surgery from an outside hospital to remove bullets from his neck.

HCU Administrator reported in review of inmate's file, she found Dr. Feinerman, Medical Director, addressed the issue on 2/27/01 regarding surgery to remove the bullet from the inmate's neck. It was indicated that there was no medical indication for bullet removal. Mr. Ruffin was seen on 3/17/01 to request physical therapy and assistance in ambulating. Dr. Feinerman wrote an order for a walker in his cell for one year. This order is currently being processed and security will be notified.

It is this writer's findings that inmate's medical concerns are being addressed by the facility's health care staff; therefore, no further action will be taken.

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF RECEIPT OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____
Mavis Wittenborn, Grievance Officer

_____  CONCUR

_____  DO NOT CONCUR

_____
Roger Cowan, Warden

_____
Date  2/16/01

cc:  Inmate Ruffin

(A39)

EXHIBIT A, p.

SD428 · MCC#1

## GRIEVANCE OFFICER'S REPORT

Date Rr___ed _3/29/01_    Date of Revi__ _3-29/01_

Committee Person _Johnny Ruffin (No. 7)_    Number _K80541_

Nature of Grievance _Medical Treatment (11D, 11E)_

Facts Reviewed: ~~All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.~~

Recommendation: I am requesting the _HCU Admin_ ~~provide the Grievance Officer with any information pertinent to the~~ the issue(s) being grieved by inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and ~~render a final disposition on inmate's grievance.~~

Grievance Officer: _Mavis Wittenborn_ (Signature)    **Mavis Wittenborn**
Print Name

cc:  Inmate _Ruffin_ / _HCU Admin_

---

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: _3/29/01_    ☑ I concur    ☐ I do not concur    ☐ Remand

Comments: _____

_Roger Cowan Jr_ (Signature)    _3/30/0_
Chief Administrative Officer    Date

---

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____    _____
Committed Person's Signature/Number    Date

DC 5657    Copy: Original to the Master File    ADMINISTRATIVE REVIEW BOARD
IL 426-17343    1301 Concordia Court, P.O. Box 19277
Springfield IL 62__ 9277

Side 2

(A 40)    (EXHIBIT A PG5)

A.A. WHEELCHAIR INMATE
EMERGENCY GRIEVANCE
**COMMITTED PERSON'S GRIEVANCE REPORT**

SD428 · MCC#1
428 MCC#1

DATE: 3/68/01    COMMITTEE PERSON: JOHNNY M. RUFFIN    ID# K80571
(Please print)

PRESENT FACILITY: MENARD C.C.    FACILITY WHERE GRIEVANCE ISSUE OCCURRED: MENARD C C

**NATURE OF GRIEVANCE:**

| | | |
|---|---|---|
| _____ Personal Property | _____ Mail Handling | TRANSFER DENIAL: |
| _____ Staff Conduct | _____ Dietary | _____ By Transfer Coordinator |
| _____ Restoration of | __X__ Medical Treatment | _____ By Institution |
| Good Time | | |
| _____ Disciplinary Report – Date: _____ | | Where Issued: _____ |

X  Disability
X  Other MENNRLE/y
     SURGERY

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

✱ **THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS** ✱
✱ PLEASE DECLARE A MANDATORY MEDICAL NECK SURGERY ✱

Brief Summary of
Grievance: This is an EMERGENCY Grievance concerning A once Prescribe MANDATORY Eletric INternal Neck surgery To remove A Metallic Bullet That is locAted IN the soft tissue esophagus & Breathing tube of the right-side of the Neck and right "suprA clAviT cuHR regioN, IN which causes swallowing difficulties AND Breathing difficulties as well, For example – Every time I swallow food I have a very difficulty swallowing so I will have to Break Food IN small pieces IN order to Prevent From choking, there Are Frequent time I do choke and will have to drink water right away to prevent choking, At time I Notice my saliva ~~has~~ Hos been thick since I First got shot IN June 1999, At some time my saliva will have Blood culture IN sputum, Before my trAnsfer here Med. Dir GArciA oF PiNckneyville CC. had me take A sputum test to see iF an infection set up, but unfortunate I trANsFered to MENARD cc beFore test resuHs. ANother CompLicAtion is when I lay down at Night I some time ~~sleep~~ my breAthing Be cut off completely ANd I will be suffocatiNg vAit I either wake up or situn the side of the Bed or I would have to lAy oN my leFt side beCAuse CAN't lAy on my right PArAlyze ARM This has slACpoLme Because I CAN my choking beCAuse of the Bullet ANd some of the c-wing oFFiCer doN't wAiK and check on INMATe For hoUrs and there Is No emergency BUTTON To Ask For help just in case I'm At the Point oF DEATH; So this surgery is A MUST, even Dr GArCiA once offered it and before my transfer we trying to resciAe Surgery At A out-side hospital For such A compLiCATed surgery, please see AttAched xrAys (RADioLogicAl) report; This Proof oF my Problem. I Am desperate Need oF surgery, with out I suFFer DAMAges, Breathing Difficulties, swallowing Difficulties, emAtionAle Distress, FeAl oF liFe and mAbbe end up DEAD, (end.)

Relief
Requested: ASK to have InterNAl Neck SURGERY At outSide hospitAl I ASKed For A FuLL check investigation By MedicAl director Dr. FriedermAN and exemption From paying $2.00 Fee BecAuse this is an emergency, I also request MAT. Dir. Friends setup A Medline interview about my saliva test resuHs From pinckNeyville C. C.
(Attach additional pages, if necessary)

**COUNSELOR'S RESPONSE**

Date Received: _____
Response: _____
_____
_____

Counselor: _____
Signature        Print Name        Date of Response

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

(A 41)

[EXHIBIT A, P9 19]

**George H. Ryan**
Governor

# Illinois
### Department of
# Corrections

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

May 9, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on May 7, 2001, regarding medical treatment (egg crate mattress), which was alleged to have occurred at Menard Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated April 24, 2001 and approval by the Chief Administrative Officer on April 27, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD:  Robert L. Radmacher
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED:  Donald N. Snyder, Jr.
Donald N. Snyder, Jr.
Director

RLR

cc:  Warden Roger D. Cowan, Menard Correctional Center
John Ruffin, Register No. K80541
Chron. File



**Illinois**
Department of
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:        April 24, 2001

TO:          Johnny Ruffin, K80541
             N2-C-7

FROM:        Mavis Gross
             Grievance Officer

SUBJECT:     Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #965 dated 4/13/01 which
was referred to the HCU Administrator for additional information. All
information forwarded to this Grievance Officer by the grievant and
institutional staff pertaining to the issue(s) being grieved by the inmate
were thoroughly reviewed.

Inmate grieves he is not getting the proper medical treatment and requests a
egg crate mattress and dietary sodium restriction.

HCU Administrator reported inmate Ruffin has a long-term disability to one
side of his body. He is able to move himself around and has the appropriate
medical permits for assistive devices to address his medical needs. He has
ongoing access to medical care and the physician orders have been addressed.
There is no medical indication of most of the items he requests and surgical
intervention is not medically indicated.

Due to the above information, no further action will be taken.

If inmate Ruffin is of the opinion that this issue has not been resolved, he
may file an appeal **WITHIN 30 DAYS OF RECEIPT OF THE WARDEN'S DECISION** to the
Director of the Department of Corrections, Administrative Review Board, 1301
Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____   Mavis Gross, Grievance Officer

_____  CONCUR

_____  DO NOT CONCUR

_____   Roger Cowan, Warden

_____   4/27/01
                    Date

cc:  Inmate Ruffin

(A45)

## GRIEVANCE OFFICER'S REPORT

Date Received: 9/5        Date of Review:

Committed Person: *Johnny Ruffin (N2- 7)*     Number: *K80541*

Nature of Grievance: *Medical Treatment, Staff Conduct (11E, 7B)*

Facts Reviewed: ~~All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.~~

Recommendation: ~~I am requesting the~~ *HCU Admin* ~~provide the Grievance Officer with any information pertinent to the the issue(s) being grieved by inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and render a final disposition on inmate's grievance.~~

Grievance Officer: *Mavis Wittenborn*        Mavis Wittenborn
                   Signature                 Print Name

cc: Inmate *Ruffin / HCU Admin*

---

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: *4/13/01*     ☑ I concur   ☐ I do not concur   ☐ Remand

Comments: _____

Chief Administrative Officer: *Roger Cowan Jr*        Date: *4/16/01*

---

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

Committed Person's Signature/Number          Date

DC 5657          Copy: Original to the Master File
IL 426-17343

ADMINISTRATIVE REVIEW BOARD
1301 Concordia Court, P.O. Box 19277
Springfield, IL 62 - 9277

Side 2

**COMMITTED PERSON'S GRIEVANCE REPORT**

DATE: 4/5/01    COMMITTEE PERSON: (Please print) JoAnn M. Riffin    ID# K80541

PRESENT FACILITY: Menard C.C.    FACILITY WHERE GRIEVANCE ISSUE OCCURRED: Menard CC

NATURE OF GRIEVANCE: *Concern Disable Inmate about His Health*

| | | TRANSFER DENIAL: | Disability |
|---|---|---|---|
| ___ Personal Property | ☒ Mail Handling | ___ By Transfer Coordinator | ☒ Other Conspiracy |
| ☒ Staff Conduct | ___ Dietary | ___ By Institution | |
| ___ Restoration of Good Time | ☒ Medical Treatment | | To Cause Cospiri Punish, Because of my displinry seg |
| ___ Disciplinary Report – Date: | | Where Issued: | |

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance: This Grievance Is brought up on the merit Grounds of "Imminent Danger of Infection Fluid Blud up Around my right hip, thigh, knee, cold Calf Area Cail Edema, if not treated soon will result in amputation of my right leg. And the fact that I have tried to bring His Attention to Him He Just ignored it Because of the swelling I have been experience excruciating pain that after me from daily Activities such as; reading, writing, thinking, sleeping, causing Sever headaches, make it hard to concentrate, make lose my apetite etc. * Definition of Edema: Soft tissue swelling due to abnormal expansion of interstitial Fluid volume. Edema Fluid is plasma transudate that accumulates when movement of fluids from vascular to interstitial space is favored. Since detectable retention of salt and water generalized edema in the adult reflects again of >2L renal retention of salt and water is necessary for edema to form. Distribution of edema can be an important guide to cause, according to my Medical record History, I'm in constant threat because of my incomplete quadripilegia condition I at risk for recurrent deep venous thrombosis, renal retention, an because of my paraplegia condition according to my prior physician who recommend me to undergo anti-coagulant agent Cail Coumadin & Physical therapy to regain function in my limbs, to fight against this edema. Because of my Spinal cord injure I am subject renal failure, an impaired sodium excretion, or static edema of a paralyzed lower extremity. The only way to treated or prevent Amputation of my legs is – for the Medical Director to examine my medical records and to provide what my prior physician's on @ prescribed medical treatment. end

Relief Requested: That this Administrator put injunction on the Medical Director Dr. Frie Norman deliberate indifferent to my serious medical needs and to provide the following mandated treatments of – Ted Hose, EGG-Cuff, Mattress, Dietary Sodium restiction, or even drainage and for Dr. Frienerman not to ignore this serious medical need. (Attach additional pages, if necessary)

### COUNSELOR'S RESPONSE

Date Received: _____
Response: Previously Addressed

Counselor: _____
Signature _____ Print Name _____ Date of Response _____

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

(A-47)



**George H. Ryan**
Governor

# Illinois
## Department of
# Corrections

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

May 9, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on May 7, 2001, regarding medical treatment (3/27/01), which was alleged to have occurred at Menard Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated April 24, 2001 and approval by the Chief Administrative Officer on April 27, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
                  Robert L. Radmacher
                  Administrative Review Board
                  Office of Inmate Issues

CONCURRED: _____
              Donald N. Snyder, Jr.
              Director

cc:  Warden Roger D. Cowan, Menard Correctional Center
     John Ruffin, Register No. K80541
     Chron. File

(A 48)



## Illinois
## Department of
## Corrections

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

M E M O R A N D U M

DATE:     April 24, 2001

TO:       Johnny Ruffin, K80541
          N2-C-7

FROM:     Mavis Gross
          Grievance Officer

SUBJECT:  Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #963 dated 4/13/01 which was referred to the HCU Administrator for additional information.  All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he is not getting the proper medication for his medical condition and requests the medication be changed.

HCU Administrator reported the medication is a fiber laxative to soften stools and prevents constipation.  Dr. Doughty appropriately ordered it on 2/28/01 for the inmate's small hemorrhoids.  Inmate can discontinue usage.  If not taken with enough fluids, it may potentially cause problems with swallowing. If inmate takes it as prescribed, he will not experience any problems.

There is no documentation for the medical exchange alleged on 3/11/01.  Inmate Ruffin was seen on 3/27/01 by Dr. Feinerman with no reported problems in breathing or swallowing and he has had mental health contacts with no reported suicidal thoughts.

It is this writer's findings that inmate's medical concerns are being addressed by the facility's health care staff; therefore, no further action will be taken.

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF RECEIPT OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____  CONCUR

Mavis Gross, Grievance Officer

_____  DO NOT CONCUR

Roger Cowan, Warden

4/27/01
Date

cc:  Inmate Ruffin

EXHIBIT-A pg.23

**GRIEVANCE OFFICER'S REPORT**

Com Person _Johnny Rufus (No. -7)_ Number _K80541_

Nature of Grievance _Medical Treatment, Staff Conduct (118, 118, 76_

Facts Reviewed: ~~All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.~~

Recommendation: ~~I am requesting the~~ _ACU Admin_ ~~provide the Grievance Officer with any information pertinent to the the issue(s) being grieved by inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and render a final disposition on inmate's grievance.~~

Grievance Officer: _Mavis Wittenborn_     **Mavis Wittenborn**
             Signature                 Print Name

cc: Inmate _Rufus / ACU Admin_

---

**CHIEF ADMINISTRATIVE OFFICER'S RESPONSE**

Date Received: _4/13/01_   ☑ I concur   ☐ I do not concur   ☐ Remand

Comments: _____

_Roger Cowan_    _4/16/01_
Chief Administrative Officer        Date

---

**COMMITTED PERSON'S APPEAL TO THE DIRECTOR**

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

Committed Person's Signature/Number      Date

DC 5657    Copy: Original to the Master File
IL 426-17343

ADMINISTRATIVE REVIEW BOARD
1301 Concordia Court P.O. Box 19277
Springfield IL 62794-9277

Side 2

 EXHIBIT A, p926



Emergency Grievance

3/15/01                Johnm    Ruffin

MENARD Corr. Cl.                                    MENARD

NATURE OF GRIEVANCE

☐ Personal Property          ☐ Mail Handling          ☐ Staff Conduct          ☒ Disability
☒ Staff Conduct             ☐ Diet                   ☐ Loss of Transfer Coordinator          ☒ Other _Discrimination_
☐ Restoration of Good Time    ☒ Medical Treatment      ☐ Transfer _____          _WARDEN ___
☐ Disciplinary Report - Date ____          _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether ____ to ward to Grievance Officer. Grievances on discipline ____ directly to Grievance Officer.

PAGE 2 - Grievance Officer completes forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance _EMERGENCY Grievance 104.840, "IMMINENT DEATH Psychal_
_DEPRESSION, SChizophrenic, SUICIDAL THOUGHTS AND DECLINATION OF A_
_HUNGER STRIKE ON date MARCH 11, 2001 I'M RUFFIN WAS HAVING A HARD_
_TIME Breathing Because of the Bullet IWAS Throat and the HYDROCIl_
_INSTANT (NATURAL FIBER LAXATIVE) medication that was Prescribed BY_
_Dr. STEPHEN DOUGHTY; cause me Breathing DIFFICUTIes, Choking, and diffcutios_
_to swallow, 911. that Night. So I'M RUFFIN Ask the NightShift_
_correctional Officer Tetton to Call the Doctor and tell I am having difficulty_
_Breathing. She left And got the Sergeant (Rsa. He then call to HEALTH_
_CARE UNIT and spoke to MED. TECH MORRIS, who working that NIght_
_SHIFT. THIS MED. TECH. MORRIS Told the sergeant that "there IS NOthing_
_WRONG that INMate, He was seen by Dr. Erinda??? and he Apretty healthy_
_Inmate, and If he want to see the doctor he need to PUT A PASS ___ (SICK_
_CALL SLIP) IN". The Sergeant Conveyed this Info to I/M RUFFIN. Inmate_
_Still don't get No Sleep that Night, Constantly having Shortness of_
_Breath, Choking. Come to FIND OUT that Dr. Doughty Prescribed Harm_
_medication "HYDROCIl INSTANT", according to the medications WARNING_
_DO not take this Product If you ever had difficult Inswallwing or Have ANY_
_THROAT PROBLEMS, IF YOU EXperience cheStpain, vomiting of DIFFIculty IN_
_Swallowing or Breathing After TAking this product, Seek Immediate medical_
_Attention(s), So Dr. Doughty Never consider the facts that I am disabled_
_with a bullet encapsulated by my esophagus. MED. TECH MORRIS put my_
_life IN DANGer that Night. ___ I suffer Depression, Throat Problem,_
_suicida tendence, UNTolATION exciliating pain, fear, Paranoid that "MENARD ___ t___b___

Relief Requested _REQUEST THAT THIS medication "HYDROCIl INSTANT" BE DISContinued_
_Put INMATE BACK ON methi mosyes, Also WRIT MR. RUFFIN To 9 outside hospital_
_To be Examine his Throat Area. If Grievance Not STAY, I going on hungr strike_
(Attach additional pages if necessary)

COUNSELOR'S RESPONSE

Date Received: _3/29/01_

Response: _As inmate previously informed, medical Personnel's diagnosis, treat-_
_and prescriptions are beyond the purview of Clinical Services to ad___

Counselor _[signature]_        Print Name _J.W. Goforth_        Date of Response _3/29/01_

☐ Outside jurisdiction of this facility, grievances which are from a facility other than the committed person's present location and pertain to the issue of transfers from the Transfer Coordinators Office, forward directly to the Administrative Review Board, 1301 Concordia Court, P___ Box 19277, Springfield, IL 62794-9277

(A 51.)





KEEP THIS AND ALL DRUGS OUT OF REACH OF CHILDREN

### DIRECTIONS

1. POUR CONTENTS (ONE ADULT DOSE) INTO 8 OZ. GLASS.

2. ADD WATER, FRUIT JUICES OR OTHER LIQUIDS AND STIR. IT MIXES INSTANTLY.

3. DRINK. MAKES "FOLLOW" WITH AN ADDITIONAL GLASS OF LIQUID.





EXHIBIT A Pg 28



**Illinois**
**Department of**
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

July 23, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on July 18, 2001, regarding medical treatment (4/7 to 4/11/01), which was alleged to have occurred at Menard Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated June 20, 2001 and approval by the Chief Administrative Officer on June 22, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Donald N. Snyder, Jr.
Director

cc:   Warden Roger D. Cowan, Menard Correctional Center
       John Ruffin, Register No. K80541
       Chron. File

EXHIBIT A, P9 29



**George H. Ryan**
Governor

# Illinois
### Department of
# Corrections

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

July 12, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on July 2, 2001, regarding Staff Conduct (excessive force, 4/26/01), which was alleged to have occurred at Menard Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated June 20, 2001 and approval by the Chief Administrative Officer on June 22, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Donald N. Snyder, Jr.
Director

cc:  Warden Roger D. Cowan, Menard Correctional Center
     John Ruffin, Register No. K80541
     Chron. File

(A 53)

EXHIBIT A, Pg 30

**George H. Ryan**
Governor

# Illinois
## Department of
## Corrections

**Donald N. Snyder Jr.**
Director

**Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844**

## MEMORANDUM

DATE:     June 20, 2001

TO:       Johnny Ruffin, K80541
          N2-C-7

FROM:     Mavis Wittenborn
          Grievance Officer

SUBJECT:  Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #964 dated 4/13/01 and report #1129 dated 5/7/01 which was referred to the HCU Administrator and ADA Coordinator for additional information.  All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he is not receiving proper treatment concerning his disability when he dresses out and goes on writs.  He feels he needs a new wheelchair accessible van to transport him.

ADA Coordinator reported the HCU Administrator stated inmate Ruffin has right sided hemiparsis since a gun shot wound in 1999.  He has current orders for a leg brace to support this disability.  He has current orders for a leg brace and arm brace to support this disability.  He has permission to use his walker in his cell and to use a wheelchair for mobility issues.  He is able to stand with assistance.  He was medically cleared for a court writ on 3/1/01 and again on 4/4/01.

Captain Yallay, 11-7 shift Captain, was contacted and he stated that inmate Ruffin is a high escape risk and for security reasons they do not strip search him in his cell.  He was taken to the first floor shower room, where they search all writ inmates, and told to take off his clothes.  He refused to comply and was very abusive with his language.  They sat him on a chair to strip search him.  He continued to be resistive and verbal.  At one point, they had to lay him on the floor to complete the search and to dress him.  The inmate was secured in restraints per directive requirements after checking with medical staff to ensure no medical conditions existed that would prevent normal cuffing.  Captain Yallay was at the van when inmate was placed in his seat and he states that at no time was he placed on the floor.  Because he would not assist staff, they had to physically pick him up from his chair and place him in the vehicle seat.

HCU Administrator stated the arm brace is only necessary to prevent contractures.  It does not provide him with pain relief, only support.  On 4/7/01, inmate was seen for sick call for his right leg and side pain and edema by the CMT.  He was referred to the physician and seen on 4/11/01 with minimal/slight edema of the right foot.

An ADA van can be requested from another facility to use for transport of wheel chair inmates, but it is not required if transfer of the inmate can be done in a safe manner for the inmate and the transporting officers.

Due to the above information, this officer recommends grievance be denied.



EXHIBIT A, pg 31

D428 MCC#1

## GRIEVANCE OFFICER'S REPORT

Date Reviewed _____ 5/7/01 _____     Date of Review _____ 5/7/01 _____

Committed Person   Johnny Ruffin (N2-C-7)     Number   K80541

Nature of Grievance   Staff Conduct, ADA (7b,c,12b,c,)

Facts Reviewed   All information submitted to the Grievance Officer by the inmate or institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.

Recommendation   I am requesting U/S Maue & the ADA Coordinator provide the grievance officer with any information pertinent to the issue(s) being grieved by the inmate. Upon receipt of a response, the G.O. will then consider all information and render a final disposition on the inmate's grievance.

Grievance Officer _____     Tom Carter
      Print Name

cc: Inmate Ruffin, U/S Maue, ADA Coordinator

## CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received _____ 5/7/01 _____    ☐ I concur    ☐ I do not concur    ☐ Remand

Comments _____

_____       5/8/01
Chief Administrative Officer       Date

## COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____       _____
Committed Person's Signature, Number       Date

EXHIBIT A, P93

** M.U.M. INMATE WHEEL CHAIR **
IDR DAILY GRIEVANCE 304841 ★★

| Date | Committed Person |
|------|---------|
| APRIL 26 2001 | JOHNNY M. RUFFIN |

ID# K80541

Present Facility: MENARD CORR. CTR.
Facility where grievance issue occurred: MENARD CORR. CTR.

### NATURE OF GRIEVANCE     ★★ EMERGENCY GRIEVANCE 304841 ★★

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report – Date _____
- ☐ Mail Handling
- ☐ Dietary
- ☒ Medical Treatment
- ☐ Transfer Denial
- ☐ By Transfer Coordinator
- ☐ By Institution
- ☒ Disability
- ☒ Other: EXCESSIVE FORCE BY C/OFF.
- A.D.A. VIOLATION

Where issued _____

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance: THIS IS AN EMERGENCY GRIEVANCE (IDR) JO4.840, ABOUT CORRECTIONAL OFFICERS EXCESSIVE FORCE AND INTERFERENCE WITH PRESCRIBED MEDICAL TREATMENTS, IN VIOLATION OF 8th Amendment / Americans WITH DISABILITIES ACT.
ON APRIL 26, 2001, AT About 2:00 A.M., Inmate RUFFIN WAS order FOR A DRESS WENT OUT TO COURT IN KANE COUNTY. MR. RUFFIN IS A PARAPLEGIA (MAINLY right upper/lower limbs) WHO HAS A VERY HARD-TIME dressing out ON his OWN, AND WHEN HE do dress out, he do it From the prior Nursing STAFF TAUGHT him, BY LAYing down in his bed or ANY FLAT SURFACE And use his Better side (LEFT) to put his clothes on. So WHEN CAPTAIN YAILADY #549 (Night Shift), MR. RUFFIN Humbly explained TO HIM THAT IT is very HARD FOR HIM TO CHANGE HIS CLOTHS WHILE IN THE WHEELCHAIR AND usually WHEN He goes ON weits They dress him out in his Cell house in the Bed ARea. BUT this CAPTAIN YAILADY #549, Wouldn't listen to MR. RUFFIN Honest And respectfully request or CARE to consider MR. RUFFIN'S INjuries (PARAPLEGIA) But only order his men to forcefully put Inmate RUFFIN in his WheelCHAIR AND When this HAPPEN, Sgt Higgins #3976, AND JOHN DOE C/O PICK MR. RUFFIN up violently ON his PARALYSIS Right Arm (that has MULTIPLE Bullet Fragments,) CAusing Him to Bump the top HIS HEAD ON THE LOWER BUNK And put him (RUFFIN) IN his WheelCHAIR AND ROll him down stair on the First Floor SHOWER room IN the NORTH 2 ANNEX Building (Segregation,) There in the SHOWER room IT WAS About 6 C/O, 1 Sergent, 1 Lieutennant And 1 CAPTAIN Present

To be cont.

Relief Requested: _____

(Attach additional pages if necessary)

### COUNSELOR'S RESPONSE

Date Received: _____

Response: _____

Counselor: _____

| Signature | Print Name | Date of Response |
|-----------|------------|------------------|

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denial of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277



EXHIBIT A, P.33

SD428 MCC#1

MCC#1

COMMITTED PERSON'S GRIEVANCE REPORT

Date: April 28, 2001    Committed Person: JOHNNY M. RUFFIN    ID #: K84591

Present Facility: MENARD C.C.    Facility where grievance issue occurred: MENARD C.C.

NATURE OF GRIEVANCE:

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report  Date _____
- [ ] Mail Handling
- [ ] Dietary
- [X] Medical Treatment
- [ ] Transfer Denial
- [ ] By Transfer Coordinator
- [ ] By Institution

Where issued _____

- [X] Disability
- [Z] Other: EXCESSIVE FORCE /ON EACH/ A.D.A. VIOLAT

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

CONT PAGE 2    THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance There in the SHOWER ROOM. INMATE once AgAiN pleeded with CAPTAIN YAHADY #549, That it is impossible for him to change And strip SEARCH out, This CAPTAIN YAHADY Order his meN to strip INMATE RUFFIN out, This Time The SGT. Higgins #3976 AND/OR JohnDoe pick INMATE up out his wheelchair pull his pants down And strip him naked and throw INMATE RUFFIN to the ConCreto ShowEr Floor on his paralyze Side And while on the Ground, SGT. HIGGINS kick MR. RUFFIN iN the Butt Area And put his feet on him while they suppose to check for weapons iN his Buttocks, Because of these mALicous, SADist, Abusive INtent use excessive Force on a DISABLE INMATE Neither threaten of pose any ThreAt to officials, Cause severe headache, swollen hips (Right) swollen Right Arm, Agitated Excruciating pain to right shoulder (Because of Bullet FrAgments/IN shoulder) (see Ex. A,T) AND psychological DEFAMATION of his (RUFFIN) character, But this DIAbolical Acts DOESN't STOP There. This CAPTAIN YAHADY #549 AND SGt. HIGGINS #3976 continue to violate MR. RUFFIN Rights, By intentionally refusing to give INMATE his prescribed BrAces (RIGHT/LEG/AND ARM) AND prescribed medications BACLoPHEN + TYLNOL for his 22 HOURS lock Court Writ AND SGt. Higgins put the HANDi Cuffs ON Extra Tight + that Cause Blood circulation to Be cut off, this is Extremly Excruciating pain, Iv my right hand especially Turned GREEN pale, Because of the History of Blood clotting iN my Right Arm (CAUSED BY Th Bullet FrAgment Tearing my veins and arteries) And IDIO,C, reFUSAL TO GivE COUMARIN Blood clotting prevention medications — CONt—

Relief Requested: _____
_____
_____
_____
(Attach additional pages if necessary)

COUNSELOR'S RESPONSE

Date Received: _____
Response: _____
_____
_____
_____

Counselor: _____
Signature    Print Name    Date of Response

- [ ] Outside jurisdiction of this facility  grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277




EXHIBIT A, P. 34

5D428  MCC#1

142B MCC#1

COMMITTED PERSON'S GRIEVANCE REPORT

| Date: April 26, 200? | Committed Person: Johnny M. Ruffin | ID# K83?4 |

Present Facility: MENARD CORR. CTR.    Facility where grievance issue occurred: MENARD CORR. CTR.

NATURE OF GRIEVANCE:

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report - Date _____

- ☐ Mail handling
- ☐ Dietary
- ☒ Medical Treatment

- Transfer Denial:
- ☐ By Transfer Coordinator
- ☐ By Institution
- Where Issued _____

- ☒ Disability
- ☒ Other: Excessive Force / To A.P.A.D? A.D.A. Violat'n

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

—CONT. PAGE 3

Brief Summary of Grievance: This Malicous, Deliberate Indifference, Excessive force Acts which was orchestrated by Captain Vallady #549 violated Mr. Ruffins 8th Amendment Constitutional "prisoner is entitle to be free from Cruel And Unusual Punisment" And violation of Illinois compiled state 730 ILCS 3-8-7, No disciplinary restrictions is allow on Medical care or Treatments And Because these Acts, Mr. Ruffins health enhanger. But the terror doesn't stop there, MENARD Correctional Center Transportation system, IS NOT A.D.A. COMPATIBLE II is NOT WHEELCHAIR ACCESSIBLE. THE Correctional officers HAVE to DRAGGE Inmate Ruffin out his wheelchair And put on the ground of the wheel chair or on the floor of the van, And throw Him upon the seat of the van, causing Inmate Ruffin pain in his Right lower parts. Doing the 20 hours court writ ride, when the van hit certain bumps Inmate Ruffin, Be ~~?~~ Dangling Around Because he doesn't have total body control Jor is paralysis. When Inmate Git to the court house, (Jo John Doe / And Sgt. Higgin, pick Inmate off the van's seat back on the floor of the van, then Dragged him (Ruffin) on the floor of the van to the van's door, then Dropped Mr. Ruffin in this wheelchair. This happens thru out A every court writs. This violation of A.D.A. 42 U.S.C. 12134 "The police van used To transport me, Ruffin to the courthouse was not equipped with a wheelchair lift or wheelchair restraints." Also Mr. Ruffin suffers severe spasms, Right-Hand twined a priene Graw ?al? Became swollen Because of not having Hand braces, And his Right foot Became swollen without leg brace. — End of ?

Relief Requested: _____
_____
_____
_____

(Attach additional pages if necessary.)

COUNSELOR'S RESPONSE

Date Received: _____

Response: _____
_____
_____
_____

Counselor _____
Signature        Print Name        Date of Response

☐ Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277

EXHIBIT A, P35

REQUESTED: RELIEF IS ASKED UND... AMERICAN WITH DISA
ACT— THIS RULE IMPLEMENT SUBTITLE A OF THE TITLE II OF A.D.A
PUB. L. 101-336, WHICH PROHIBITS DISCRIMINATION ON THE BASIS O
DISABILITY BY PUBLIC ENTITLES (I.P.O.C.) SUBTITLE A PROTECTS QUALIFIE
INDIVIDUALS WITH DISABILITIES FROM DISCRIMINATION ON THE BASIS OF D
IN THE SERVICES, PROGRAMS, OR ACTIVITIES OF ALL STATE AND LOCAL GOVERN
THE MENARD CORRECTIONAL CENTER TRANSPORTATION VAN IS A SERVIC
IN WHICH SERVICE IS NOT AVAILABLE TO MR RUFFIN BECAUSE WHEE
BOUND AND CAN'T WALK. MENARD C.C. TRANSPORT VAN HAS NO WHEELCHAIR LIFT O
AREAS TO STRAP WHEELCHAIR DOWN OR RESTRAINT TO MAKE WHEELCHAI
SECURE, AND SO THAT MR. RUFFIN IS NOT BOUNCING AROUND OR FALL OUT
THE CHAIR. PARAGRAPH (B) OF A.D.A. § 35.102 EXPLAINS THAT TO THE EXT
THAT THE PUBLIC TRANSPORTATION SERVICES, PROGRAMS AND ACTIVIT
OF PUBLIC ENTITIES ARE COVERED BY SUBTITLE B OF TITLE II OF THE AC
THEY ARE SUBJECT TO THE REGULATION OF THE DEPARTMENT OF TRANSPORTAT
AT 49 CFR PART 37, AND ARE NOT COVERED BY THIS. THE DEPARTMENT
OF TRANSPORTATION'S A.D.A. REGULATION ESTABLISHED SPECIFIC
REQUIREMENT FOR CONSTRUCTION OF TRANSPORTATION FACILITIES AND
ACQUISITION OF VEHICLES. MENARD C.C. SERVICES IS NOT A.D.A.
EQUIP SIMILAR TO MR. RUFFIN'S CASE, WHERE HIS COURT WRITS rides
HE BE DANGLING EVERYWHERE, because OF THE VAN HAS NO PIECE TO
PUT WHEELCHAIRS.  For THE FOLLOWING HONESTLY TRUTHFULLY REASONS
I ASK FOR INJUNCTION ON THE A.D.A. VIOLATION FOR NOT HAVING
A TRANSPORT VAN WITH A WHEELCHAIR LIFT AND WHEEL CHAIR ACCESSIBL
FOR A DISABLE PERSON (RUFFIN) AND FOR MENARD C.C. A.D.A. COORDINATOR
ASSISTANT WARDEN WALLS TO ORDER OR PROVIDE OR RENT AND A.D.A. ACCESSIL
VAN FOR MR. RUFFIN FOLLOWING COURT DATE MAY 8, 2001 + JUNE 16, 2001
AND MAYBE MUCH, MUCH MORE IF HE GOES TO TRIAL, AND COMPEN
HIM (RUFFIN) FOR PUNITIVE DAMAGES OF $10,000°° FOR HIS PSYCHOLO
DEPRESSION, + DEHUMANIZING DISCRIMINATORY PRACTICE TOWARDS A DISAB
PRISONERS, — END



EXHIBIT A, PG 36

28 MCC#1

Inmate's Name **Ruff, Johnny**    Inmate's Number **K80541**

| Problem Number | Date Entered | PROBLEM LIST | Problem Resolved | Date Resolved |
|---|---|---|---|---|
| 1 | 3-20-00 | NKA | | |
| 2 | 3-20-00 | Smoker | | |
| 3 | 3-20-00 | HX ETOH & Marijuana Abuse | | |
| 4 | 3-20-00 | HX Surgery on Forehead as child | | |
| 5 | 3-20-00 | HX GSW 1995 & 1999 - S/R has bullets (7 or 8) in back - neck | | |
| 6 | 3-20-00 | Spinal Injury 1999 due To GSW C6 + C7 Vertebre injuries | | |
| 7 | 3-20-00 | S/R Quadraplegic | 3/28/00 See below | |
| 8 | 3-20-00 | Has Contractures ® hand | | |
| 9 | 3-20-00 | S/R wears neck brace | | |
| 10 | 3-20-00 | Has plastic brace for ® hand | | |
| 11 | 3-20-00 | Has bilateral plastic braces ↓ Extremities & Feet | | |
| 12 | 3-20-00 | S/R psych HX 5 TX | | |
| 13 | 3-20-00 | Does not have his own W/CH - Alco #605139 - Blue c red arm rests (Dcc Loan) | | |
| | 3/28/00 | ① am functional stands c asst. | | |
| | 2/6/01 | add # Men CC HDu - Spinal cord injury ® c did pushed w/c board | | |
| | 2/8/01 | Men CC problem list updated, R.N. ® additions, ① ▲ii —— R.N. ® | | |
| | 5/15/01 | Peer Education/Health Care / Peer education Pocket #1 ® inmate ▢ | | |
| | 2/28/01 | Refused TB Test NFH Status | | |
| | 4/4/0? | Men Problem List Updated as Date & Int. Routine Care - No Change Additions: ~~ | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |



[EXHIBIT A p°37]

RELIEF
REQUESTED:

FROM THE FACTUAL ALLEGATIONS OF CAPTAIN L. YANDY BADGE #
549 AND 3 GT. J. HIGGINS BADGE # 5776 AND C/O JIM DOE
BADGE # N/A OFFICIAL MISCONDUCT OF EXCESSIVE FORCE
AGAINST A DISABLE PRISONER MR. RUFFIN, THE FORCE OFFICER
USE WAS APPLIED ONLY IN A MALICIOUSLY OR SADISTICALLY FOR THE
VERY PURPOSE OF HARM, HARASSMENT OR PUNISHMENT OR
DEHUMANIZE A DISABLE PRISONER, ACCORDINGLY TO THE FACTS
STATED ABOVE, I REQUEST AND IMMEDIATELY INVESTIGATION AND
DISCIPLINE THE ABOVE OFFICIALS MISCONDUCT, BY THE ASSISTANT WARDE
OF OPERATIONS GARY A. KNOP, UNDER THE CONTROLLING CASE
HUDSON V. MCMILLIAN, 501 US. 1, 6-7, "IN A PRISON SETTING, THE UNNECESS
AND WANTON INFLICTION OF PAIN EQUALS CRUEL AND UNUSUAL PUNISHMEN
AND VIOLATES THE EIGHT AMENDMENT. BECAUSE PRISON EMPLOYEES MUST
BALANCE THE NEED TO MAINTAIN ORDER WITH THE HARM THAT INMATES
MAY SUFFER IF FORCE IS USED, LIABILITY RESULTS ONLY WHEN FORCE
IS APPLIED MALICIOUSLY OR SADISTICALLY." IN CASE AT BAR, MR. RUFFIN
POSE NO THREAT TO SECURITY, AND HE IS PARALYZE ON HIS RIGHT-
SIDE.  THE INCINDENTS STATED ABOVE, IS NOT THE FIRST TIM
THIS HAPPEN WHEN I WENT ON MY COURT WRIT APRIL 8, 2001, 2:00 A.
(SEE PRIOR GRIEVANCE) SO THIS IS AND ONGOING VIOLATIONS OF MR. RUFF
8TH AMENDMENT RIGHTS.  THIS ONLY HAPPENS ON YANDY SHIFT,
SO I REQUEST AN INJUNCTION ON CAPTAIN L. YANDY # 549 MISCONDUCT TEND
ME WHEN I GO COURT WRIT OR ANY SETTINGS AS WELL AS THE SGT. ME
TO SUPENDED OFFICIAL FOR THIER ACTS, COMPENSATE MR. RUFFIN
$10,000.00 FOR INJURIES (STATED IN COMPLAINT) AND EMOTIONAL DAMAGES
AND ASSIST. WARDEN GARY KNOP TO INVESTIGATE AND SUSPEND OFFICERS
AND ACCORDINGLY TO PURSUANT 930 ILCS 3-8-7 NO DISCIPLINARY RESTRICTIONS ON MR. RUFFIN
PRESCRIBED MEDICAL HAND & ARM BRACE OR MEDICATION (BACLOFEN) ON HIS FUTURE COURT WRITS BY THE
OFFICER STATED ABOVE OR ANY OFFICER. AND TO USE FLEXI-CUFF GROUND BACKS LIKE THE
SUPPOSE TO DO IT. AND INJUNCTION FROM ANY RETALIATION FOR THIS GRIEVANCE—END





3D428 MCC#1

128 MCC#1

Date: 3/ 2001 | Committed Person: Johnny M. Ruffin | ID#: N25314
Present Facility: MENARD CORR. CTR. | Facility where grievance issue occurred: MENARD CORR. CTR.

NATURE OF GRIEVANCE

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Restoration of Good Time
- [x] Staff Conduct
- [ ] Dietary
- [x] Medical Treatment
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Disciplinary Report
- [x] Disability
- [ ] Other: A.D.A. Violations

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Office.
PAGE 2 - Grievance Office completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance: Is addressing Menard Correctional Center vehicle transportational service of disable wheelchair that violation of A.D.A. Title II of the Americans with Disabilities Act of 1990 (ADA), 104 Stat. 337, 42 U.S.C. § 12131 et seq. which prohibits a "Public entity" from discriminating against a "Qualified individual with a disability" on account of that individual's disability, see § 12132. And Menard officers and medical staff deliberate indifference to I/m Ruffin once prescribed mandated hand braces. On date April 6, 2001 I had a writ to Kane County Judicial center for a court date. At 3:00 a.m. Captain Yalady was the night shift supervisor. Inmate Ruffin told the North II A.D.A. C-Wing officer that "he usually strip out in his bed, because of his disabilities he not able to change clothes in his wheelchair, being he's one hand to use." Captain Yalady just told I/m Ruffin "If you not going to change your clothes in the wheelchair we going to dress you out on the floor." Mr. Ruffin, "That floor's dirty & nasty, and that he usually dress out on his bed where he changed all his clothes." This Captain order his men (Clos, Ltress) all dump I/m on the dirty floor and strip him of his cloths and continue to turn inmate on the dirty floor, until he was dressed by the officers. This captain order his men to forget about his hand braces (it was use to prevent contraction and provide circulation) with hand brace, I/m Ruffin hand will become contracted and causing excruciating pain & swelling in I/m Ruffin right hand. From the time he left Menard to Kane County courthouse back to Menard is a 12 hour drive, in which Mr. Ruffin hand swelling up, turned a pale green, contracted real bad, and cause excruciating pain in his right hand ---- Cont.

Relief Requested: Ask for an injunction on this illegal act, and to provide correctional officers & nursing staff about my mandate right arm brace on writs. 2.) order new A.D.A. wheelchair accessible van according to the A.D.A. standards 3.) And compensate I/m Ruffin for his pain & suffering cause by violations stated.

(Attach additional pages if necessary.)

COUNSELOR'S RESPONSE

Date Received: ____________

Response: ____________

Counselor: ____________ Signature ____________ Print Name ____________ Date of Response

- [ ] Outside jurisdiction of this facility: grievances which arise from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277

EXHIBIT A, Pg. 39

sD428  MCC#1

| Committed Person Name | | ID # |
|---|---|---|

Program Facility

Facility where
Grievance Issue Occurred

## NATURE OF GRIEVANCE

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report     Date

- [ ] Mail Handling
- [ ] Dietary
- [ ] Medical Treatment

- [ ] Transfer Denial
- [ ] Emer Transfer Coordinator
- [ ] Bullet Loan

- [ ] Disability
- [ ] Other _____

Where Issued _____

PAGE 1 -  Committed person completes and sends to counselor who completes counselor response and returns to committed
person.  Committed person then decides whether or not to forward to Grievance Officer.  Grievances on discipline go
directly to Grievance Officer

PAGE 2 -  Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person.  Committed person
then decides whether or not to forward to ARB

--- CONT. 2        THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance  CAUSING MC.RUFFIN HEAD ACHEs, etc... THIS IS deliberate indiffere
to every prescribed mandate medical treatment and violation of Illinois
Unifier Code of corrections as prohibits Disciplinary restrictions on medical needs.
Pursuant to 730 ILCS 5/3-8-7 (E)(4) IN which CAUSED CORPORAL PUNishment
to I/M RUFFIN, BECAUSE CAPTAIN YALLADY who did gave me the ~~xxxx~~ benefit
of the doubt did call Nurse GALE who was the Night-shift Nurse, who stated
"I/M RUFFIN DON't need this hand Brace on" she was Outright wrong I used
this brace and been using the Brace for over a year and half because of my ongoing
Health issue. This deliberate indifference to medical need. THE MENARD (correction)
CENTER TRANSPORTATION BUS DOESN'T accommodate wheelchair. For instant, the
TRANSPORTATION VEHICLE in Pinckneyville is has a Back door that have a lifter
so the wheelchair will be ~~xxxxx~~ accessible for inmates. once the wheelchair in the
vehicle, this A.D.A. Accessible vehicle have locks to lock wheelchair down so inmate
wouldn't fall out his wheelchair. But on the other hand the Menard C.C.
transportation vehicle don't have any of the equipment vehicle I described
that Pinckneyville A.D.A. Joints have, it Not A.D.A. wheelchair accessible. for instant
the C/O's just take me out of my wheelchair thrown me on the floor
the van and then pick me up on phume in a seat in the van, And then
fold my wheelchair up in put in the back of the van. This is very different
from a A.D.A. wheelchair Accessibility transportation van. This particular
situation jeopardize my Health and Safety my leg became swollen and the
seat Belt was not secure. After I got back to Menard, I ask for immediate
medical treatment was denied service. C/O RICHARD (C-wing) SAID "Run C.H.P.a. SAYS you asked
CAll PASS IN and me take care of that later. End grievance ___

Relief Requested _____

(Attach additional pages if necessary)

| COUNSELOR'S RESPONSE | |
|---|---|

Date
Received _____

Response: _____

Counselor _____  Signature _____  Print Name _____  Date of Response _____

[ ] Outside jurisdiction of this facility, grievances which pose a threat to the facility or the committed person's present location and benefit
of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P O
Box 19277, Springfield, IL  62794-9277



EXHIB IT A, P9. 40

COMMITTED PERSON'S GRIEVANCE REPORT

| Date: 3/5/2001 | Committed Person: Johnny M. Ruffin | ID #: B85471 |

| Present Facility: MENARD C.C. | Facility where grievance issue occurred: MENARD C.C. |

NATURE OF GRIEVANCE

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report - Date
- ☒ Mail Handling
- ☐ Dietary
- ☒ Medical Treatment
- ☐ Transfer Denial
- ☐ By Transfer Coordinator
- ☐ By Institution
- Where issued
- ☒ Disability
- ☐ Other

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance: This grievance is about the Neglect of Medical needs And Careless abuse of C/o Rowland (Badge# 287) + C/o Westerman/Na (Badge# 164) And the Medical Director.

*On March 2, 2001 I/M Ruffin was on a court writ. to Kane County, with C/o Rowland + C/o Westerman. I will honestly like to say I felt like they really had any concerns about my medical conditions at all. For example, they just grab me anywhere and drag me into the truck, just did any kind of ways I must admit that these guys was probably unaware of the multiple bullet fragments In my right shoulder Although I warned them at first they pay no attention, maybe they thought I was faking it or something, because I know they seen more Can game from other inmates. So I ask that the medical staff here Can informed the officers that take me on a court writ Be careful of my right-shoulder Because I have suffer constantly agitating pain in my right-shoulder when I tried to to do my range of motion exercise In my cell. *2) I have been in Menard C.C. segregation for over a month now without my once prescribe Physical therapy, Although I tried to do my rom + stretching exercise in my cell room (not) It is a constant struggle to do any work out due to small bunk, I have no room to stretch my legs/Hip Flexer etc. The damage I recieve from this, for not have once prescribed Rehabilitation service, that I enjoin in other facility segregation is: Rapidly deterioration of my right side lower/upper limbs (muscle Atrophy) constant contractual pain In right hand, lock shoulder, more spasm of the muscle, Osteperus etc...

Relief Requested: I ask that the medical staff will advise the correctional officers about Disable Inmate conditions @ I ask that the Menard medical facility provide Physical therapy for me, so I don't become permanent damages on my right-side upper/lower extremities.

(Attach additional pages if necessary)

| COUNSELOR'S RESPONSE |

Date Received: 3/7/01

Response: Medical staff will make any needed medical explanations to staff and will provide needed therapy. JW

| Counselor: [signature] | J.W. Gobosh | 3/7/01 |
| Signature | Print Name | Date of response |

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

EXHIBIT A, pg. 4

[vertical margin text left]: B85471/Menard #1

[vertical margin text right]: This Grievance is not counselor should not be forward grievance to Grievance officer Because ever the counselor Note that I was recieving rehab...



**Illinois**
**Department of**
**Corrections**

George H. Ryan
Governor

Donald N. Snyder, Jr.
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

November 30, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on November 7, 2001, regarding staff conduct (Counselor Goforth (alleges not answering grievances in a timely manner), which was alleged to have occurred at Menard Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated October 24, 2001 and approval by the Chief Administrative Officer on October 26, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration.  It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Donald N. Snyder, Jr.
Director

cc:   Warden Jonathan R. Walls, Menard Correctional Center
      John Ruffin, Register No. K80541
      Chron. File



EXHIBIT A, P9. 42

2538

| GRIEVANCE OFFICER'S REPORT | |
|---|---|

Date Received: ___8/28/01___   Date of Review: ___10/24/01___

Committed Person: ___Johnny Ruffin (N2-C-7)___   Number: ___K80541___

Nature of Grievance: ___Staff (7B)___

**Facts Reviewed**   All information submitted to the Grievance Officer by the inmate or institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed.  Inmate grieves his grievances are not being answered in a timely fashion and requests they be addressed.

Counselor Goforth stated grievances are answered as soon as possible and inmate can forward them to the Grievance Office if he does not like the answer.

**Recommendation**   All grievances are answered in the order in which they are received and as soon as reasonably feasible under the circumstances, as is stipulated in DR-504.  Inmate has had 15 grievances addressed thus far in the past year according to records. No further action will be taken.

Grievance Officer: _Mavis Gross (Signature)_    Mavis Gross

cc:  Inmate Ruffin          Print Name

| CHIEF ADMINISTRATIVE OFFICER'S RESPONSE | |
|---|---|

Date Received: ___10/24/01___   ☑ I concur   ☐ I do not concur   ☐ Remand

Comments: _____

_JR Wallsay_ Chief Administrative Officer    10-26-01 Date

| COMMITTED PERSON'S APPEAL TO THE DIRECTOR | |
|---|---|

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board.  I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

Committed Person's Signature/Number    Date

DC 5657    Copy: Original to the Master File    ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                    1301 Concordia Court, P.O. Box 19277
                                                Springfield, Il  62794-9277

Side 2

EXHIBIT A, PG 43



COMMITTED PERSON'S GRIEVANCE REPORT

| Date: AUG 17 2001 | Committed Person (Please Print): RUFFIN JOHNNY | ID #: K80541 |

| Present Facility: MENARD C.C. | Facility where grievance issue occurred: MENARD C.C. |

NATURE OF GRIEVANCE: DENIAL ACCESS TO COURT / AND Redress GRIEVANCE / EMERGENCY GRIEVANCE

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report - Date _____
- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment
- Transfer Denial
  - ☐ By Transfer Coordinator
  - ☐ By Institution
  - Where Issued _____
- ☐ Disability
- ☒ Other: Counsel / LAW CLERK DENIAL ACCESS TO COURT / REDRESS Grie...

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance: THIS GRIEVANCE IS BROUGHT UNDER IDR. 504.840 EMERGENCY grievance (THAT THERE IS A SUBSTANTIAL RISK OF IMMINENT PERSONAL INJURY OR OThER IRREPARABLE HARM to the COMMITTED PERSON THE GRIEVANCE SHALL BE HANDLED ON AN EMERGENCY BASIS) COUNSELOR GOFORTH FAILING TO ANSWER GRIEVANCE IN A TIMELY FASHION OF SAID ANSWER GRIEVANCE PERIOD OR IF HE ANSWER GRIEVANCE BUT DOESN'T ADDRESS INMATE RUFFIN RELIEF REQUESTED. ALSO GRIEVANCE OFFICER MAVIS GROSS FAILED TO COMPLY WITH IDR. TO ANSWER GRIEVANCES IN HIS POSSESSION WITHIN 90 DAYS OF RECEIPT. ALSO THE LAW CLERK RETALIATION BECAUSE RUFFIN SOUGHT TO FILED GRIEVANCE ABOUT BEING DENIED MEDICAL TREATMENT AND DENIED LEGAL SUPPLIES TO BE USE TO ACCESS THE COURTS — THIS IS IN VIOLATION OF INMATE 1st FIRST AMENDMENT RIGHT TO BE "PROTECTED the RIGHT OF the PEOPLE PEACEABLY TO ASSEMBLE, AND TO PETITION the GOVERNMENT FOR A REDRESS OF GRIEVANCES," INMATE RUFFIN HAS FILED SEVERAL GRIEVANCES IN THE LAST 3 TO 4 MONTHS WITH COUNSELOR GOFORTH & GRIEVANCE OFFICER MAVIS WITTMAN EITHER FAILING TO ADDRESS IN RUFFIN STAMP RELIEF OR FAILED TO FILED FINALLY DECISION ON GRIEVANCES APPEALED TO HIM WITHIN 90 DAYS. FOR EXAMPLE. the FOLLOWING GRIEVANCES HAS BEEN IN GRIEVANCE OFFICER POSSESSION FOR APPROXIMATELY (3 TO 4 MONTHS PERIOD) 1.) GRIEVANCE DATED MAY 8, 2001, ADDRESSES DELIBERATE INDIFFERENCE TO MEDICAL NEEDS, 730 ILCS 5-3-7 "PROHIBIT DISCIPLINARY RESTRICTION ON FOOD / MEDICAL TREATMENT HYGIENES, AND LEGAL MATERIAL" 2.) GRIEVANCE DATED MAY 18, 2001, CONCERNING CORRECTION OFFICER THROWING AWAY INMATE LEGAL MAIL FROM APPELLATE DEFENDER, GRIEVANCES REPORT 1810 DATE RECEIVED 5/30/01, 3. DAT GRIEVANCE DATED 5/12/2001, RETALIATION FOR FILING GRIEVANCE BY DENYING

→ CONTINUE

Relief Requested: I M M E D I A T E _____ [illegible] _____

(Attach additional pages if necessary)

---

COUNSELOR'S RESPONSE

Date Received: 8/24/01

Response: Inmate Ruffin's many grievances are answered as soon as possible. When grievant is not satisfied with information in Counselor's response he can forward the grievances to the Grievance Officer for final resolution. gft

| Counselor: [signature] | J.W. Goforth | 8/24/01 |
| (Signature) | Print Name | Date of Response |

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277



EXHIBIT A, P944

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

| Date | Committed Person (Please Print) | R 11-b ... | ID # |
|------|---------------------------------|------------|------|
| Present Facility | Facility where grievance issue occurred | | |

**NATURE OF GRIEVANCE.**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report - Date _____

- ☑ Mail Handling
- ☑ Dietary
- ☑ Medical Treatment

- Transfer Denial
- ☐ By Transfer Coordinator
- ☐ By Institution
  - Where issued _____

- ☐ Disability
- ☐ Other _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

CONT. 2

Brief Summary of Grievance   PUBLICATION OF RELIGIOUS BOOK FROM THE HOLY TABERNACLE MINISTERIES + BUCRING SPENS NOWS PAPERS, # TO DISCOUTAGE, IN/HALF FROM FILING GRIEVANCES 4.) THE SEGREGATION UNIT LAW LIBRARY CLERK RETALIATION + RESTRICTION ON MY 1ST AMENDMENT RIGHTS TO SEEK ACCESS OF COMMUNICATION WITH THE COURT, IN VIOLATION OF MY CONSTITUTIONAL RIGHTS UNDER 14 AMENDMENT "DUE PROCESS + EQUAL PROTECTION CLAUSES, THE FIRST AMENDMENT AND THE PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV, AND PURSUANT 730 ILCS 3-8-7 "DISCIPLINARY SEGREGATION SHALL NOT PUT ON LEGAL SUPPLIES, 5.) REHABILATION ACT OF 1973 AS AMENDED (29 USC 794 et seq) BECAUSE OF MY DISABILITY I AM BEING EXCLUDED FROM PARTICIPATION AND BEING DENIED THE BENEFITS OF AND SUBJECTED TO DISCRIMINATION IN THE PROGRAMS, AND ACTIVITIES AT GRIEVANCE DATE: 6/29/200 6.) DATED 6/19/2001 EMERGENCY GRIEVANCE 504.840 "IMMINENT DANGER" INTERFERING WITH ACCESS TO THE COURT VIOLATION FIRST AMENDMENT RIGHT. THESE DENIAL IS UNCONSTITUTIONAL AND I AM CURRENTLY SUFFERING HARM BECAUSE OF IT, NOW I DON'T HAVE LEGAL SUPPLIES TO LITIGATE A CASE I NOW HAVE IN THE FEDERAL COURT, ALSO THESE GRIEVANCE SPECIFIC ADDRESS THOSE ISSUES STATED IN GRIEVANCES, ALSO ADDRESSES MEDICAL ISSUES. 2.) FURTHER COUNSELOR GO FORTH DOES NOT ANSWER GRIEVANCE FULY, HE WILL NOT ADDRESS THE GRIEVANCE AT ALL AND WILL WRITE IN COUNSELOR'S RESPONSE GRIEVANCE HAS PREVIOUSLY BEEN ADDRESSED, # OR HE ANSWER GRIEVANCES BUT WILL NOT ANSWER INMATE RUFFIN REQUEST RELIEF, THIS DOES NO JUSTICE IN ADDRESSING GRIEVANCE BECAUSE ALL MY ISSUES NEVER GET ADDRESSED BECAUSE OF THIS NEGLECT. 3.) LAW LIBRARY CLERK ELYSEA REA, IS READING MY LEGAL DOCUMENT WHEN I TRIED GET GRIEVANCES OR OTHER LEGAL DOCUMENTS COPIES AND SAW I AM SEEKING

CONTINUE →

Relief Requested: _____

_____

_____

_____

(Attach additional pages, necessary)

---

**COUNSELOR'S RESPONSE**

Date Received: _____

Response: _____

_____

_____

_____

Counselor _____

| Signature | Print Name | Date of Response |

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277


EXHIBIT A P945



Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

N2-607

| Date | Committed Person (Please Print) | ID # |
|---|---|---|

| Present Facility | Facility where grievance/issue occurred |
|---|---|

## NATURE OF GRIEVANCE

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report
- [ ] Mail Handling
- [ ] Dietary
- [ ] Medical Treatment
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] By Institution
- [ ] Disability
- [X] Other (specify)

Where issued

PAGE 1 - Committed person completes, and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on disciplinary are sent directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance *(handwritten, largely illegible)*

Relief Requested *(handwritten, largely illegible)*

## COUNSELOR'S RESPONSE

Date Received  5/30/01

Response  *Law library was contacted and informed counselor that inmate Roffman has the same limits & restrictions as all other inmates. JW*

Counselor  J.W. [signature]   6/29/01

- [ ] Outside jurisdiction of this facility. Grievances which are determined to contain substance should be forwarded to Grievance Officer and denials of transfers from the Transfer Coordinators Office should be sent to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

EXHIBIT A, P° 47

COMMITTED PERSON'S GRIEVANCE REPORT
EMP(99MC) 50 10

Date: MAY 8, 2001   Committed Person: JOHNNY M. RUFFIN   ID #: K80504

Present Facility: MENARD CORR. CTR   Facility where grievance issue occurred: MENARD CORR. CTR.

## NATURE OF GRIEVANCE

- [ ] Personal Property
- [ ] Mail Handling
- [ ] Transfer Denial
- [X] Disability
- [X] Staff Conduct
- [ ] Dietary
- [ ] ADA Transfer Coordinator
- [ ] Other DISCIPLINARY
- [ ] Restoration of Good Time
- [X] Medical Treatment
- [ ] Eye Institution
- restriction on Civil Liberty
- [ ] Disciplinary Report - Date
- Interest / 730 ILC 3-8-7

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS**

Brief Summary of Grievance: THIS IS AN MEDICAL EMERGENCY GRIEVANCE, IDR 504,840, of DELIBERATE INDIFFERENCE AND VIOLATION OF the ILLINOIS COMPILED STATUE 730 ILCS 3-8-7 "PROHIBIT DISCIPLINARY restriction on food, MEDICAL TREATMENT, Hygiene, AND LEGAL MATERIALS. I am A disable prisoner, Humbly ASK The ADMINIStrator to reconsider my previously Supplication request, out Prisoner's CONSTITUTIONAL RIGHT ─── 1) I'M RUFFIN, being to MENARD C.C. since 2/3/2001 It been over A little Bit over 3 months Now I HAVE NOT RECEIVE ONCE Prescribed Therapy or PHYSICAL THERApy. ON February 22, 2001, Dr. Feinderman, clearly stated the reasons why I am not getting P.T. Is Because of My DISCIPLINARY Ticket of Allegedly MAKing A weepon out of My BRACE, clearly IN VIOLATION OF 730 ILCS 3-8-7, Pro HiBIT CORPORAL PUNISHMENT ON my MEDICAL Treatment, because I am IN disciplinary Seg. The InJuries I suffer Is Muscle Atrophy, ContRacted right + left HAND + Shoulder decrease from deteriorating HEALTH + MEDICAL Deterioration of HAVing deal with the FACT I MAY NOT BE ABle to WAlk AGAIN. Yes MENARD C.C. GAVE ME A WALKER, but I CAN'T use ONLY to help ME TRANSFER out the Bed to Wheelchair or wheelchair to the toilet SEAT, but NOT to WALK, Since recently I was TAKEN off BACLOFEN (SPASM MEDS) I HAVE been HAVing FREQUENTLY SPASM, that deters me FROM REAding, writing, Sleeping or ANY other DAily ACTIVITy I usually do, I sit MY Wheelchair MY WHOLE right side Ball up OR tremble ridiculous. 2) The food IN Seg. unit REALLY propritarity SMALL COMPARE to GENERAl POPULATION, For InstAnce, SPAGEHTTI MY + MEAT BALL, WE WHO ARE SEGREGATION gets one OF A Small Spoon or two TABLE SPOON Full SPAGEHETT + A SMAll CRUSH UP

Relief Requested: MENARD C.C. ADM. to Honor the 730 ILCS 3-8-7, "PROHIBIT Disciplinary restriction on MEDICAL CARE, LEGAL MATERIAL, food, Hygiene ─ THAT INMATES IN Seg. A.D.A. Get 1 Shower a DAY, A BIGGER portion of MEAL SERVICE, Be Allowed to buy clear WHITE & 8 x 11 Typing paper of commissary & More than 25 Pens, AND writ to HAVE PHYSICAL THERApy.

## COUNSELOR'S RESPONSE

Date Received: 5/11/01

Response: Inmate must abide by the rules in disciplinary seg even if he happens to be physically handicapped. ✗

Counselor: [signature]   Print Name: T.W. Gobart   Date of Response: 5/11/01

[ ] Outside jurisdiction of this facility. Grievances which are from a facility other than the committed person's present location and denial of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277


EXHIBIT A P.48

3D428 MCC#1

COMMITTED PERSON'S GRIEVANCE REPORT    EMERGENCY Gr.    Gru. Rs.

| Date MAY 8, 2001 | Committed Person's Name JOHNNY M. RUFFIN | ID# K80504 |

Present Facility MENARD C.C.    Facility where grievance/issue occurred MENARD C.C.

## NATURE OF GRIEVANCE

- Personal Property
- ☒ Staff Conduct
- Restoration of Good Time
- Disciplinary Report — Date
- Mail Handling
- Dietary
- ☑ Medical Treatment
- Transfer Denial
- By Transfer Coordinator
- By Institution
  Where issued?
- ☒ Other DISCIPLINARY RESTRICTION ON CIVIL LIBERTY

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB

### THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

CON+2

Brief Summary of Grievance CABBAGE STEMS, A SMALL CAKE, + A MILK. THIS IS BARELY A KIDS HAPPY MEAL AT McDONALDS, This only one example, But Various out trays that meat are undone, Sometime I have gotten trays where somebody bite a piece of the food And officer serve the toys to eat, And once inmate bring to their attention they denied And don't give inmate Another tray. 3.) Before come to MENARD C.C., I was at Pwckneyville C.C. A.D.A. Segregation Unit, there inmate are Allow 2 showers a day. For Hygiene Here in MENARD C.C. A.D.A. SEGREGATION DISABLE wheelchair bound inmates get one shower a week ~ This clearly disciplinary restriction on Hygiene, Because as a Paralegia And a man we sweat a lot Around the Private Area + Being wheel chair makes even more worse by by being restricted to 1 shower a week I dangers especially in my case I'm Paralyzed on right side So it had me get those Area my body need wash because I need to take A shower with the Attached spray to get water + soap In the right places, Because this restriction some Area has become rant cause skin Breakage Especially this hot summer temperature And Disciplinary restriction on I/M Having the window open, Inside these 5 mall cell the temperture get A Hundred degrees or higher. 4.) Disciplinary restriction on legal material like pens, clear white 8×11" typing papers, First can't buy the 8×11 typing paper of commissary Because you in seg. Two you only can have 2 seg. pen A month. Since the Law Clerk [Kelly] seg. Leg always state she only can give inmate 10 tols sheet of typing paper + No Pen. In my case, I'm In need of more Because I have my postconviction Appellate Case, Court of Claim Suit, Civil Right Suit, this TYPE Environment violation my Constitutional right to Access to the Court ——— END.

Relief Requested MENARD C.C. Adm. to honor the 730 ILCS 3-8-7 "PRoHiBit Disciplinary restriction on Medical care, legal Materials, Foods, Hygiene — That Inmates in seg. A.D.A. Get 1 Shower A day, Bigger Portion of meal Service, Be Allow to buy clear white 8×11 typing paper off commissary + more than 2 seg. Pens. And Provide wir to have Physical Thera py—

(Attach additional pages if necessary)

### COUNSELOR'S RESPONSE

Date Received

Response

See page 1 [signature]

Counselor

Signature    Print Name    Date of Response

☐ Outside jurisdiction of this facility, grievances with charges from a facility other than the committed person's present location and general of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277


EXHIBIT A p#49


Department of Corrections
COMMITT.  ERSON'S GRIEVANCE REPORT

N 2 -C- C

| Date | Committed Person: (Please Print) | | ID # |
|---|---|---|---|
| Present Facility | | Facility where grievance issue occurred | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report - Date _____
- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment
- ☐ Transfer Denial
- ☐ By Transfer Coordinator
- ☐ By Institution

Where Issued _____

- ☑ Disability
- ☑ Other _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.**

Brief Summary of Grievance _I am a disabled individual with a disability as defined by the Rehabilitation Act of 1973 as amended [illegible] ... being denied ... discrimination in the programs, services and activities at Menard_ _(1) Showers: I am perpetually denied meaningful access to the showers because ... [largely illegible handwritten text spanning multiple lines] ..._

_(2) ... [illegible]_

_(3) Showers / Heat: The showers have no handrails for ... [illegible]_

_(4) Urinals: There is no urinal ... [illegible]_

_(5) Sick-Calls: [illegible] ..._

Relief Requested _[illegible handwritten text]_

(Attach additional pages, if necessary)

---

**COUNSELOR'S RESPONSE**

Date Received: __6-29-01__

Response: _Inmate has accessibility of items comparable to other inmates He is allowed showers & provided a chair. There are mirrors available from C/o giving showers. Sick call available continually - Jk_

Counselor: _[signature]_   Print Name _J W Cohen_   Date of Response _6/30/01_

☐ Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P O Box 19277, Springfield, IL 62794-9277



EXHIBIT A P 950

**George H. Ryan**
Governor

# Illinois
Department of
# Corrections

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

April 4, 2001

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on April 3, 2001, regarding Mail Handling/Personal Property (2/23/01), which was alleged to have occurred at Menard Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated March 5, 2001 and approval by the Chief Administrative Officer on March 6, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Donald N. Snyder, Jr.
Director

cc:    Warden Roger D. Cowan, Menard Correctional Center
John Ruffin, Register No. K80541
Chron. File





EXHIBIT A, P951

# Illinois
## Department of
# Corrections

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:       March 5, 2001

TO:         Johnny Ruffin, K80541
            N2-C-7

FROM:       Mavis Wittenborn
            Grievance Officer

SUBJECT:    Grievance Follow-Up


This is a follow-up to the Grievance Officer's report #505 dated 2/28/01 which was referred to the Law Library and Segregation Personal Property for additional information. All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he has a deadline and is not able to trade the legal property he has and get legal property he needs. He requests he receive it along with his Final call newspaper and some magazines.

Mary West, Sr. Paralegal, stated inmate Ruffin never requested of the property office to exchange his legal property. When Paralegal Elisa Rea was made aware of his problem on a routine tour of that gallery, she referred his request to Personal Property. When they became aware of the situation, C.O. Hoffman of Personal Property contacted the law library to accompany him on this exchange.

On Friday, 2/23/01, C.O. Hoffman, Paralegals Betsy Snyders and Elisa Rea went to C Wing with inmate Ruffin's stored legal property. Inmate was permitted to sort through his stored property and select the materials he needed. After choosing some documents, inmate Ruffin indicated that he had more property. C.O. Hoffman checked into the situation and found that while there was another envelope of paper material, none of that material met the criteria for legal property. Paralegal Betsy Snyders briefly reviewed the envelope and found that it contained mostly "nudie" magazines and personal correspondence. C.O. Hoffman also found no indication that he was missing any property boxes from his transfer.

Inmate was given access to his stored property and is now aware of the proper procedure for requesting access of stored legal property. I find this issue to be resolved.





EXHIBIT A, P-52

RUFFIN, K80541

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF RECEIPT OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____✓_____ CONCUR

_____ DO NOT CONCUR

Mavis Wittenborn, Grievance Officer

Roger Cowan, Warden

3/6/01
Date

cc:  Inmate Ruffin




EXHIBIT A, P9 53

| GRIEVANCE OFFICER'S REPORT | |

Date Received: 505   2/27/01                    Date of Review: 2/27/01

Committed Person: Johnny Ruffin (N2-C-7)        Number: K80541

Nature of Grievance: Mail Handling, Personal Property (15C, 19A)

Facts Reviewed: All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.

Recommendation: I am requesting the LL/Seg PP provide the Grievance Officer with any information pertinent to the issue(s) being grieved by the inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and render a final disposition on the inmate's grievance.

Grievance Officer: _Mavis Wittenborn_        Mavis Wittenborn
                    Signature                  Print Name

cc:  Inmate Ruffin / LL/Seg PP

| CHIEF ADMINISTRATIVE OFFICER'S RESPONSE | |

Date Received: 2/27/01      ☑ I concur   ☐ I do not concur   ☐ Remand

Comments: _____

_Roger Cowan Jr_                    3-1-01
Chief Administrative Officer          Date

| COMMITTED PERSON'S APPEAL TO THE DIRECTOR | |

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____        _____
Committed Person's Signature/Number        Date

DC 5657          Copy: Original to the Master File        ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                              1301 Concordia Court, P.O. Box 15277
                                                         Springfield IL 62794 5277

See 2

ISD428 MCC#1



EXHIBIT A, Pg. 4

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

| Date 2/16/2001 | Committed Person Johnny M. Ruffin | # K80541 |

| Present Facility MENARD CC | Facility where grievance & issue occurred MENARD CC |

NATURE OF GRIEVANCE

- ☒ Personal Property
- ☐ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report  Date

- ☒ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment

- Transfer Denial by
- ☐ By Transfer Coordinator
- ☐ By Institution
- Where issued

- ☐ Disability
- ☒ Other: Religious discrimination

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance  Emergency grievance 504, 840 "Imminent Danger", I (inmate) Ruffin recently transfer to Menard (APP Seg. Unit) 2/6/2001, since that point I'm Ruffin sent request slip ask fellow officer about getting in portion legal mail that was in my possession before coming downhere on 2/5/2000 I finally get my legal mail, but the most important ones I need to file before my deadline March 6, 2001 (supplemental Brief, motion to discharge, stack of grievance that need to appeal to springfield, Within 30 days, this also mail I need for my fed. Giv. case, I never receive, I think it was a totally discrimination toward Disable Inmate who is wheelchair bound, could not have had the opportunity to chose what legal mail he needed any legal mail sent out to excess storage. This discriminatory act is done to the more healthy inmate in A.D.A Segregation, they do get a chance to pick what legal or any material they want their facility call, because of this discrimination I suffer a loss to have a new trial, where these documents contain motion and additional supplemental issues to raise on my appeal, before March 6, 2001 If I don't raise these issues about my constitutional right was being violated, the I suffer my issue being waive by a higher court, so please understand the IMPORTANT OF THIS MANDATORY LIFE OR DEATH ISSUE MEANS, I willing to give some of the legal mail I (already) got, for those important document stated above until then because of the emotional distress this episode my cause me. I am going on a hungry strike until my legal mail in my processing
※ I'm Ruffin ask as a right under 1st Amend. to have his final (confirm) souke magazine. ※

Relief Requested  I'm Ruffin asked Ms. Dale Kranawetter (Record office supervisor) I.F. I'm Ruffin trade some less unimportant legal which he already have some processing, for his most need (stated above caption) and to have his religious material (final call, newspaper, souke magazine) as a first Amend right. thank you

(Attach additional pages if necessary)

COUNSELOR'S RESPONSE

Date Received  2/14/01

Response  Inmate should send a written request to the Seg personal property to trade legal material. Jw

| Counselor (signature) | J.W. Goforth | 2/16/01 |

☐ Outside jurisdiction of this facility. grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 15277, Springfield, IL 62794-9277

EXHIBITA, P° 55



George H. Ryan
Governor

Donald N. Snyder, Jr.
Director

**Illinois**
Department of
**Corrections**

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

January 29, 2002

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on January 11, 2002, regarding staff conduct (Law Library services and supplies), which was alleged to have occurred at Menard Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated December 28, 2001 and approval by the Chief Administrative Officer on December 28, 2001 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration.  It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
                              Robert L. Radmacher
                              Administrative Review Board
                              Office of Inmate Issues

CONCURRED: _____
                              Donald N. Snyder, Jr.
                              Director

cc:    Warden Jonathan R. Walls, Menard Correctional Center
        John Ruffin, Register No. K80541
        Chron. File

EXHIBIT A pg 56



## Illinois
### Department of
# Corrections

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:       December 28, 2001

TO:         John Ruffin, K80541
            N2-C-7

FROM:       Mavis Gross
            Grievance Officer

SUBJECT:    Grievance Follow-Up


This is a follow-up to the Grievance Officer's report #2706 dated 11/30/01 which was referred to the Law Library for additional information. All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he is not receiving adequate access to the law library and is not being given enough paper or envelopes. He requests the law library clerk be ordered to stop harassing, give him more supplies and $10,000 for mental and emotional injuries.

Law Library Paralegal, Mary West, stated the inmate has not been on court deadline status since April, but has regularly received photocopies, notary, case-law loan materials, envelopes and paper. Our policies regarding these services are clearly outlined in numerous memos.

C-wing is toured by civilian law library staff twice each week and on each tour, inmates are provided with the opportunity to request services and supplies and are also allowed to request such through institutional mail. Since May, 2001, inmate Ruffin has received the following library services: May-seen 9 times, issued paper 5 times and envelopes 6 times; June-seen 9 times, issued paper 6 times, envelopes 5 times; July-seen 9 times, issued paper 6 times, envelopes 7 times; August-seen 9 times, issued paper 6 times and envelopes 8 times; September-seen 8 times, issued paper 4 times and envelopes 5 times; October-seen 9 times, issued paper 3 times and envelopes 6 times; November-seen 7 times, issued paper 2 times and envelopes 3 times.

Inmate claims to be indigent but has not been on the hygiene bag list since 9/01. Indigent inmates are permitted to get free writing supplies from the commissary with their hygiene supplies but non-indigent inmates should purchase their own supplies.

This officer failed to find sufficient evidence to substantiate inmate's allegations of staff misconduct or that he is getting inadequate services or supplies; therefore, this grievance is denied.





RUFFIN, K80541

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF THE DATE OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____
Mavis Gross, Grievance Officer

___ ✓ ___ CONCUR

_____ DO NOT CONCUR

_____
J.R. Walls, Warden

_____
Date   12-28-01

cc:  Inmate Ruffin





2706

GRIEV / OFFICER'S REPORT

Date Received: 11/30/01                Date of Review: 11/30/01

Committed Person: John Ruffin (N2-C-7)     Number: K80541

Nature of Grievance: Law Library, Staff Conduct (14A, 14B, 14C, 78)

Facts Reviewed: All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.

Recommendation: I am requesting the LL provide the Grievance Officer with any information pertinent to the issue(s) being grieved by the inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and render a final disposition on the inmate's grievance.

Grievance Officer: Mavis Gross

                    Mavis Gross
                    Print Name

cc: Inmate Ruffin / LL

---

CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: 11/30/01     ☑ I concur   ☐ I do not concur   ☐ Remand

Comments: _____

Chief Administrative Officer: JR Walls     Date: 11-30-01

---

COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____     _____
Committed Person's Signature/Number          Date

DC 5657          Copy - Original to the Master File          ADMINISTRATIVE REVIEW BOARD
IL 426-17543                                                 1301 Concordia Court, P.O. Box 19277
                                                             Springfield IL 62794-9277

Side 2





COMMITTED PERSON'S GRIEVANCE REPORT   N-3-(~)

| Date Nov 24, 2001 | Committed Pers. RIFFIN | ID# K81141 |
|---|---|---|
| Present Facility MENARD C.C. | Facility where grievance issue occurred MENARD C.C. | |

**NATURE OF GRIEVANCE** DENIAL ACCESS TO THE COURT

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report   Date
- [ ] Mail Handling
- [ ] Dietary
- [ ] Medical Treatment
- [ ] Transfer Denial
- [ ] By Transfer Coordinator
- [ ] By Institution   Where Issued
- [ ] Disability
- [X] Other Dic. of law clerk denial

PAGE 1 - Committed person completes, and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS**

Brief Summary of Grievance   THIS IS AN EMERGENCY GRIEVANCE UNDER 504.84 — I HAVE ALREADY SUFFERED IMMINENT INJURY OF DISMISSAL OF MY LITIGATION CASE BECAUSE OF MENARD LAW CLERK. A PEN. THIS COMPLAIN ISSUE CONCERNING THE SEGREGATION UNIT LAW CLERK EILA RHEA'S DELIBERATELY MAINTAINING HARASSING AND RESTRICTION ON MY 1ST AMENDMENT RIGHTS TO SUCH ACCESS OF COMMUNICATION WITH THE COURT IN VIOLATION OF MY CONSTITUTIONAL AND UNDER 14TH AMENDMENT "DUE PROCESS" + "EQUAL PROTECTION CLAUSE" AND THE PRIVILEGE AND IMMUNITIES CLAUSE OF ARTICLE IV AND PURSUANT 730 ILCS 5/3-1 "DISCIPLINARY SEGREGATION SHALL NOT BE RESTRICTIVE WILLIAM MAJOR ETC" THE SCHEME THINGS BEGIN ON UNTIL TO WITH ALL DAY. I FILED I.G. _____ LEGAL DOCUMENTS FROM LAW CLERK A. REN. THE _____ OF THE _____ I A CRIMINAL COMPLAINT AGAINST PARAMEDIC _____ _____ FOR FAILURE TO COVER A MALPRACTICE WHEN I WAS BACK IN THE INVESTIGATION _____ _____ KNOWN THAT SHE THE LAW IN MANNER. AND SAID HE HAS A DEPUTY MARSHAL. DON'T LIKE I HAVE MADE A LIBRARIAN THE THING FOR HER _____ _____ ALWAYS _____ THEN SHE BEGINNING TO START HARASSING AND (FILING RESTRICTION) ON MY RIGHT TO LEGAL SUPPLIES ( LEGAL CLASP ENVELOPES, TYPING PAPER, FLOYD ROOMS) BECAUSE I WAS INDIGENT — I WAS NOT TOTALLY DEPENDENT ON STATE TO SUPPLIES LEGAL MATERIAL. MS. REA WELL STATED "I'M NOT IN THE BUSINESS TO GIVE YOU LEGAL SUPPLIES AND YOU NEED REQUEST SUCH SUPPLIES FROM THE COMMISSARY." I'M CONTACT COMMISSARY ABOUT THE ISSUE. AND THEY REPLIED "YOU ARE INDIGENT AND LAW CLERK HAVE TO PUT IN TO LAW LIBRARIAN AND TO PROVIDE MATERIAL." AND I AM AIR ON THE C-WING GAVE ME TO PRESENT. →

Relief Requested   TO HAVE LAW LIBRARY CLERK REMOVE FROM WEEKLY LEGAL SUPPLY COME ON NORTH II C-WING OFFICER OR TO ORDER HER TO STOP HARASSING TO REGARDING + RESTRICTION LEGAL SUPPLIES TO GIVE I'M A REASONABLE AMOUNT OF LEGAL SUPPLIES TO DON'T RUN UP MY CERT. SUIT ETC. AND $10,000.00 FOR INJURIES OF MENTAL AND EMOTIONAL INFLICTED PAIN. (Attach additional pages, if necessary)

---

**COUNSELOR'S RESPONSE**

Date Received _____

Response. _____

Counselor _____
Signature _____   Print Name _____   Date of Response _____

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward direct, to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277



EXHIBIT A P 60



COMMITTED PERSON'S GRIEVANCE REPORT

| Date Nov 22, 2001 | Committed Person (please print) An P.P. In | # K80--1 |
| Present Facility MCC | Facility where grievance issue occurred MCC | |

**NATURE OF GRIEVANCE** DENIAL ACCESS TO THE COURT

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report Date
- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment

Transfer Denial
- ☐ By Transfer Coordinator
- ☐ By Institution

Where Issued

Disability
- ☒ Other Disability 1508
- ☐ ADA

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Office. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

TO BE CONT'd

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance A WARDEN MEMORANDUM STATED "LAW LIBRARY IS REQUIRED TO SUPPLIED AN INDIGENT INMATE NEED LEGAL MATERIAL TO ADEQUATE ADDRESS THE COURT" I'M SHOWED THIS SAME MEMORANDUM TO MS. REA, HER IMMEDIATE REPLY I HAVE HONOR THAT," BUT SHE DID GIVE ME A VERY SMALL AMOUNT OF PAPER, WHICH IS NOT ENOUGH TO SUSTAIN OR DRAFT A CIVIL SUIT, SUBSEQUENT I'M HAD TO VOLUNTARY DISMISS HIS PENDING MANDAMUS AGAINST MENARD, BECAUSE OF THE PROHIBITION MANDAMUS CASE NO # 01-MR-41, HAD TO BE DISMISSED ON JULY 11, 2001, ELISA REA CURSE I'M OUT, BECAUSE OF HIS GRIEVANCES AGAINST HER "BY NOT PROVIDING HIM LEGAL SUPPLIES," MS. REA CONTINUE TO READ I'M LEGAL DOCUMENT AND THEN RETALIATED + RESTRICTIONS ON NEEDED SUPPLIES TO FRUSTRATE ANY LEGAL LITIGATION AGAINST THE FACILITY (MENARD) ON JULY 24, 2001, MS. REA DENIED LEGAL SUPPLIES ON JULY 26, 2001, MS. REA DENIED LEGAL SUPPLIES, FOR DURING THE MONTH OF AUGUST, 2001, MS. REA GAVE I'M APPROXIMATELY 15 SHEET OF PAPER, DELIBERATELY ATTEMPT FRUSTRATE I'M LEGAL LITIGATION. THAN OUT THE MONTH SEPTEMBER 2001 MS. REA ONLY GAVE I'M APPROX INMATE(?) 15 SHEET OF PAPER (FOR WHOLE MONTH) ABOUT 5 SHEET THAN OUT OCTOBER 2001, MS. REA GAVE I'M APPROXIMATELY 20 SHEET OF TYPING PAPER, CONSIDERING THE LOW AMOUNT OF RESTRICTION ON LEGAL SUPPLIES, I'M SUFFERED IRREPARABLE DAMAGES, BECAUSE HE IS INDIGENT HE NEEDED ADDRESSED TWO COURT NAMELY MANDAMUS CASE # 01-MR-41 (CIVIL COMPLAINT AGAINST MENARD FOR NOT PROVIDING MEDICAL TREATMENT) IN THE RANDOLPH COUNTY COURT HOUSE, SMALL CLAIM SUIT (CASE # 00-M-5-1821 (RELATED TO MONEY MISPLACED) I HAD TO ALSO VOLUNTARY DISMISSED BE CAUSE OF LACK NEED LEGAL MATERIAL TO SUSTAIN LAWSUIT. ON NOVEMBER 6, 2001, APPROXIMATELY 1:15 pm LAW LIBRA

TO BE CONT'd

Relief Requested

SEE 1 PAGE

(Attach additional pages if necessary)

**COUNSELOR'S RESPONSE**

Date Received

Response

Counselor

| Signature | Print Name | Date of Response |

☐ Outside jurisdiction of this facility grievances which arose from a facility other than the committed person's place of incarceration and details of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board. 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277


EXHIBIT A P9 61



COMMITTED PERSON'S GRIEVANCE REPORT

| Date NOVEMBER 26 200 | Committed Person NEELN | ID# K80941 |
| --- | --- | --- |
| Present Facility MCC | Facility where grievance issue occurred MCC | |

**NATURE OF GRIEVANCE**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report — Date

- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment

- Transfer Denial
  - ☐ By Transfer Coordinator
  - ☒ By Institution
- Where Issued _____

- Disability
  - ☒ One handicap
  - MPCAN

**PAGE 1** - Committed person completes and sends to counselor who prepares counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

**PAGE 2** - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance     TO BE CONT. 3

ELISA REA HARAS AND RETALIATING AGAINST I/M BECAUSE I/M SHOWED HER A MOTION THAT MY ATTORNEY FILED IN THE PERY COUNTY COURT (REQUESTING GRIEVANCE AND MEDICAL RECORDS ABOUT ME BEING DENIED I/M's ONCE PRESCRIBED PHYSICAL THERAPY AND HOW MY HEALTH IS DETERIORATING RAPIDLY BECAUSE ELISA REA REQUESTING ME SHOW HER SOME PROOF OF WHY I NEED REQUESTED ENVELOPS & PHOTOCOPIES OF GRIEVANCES, AFTER SHE READ THE MOTION SHE THEN BEGIN STATE "I'M NOT GIVING YOU NO ENVELOPS, PAPERS OR POST-CONVICTION (SHE ALSO CLAIMED IT NOT INSG) BUT I'M SHOWED PROOF THAT EARLIER THIS YEAR SHE (MS. REA) GAVE HIM THE REQUESTING ONES) AND FURTHER STATED I DON'T GIVE A DAMN ABOUT YOUR MEDICAL CONDITIONS THE STATE IS BROKE AND I'M NOT GIVEN YOU NO PAPER EITHER." I'M REPLIED "BECAUSE THE STATE BROKE DOESN'T MEAN YOU CAN DENY ME LEGAL SUPPLIS AND YOU ONLY RETALIATING AGAINST ME BECAUSE I SEEK TO ADDRESSED THE COURT CONCERNING MY MEDICAL HEALTH." MS. REA REPLIED, "STOP BITCHING YOU MAY GET SUPPLIES" (THIS ARGUMENT OVER HEARD BY FELLOW INMATE'S ON THE C-WING), NOVEMBER 26, 2001, MS. REA RETALIATING AGAINST I/M, BY DENYING I/M WRITING PAPER & ENVELOPE, AND SEEKING TO FORGIES THAT I DESTROYED SOME CASE LOAN WHEN KNOW I TURNED IN MY CASE LOAN'S, THIS JUST TO HARASS, I/M ASKED MS. REA, "WHY ARE YOU HARASSING ME" MS. REA REPLIED "STOP BITCHING" AND REFUSED TO GIVE ME LEGAL SUPPLIES, etc.

Relief Requested     SEE 1 PAGE

(Attach additional pages if necessary)

**COUNSELOR'S RESPONSE**

Date Received _____

Response: _____

Counselor _____
Signature _____  Print Name _____  Date of Response _____

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present institution and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277


EXHIBIT A, P962





**George H. Ryan**
Governor

# Illinois
### Department of
# Corrections

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

February 25, 2002

John Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on February 1, 2002, regarding ADA compliance, which was alleged to have occurred at Menard Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated January 9, 2002 and approval by the Chief Administrative Officer on January 10, 2002 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD:  _____
Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED:  _____
Donald N. Snyder, Jr.
Director

cc:   Warden Jonathan R. Walls, Menard Correctional Center
John Ruffin, Register No. K80541
Chron. File



EXHIBIT A P. 63



**Illinois**
Department of
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. B᠆ ᠆ᠠᠠᠠ .Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

# M E M O R A N D U M

DATE:      January 9, 2002

TO:        Johnny Ruffin, K80541
           N2-C-7

FROM:      Mavis Gross
           Grievance Officer

SUBJECT:   Grievance Follow-Up


This is a follow-up to the Grievance Officer's report #2793 dated 12/10/01 which was referred to the N2 Supt. and the ADA Coordinator for additional information.  All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves Menard is not ADA compliant, in that, disabled inmates can not mingle with other inmates and there is no toilet on the yard for inmates in wheelchairs to use. He also states there are no ramps on the fourth floor so inmates can get out in case of fire and there are no handicap hand rails in the showers. He also states the visiting room has a steel stool in the middle of the visiting stall and an inmate in a wheelchair can not use it.

ADA Coordinator, Assistant Warden of Programs, Alan Frentzel, stated the C Wing Annex is an approved ADA housing for offenders doing Segregation time. Medical Records reveal that inmate Ruffin has a disability of right-sided hemiparsis. He has normal function to his left side. He does use a wheelchair for mobility but is independent in activities of daily living.

In regard to visiting room complaints, the cubicles that are used for visiting are tight with a wheelchair; however, this is the area that is used for segregation inmates to visit. Regarding his concern for yard, inmates are separated on the yard at administrative discretion, they are not discriminated against. If an inmate in a wheelchair needs to use the restroom while on the yard, staff bring him in to use the toilet facility.

There is not a ramp for wheelchairs leading off of C Wing. In the case of evacuation during a fire, staff would have to be utilized to ensure the safety of inmates in wheelchairs.

Shower facilities in North II are equipped with a hand held showerhead. Assistant Warden Frentzel concluded that inmate Ruffin is not being discriminated against, nor is he living in inadequate conditions and inmate Ruffin's needs are being met.

This officer failed to find sufficient evidence to substantiate inmate's allegations that he is being discriminated against because of his disability; therefore, no further action will be taken.



EXHIBITA p9 64



RUFFIN, K80541

If inmate Ruffin is of the opinion that this issue has not been resolved, he
may file an appeal **WITHIN 30 DAYS OF THE DATE OF THE WARDEN'S DECISION** to the
Director of the Department of Corrections, Administrative Review Board, 1301
Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____ ✓   CONCUR

_____      DO NOT CONCUR

_____
Mavis Gross, Grievance Officer

_____
J.R. Walls, Warden

01-10-02
Date

cc:  Inmate Ruffin
     ADA COORDINATOR


EXHIBIT A, Pg. 65

2793

**GRIEVANCE OFFICER'S REPORT**

Date Received _12/10/01_    Date of Review _12/10/01_

Committed Person _Johnny Ruffin (N2-C-7)_    Number _K80541_

Nature of Grievance _ADA Accessibility, Visiting Restriction (126,176)_

Facts Reviewed    All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.

Recommendation    I am requesting the _ADA Coordinator/N2 Supt_ provide the Grievance Officer with any information pertinent to the issue(s) being grieved by the inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and render a final disposition on the inmate's grievance.

Grievance Officer _Mavis Gross_    _Mavis Gross_
                                      Print Name

cc: Inmate _Ruffin_ / _ADA Coordinator/N2 Supt_

---

**CHIEF ADMINISTRATIVE OFFICER'S RESPONSE**

Date Received _12/10/01_    ☒ I concur    ☐ I do not concur    ☐ Remand

Comments _____

_JR Walls ay_    _12-11-01_
Chief Administrative Officer    Date

---

**COMMITTED PERSON'S APPEAL TO THE DIRECTOR**

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____    _____
Committed Person's Signature/Number    Date

DC 5657
IL 426-17543    Copy - Original to the Master File    Page 2

ADMINISTRATIVE REVIEW BOARD
1301 Concordia Court, P.O. Box 19277
Springfield, IL 62794-9277


EXHIBIT A PG 66

A.D.A. WHEELCHAIR BOUND INMATE     N-2-567

COMMITTED PERSON'S GRIEVANCE REPORT   EMERGENCY GRI 504.840

| Date NOVEMBER | Committed Person (Please Print) JOHNNY M. RUFFIN JR. | ID # K86541 |
|---|---|---|

| Present Facility MENARD CORR. CTR. | Facility where grievance issue occurred MENARD CORR. CTR. |
|---|---|

**NATURE OF GRIEVANCE:** DISCRIMINATION AGAINST A DISABLE INMATE UNDER THE A.D.A.

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report · Date _____
- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment

Transfer Denial:
- ☐ By Transfer Coordinator
- ☒ By Institution

- ☒ Disability
- ☒ Other: A.D.A DISCRIMINATION

Where Issued: _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.**

Brief Summary of Grievance. THIS IS A GRIEVANCE BEING BROUGHT UNDER THE AMERICAN WITH DISABILITIES ACT (A.D.A.) of 1998, §2 et. seq., 42 U.S.C.A. §12101 §12132 et. seq. Alleging THAT NO QUALIFIED INDIVIDUAL WITH A DISABILITIES, BE BY NO REASON OF SUCH DISABILITIES, BE EXCLUDED FROM PARTICIPATING IN OR BE DENIED THE BENEFITS OF THE SERVICES, PROGRAMS OR ACTIVITIES OF A PUBLIC ENTITY, OR BE SUBJECTED TO DISCRIMINATION BY ANY SUCH ENTITY AND IN VIOLATION OF THE AMERICAN WITH DISABILITIES ACT OF 1998 TITLE II; THE COMMITTED PERSON A PARAPLEGIC/WHEELCHAIR BOUND AND PARTIAL PARALYZE RIGHT-SHOWER, ARM & HAND IS A QUALIFIED DISABLE PERSON UNDER A.D.A. TITLE II; MENARD CORRECTIONAL CENTER A "PUBLIC ENTITY" IS NOT A.D.A. EQUIP, IN THE "NORTH II SEGREGATION VISITING ROOM, FOR EXAMPLE IN THE VISIT ROOM, THERE ARE SMALL BOOTH, WITH A THICK GLASS AND THERE IS A STEEL STOOL IN THE MIDDLE OF THE BOOTH, WHERE HEALTHY INMATE SIT DOWN & TALK THRU THE MONITOR, EITHER TO THEIR LOVE ONE OR LAWYER, UNFORTUNATE COMMITTED PERSON (HEREIN-AFTER C/P) IS PARALYZE IN A WHEELCHAIR BOUND AND IT IS IMPOSSIBLE FOR HIM TO GET ACCESS TO THOSE BOOTHS, MENARD DOESN'T HAVE IN ALTERNATIVE OPTION, BUT THE C/O PUT C/P IN THE LAWYER VISITING BOOTH, IN A VERY VERY TIGHT SPACE (* PLACE IS NOT MADE FOR WHEELCHAIR) AND SQUEEZING C/P LOWER EXTREMITY AGAINST THE STEEL STATIONARY SITTING STOOL, CAUSING SEVERE PAIN TO HIS KNEES, FURTHER C/P HAVE TO STRAIN TO LEAN OVER TO THE VOICE BOX TO SPEAK TO HIS FAMILY AND LAWYER, THIS VIOLATION OCCURED ON THE FOLLOWING DATES; 6/9/2001, 8/25-26/2001, 10/7/2001, THIS CLEARLY A VIOLATION OF THE C/P RIGHTS UNDER A.D.A. (SERVICES) TO BE CONTINUED →

Relief Requested TO INSTALL WHEELCHAIR ACCESSIBLE VISITING ROOM BOOTHS IN SEGREGATION, INSTALL WHEELCHAIR ACCESSIBLE YARD TOILET FACILITY, TO ALLOW All WHEELCHAIR BOUND DISABLE INMATE, TO BE ON THE SAME YARD TOGETHER, LIKE THE HEALTHY WALKING INMATE IN SEG IS ALLOWED TO DO; INSTALL WHEELCHAIR ACCESSIBLE RAMPS; TO INSTALL HANDS-CAP GRAB RAILS & SHOWER SPRAY IN THE SEG BLOCK (Attach additional pages, if necessary) SHOWER ROOM IN SEG ← END

| COUNSELOR'S RESPONSE | |
|---|---|

Date Received: _____

Response: _____

Counselor _____
Signature _____   Print Name _____   Date of Response _____

☐ Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

EXHIBIT A 67 

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

| Date | Committed Person (Please Print) | ID # |
|---|---|---|

| Present Facility | Facility where grievance issue occurred |
|---|---|

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report – Date _____

- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment

Transfer Denial:
- ☐ By Transfer Coordinator
- ☐ By Institution
Where issued: _____

- ☐ Disability
- ☐ Other _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.**

Cont'2

Brief Summary of Grievance: Further Menard yard for Handicap do not have A.D.A accible Toilet Facility; The Toilet outhouse is designed only for health walking inmate not for paraplegic wheelchair bound inmate, because of this denial of service prejudice C/P, for example on November 10, 2001, C/P had to use the rest-room badly and because he in a wheelchair he was not able used the yard facility, so he had to call captain Ryan who was on duty and told him he (C/P) needed to "use the restroom but can't use the yard's restroom"; Captain Ryan replied, "If I take you inside to used the restroom, your yard will be cut short and I will not being out no more for today" so C/P chose going to restroom, therefore his yard time was cut short. This discrimination of service prejudiced C/P because he needed to have some fresh air and exercise but have to cut his 4 hours yard short, because there no A.D.A toilet facility on the yard. Further Menard's policy of separating disable inmates to be on separate yards is discriminator wrong, disable inmates who are wheelchair bound are not allowed to congregate on the same yard together all because of their disabilities, in violation of A.D.A, 42 U.S.C. A § 1210) of 1990. Moreover, North II C-wing ("A.D.A"), is not A.D.A compatible because there are no ramps for wheelchairs on the 4th floor causing a fire hazard, for instant on March 2001 there was a fire on the North II A.D.A C-wing and the wheelchair bound inmates could evacuate, because there is no ramps and they

to be continued

Relief Requested _____

_____

_____

(Attach additional pages, if necessary)

**COUNSELOR'S RESPONSE**

Date Received: _____

Response: _____

_____

_____

| Counselor | | |
|---|---|---|
| Signature | Print Name | Date of Response |

☐ Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

 EXHIBIT A Pg 68


IN THE
CIRCUIT COURT OF RANDOLPH COUNTY ILLINOIS
FOR THE TWENTIETH JUDICIAL CIRCUIT

JOHNNY M. RUFFIN JR                )
Plaintiff                          )
                                   )    Case No. 62-MR 3
            v.                     )
                                   )
                                   )
DONALD N SNYDER, JR (DIR OF I.D.O.C) )
Defendant                          )

---

## PROOF/CERTIFICATE OF SERVICE

TO:  BARBARA L. BROWN          TO:  _____
     CLERK OF CIRCUIT COURT         _____
     RANDOLPH COUNTY               _____
     CHESTER, ILLINOIS 62233       _____

PLEASE TAKE NOTICE that on JANUARY _____, 20 62, I have filed with the
U.S. Mail through the MENARD _____ Correctional Center the following
documents, properly addressed to the parties above: A MANDAMUS COMPLAINT
AND ATTACHED EXHIBITS, A MOTION TO PROCEED AS A POOR PERSON.

I further declare, under penalty of perjury, that I am the Plaintiff in the above action, that
I have read the above documents, and that the information contained therein is true and
correct. 28 USC 1746 and 18 USC 1621.

DATE: JANUARY , 2002

/s/ _____
NAME: JOHNNY M. RUFFIN JR
IDOC#: K80541
     MENARD _____ Correctional Center
P.O. BOX 711
     MENARD _____, IL 62259





IN THE CIRCUIT ~~~~~~~~~~ COUNTY ILLINOIS
THE COURT FO ~~~~~~~~~~ CIRCUIT

*this is were I stopped copying*

JOHNNY M. RUFFIN JR., )
                      Plaintiff, )
          vs      *Need*                    R-3
                  *$120 for 0 (cop.es)*
DONALD N. SNYDE   *$100 for pantry*   *'1 for 100mg'*

LEAVE TO FILE PETITION OF MANDAMUS

NOW COMES Plaintiff, JOHNNY M. RUFFIN JR. , pro se, in order

to give notice to the Court for leave to file a PETITION OF MANDAMUS pursuant to

Code of Civil Procedure 735 ILCS 5/14-101 et. seq., directed to the above named

Defendants.

IN SUPPORT THEREOF, Plaintiff states as follows:

1. Leave to file PETITION OF MANDAMUS as an original action before the

Court.

2. Plaintiff presents for review issues of law pertaining to him while incarcerated

at  MENARD        Correctional Center, MENARD        , Illinois,

RANDOlPH        County.

3. Plaintiff contends that the issues to be presented are concerning his right to

THE DIRECTOR OF I.D.O.C. AND ADMINISTRATIVE REVIEW BOARD TO REVIEW HIS GRIEVANCES,

4. Plaintiff alleges in the petition that HE REPEATEDlY MADE TIMElY AND

-1-   EXHIBIT A/P) 71

GOOD-FAITH ATTEMPTS, COMPLYING WITH THE ILLINOIS COMPILED STATUTE, TO HAVE HIS ATTACHED (EXHIBITS #1-8) GRIEVANCES REVIEWED ONLY TO NO AVAIL.

5.  Plaintiff's petition seeks to compel the Defendant to REVIEW GRIEVANCES (EXHIBIT #1-8) ATTACHED TO THIS COMPLAINT, ACCORDINGLY TO PURSUANT TO 730 ILCS 5/3-8-8, AND HOLD A HEARING ON SAID GRIEVANCES.

6.  Plaintiff hereby incorporates by reference all grounds and allegations stated in the PETITION OF MANDAMUS, a copy of which is attached hereto.

7.  WHEREFORE,  plaintiff prays this Court to grant him leave to file a PETITION OF MANDAMUS.

Respectfully submitted,

_____

Plaintiff, pro se
Number K80541
P.O. Box 711
MENARD, IL. 62259

-2-



## COMMITTED PERSON'S GRIEVANCE REPORT

| DATE: 7/24/00 | COMMITTEE PERSON: (Please print) JOHNNY RUFFIN | ID# K80541 |
| PRESENT FACILITY: ☒ PINKCC | FACILITY WHERE GRIEVANCE ISSUE OCCURRED: | |

**NATURE OF GRIEVANCE:**

| | | TRANSFER DENIAL: | |
|---|---|---|---|
| _ Personal Property | ___ Mail Handling | ___ By Transfer Coordinator | ___ Disability |
| ☒ Staff Conduct | ___ Dietary | ___ By Institution | ___ Other |
| ___ Restoration of Good Time | ☒ Medical Treatment | | |
| ___ Disciplinary Report – Date: _____ | | Where Issued: _____ | |

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

**THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS**

Brief Summary of Grievance: ON ♯ June 25, 2000 I had a interview/dispute (see Attach) complaining in retaliation coercion under A.D. A statie he has taken off needed medication Baclopen for a month which cause severe spasm, stiffness deterioration of muscle etc. I'm taken off meds between 6/25 to 8/4/00 section 504.82 Emergency grievances procedure Nurse Jenn Froner stated that she talk to Dr. Garcia about my medication she told her that because the dispute I need to apologice then I can recieve my medication (Baclopen) This is another unprofessional action because he es putting my health in danger ♯ I totally lost function in my right hand & arm If a so-call professional or refer to his patent as a "peice of shit" what does think about other inmates patients.

(See Attach) (Dispute)

[Stamp: RECEIVED MAR 14 2001 OFFICE OF INMATE ISSUES]

Relief Requested: Need BaClofen medication ♯ Dr; Garcia need to be terminated for (un)professional conduct towards inmate patient

(Attach additional pages, If necessary)

## COUNSELOR'S RESPONSE

Date Received: 8/7/00

Response: per HCUA this issue addressed previous grievance, this (medication no longer) medically needed.

| Counselor: P Durkin | P Durkin | 8/3/00 |
| Signature | Print Name | Date of Response |

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

(B3)

[Stamp: RECEIVED FEB 26 2001 OFFICE OF INMATE ISSUES]

[Stamp: JUL 2000 RECEIVED PINCKNEYVILLE C.C. WARDENS OFFICE]

[Stamp: EXHIBIT A, #73]

SD428

COMMITTED PERSON'S GRIEVANCE REPORT

Date Received: August 8, 2000     Date of Review: October 19, 2000

Committed Person: Johnny Ruffin 8-120     Number: K80541

Nature of Grievance: Medical Treatment

Facts Reviewed: Inmate requesting medication (Balcofen) from Dr. Garcia for his medical concerns.

Recommendations: Issue Addressed. Inmate has been receiving medication (Balcofen) since 8-4-00 and his medication will be revaluated on 12-31-00.

Grievance Officer _____     Travis Hicks
                      Signature                Print Name

SD4-28

---

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: **OCT 2 0 2000**    ☒ I concur    ☐ I do not concur    ☐ Remand

Comments: _____

_____     **OCT 2 0 2000**
Chief Administrative Officer               Date

---

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Administrative Officer's decision.

_____     _____
Committed Person's Signature / Number     Date

RECEIVED

FEB 2 6 2001

OFFICE OF
Inside the issues

DC 5657    Copy: Original to the Master File
IL 426-17343

(B6)

ADMINISTRATIVE REVIEW BOARD
1301 Concordia Court, P.O. Box 19277
Springfield, IL 62794-9277


EXHIBIT A P974

A.D.A WHEEICH, R INMATE                    R2.18 (10)

9-203   **COMMITTED PERSON'S GRIEVANCE REPORT**

| DATE: 8/21/00 | COMMITTEE PERSON: (Please print) JOHNNY RUFFIN | ID# K80541 |
| --- | --- | --- |
| PRESENT FACILITY: P.N.K.C.C | FACILITY WHERE GRIEVANCE ISSUE OCCURRED: P.N.K.C.C | |

NATURE OF GRIEVANCE:

| | | TRANSFER DENIAL: | |
| --- | --- | --- | --- |
| [X] Personal Property | ___ Mail Handling | ___ By Transfer Coordinator | ___ Disability |
| ___ Staff Conduct | ___ Dietary | ___ By Institution | ___ Other ___ |
| ___ Restoration of Good Time | [X] Medical Treatment | | |
| ___ Disciplinary Report – Date: ___ | | Where Issued: ___ | |

*RECEIVED MAR 1 4 2001 OFFICE OF INMATE ISSUES*

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of
Grievance: This grievance is a follow up from the grievance I originally wrote on 6-20-2000, which I recieve no response from M.12 wing counsel, HCU or Administrative Office concerning this serious issue. I Need a response!!

On 6/2/2000 I had xrays of my throat area, Anterior & posterior view. The xrays reveal a very large bullet fragment Between Esophagus & Breathing tube which cause Breathing & swallowing difficulties.

On 6/28/00 I had Medical examination meeting with the medical director Dr. Alfredo Garcia & L.p.N Marsha Hill was also present. The meeting was about medical progress report. Inmate ask the questions concerning the effect of bullet moving or causing infection, his response was "Bullet would n't be moving around" I/M asked "why I was not continue on Blood clot preventing medication (Zanaflex, coudin, Anticoagulate), Dr. Garcia response "you don't need it" I/M ask why he was denied medication Baclofen Between Date 4/6/2000 to 4/25/00 & 5/5/2000 to 5/26/00 "he respond there is nothing I can do about it" (I/M) I ask him "why this facility not adequate equip" his response "shit there is nothing I can do about that" I ask what about surgery to remove the bullet which is causing Breathing & swallowing, Dr. Alfredo Garcia response "you piece of shit there is nothing I can do for you hoe" Dr. Garcia for your dispute went back and forward between Inmate I/Dr. L.p.N. Marsha Hill/Rice Gibson No 2456. (see attach pages)

(witness)

Relief
Requested: The above statement show unprofessional conduct towards Inmate, and basically don't care about Inmate Need health care he need to be terminated, because if he feels a Inmate is a piece of shit He doesn't care about other Inmate medical Needs. Need an investigation into this serious matter & why I was not given medication I stated above on those dates I stated above, And why have he been terminated for his unprofessional conduct statement "you piece of shit"

*(Attach additional pages, if necessary)*

### COUNSELOR'S RESPONSE

| Date Received: 8/24/00 | |
| --- | --- |
| Response: This _____ issue addressed by previous Grievance addressed by medical director 7/18/00. Stating inmate was | |
| Counselor: [signature] / Print Name | Date of Response 8/24/00 |

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

(B)10    seen by medical director for this complaint x-rays were taken and it was determined that no further medical treatment appropriate for this complaint

EXHIBIT A, P9 73

### GRIE    CE OFFICER'S REPORT

Date Received:   9/28/00                          Date of Review:   11/06/00

Committed Person:   Ruffin (9-203)                          Number:   K80541

Nature of Grievance:   Staff Conduct / Medical Treatment

Facts Reviewed: According to inmate, this is a follow up on the grievance filed 6/30/00.

Recommendations: This issue was previously address. The officer failed to find sufficient evidence to substantiate inmate's allegations of staff misconduct. The officer also found that inmate's medical concerns were being addressed by the facility's health care staff.; therefore, I recommend grievance be denied.

Grievance Officer _____    M. Edwards
                          Signature                          Print Name

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received:   NOV 0 8 2000        ☒ I concur    ☐ I do not concur    ☐ Remand

Comments: _____

_____        NOV 0 8 2000
Chief Administrative Officer                          Date

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____                          _____
Committed Person's Signature / Number                          Date

RECEIVED

DC 5657          Copy· Original to the Master File
IL 426-17343

FEB 2 6 2001          ADMINISTRATIVE REVIEW BOARD
                          1301 Concordia Court, P.O. Box 1927
                          Springfield, IL 62794-9277

EXHIBIT A P9 76

Side 2    OFFICE OF



GRIEVA | OFFICER'S REPORT

Date Received: August 22, 2000                     Date of Review: November 15, 2000

Committed Person: Ruffing                   8-212                     Number: K80541

Nature of Grievance: Staff Conduct.

Facts Reviewed:   Inmate claims that he is not receiving proper medical treatment for a problem, which is causing him various health problems. Inmate states he has a bullet between his esophagus and larynx area. Inmate claims that he was denied surgery. Inmate feels Dr. Garcia is denying him medical treatment and requests an investigation.

According to Dr. Garcia, inmate Ruffin was offered an elective surgical procedure to remove a bullet fragment in his neck. Inmate Ruffin refused. The fragment is probable encapsulated and causing pressure symptoms in his neck. X-ray shows that there is not proximity to the trachea. The pressure could be felt in the esophagus, which might cause some pressure sensation when he swallows. Inmate is receiving physical therapy. Dr. Garcia also denies being unproffesional towards inmate.

Recommendations:  Medical treatment is being afforded to the IM. I recommend grievance be denied. Staff investigations are determined by the administration.

Grievance Officer _____                **T. Murray**
                              Signature                                    Print Name

## CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: __NOV 1 6 2000__       ☒ I concur     ☐ I do not concur     ☐ Remand

Comments: _____ Denied

_____                   NOV 1 6 2000
Chief Administrative Officer                           Date

## COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____                   _____
Committed Person's Signature / Number                    Date

DC 5657          Copy:  Original to the Master File
IL 426-17343

ADMINISTRATIVE REVIEW BOARD
1301 Concordia Court, P O Box 19277
Springfield, IL  62794-9277

EXHIBIT A, PG 77

Side 2

A.D.A INMATE CHELLCHA

TO : HOUSE COUNSEL MS. DIESCKS
2 - 18- b wing

## COMMITTED PERSON'S GRIEVANCE REPORT

| DATE: 10/12/2000 | COMMITTEE PERSON: (Please print)  JOHNNY RUFFIN | ID# K 80541 |
|---|---|---|
| PRESENT FACILITY: PNKCC | FACILITY WHERE GRIEVANCE ISSUE OCCURRED: | PNKCC |

NATURE OF GRIEVANCE:

| | | | |
|---|---|---|---|
| ____ Personal Property | __ Mail Handling | TRANSFER DENIAL: | X Disability |
| ____ Staff Conduct | ____ Dietary | ___ By Transfer Coordinator | ____ Other ____ |
| ____ Restoration of Good Time | X Medical Treatment | ____ By Institution | _____ |
| ____ Disciplinary Report – Date: _____ | | *Where issued: | |

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of
Grievance: ON DATE  8/8/2000 to 10/12/2000 THERE HASBEEN A PHYSICAL THERAPIST
AT PNKCC, BUT THE FACILITY IS STILL INADEQUATELY MEDICAL EQUIP FOR
REHABILITATION OF A PARAPLEGIA(BECAUSE OF THE LACK OF REHABILITATION
EXERCISE EQUIP AND STAFF MEMBERS

THE ABOVE STATED COMPLIANT OF ABOUT THIS FACILITY INADEQUETLY EQUIP
FOR REHABILITATION PURPOSE, IS A CONTINUOUS VIOLATION OF INMATE 8 AMEND
RIGHT"CRUEL & UNUSUAL PUNISHMENT" A DELIBERATLY INDIFFERENCE TO ONCE
PRESCRIBE MEDICAL NEEDS, DELAYING IN NECESSARY MEDICAL NEEDS, INADEQUA
MEDICAL EQUIP FACILITY, A WANTON TO INFLICT pAIN AND SUFFERING. ALSO
A VIOLATION OF THE U.S. SUPREME COURT RULING OF AMERICAN WITH DISABILTY
ACT 1998 THAT MEDICAL TREATMENT POLICY APPLY TO INMATES.

THIS BRING ME TO THIS CONCLUSION IF PNKCC LACKS THE RESOURCES, I.D.O.C.
MUST TRANSFER HIM TO A FACILITY WHERE SUCH CARE CAN BE RENDER OR
ARRANGE OFFSITE TREATMENT. DUE TO THE INADEQUATE MEDICAL FACILTY
I/M RUFFIN  PARALYSIS CONDITION ,IS CONTINUE TO WORSEN AND UNFORTUNATELY
HE MAY NOT REGAIN MOTOR FUNCTION IN HIS RIGHT UPPER & LOEWER EXTREMITY.

I/M RUFFIN NOW SUFFER A 6 MONTHS SPAN OF NOT RECIEVING PROPER THERAPY
DUE TO LACK OF STAFF AND REHABILITATION EQUIPMENT etc....

Relief
Requested: A INVESTIGATION OF WHEN AND WHAT TYPE OF MEDICAL EQUIPMENT WILL
COMING OR IF THERE ANY ORDER FOR THIS EQUIPMENT EVER COMEING. IF NOT
INMATE WISH TO TRANSFER TO A FACILITY TO RECIEVE PROPER MEDICAL TREATMEN

(Attach additional pages, if necessary)

### COUNSELOR'S RESPONSE

Date Received: 10-30-00, cop 10/4/04
Response: Per HCUA as previously stated you are recieving appropirate
physical therapy and there is no need of a transfer. Your Chair

| Counselor: | | |
|---|---|---|
| Signature | Print Name | Date of Response |

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

reflects that you have refused several
times to participate in your treatment plan.

EXHIBIT A P9 18

## GRIEVANCE OFFICER'S REPORT

Date Received: <u>November 8, 2000</u>                    Date of Review: <u>December 14, 2000</u>

Committed Person: <u>Johnny Ruffin  11-42</u>                    Number: <u>K80541</u>

Nature of Grievance: <u>Medical Treatment</u>

Facts Reviewed: <u>Inmate feels he has not been receiving proper physical therapy from PNKCC. Inmate feels there is not proper rehabilitation equipment at PNKCC to treat his medical condition. Inmate wants proper medical attention or a transfer.</u>

<u>HCU verfied inmate is receiving appropriate physical therapy and inmate's medical issues are being addressed by HUC staff.</u>

Recommendations: <u>Grievance Denied. Inmate is being afforded physical threapy treatment by HCU staff and inmate's medical concerns are being addressed.</u>

Grievance Officer _____          Travis Hicks
                              Signature                                   Print Name

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: <u>12|19|00</u>          ☑ I concur          ☐ I do not concur          ☐ Remand

Comments: _____

_____                              12|19|00
Chief Administrative Officer                              Date

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____                              _____
Committed Person's Signature / Number                              Date

DC 5657                    Copy: Original to the Master File                    ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                                                      1301 Concordia Court, P.O. Box 19277
                                                                                  Springfield, IL  62794-9277

EXHIBIT A, pg. 79

Side 2



**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr.
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

**M E M O R A N D U M**

DATE:     March 8, 2001

TO:       Johnny Ruffin, K80541
          N2-C-7

FROM:     Mavis Wittenborn
          Grievance Officer

SUBJECT:  Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #436 dated 2/15/01 which was referred to the HCU Administrator for additional information. All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he is a paraplegic and is in need of physical or occupational therapy. He states he is not being given this at Menard and requests a transfer to a facility that will give him proper medical treatment.

Assistant Warden, Jonathan R. Walls, ADA Coordinator, reported that the HCU Administrator, Pam Grubman, was contacted regarding this complaint. She reported in review of inmate's file, she found the inmate was transferred from Pinckneyville C.C. on 2/6/01 as a Seg to Seg transfer. Upon arrival, he was admitted to the Infirmary due to his right-sided hemiparesis. He was given wheelchair usage and braces for his right wrist and foot. At that time, he did not have skin breakdown and was found to be independent in activities of daily living with his right-sided weakness. He was discharged to the ADA wing of the Segregation Unit on 2/8/01. The requested egg crate mattress was discontinued due to the fire hazard potential and no therapeutic value. Since that date, Mr. Ruffin has not requested any medical services via sick call or in writing to the HCU staff. Due to his reported issues of having a bleeding bed sore, throat infection since January, 2001, the need for surgery to remove bullet fragments and request for a new leg brace, he was seen and evaluated by Dr. Feinerman on 2/27/01. His leg brace was returned to him on 3/1/01. Per Dr. Feinerman, there was no bed sore, no medical indicator for bullet removal and he had no difficulty with talking, breathing, swallowing or moving his neck. Ms. Grubman found that we are ADA compliant.

It is this writer's findings that inmate's medical concerns are being addressed by the facility's health care staff; therefore, no further action will be taken.







RUFFIN, K80541

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF RECEIPT OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____ /  CONCUR

_____     DO NOT CONCUR

Mavis Wittenborn, Grievance Officer

Roger Cowan, Warden

Date

cc:  Inmate Ruffin
     ADA COORDINATOR





**Illinois**
Department of
**Corrections**

George H. Ryan
Governor

Donald N. Snyder Jr
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-08⌷

# M E M O R A N D U M

DATE:        March 14, 2001

TO:          John Ruffin, K80541
             N2-C-7

FROM:        Mavis Wittenborn
             Grievance Officer

SUBJECT:     Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #504 dated 2/27/01 which was referred to the HCU Administrator for additional information. All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves he is being denied physical therapy because he is in segregation. He requests a transfer to Dixon or Big Muddy River to obtain physical therapy.

HCU Administrator reported review of inmate's file indicates his last phycial therapy treatment was on 11/16/00. Inmate refused evaluation on 1/6/01 while at Pinckneyville. His range of motion exercises can be done by the inmate in his cell. Upon completion of segregation time, inmate will be transferred to an ADA facility.

Inmate is advised to follow HCU advice in completing range of motion exercises which can be done in his cell. It is this writer's findings that inmate's medical concerns are being addressed by the facility's health care staff; therefore, no further action will be taken.

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF RECEIPT OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____ CONCUR

_____ DO NOT CONCUR

Mavis Wittenborn, Grievance Officer

Roger Cowan, Warden

Date

cc:  Inmate Ruffin

(B39)

GROUP EXHIBITS # A p98

COMMITTED PERSON'S GRIEVANCE REPORT

Date: 4/6/2001    Name: JOHNNY M. RUFFIN    ID#: K85641

Present Facility: MENARD CORRECTION CTR    Facility where grievance issue occurred: PINCKNEYVILLE Corr. Ctr.

NATURE OF GRIEVANCE:

- [x] Personal Property
- [x] Staff Conduct
- [x] Restoration of Good Time
- [x] Disciplinary Report  Date 1/29/2001 12/15/2001

- [ ] Mail Handling
- [ ] Dietary
- [x] Medical Treatment

- [ ] Transfer Denial
- [ ] By Transfer Coordinator
- [ ] By Institution
Where issued PINCKNEYVILLE Correct JUVENIL

- [x] Disability
- [x] Other: Conspiratorially Planned Disciplinary Action/Retaliation

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

- THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance This Grievance is Addressing Pinckneyville Correctional center Officers, Interference, Punishment, Conspiratorially Planned Disciplinary Actions, & Retaliation against an Disable Inmate For filing grievances and seek access to the courts and other civil liberties privileges, by Addressing prisoner officials Deliberate indifference towards serious medical needs that prior physician mandate once prescribed medical care or treatment. These series of incident begin Between April & May 2000 when Inmate repeatedly ask to be transfer to a more A.P.A. Equip medical facility that will tender once prescribed Rehabilitation Program to help him regain motor function in his paralyze limbs and ultimately regain Back my motor function to walk Again. 1) On June 5, 2000, I'm Ruffin recieved a response letter from his many letters in grievance to A.D.A. coordinator Karen McKinney stating the many Grievance I filed in April and May 2000 doesn't warrant no investigation, and Denied privilege transfer. 2) On June 11, 2000, C/O Ramsey slammed celldoor on I/M Ruffin paralyzed Arm (right), result no investigation, the C/O denied misconduct that was witness by other, the investigation committed didn't interview Inmate witness. 3) June 22, 2000, C/O Wallace confiscated T.V. for no valid reason, and wrote a Fabricated tickets, AJ June 24, 2000, Captain Spiller gave me a petty ticket for a towel, that was hanging on the rack, but fan accidentally blew it on the floor. 5) On date June 25, 2000, Dr. Alfredo Garcia (Medical Director) call I/M Ruffin "A piece of shit," and retaliated against him by taken him off his once prescribed medication (Balcopłen) on date June 25, 2000/off meds from June 25, 2000 to August 4, 2000, in which cause Mr. Ruffin excruciating pain ———— (cont→)

Relief Requested: SEE ATTACH RELIEF

(Attach additional pages if necessary.)

COUNSELOR'S RESPONSE

Date Received: _____

Response: _____

Counselor _____    Signature    Print Name    Date of Response

- [ ] Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

B40

GROUP EXHIBITS# A p. 83

Date: 4/6/01    Committed Person's Name: JOHNNY M RUFFIN    ID #: 141

Present Facility: MENARD Correctional (own)

Facility where grievance/issue occurred: Pinckneyville Correction Center

## NATURE OF GRIEVANCE

- [X] Personal Property
- [X] Staff Conduct
- [X] Restoration of Good Time
- [X] Disciplinary Report    Date 1/29/01 / CV 5/01
- [ ] Mail Handling
- [ ] Dietary
- [ ] Medical Treatment
- [ ] Transfer Denial
- [ ] Ex. Transfer Coordinator
- [X] By Institution
- [X] Disability
- [ ] Other (specify)
- Where issued: Pinckneyville Corrections Center

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB

~ -CONT. 2    THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance 6.) June 26, 2000, the Pinckneyville Correctional Center APM. Inst-ration changed my I.d. Number from K8054 to B73412. This caused a chain reaction that deter important correspondences / and contacts away because the mail room didn't recognize my (Ruffin) original I.d. Number. 7.) August 21, 2000, C/o CSANA/Menear issue out a frabricated ticket, that was later expunged. 8.) ON October 16, 2000 inmate was denied transfer to another T.B.D.A. Facility. 9.) October 18, 2000, Valerie Bartnick physical therapist of the Healthcare Unit, wrote a Disciplinary ticket against mr. Ruffin, but later was expunged. 10.) ON date October 18, 2000 C/o Wyciskalla gave inmate Ruffin a false ticket for Unauthorized property which was later expunged. 11.) ON date October 20, 2000, Dr. Alfredo took mr. Ruffin off medication (Baicolen) to November 11, 2000, causing mr. Ruffin excruciating pain and severe spasms. October 29, 2000, Lieutenant William wrote a bogus disciplinary ticket and confiscated property slips and grievances, for no security reasons. *** 12.) ON October 5, 2002, mr. Ruffin Attorney Barry Lowy wrote a memorandum order Warden Guy Pierce, A.D.A. Coordinator Karen McKinney, and Assistant Deputy Director of I.D.O.C. George Detella to not to side step mr. Ruffin once prescribed Medical treatments and IF Pinckneyville doesn't have resources to provide proper Medical treatment to transfer mr. Ruffin to a better Medical equip. After this letter the Conspiratorially planned disciplinary charges or actions intensified. ON date January 29, 2001, Lt. Richard Dintelman at 1:45 p.m. Confiscated a manilla grievance folder for an allege disciplinary violation, inmate told Lt. Richard he needs his grievance to exhaust to Springfield before his deadline. And that he was on his way to get copies of the grievances at law library. And another Lt. Cecil Runyon escorted inmad — (co

Relief Requested:     SEE ATTACH RELIEF

(Attach additional pages, if necessary)

## COUNSELOR'S RESPONSE

Date Received: _____

Response: _____

Counselor: _____
Signature    Print Name    Date of Response

[ ] Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

(B41)

COMMITTED PERSON'S GRIEVANCE REPORT

| Date | Committee Pre | ID # |
|------|---------------|------|
| | Please Print | |

| Present Facility | Facility where grievance issue occurred |
|------|------|

**NATURE OF GRIEVANCE**

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report - Date
- [ ] Mail Handling
- [ ] Dietary
- [ ] Medical Treatment
- [ ] Transfer Denial:
  - [ ] By Transfer Coordinator
  - [ ] By Institution
  - Where Issued
- [x] Disability
- [ ] Other  Swollen leg

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Office. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

~ ~ CONT 3 ~         THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance: RUFFIN TO THE ADMINISTRATED SEGREGATION Building I/M RUFFIN ONCE again asked Lt. Runyon, "THAT it important he recieved his grievances, so he CAN send them to Springfield Before HIS DEADline." This Lt. Cecil RUNYON Replied "You Don't need those grievance's, because that folder has been Confiscated and I also hear about you that you are FAKING like you CAN'T walk, so you can try to SUE the facility." 14.) ON DATE February 5, 2001, I/M RUFFIN WAS CHOKE, punch & dragged by Lt. Cecil RUNYON And Turn around on charged MR. RUFFIN with a FALSE Disciplinary CHARGE of STAFF ASSAULT I/M RUFFIN Suffer EXCRUCIATING Bruise, Trouble Breathing, sever pain in right shoulder and hips swelling. 15) I/m ruffin was immediately transferred to menard Correctional center ON February 9, 2001, there he recieved No immediate Medical Attention From the EXCESSIVE Force and MENARD center do not HAVE I/M RUFFIN ONCE prescribed PHYSICAL THERAPY PROGRAM that he fought so hard to get at PINCKNEYVILLE and they FINALLY recieved Medical EQUIP, NOW I/M RUFFIN Body further is rapidly deteriorating because of this retaliation transfered, 16) Unfortunately, I/M RUFFIN DIDN'T recieve his grievances that was confiscated on October 29, 2000 and January 29, 2001, until Pinckneyville Correctional Center finally gave me my Excess legal Material or grievance on February 14, 2001, and wasn't until February 23, 2001 He (finally) recieved them he immediately sent to springfield to the EXHAUST, springfield sent it BACK MARCH 2, 2001; I/M RUFFIN (RE)SUBMITTED Grievance to be EXHAUST at springfield ON the MARCH 9, 2001 I/M March 14, 2001 Springfield Refuse to EXHAUST or ANSWER Grievance. So for the 16 Above STATE EXAMINATION I/M RUFFIN asked for restoration of Good time and compensatory, punitive, monetary, and injunctive DAMAGES for the PHYSICAN & EMOTION PAIN that will HAVE a permanent Effect BECAUSE of I. DOC INTERFERENCE, PUNISHMENT, RETALIATION, HARRASSMENT & Conspiratorially PLANING Disciplinary — END

Relief Requested: _____

_____

(Attach additional pages if necessary)

**COUNSELOR'S RESPONSE**

Date Received: _____

Response: _____

Counselor _____
| Signature | Print Name | Date of Response |

- [ ] Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.


EXHIBIT A  Pg. 85

**Illinois**
Department of
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

**M E M O R A N D U M**

DATE:       October 5, 2001

TO:         Johnny Ruffin, K80541
            N2-C-7

FROM:       Mavis Gross
            Grievance Officer

SUBJECT:    Grievance Follow-Up

This is a follow-up to the Grievance Officer's report #2092 dated 8/22/01 which was referred to N2 Supt., HCU Administrator and the ADA Coordinator for additional information. All information forwarded to this Grievance Officer by the grievant and institutional staff pertaining to the issue(s) being grieved by the inmate were thoroughly reviewed.

Inmate grieves his chronic medical needs as a paraplegic are not being met by Menard's HCU. He states the cellhouse showers are dirty and inmates are allowed to clean their cells only once per week. He states he is not given adequate exercise, which is affecting his medical condition. He also feels he needs a better mattress for his condition. He requests to be examined by an outside doctor, receive proper medical treatment and transferred out of Menard.

ADA Coordinator, Assistant Warden Frentzel, reported that different practitioners at Menard have medically evaluated inmate Ruffin. The bullet fragments have been in Mr. Ruffin for numerous years. The records from past outside hospitalizations indicate many medical judgements not to remove as more neurological damage could possibly occur. No conflict could be found between the different medical directors who have examined Mr. Ruffin about need for surgery.

Inmate has had all restorative services provided immediately post injury and additional physical therapy has not been medically recommended. Mr. Ruffin has all of the ordered assistive devices available for him to continue the strength building exercises that he can do on his own to maintain his current physical condition.

Medical staff are well aware of inmate's medical history and he receives routine medical evaluations. There have not been any recent positive physical findings to indicate medical need for further tests about his common concern for an individual with hemiparsis. Mr. Ruffin has received appropriate patient instructions and if he continues with his exercises, he will prevent the formation of blood clots and reduce the edema he periodically experiences. Prescription for anticoagulants has not been medically indicated or ordered by the examining physicians. Inmate's last chemistry screen was done in April, 2001 and his renal function was within normal values.

Inmate has requested an Egg Crate mattress, which has no therapeutic value and is a fire risk in the housing unit. His mattress was checked and found to be in satisfactory condition. Laundry services are provided weekly to segregation inmates and clinically there is no need for more frequent exchanges.



RUFFIN, K80541

Cleaning supplies for cells are passed out weekly. The shower room was inspected and is clean. The drains have been cleaned out and are working properly. Inmates are given a mirror in the shower. The showerhead is working properly and the shower chain is adequate for use. Windows are opened in each cellhouse when needed. Mr. Ruffin is not eligible for transfer due to his segregation status.

Assistant Warden Frentzel stated based on information given, he found that we are ADA compliant.

This officer recommends no further action be taken.

If inmate Ruffin is of the opinion that this issue has not been resolved, he may file an appeal **WITHIN 30 DAYS OF THE WARDEN'S DECISION** to the Director of the Department of Corrections, Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

_____ Mavis Gross, Grievance Officer

____V____ CONCUR

_____ DO NOT CONCUR

_____ J.R. Walls, Warden

_____ 10-09-01
Date

cc: Inmate Ruffin
    ADA Coordinator

EXHIBIT A, P.º 87

2092

## GRIEVANCE OFFICER'S REPORT

Date Received: 8/23/01                          Date of Review: 8-23-01

Committed Person: *Johnny Ruffin (N2-C-7)*          Number: K80541

Nature of Grievance: *ADA, Medical Treatment, Transfer, Staff Conduct*
*Clean showers ( #12 A, 1 E, 2 A, 7 E, 8 E )*

Summary: All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.

Recommendation: I am requesting the *ADA Coordinator / Hcu Admin / N2 Supt* provide the Grievance Officer with any information pertinent to the issue(s) being grieved by the inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and render a final disposition on the inmate's grievance.

*Mavis Gross*                          Mavis Gross
                                       Print Name

cc: Inmate *Ruffin* / ADA *Coord* / *Hcu Admin* / N 2 *Supt*

## CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: 8/23/01      ☒ Concur   ☐ Do not concur   ☐ Remand

Comments:

*JR Walbay*                          8-23-01
Chief Administrative Officer's Signature      Date

## COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director via the Administrative Review Board. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision.

Committed Person's Signature                          Date

DC 5657
IL 423 (7/43)

ADMINISTRATIVE REVIEW BOARD
Committed Person's Grievance Report File

(N2)


EXHIBIT A, pg 88

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT   EMERGENCY 504.8 & Imm.

| Date JULY 9, 2001 | Committed Person RUFFIN, JOHNNY | ID # K70541 |

Present Facility MENARD C.C. | Facility where grievance issue occurred MENARD C.C.

NATURE OF GRIEVANCE 8th & 14th Amend. Violation Deliberate Indifference Inmate Medical

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report   Date
- [ ] Mail Handling
- [ ] Dietary
- [X] Medical Treatment

Transfer Denial
- [ ] By Transfer Coordinator
- [X] By Institution

Where issued

- [X] Disability
- [X] Other CRI+UNASS
  RUN'N MATE /
  CIVIL CONSPIRACY

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance THIS IS AN EMERGENCY GRIEVANCE UNDER I DR 504.84 "IMMINENT DANGER" AND HEALTH CARE SYSTEM AND ENVIRONMENTAL CONDITIONS AND PRACTICES IN MENARD CORRECTIONAL CENTER SEGREGATION (CONTROL CELL WING) (AMERICAN WITH DISABILITY ACT WING) OF NORTH II ANNEX BUILDING, AND CIVIL CONSPIRACY BETWEEN MENARD C.C. OFFICIALS + PINCKNEYVILLE CC TO VIOLATION OF MR. RUFFIN EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTIONAL RIGHTS IN THAT THEY LED TO UNNECESSARY SUFFERING TO INMATE RUFFIN AND IN THE LIGHT OF DELIBERATE INDIFFERENCE TO RUFFIN'S ONCE PRESCRIBED MANDATORY & SERIOUS MEDICAL NEEDS, AND WHEN SYSTEMATIC DEFICIENCIES IN MEDICAL/CORRECTIONAL OFFICAL STAFFING, FACILITIES AND PROCEDURES MAKE UNNECESSARY SUFFERING INEVITABLE AND MISADMINISTRATION OF PRISON OFFICIALS WHICH IS SO GROSS AS TO BE DEEMED WILLFUL, the OFFICIALS WERE DELIBERATE REFUSING OR FAILING TO PROVIDE MANDATORY PRESCRIBE & MEDICAL TREATMENTS ALL UNDER FACT THAT INMATE RUFFIN WAS CHARGED WITH TWO DICTIONARY CHARGES THAT JUSTIFIED THEIR DENIAL OF MEDICAL TREATMENT.
I PRAYED THAT WARDEN ROGER COWEN/ASS. ST WARDEN OF PROGRAMS WALLS (A.D.A. COORDINATOR) MEDICAL DIRECTOR DR. FEINERMAN, HEALTH ADMINISTRATOR PAM GRUBMAN AND ALL PRISONERS OFFICIALS WHO ARE RESPONSIBLE + ARE EITHER INMORE DIRECTLY OR INDIRECTLY IN WITH PROVIDING PERSON NOW HEALTH CARE TO INMATE RUFFIN PLEASE PLEASE TAKE HIS COMPLAINT + ALLEGATIONS IN CONSIDERATION BECAUSE INMATE RUFFIN HAS SUFFERED AND CONTINUE TO SUFFERED IRREPAIRABLE DAMAGES (OBVIOUSLY) + IF NOT PROPER DIAGNOSIS + SURGERIES IS NOT GIVEN SOONER INMATE RUFFIN MAY DIE

Relief Requested   SEE ATTACH REQUEST FOR RELIEF

(Attach additional pages if necessary)

COUNSELOR'S RESPONSE

Date Received:
Response:

Previously Addressed

Counselor:
Signature   Print Name   Date of Response

- [ ] Outside jurisdiction of this facility, grievance will be sent from afacility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office, forward to the Administrative Review Board, 1301 Concordia Court, P.O.

Illinois Department of Correc
COMMITTED PERSON'S GRIEVANCE REPORT  EMERGENCY Review AND IMMEDIATE ACTION

| Date | Committed Person | ID # |
|---|---|---|
| July 9, 200_ | P. LEEON RUFFIN | K-50_ |

| Present Facility | Facility where grievance issue occurred |
|---|---|
| MCC | MCC |

NATURE OF GRIEVANCE: 8th 14th AMEND DELIBERATE INDIFFERENT INMATE MEDICAL TREATMENT

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report · Date
- [X] Mail Handling
- [ ] Dietary
- [X] Medical Treatment
- [ ] Transfer Denial
- [ ] By Transfer Coordinator
- [X] By Institution
- [X] Disability
- [X] Other CRUEL & ADA
  PUNISHMENT

Where issued

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.
PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

CONT. 2                 THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance UNDER 8th AMEND, I DON'T LIKE WRITING GRIEVANCES OR COMPLAINING BUT BY RETURNING TO MY MEDICAL PHYSICAL & MENTAL HEALTH I BELIEVE MY COMPLAINT IS MERIT AS WELL AS LIFE THREATENING, SO THE FOLLOWING ALLEGATION ARE TRUE AND I PRAYED THAT THE MENARD C.C. OFFICIAL GRANT MY HUMBLE REQUEST TO COME TO A REASONABLE CONCLUSION TO REMEDY THESE HAZARD CONDITION BEFORE ULTIMATELY I MAY DIE IN YOUR CARE. DISCIPLINARY SEGREGATION ENVIRONMENTAL HEALTH CONDITIONS:
A. AMERICAN WITH DISABILITY ACT (A.D.A) CONTROL(SEG) UNIT.

1.) NORTH II ANNEXED A.D.A. CELL HOUSE, C-WING WAS BUILT IN 1996, IS A MAXIMUM SECURITY SEGREGATION FACILITY AND SERVES AS A SEG. UNIT FOR A.D.A. PRISONERS WHO ARE BROUGHT HERE ON DISCIPLINARY CHARGES ALLEGEDLY OCCURS AT AN A.D.A. FACILITY.

2.) THESE NEWLY ADMITTED INMATE RUFFIN ON 2/5/200_, SHOULD HAD A PROPER MEDICAL SCREENING PROCEDURES & DIAGNOSIS ON HIS CHRONIC HEALTH ISSUES BUT WAS SUBSEQUENTLY TRANSFERRED IN THE A.D.A SEG. UNIT WITHOUT PROPER SCREENING AND THUS ENDANGERING MR. RUFFIN TO IRREPAIRABLE DAMAGES.

3.) MR. RUFFIN HAS DID A BIT OVER A YEAR SEGREGATION TIME TO DO AND HE IS ONLY ALLOW ONE SHOWER PER WEEK WHICH IS NOT IMMEDIATELY ACCEPTABLE, FOR HIM, OR ANY OTHER DISABLE INMATE, PERIOD.
                                        CONTINUE ——

Relief Requested     SEE REQUEST FOR RELIEF

(Attach additional pages if necessary)

---

### COUNSELOR'S RESPONSE

Date Received _____

Response: _____

_____

_____

_____

Counselor: _____

| Signature | Print Name | Date of Response |
|---|---|---|

- [ ] Outside jurisdiction of this facility. Grievance is within the jurisdiction of a facility other than the committed person's present location and the dates of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.



EXHIBIT A, Pg. 90

Illinois Department of Correct.
COMMITTED PERSON'S GRIEVANCE REPORT

| Date | Committed Person | ID # |
|------|------------------|------|
| | | |

| Present Facility | Facility where grievance issue occurred |
|------------------|------------------------------------------|
| MCC | MCC |

NATURE OF GRIEVANCE 3rd & 14th Amend. Violation Pattern of Indifferent Inmate Medical Care

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report   Date

- [X] Mail Handling
- [ ] Dietary
- [X] Medical Treatment

- Transfer Denial:
  - [ ] By Transfer Coordinator
  - [X] By Institution

  Where Issued

- [X] Disability
- [X] Other (specify) Punishment

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.
PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

CONT-3    THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance 4) THE SHOWER ROOMS IN OR ON THE A.D.A. TEN WING ARE IMPROPERLY CLEANED, BECAUSE IT'S NOT BEING SANITIZED PROPERLY, THE INTERIOR WITH DIRT, GERMS, MILDEW MOLDS CAUSE ETP... FURTHER BECAUSE OF THE TREMENDOUS AMOUNT OF HAIR, DIRT ETC, THAT IS STUCK OUTSIDE OF THE ✱ DRAIN INSIDE, THE INFECTED STANDING WATER FROM THE INMATES WHO SHOWER BEFORE ME IS BACK UP INTO THE SHOWER CAUSING IT TO FLOOD IS A BREATHING PLACE FOR BACTERIA AND INFECTE THESE CONDITIONS HAS BEEN GOING ON SINCE FIRST GOT HERE & CONTINUE TO SEE.

5) THE SHOWER ROOMS IN SEGREGATION ARE IMPROPERLY CLEANED, MILDEW AND THE RISK OF FUNGAL INFECTIONS ARE A RESULT OF THE LACK OF CLEANLINESS.

6) THE A.D.A. C-WING GENERAL HOUSE KEEPING LEVEL AND SANITATION CONDITIONS IN SEG. ARE EXTREMELY POOR, FLIES, ROACHES, RODENTS (MICE) DRIED FOOD ON GALLERY, ADHERENT DIRT AND FOOD RESIDUES AND DECAYING GARBAGE ARE ALL PERSISTENT PROBLEMS.

7) INMATE IS ONLY ALLOWED TO CLEAN HIS CELL ONCE A WEEK, THERE IS NOT ANY CLEANING SUPPLIES OR BROOMS WITH WHICH INMATE COULD CLEAN HIS CELL OUT.

8) THE SANITATION OF MATTRESSES, MATTRESS COVERS, SHEETS AND PILLOW CASES IN SEGREGATION HAS BEEN CONTINUALLY INADEQUATE THRU OUT. THE MATTRESS ARE DIRTY, TORN EACH STAINED LINEN IS OLD AND FILTHY AND INFREQUENTLY CHANGED. THE SANITATION OF LINEN AND LINEN IS OBVIOUSLY DEFICIENT AND INCOMPATIBLE WITH THE I.D.O.C.
CONT →

Relief Requested

SEE RELIEF REQUESTED

(Attach additional pages, if necessary.)

COUNSELOR'S RESPONSE

Date Received: _____

Response: _____

Counselor _____     Signature     Print Name     Date of Response

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277



EXHIBIT A, PG 91

A.D.A. WHEELCHAIR

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

| Date: July 9, 2001 | Committed Person: RUFFIN, T. LARRY | ID # K35557 |
|---|---|---|

| Present Facility: MCC | Facility where grievance issue occurred: MCC |
|---|---|

**NATURE OF GRIEVANCE** 8TH + 14TH AMEND. VIOLATION DELIBERATE INDIFFERENCE INMATE ABUSE

- ☒ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report Date
- ☐ Mail Handling
- ☐ Dietary
- ☒ Medical Treatment
- ☐ Transfer Denial
- ☐ Ex. Transfer Coordinator
- ☐ By Institution
- ☒ Disability
- ☒ Other CB# K35557
- _____ DEP. INMATE
- What/When issued

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Office. Grievances on discipline go directly to Grievance Office.
PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

CONT. 4

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS**

Brief Summary of Grievance: OWN RED VIOLATIONS. THE UNCLEAN BEDDING CREATES AN INCREASED RISK OF INFECTIONS FOR INMATES IN ON THE A.D.A. SEG. UNIT. BACTERIA CAN GROW IN SUCH BEDDING. INMATE GET CLOTHS WASHED ONE A WEEK.

9) BECAUSE OF INMATE RUFFIN DISCIPLINARY TICKETS, HE HAS A 1 YEAR 3 MONTHS YARD RESTRICTION, SO HE IS ONLY OUTSIDE HIS CELL FOR A MAXIMUM OF ONE SHOWER OF 30 MINUTES AND KNOW EXERCISING YARD. THIS NOT A MEDICALLY ACCEPTABLE FREQUENTLY OCCURATION OF SHOWERS OR NO EXERCISE YARD PROMOTES RAPIDLY DETERIORATION OF INMATES RUFFINS PHYSICALLY HEALTH.

10) [crossed out] THE STATE OF ILLINOIS RECOGNIZES THE RIGHT OF PRISONER TO A DAILY EXERCISE PERIOD OF ONE HOUR BY STATUTE. MENARD C.C. DENIES THIS RIGHT TO ALL INMATES IN THE SEG UNIT WITHOUT RATIONALE.

11) A NUMBER OF MEDICAL PROBLEMS ARISE FROM THE LACK OF EXERCISE ESPECIALLY MR. RUFFIN, WHO IS A KNOWN PARAPLEGIA AND BEING DENIED PHYSICAL THERAPY. THESE CONDITION SUBJECT MR. RUFFIN TO SUFFER THE FOLLOWINGS: MUSCULA ATROPHY [RAPIDLY DETERIORATING] RECURRENT DEEP VENOUS THROMBOSIS [INMATE HAS A HISTORY OF DVT AND WAS ON THE COUMADIN THERAPY, THE THERAPY TO REGAIN BACK MOTOR FUNCTION / TO PREVENT DVT ASSOCIATED BETWEEN HIS SPINAL CORD FRACTURE] RECURRENT URINARY TRACT INFECTIONS, FREQUENT CHEST PAINS, ASSOCIATED WITH PULIMINARY EMBOLISM, BECAUSE MR. RUFFIN IS KEPT
CONT.

Relief Requested:

**RELIEF REQUESTED ATTACHED**

(Attach additional pages if necessary)

| COUNSELOR'S RESPONSE |
|---|

Date Received: _____

Response: _____

Counselor _____ Signature _____ Print Name _____ Date of Response _____



EXHIBIT A P99

A: IS WHEEL CHAIR                    N-2-01

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT   Emergency: □ Yes

| Date JULY 9 2001 | Committed Person RUFFIN, JOHNNY | I.D. # K96057 |
| Present Facility MCC | Facility where grievance issue occurred MCC | |

NATURE OF GRIEVANCE § TH #14TH AMEND: VIOLATION DELIBERATE INDIFFERENT TO INMATE MEDISA

☐ Personal Property        ☒ Mail Handling        ☐ Transfer Denial        ☒ Disability
☒ Staff Conduct            ☐ Dietary              ☐ Bt. Transfer Coordinator ☒ Other CONSTITUTIONAL
☐ Restoration of Good Time ☒ Medical Treatment    ☒ Bt Institution           PUNISHMENT
☐ Disciplinary Report   Date _____            Where Issued _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed
         person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go
         directly to Grievance Officer.
PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person
         then decides whether or not to forward to ARB.

CONT.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance   IN SEDENTARY MAN DUE TO OVERCROWDING FACILITY
TENSION, LACK OF EXERCISE IS DEFINSIVE RELATED TO CAUSE OF STAFF AND THE
LACK OF RESOURCES MAKE A MR. RUFFIN WHO IS PARAPLEGIC HAVE MORE FREQUENT
SPASMS, CULTRA TONIC, AND PERMENANT DISABILITY (NOT BEEN ABLE TO WALK AND
CC USE HIS LIGHT ARM/HAND AGAIN SUFFICIENT), INMATE RUFFIN WITH
ALL OF THESE CHRONIC HEALTH CONDITIONS HAVE BEEN CONFINED IN THE SEG-
REGATION UNIT AT MENARD.

12.) MENARD'S OFFICIALS FAILURE TO PROVIDED ADEQUATE OUTDOOR EXERCISE
AND FREQUENTLY SHOWERS TO SEGREGATION INMATES IS NOT BASED ON ANY
SOUND MEDICAL OR PENOLOGICAL RATIONALE, THE ONLY REASON SHOWERS AND
EXERCISE ARE NOT PROVIDED MORE OFTEN IS A SHORTAGE OF STAFF IN THE UNIT

13.) THERE IS A DIRECT RELATIONSHIP BETWEEN LACK OF EXERCISE AND INC-
EASED DEMANDED FOR MEDICAL SERVICES, LACK OF EXERCISE ALSO LEADS TO
INCREASED STRESS AND INIMICAL TO AN INMATE RUFFIN'S MENTAL WELL BEING.

14.) THE CONTROL CELL (A.D.) C-WING, WHICH IS CUT OFF FROM THE REST OF THE
GALLERIES ON THE 4 FLOOR, BEHIND STEEL DOORS WITH PLEXIGLASS ENCLOSURES,
THESE ENCLOSURES PLUS THE TEMPERATURE DURING THE SUMMER MONTHS WAS
OVER A 120 DEGREES INSIDE CELL HOUSE AND MENARD C.C. POLICY YOU CAN-
NOT OPEN YOUR CELL WINDOW, THIS ALLOWED NO VENTILATION INTO THE CELL AREA OF
CELLHOUSE ROOM, INMATE IS DEVELOP EXTREME HEAT RESPIRATORY PROBLEMS
                                                          CONTINUE →

Relief Requested

SEE RELIEF REQUESTED ATTACHED

(Attach additional pages if necessary)

| COUNSELOR'S RESPONSE |
| Date Received _____ |
| Response. _____ |
| _____ |
| _____ |
| _____ |
| _____ |
| Counselor _____ |
| Signature _____   Print Name _____   Date of Response _____ |

☐ Outside jurisdiction of this facility, grievances which arose from another than the committed person's present location and denial as
  of transfers from the Transfer Coordinators Office, forward directly to the Administrative Review Board, 1301 Concordia Court, P.O.
  Box 19277, Springfield, IL 62794-9277




EXHIBIT A P993

COMMITTEE PERSONS GRIEVANCE REPORT   Emergency B 13's Summary

| Date July 9 2001 | Committee Person RUFFIN, JOHNNY | ID # B83541 |

| Present Facility MCC | Facility where grievance issue occurred MCC |

NATURE OF GRIEVANCE STaff, their Administration Deliberate Indifferent Toward Inmate Medical Care

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report Date
- [x] Mail Handling
- [ ] Dietary
- [x] Medical Treatment
- [ ] Transfer Denial
- [ ] ... Transfer Coordinator
- [ ] ... Institution
- [x] Disability
- [x] Other CONSTITUTIONAL   PUNISHMENT

Where Issued

PAGE 1: Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2: Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

(CONT. C)     THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance 15.) AN IMPORTANT FACTOR OF PROBLEMS OF PUTTING MR. RUFFIN IN THESE CONTROLLING SEG. WITH HIS CHRONIC HEALTH PROBLEM (OF 14 DAY) ALL SUCH DEEP ISOLATION, DEEP PAINFUL EXCESSIVE (CYT) EDEMA, PULMONARY EMBOLISM, BREATHING & SWALLOWING DIFFICULTIES BECAUSE OF A LARGE BULKY OBSTRUCTING EDEMA DUE TO BREATHING AND INFECTION URINARY TRACT INFECTIONS, SPASM, BLOOD CLOTTING ETC. ASSOCIATED WITH PLACING INMATE RUFFIN IN THESE ABYSMAL CONDITIONS, THESE TYPE OF CRIS WOULD NOT BE CURED BY HAVING A PHYSICIAN PRE-SCREEN MY PLACEMENT. THE PROBLEM WAS LACK OF OBSERVABILITY AND ACCESS, FOR CORRECTIONAL OFFICERS ONLY CHECKED THE CELL IN FREQUENTLY, ESPECIALLY ON THE NIGHT SHIFT (11 P.M. TO 7 A.M.) C/O MAKE A TRIP TO CHECK ON INMATES ON C-WING, ONCE WHEN FIRST START TO PICK UP MAIL AND TO SERVE BREAKFAST THAT'S ALL. NO CORRECTIONAL PERSONNEL WERE NORMALLY STATIONED ON THE A.D.A. C-WING GALLERY, THERE IS NO MEDICAL TECHNICIANS STAFFED ON THE GALLERY, THERE IS NO EMERGENCY CALL BUTTONED IN CASE INMATE FALL SUDDENLY ILL WITHOUT FREQUENTLY OBSERVATION, INMATE RUFFIN COULD BECOME ILL AND DIE WITHIN MINUTES IN THOSE CELLS.

16.) BECAUSE THERE IS NO OBSERVATION ON THE C-WING, INMATE RUFFIN AT ONE POINT HAD BEEN CHOKING, BECAUSE HIS DISABILITIES HE WAS NOT ABLE TO BANG ON THE DOOR TO GET C/O's ATTENTION ON THE CELLHOUSE (A MITCH + HAD HAVE ANOTHER INMATE BANG ON THE DOOR TO GET C/O'S ATTENTION) VERY DANGEROUS TOWARDS MY HEALTH CONDITION.

B. MENARD HEALTH CARE UNIT & ADMINISTRATION STAFF FAILURE TO REMEDY CONDITIONS
                                                                            CONT

Relief Requested

SEE RELIEF REQUESTED ATTACHED

(Attach additional pages if necessary)

| COUNSELOR'S RESPONSE |

Date Received

Response

Counselor _____   Signature _____   Print Name _____   Date of Response _____

ID:   Cuts definition of facility grievances which are outside facility or other than the committed person's present location and areas of transfers from the Transfer Coordinator's Office forward directly to Illinois Administrative Review Board 1301 Concordia Court P.O. Box 19277 Springfield, IL 62794-9277

EXHIBIT A P9 94

COMMITTED PERSON'S GRIEVANCE REPORT

EMERGENCY SITUATED

| Date: July 9, 2001 | Committed Person: RUFFIN SHAMY | ID# (B0541) |

| Present Facility: MCC | Facility where grievance issue occurred: MCC |

## NATURE OF GRIEVANCE

- [ ] Personal Property
- [x] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report    Date:
- [x] Mail Handling
- [ ] Dietary
- [x] Medical Treatment
- [ ] Transfer Denial
- [ ] Staff Transfer Coordinator
- [ ] Other:
- [x] Disability
- [x] Other: CRUEL + UNUSUAL PUNISHMENT

PAGE 1: Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2: Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.**

Brief Summary of Grievance: (CONT.)

M.) THE ABYSMAL CONDITION HAS REMAINED SAME SINCE MR. RUFFIN ARRIVED FEB. 5, 2001, IN INMATE SEGREGATION CELL & DENYING HIS GRIEVANCES AS FRIVOLOUS, OF AS MR. RUFFIN WAS LYING ABOUT THE PAIN & UNNECESSARY SUFFERING HE UNDERWENT. NEITHER THE MEDICAL DIRECTOR, A.D.A. COORDINATOR, OR HEALTH CARE ADMINISTRATOR TAKE MR. RUFFIN CONDITION SERIOUSLY, AND IN DR. FEINERMAN CASE WHEN HE DO EXAMINE MR. RUFFIN AND RUFFIN MAKES IT CLEAR THAT, HE NEEDS HIS MANDATORY PHYSICAL THERAPY, OCCUPATIONAL THERAPY, TESTS TO DIAGNOSE RECURRENT DVT (BLOOD CLOTTING) & FOR A STRENGTHENING EXERCISES PROGRAM SO MR. RUFFIN CAN REGAIN BACK HIS MOTOR FUNCTION ON HIS RIGHT SIDE. THIS DOCTOR ALWAYS SAY YOU SHOULDN'T HAVE ALLEGED MADE A SHANK, CUT AT YOUR MEDICAL LEG BRACE YOU WOULD HAVE STILL BE RECEIVING YOUR PHYSICAL THERAPY AT THE A.D.A. PRISON BUT NOW YOU DO YOUR EXERCISES ON YOUR OWN, WHEN YOUR SEGREGATION TIME IS UP YOU WILL BE TRANSFERRED TO AND A.D.A. FACTORY TO RECEIVED P.T." THIS MEDICAL OPINION PUT RUFFIN HEALTH SERIOUS JEOPARDY, BECAUSE HE HAS OVER A YEAR & 3 MONTHS WITHOUT HIS THERAPY. HE WILL NEVER REGAIN FUNCTION IN HIS RIGHT ARM/HAND + LEG OF BE ABLE TO WALK AGAIN!

C.) A PATTERN OF DELIBERATE INDIFFERENCE TO RUFFIN SERIOUS MEDICAL NEED, CAUSING MR. RUFFIN TO SUFFER IRREPARABLE DAMAGES/(ISSUES)

15.) ACCORDINGLY TO THE COURTS, "DELIBERATE INDIFFERENCE REQUIRES A SHOWING THAT THE DEFENDANTS EITHER INTENDED TO HARM PLAINTIFF OR KNEW    CONT →

Relief Requested: SEE RELIEF REQUESTED ATTACHED

Attach additional pages, if necessary.

## COUNSELOR'S RESPONSE

Date Received: _____

Response: _____
_____
_____
_____

Counselor: _____    Signature    Print Name    Date of Response

[ ] Outside jurisdiction of this facility, grievances which arose from another facility other than the committed person's present location and denials of transfers from the Transfer Coordinator, or denial will not be returned to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

EXHIBIT A, P995

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

| Date July 9, 2001 | Committed Person RUFFIN JOHNNY | ID# K80501 |
|---|---|---|
| Present Facility MCC | Facility where grievance issue occurred MCC | |

NATURE OF GRIEVANCE

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report     Date _____
- ☒ Mail Handling
- ☐ Dietary
- ☒ Medical Treatment
- ☐ Transfer Denial
- ☐ Transfer Coordinator
- ☒ Burial Denial
- ☒ Disability
- ☒ Other CRUEL + UNUSUAL PUNISHMENT

What is issued _____

PAGE 1: Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Office. Grievances on discipline go directly to Grievance Officer.
PAGE 2: Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance   CONT-8   OF THE RISK OF HARM SO OBVIOUS OF SUBSTANTIAL THAT AN INTENT TO HARM COULD BE INFERED FROM THE CIRCUMSTANCES SURROUNDING THE MISTREATMENT ALLEGED IN THE COMPLAINT. (STEELE v. CHOI, 82 F 3d 175, 78 (7th cir 1996) IN MR. RUFFIN'S CASE, BEFORE HIS ENTER MENARD C.C., HE WAS RECEIVING MANY + VIGOROUS PHYSICAL THERAPY TREATMENT, WHICH ULTIMATE BENEFITS TO REGAIN HIS MOTOR FUNCTION AND STRENGTH. THIS REGIMEN OF VIGOR REHAB. PROGRAM CONSIST OF:
1. PHYSICAL THERAPY SECESSIONS MONDAY thru FRIDAY AND HOW LONG.
2. INMATE RUFFIN WORK WITH PHYSICAL THERAPIST TO STRENTMENT THOSE AREA HE NOT ABLE TO DO.
3. PHYSICAL THERAPIST USE ALL TYPES OF THERAPUTIC STRENGTH EXERCISES EQUIP TO HELP REGAIN BACK HIS IN RIGHT ARM + HAND, ALSO TO PREVENT CONTINUING DETERIORATION OF MUSWIN.
4. VIGOROUS STRENGTH EXERCISES + OTHER THERAPUTIC EQUIPMENT TO HELP HIM REGAIN BACK HIS MOTOR FUNCTION IN HIS LOWER LEGS.
5. PHYSICAL THERAPIST ASSIST RUFFIN TO STAND, WITH THE ASSISTANT OF A GAIT BELT, ANOTHER ASSIST PHYSICAL THERAPIST AND PATIENT BAR, IN WHICH, BECAUSE MR. RUFFIN DOESN'T HAVE THAT MUCH STRENGTH, HIS LEG + POSTURE BUCKLES AND EITHER FALLS FORWARD or BACKWARD, WITH THERAPIST ASSISTANT KEEPS MR. RUFFIN FROM FALLING, (SO BY M.D. ORDER A WALKER COULDN'T SERVE NO PURPOSE IF RUFFIN DON'T HAVE THE STRENGTH TO STAND ON HIS OWN)
6. PINCKNEYVILLE MED. DR. GARCIA ORDER FOR RUFFIN EGG CRATE MATTRESS, BECAUSE RUFFIN COMPLAINED ABOUT THE CIRCULATION PAIN IN HIS LEGS AND THE CARTILAGE BULB + FRAGMENTS IN HIS BACK THAT RUB AGAINST HIS SHOULDER BLADE CAUSING EXCRUCIATING PAIN, THE EGG CRATE MATTRESS EASE AND RELIEVE SUCH UNNECESSARY PAIN + SUFFERING, TOWARD RUFFIN BACK VERTEBRATE AREAS.
CONT→

Relief Requested   SEE RELIEF REQUESTED ATTACHED

Attach additional pages if necessary

| COUNSELOR'S RESPONSE | | |
|---|---|---|
| Date Received | | |
| Response. | | |
| Counselor | | |
| | Signature | Print Name | Date of Response |

☐ Outside jurisdiction of this facility grievances where one is from a facility other than the committed person's present location and denials of transfer from the Transfer Coordinator's Office should be submitted to an Administrative Review Board. 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.





EXHIBIT A, P 996

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE

PORT EMERGENCY 604 895

| Date JUNE 3, 2001 | Committed Person JOHNNY M. RUFFIN | ID # K80541 |
|---|---|---|

| Present Facility MENARD CC. C.C | Facility where grievance/issue occurred MENARD CC. CTR |
|---|---|

NATURE OF GRIEVANCE

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report Date
- [X] Mail Handling
- [ ] Dietary
- [X] Medical Treatment
- [ ] Transfer Denial
- [ ] Exclusion from Coordinate
- [X] Exclusion
- [X] Disability
- [X] Other (Cruel Punishment)

PAGE 1 Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 Grievance Officer completes forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

CONT →          THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance: DR. FEINERMAN DISCONTINUE THE EGG CRATE MATTRESS BECAUSE OF A FIRE HAZARD, IN WHICH IT HAS BEEN MADE CLEAR THIS DR. INTENDED TO CAUSE HARM TO MR. RUFFIN BY DOING THIS SUBJECTING HIM TO UNNECESSARY LINGERING PAIN, FURTHER TO EXPOSED THIS MALICIOUS INCOMPETENT MEDICAL DECISIONS, THERE ARE TWO (2) SAME INMATE SUCH AS MYSELF ON THIS SAME A.D.A. CONTROL CELL SEG UNIT WHO HAVE THERE EGG CRATE MATTRESS, CHILDRESS (CELLS) + GRANT (CELLS) THERE DOESN'T POSED NO FIRE HAZARD THIS ONLY TO INFLICT UNNECESSARY SUFFERING ON ME

2) PHYSICAL THERAPY HELPS ME CONTROL MY SPASMS AND PREVENT RECURRENT DVT, SINCE MY STAY IN MENARD I HAD HAVE SEVERE SPASMS, BURNING NUMBING SENSATION, PAIN MY RIGHT ARM + LEG EVIDENCES OF DVT & HAD PULMONARY EMBOLI FROM MY FREQUENTLY CHEST PAIN THIS HAS BEEN GOING ON EVERYTIME I LEFT WILL COUNTY JAIL + THEY FAILED TO TRANSFER MY MEDICAL RECORDS, IN WHICH I HAVE BEEN ON COUMADIN THERAPY TO CURB THESE DVT/ BLOOD CLOTTING PROBLEMS, DVT PHYSICAL THERAPY HELP FIGHT THIS ONGOING PAIN.

3) PINCKNEYVILLE MEDICAL DIRECTOR ALFRED GARCIA ORDER FOR MR. TO UNDERGO SURGERY BECAUSE OF A POTENTIAL MUCUS IMPACTION AND A VERY LARGE BULKY FRAGMENT OBSTRUCTION OF OF MR. RUFFIN BREATHING WHEN MY PULM ON HIS BACK GETTIN IN TO HIS CHEST AND SWALLOWING SENSATION HE FELT THAT SURGERY IS NECESSARY, BUT HE WANTED PERFORM HIS RISKY SURGERY AT A IMPROPER FACILITY PINCKNEYVILLE INMATE RUFFIN SOUGHT TO GET A SPECIALIST AT OUTSIDE HOSPITAL TO PERFORM SUCH SURGERY, SUBSEQUENTLY INMATE TRANSFER TO MENARD C.C. AND NAMED DR. DAVID FEINERMAN DISCONTINUED A DIAZEPAM MEDITATION METHAMUSCLE CONTAIN MR. RUFFIN 10 CALLS BECAUSE THIS DR. DIDNOT REVIEW MR. RUFFIN MEDICAL
CONTI →

Relief Requested: _____

Attach additional pages if necessary

| COUNSELOR'S RESPONSE |
|---|

Date Received _____

Response _____

SEE RELIEF REQUESTED ATTACHED

Counselor _____   Signature _____   Print Name _____   Date of Response _____

Outside jurisdiction of facility, grievances will instead be referred to the committed person's present location and send an as of resenting from the Transfer Coordinator, if the assigned grievance is not to be forward to the Review Board 1301 Concordia Court P.O. box 19277 Springfield, IL 62794-627

(A29)

EXHIBIT A, pg 97

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

| Date | Committed Person | ID # |
|---|---|---|
| July 9, 01 | RATLIFF JOHNNY | K92501 |

| Present Facility | Facility where grievance issue occurred |
|---|---|
| MCC | MCC |

NATURE OF GRIEVANCE: PERSONAL PROPERTY, DR 504, AD 05.33.110, AD 04.06.110

- [x] Personal Property
- [ ] Staff Conduct
- [ ] Restoration of Good Time
- [ ] Disciplinary Report   Date
- [x] Mail Handling
- [x] Dietary
- [x] Medical Treatment
- [ ] Transfer Denial
- [ ] B/T Transfer Coordinator
- [x] Bullet ination
- [ ] Disability
- [x] Other CONFISCMENT (CRUEL & UNUSUAL PUNISHMENT)

Where issued

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance

[handwritten summary largely illegible]

Relief Requested

[handwritten, largely illegible]

(Attach additional pages if necessary)

COUNSELOR'S RESPONSE

Date Received _____
Response: _____

Counselor _____  Signature _____  Print Name _____  Date of Response _____




EXHIBIT A, Pg 98

REQUESTED RELIEF:

1.) IMMEDIATELY WRIT OUT TO ANA OUTSIDE FACILITY ORHOSPITAL
TO RECIEVED ONCE PRESCRIBED PHYSICAL THERAPY AND OCCUPATIONAL
THERAPY OR TRANSFER TO ANY A.D.A, I.D.O.C. FACILITY
TO RECIEVED ONCE PRESCRIBED P.T.&O.T, (* BECAUSE OF THE
DELAY OF P.T. + O.T., MY MUSCLE HAVE RAPIDLY DETERIORATING,
SEVERE SPASING [WITH BALCOPHEN], CONTRACTUAL, AND LOSS OF WALKING ABILITY,
STRENGTH + RANGE OF MOTIONS IN UPPER RIGHT + LOWER EXTREMITY,
AND ALSO MASS OF EDEMA IN UPPER + LOWER RIGHT LEG [WITH TEDHOSE])

2. TO WRIT OUT TO OUTSIDE HOSPITAL TO BE EVALUATED BY
A NEUROSURGERY MEDICAL DOCTOR SPECIALISTS, TO PROVIDE
THE COMPLETE RANGE OF NECESSARY MEDICAL PRESCRIBED
SURGERY + XRAYS, COMPUTED TOMOGRAPHY, ELECTRONYCORAM,
ELECTROCARDIOGRAMS, etc., , TO HAVE A THOUROUGH DIAGNOSES
TREATMENTS - BEFORE UNDER GOING SURGERY TO REMOVE
BULLETS FRAGMENTS FROM NECK, SHOULDER, AND RIGHT ARM,
ALSO TO UNDERGO ONCE PRESCRIBED SURGERY BY
THAT DOCTOR ARTHUR [PHYSICAL THERAPIST] OF THE
WINNEBAGO COUNTY JAIL EXPERT SPECIALIST, WHO
PRESCRIBED A SURGERY TO REPAIR DAMAGES
NERVES VESSLE [SMALL + LARGE] FROM THE BULLET FRAGMENTS
IN AND T.. THE RIGHT AXTHURY HUMORAP BRACHIA -



[EXHIBIT A, P10]

CONT. 2
REQUEST RELIEF;

MEDIUM BRACHIAL; IN WHICH SUCH DAMAGES CAUSING ISCHEMIC LLACK OF BLOOD SUPPLY TO THE RIGHT FOREARM + HAND, CAUSEING THE DISCOLORATION OF THE SKIN TO GREENISH OR A REDDISH. *BE ADVISED I HAVE A HISTORY DAMAGED LESION SMALL AND MEDIUM SIZED MUSCULAR ARTERIES, PERIPHERAL NERVES. BECAUSE THE BULLET FRAGMENTS HAS BURN THE ARTERIES + NERVES WHICH HAS HARDENED AND BECAUSE OF THIS HAS INTERFER WITH BLOOD SUPPLY + MOTOR FUNCTIONS IN RIGHT HAND. NEUROLOGIST SPECIALIST NESHER ASHNER ADVISED HE WILL CONSIDER SURGERY IF IT BECOME NECESSITY AND IF THOSE BULT CONTINUE INTERFERE WITH NEUROVASCULAR SYSTEM, SURGERY IS NECESSARY. * ALSO THE LARGE BULLET FRAGMENT IN NECK IS CURRENT CAUSING ME SEVERE BREATHING AND SWALLOWING PROBLEMS. I FREQUENTLY BE CHOKING, BECAUSE FOOD GET STUCK IN MY THROAT AREA; WHEN I LAY DOWN ON MY BACK MY BREATHING IS TOTALLY CUT OFF, OR IF I'M LOOKING DOWN WARD WITH MY CHIN DOWN TO MY CHEST MY BREATHING IS SHUT ALL THE WAY OFF; ALSO I HAVE A VERY THICK SPUTUM BECAUSE BULLET SETTING UP AND INFECTION FROM LEAD POISON. FURTHER, DOCTOR ALFREDO GARCIA ONCE PRESCRIBED THIS SURGERY TO REMOVE BULLETS, BECAUSE IN HIS PROFESSIONAL JUDGMENT "HE FELT IT WAS NECESSARY TO PREVENT IMMINENT HARM OF DEATH"



EXHIBIT A, pg. 100

REQUEST FOR RELIEF
CONT. 3

3. ASK FOR A PHYSICAL EXAMINATION TEST TO SEE MY CURRENT
RANGE OF MOTIONS AND STRENGTH IN MY RIGHT ARM & LEG.
(* PLEASE BE ADVISED, ON OCTOBER 13, 2000 IN PINCKNEYVILLE
I FELL OUT MY WHEELCHAIR AN TORN'S SOME CARTILAGE / LIASON
MUSCLE AMERLES IN MY RIGHT KNEE. AFTER THAT POINT I
HAVE SOME SERIOUS problems of CURRENT CLICKING/PAIN IN
JUST BENDING KNEE) ALSO SINCE I BEEN OFF P.T. I HAVE
LOSS STRENGTH IN RIGHT ARM & HAND & RIGHT SHOULDER LOCK.
THESE some OF THE REASONS I REALLY NEED THOROUGH EXAMINATION

4. CURRENTLY I ASKED HEALTH CARE UNIT & DOCTOR FEINERMAN
ON A RECENT SICK CALL PASS AND STIPULATED THAT I'M HAVING
A LOT OF PAIN IN MY RIGHT KNEE, THIGH, AND HIP FLEXORS
AREA. DR. FEINERMAN REFUSE & SIMPLY DISMISS MY COMPLAINT
AS FUTILE WITH OUT A PROPER TESTING. I CLEAR ADVISED HIM I HAVE
A HISTORY OF RECURRENT DEEP VENOUS THROMBOSIS
(IN I WAS PRESCRIBED COUMADIN 5mg EVERY OTHER DAY
THIS AGENT IS A BLOOD THINNER TYPE ANTICOAGULANT PREVENT
BLOOD CLOTTING) ESPECIALLY SINCE I'M ALWAYS IN MY WHEELCHAIR
AND MOST OF THE TIME MY CLOT WITH MY LEG ELEVATED ON
A PILE OF CLOTHS TO MAKE EASE THE PAIN I FEEL IN MY
RIGHT LEG (Upper & Lower). I WAS WARNED BY MY ATTENDING
DR. JAMIL HUSSAIN (ORTHOPEDIC SURGERY) OF ROCKFORD SWEDISH



[illegible heading]

[illegible]

OF THE [illegible] OF A REVIEW DEEP VENOUS THROMBOSIS IS: EDEMA, (ALSO I HAVE A HISTORY OF REDUCE SERUM ALBUMIN), PAIN OR TENDERNESS IN CALF OR THIGH, USUALLY UNILATERAL MAY BE ASYMPTOMATIC (WITHOUT SYMPTOMS), WITH PULMONARY EMBOLISM (OBSTRUCTION OF BLOOD VESSEL BY A FOREIGN OBJECT) OR BLOOD CLOT TOO LARGE TO PASS THROUGH.) AS PRIMARY PRESENTATION, FURTHER I ALSO COMPLAINED OF HAVE SHORTNESS OF BREATHS ASSOCIATED WITH CHEST PAINS, SOME THING COUGHING UP BLOOD IN SPUTUM ALL THESE ARE SIGNS OF D.V.T. AND PULMONARY EMBOLISM, SO I REQUEST THAT IMMEDIATE UNDERGO THE FOLLOWING DIAGNOSIS MEDICAL TREATMENTS — CHEST XRAYS, PLETHYSMOGRAPH, VENOGRAPHY, OR ULTRASOUND IMAGING OF THE DEEP VEINS TO DETECTION OF DEEP VENOUS THROMBOSIS (DVT) AND IF MENARD DOESN'T HAVE THE PROPER EQUIPMENT TO CONDUCT TESTS, I REQUEST TO BE IMMEDIATELY SENT TO A SPECIALIST NEUROLOGIST TO UNDER GO MUCH NEEDED TESTS OR OTHERWISE I RISK TO HAVE MY LEG AMPUTATED,

5, REQUEST TO UNDERGO TESTES TO DETECT THAT RENAL FAILURES BECAUSE OF THE 2 YEARS PROLONG USE OF BACLOPHEN MEDICATION IN WHICH CAN CAUSE KIDNEY FAILURE — SYMPTOMS CLOUDY URINE ETC...





EXHIBIT A(900A)

RELIEF REQUESTED:
Cont. 5

6.) AN IMMEDIATELY INJUNCTIONS ON MENARD SEG POLICY OF
KEEPING THE CELLHOUSE WINDOW CLOSED ON THE A.D.A. G-WING
AND GRANT INMATE REQUEST TO BE ALLOWED TO UP WINDOWS
UP AND CHOKE HOLD UP WHEN OUTSIDE TEMP GET 80° PLS.
*INJURED I HAVE ALREADY SUFFER MUSCLE CRAMPS, RESPIRATORARY
PROBLEMS ETC... BECAUSE OF THE ~~WIND~~ NO VENTRIHATIONS PROBLEMS,
THAT ALL C-WING INMATES HAVE A CHOICE TO UP WINDOWS UP.

7.) ALSO INSTALL A EMERGENCY CALL BUTTON ON THE A.D.A. WING
CELLHOUSE SO CHRONIC ILL OR DISABLE INMATE CAN RECEIVED
EMERGENCY TREATMENT ON A AS NEEDED BASIC AND ALSO HAVE
A MEDICAL TECH POSTED OR FREQUENTLY MONITOR C-WING
CELLHOUSE. TO PREVENT SOME DYING FOR A LACK OF MONITORING

8.) TO HAVE SICK CALL PASS ANSWER THE DAY AFTER REQUEST
NOT A WEEK OR TWO LATER.

9.) TO INSTALL A NEW SHOWER CHAIR (A REAL ONE NOT A TOILET CHAIR)
AND A MIRROR INSTALL SO DISABLE INMATE CAN SEE WHAT
HE IS DOING, TO PREVENT ANY FREAK ACCIDENT, ALSO A
NEW SHOWER HEAD, WHICH HAS BEEN TORN FOR THE LAST
6 MONTHS



EXHIBIT A, PG 103

REFEE REQUESTED.
CON 6

10. TO GET INMATE NEW MATRIX AND TO REPLACE THE
BADY SOILED MATTESS WITH A CLEAN ONE, TO PREVENT
BACTERIA OR CAUSE SOME KIND OF SKIN DISEASES ETC...

11.) TO BE ALLOWED TO CLEAN HIS CELLHOUSE AT LEAST EVERY
OTHER DAY, TO PREVENT A BREATHING PLACE FOR BUGS AND
RODENT OR A HAZARD BACTERIA INFECTED ENVIRONMENT,

12. TO BE ABLE TO WASH MY CLOTHS AT LEAST 2 TIMES A WEEK
SO INMATE CAN HAVE ADEQUATED ROTATION OF CLEAN LINENS &
CLOTHING A WEEK, TO PREVENT SKIN RASHES ETC...

13. TO HAVE PRIVACY DURING SICK CALL AND PSYCHOLOGICAL
EVALUATION ON THE A.D.A.C-WING AND INJUNCTION ON
THE DAY SHIFT SERGEANTY CO. OFFICERS, & LIETENANTS OF
NOT ALLOWING TO SPEAK WITH PSYCH DOCTOR IN PRIVATE LIKE
ALL THE INMATE I SEGREGATIONS DO,

14. TO PUT AN INJUNCTIONS ON INADEQUATE MEDICAL
RECORD CHARTING AND THOROUGH ANSWER SICK CALL COMPLAINT,
*THE INMATES MEDICAL CHARTING TO BE PROPERLY RECORDED
SHOULD INCLUDE ALL THINGS NECESSARY FOR A PATIENT'S CARE,
SPECIFICALLY, A MEDICAL CHART SHOULD INCLUDED THE PATIENTS
COMPLAINT, TESTS PERFORMED, THE PHYSICIAN'S DIAGNOSIS CONT...

EXHIBIT A, Pg 104

RELIEF REQUESTED:
CONT.7

14. THE TREATMENT UTILIZED, AND WHATEVER FOLLOW UP
WAS REQUIRED, THE NEED FOR THESE BASIC ELEMENTS IS
ESSENTIAL FOR A "CONTINUITY OF CARE" SHOULD INMATE/PATIENT
BE SEEN BY DIFFERENT DOCTORS IN THE FUTURE. ANOTHER
REASON THE MENARD HEALTH CARE UNITS STAFF HAVE
VERY POORLY MADE INCOMPETENT ENTRIES INTO RUFFIN
MEDICAL FILES. FOR EXAMPLES: DR. DOUGHTERTY PROSCRIBED
METHALLE METACHLUI, BUT DID NOT PUT DOWN DOCUMENTATIONS
FOR THE USE OF MEDICATION, SUBSEQUENTLY INMATE ALMOST
CHOKED TO DEATH. 2) DR. FIENDERMAN ORDER A WALKER IN
INMATE CELL, BUT NEVER PUT DOWN HOW TO USE IT, AND NEVER
EXAMINE TO SEE IF INMATE ABLE TO USE, SUBSEQUENTLY INMATE
IS NOT ABLE TO STAND ON HIS OWN WITH A ASSISTANCE (PERSON)
HOLDING HIM UP WITH A GAIT BELT, ALSO INMATE HAS SEVERE
SPASMS THAT WON'T MAKE HIM ABLE, ALSO INMATE FELL DOWN
IN HIS CELL HOUSE TRYING USE IT etc... SO THE CONSEQUENCES
OF SUCH POOR ~~KEEPI~~ MEDICAL RECORDS KEEPING POSE DANGER
AND POTENTIAL TRAGEDY, FOR MR. RUFFIN IN THE NEAR FUTURE.

15. TO HAVE EGG CRATE MATTRESS - TO PREVENT MY CHRONIC PAIN
+ CIRCULATION PAIN ON MY LOWER LEGS AND BACK SHOULDER BLADE, BULLET
IN WHICH CAUSE FRICTION ON MY BACK BLADE AND SEVERE
PAIN BECAUSE OF THE HARD MATTRESS AND PAIN ON MY
BUTTOCK AREA. PINCKNEYVILLE DR. WATIA PROSCRIBED INMATE A EGG



RELIEF REQUESTED:
CONT. 8

FOR THESE EXACT SAME REASONS, STATED ABOVE, TO EAR PAIN.

16.) TO KEEP & HAIR SHOWER ROOM CLEAN, TO PREVENT SHOWER, FLOODED BY THE WHEELCHAIR AREA. KEEP DRAINAGE FROM FLOODING

17. TO ORDER A BLOOD & SPINAL CORD FLUID TESTS TO DETECT LEAD POISONS; I HAVE A HISTORY OF MULTIPLE BULLET FRAGMENTS IN MY BODY [SPINAL CORD C1&TC7, ARM, SHOULDERS, AND BACK]

18. TO HAVE CUSHION FOR THE WHEELCHAIR SEAT, TO PREVENT OBSTRUCTION OF BLOOD CIRCULATION ON THE BUTTOCKS AREA. RECENTLY I HAVE SUFFER BUTTOCK AND LOWER XTREMITY CIRCULATION OBSTRUCTIONS BECAUSE OF THE STEEL BAR UNDER THE WHEEL CHAIR. SO CUSHION WILL PREVENT THAT FROM HAPPENING.

19. TO HAVE BOTH PRESCRIBED LEG BRACES (LEFT & RIGHT) SO INMATE CAN PROPERLY KEEP HIS LEG ALIGN & ERVATED TO FIGHT OF EDEMA. IN HIS LEGS.

20. I TO PUT A INJUNCTION ON THE CONSPIRACY TO DENIED MR. RUFFIN ONCE PRESCRIBE PHYSICAL THERAPY OCCUPATIONAL THERAPY, ALL BECAUSE OF HIS ALLEGED DISCIPLINARY TICKETS AND ALLEGED MAKING CONTRABAND OUT OF LEG BRACE. FOR AN EXAMPLE: EVERY TIME INMATE RUFFIN SEE THE —— CONT

EXHIBIT A, P° 106

RELIEF REQUESTED
CON'T.

MR. DENT ISPERE to LT. FEINERMAN AND INMATE ASKED
HIM ABOUT RECEIVING ONCE PRESCRIBED PHYSICAL THERAPY
DR. REPLY, "IF YOU WOULDN'T MADE A SHANK OUT OF YOUR LEG
BRACE YOU WOULD BE RECEIVING PHYSICAL THERAPY AND UNTIL
YOU FINISH YOUR SEGREGATION TIME THEN YOU WILL BE
ABLE TO go TO A.D.A. FACILITY TO RECIEVE P.T. OR
YOU GET YOU a NEW SPINAL CORD," THIS DOCTOR STATED
THIS IN THE PRESENT OF MANY WITNESSES WOR, C/O, & INMATES.
THIS IS VIOLATION OF 730 ILCS 5/3-7-8 "No DISCIPLINARY
RESTRICTION ON MEDICAL NEED-CAUSING CORPORAL PUNISHMENT
ALSO MENARD CORRECTIONAL OFFICERS WHO COLLECT GRIEVANCES
AT NIGHT EITHER THROW GRIEVANCE AWAY OR MISPLACE THEM
INMATE NEVER GET A RESPONSE, ALSO WHEN INMATE
SEEK TO APPEAL DENIED GRIEVANCE TO THE ADMINISTRATED
REVIEW BOARD, THEY NEVER RESPOND TO GRIEVANCE THIS A
CONSPIRACY TO PREVENT INMATE TO REDRESS HIS GRIEVANCE
IN VIOLATION OF HIS 1ST AMENDMENT RIGHTS, ALSO
RESTRICTIONS ON MAIL, PAID FOR PUBLICATION, LACK OF LEGAL
MATERIAL SUCH AS 7 SHEETS OF 8½ x 11 TYPING PAPER, NOT
ENOUGH TO START A PETITIONS TO THE CURT etc... SO
I ASK FOR AN INJUNCTION ON ALL ALLEGED VIOLATION
ABOVE STATED COMPLAINT.
I THANK YOU FOR YOUR CONSIDERATION OF MY MERLT
COMPLAINT, MAY ALLAH GUIDE YOUR HEART TO MAKE RIGHT DECISION



EXHIBIT A, PG 107



**:eorge H. Ryan**
Governor

# Illinois
### Department of
# Corrections

**Donald N. Snyder, Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL  62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

June 7, 2002

Johnny Ruffin
Register No. K80541
Menard Correctional Center

Dear Mr. Ruffin:

This is in response to your grievance received on May 10, 2002, regarding other (alleged court order for Neurological exam), which was alleged to have occurred at Menard Correctional Center.  This office has determined the issue will be addressed without a formal hearing.

The Grievance officer's report and subsequent recommendation dated April 10, 2002 and approval by the Chief Administrative Officer on April 10, 2002 have been reviewed.

Based on a review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the offense and recommends the grievance be denied.

FOR THE BOARD: _____

Robert L. Radmacher
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____

Donald N. Snyder, Jr.
Director

cc:  Warden Jonathan R. Walls, Menard Correctional Center
Johnny Ruffin, Register No. K80541
Chron. File

EXHIBIT A 108

**Illinois**
Department of
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

Menard Correctional Center / P.O. Box 711 / Menard, IL 62259-9998 / Telephone: (618) 826-5071 / TDD: (800) 526-0844

## M E M O R A N D U M

DATE:       April 10, 2002

TO:         John Ruffin, K80541
            N2-C-7

FROM:       Mavis Gross
            Grievance Officer

SUBJECT:    Grievance Follow-Up


This is a follow-up to the Grievance Officer's report #555 dated 3/27/02 which
was referred to the HCU Administrator and the ADA Coordinator for additional
information.   All information forwarded to this Grievance Officer by the
grievant and institutional staff pertaining to the issue(s) being grieved by
the inmate were thoroughly reviewed.

Inmate grieves that Menard did not honor a court order for him to be seen by a
neurologist for his medial condition.

ADA Coordinator stated the court order was sent to IDOC Legal for review and
handling.   On 10/18/01, Jane Bularzik, Legal Counsel, notified the Record
Office Supervisor that Judge Campanella vacated the Perry County Court Order.

HCU Administrator supplied this officer with a copy of the memo from Jane
Bularzik dated 10/18/01 which stated the order was vacated and at this time,
there is no court order at all regarding any medical evaluation of inmate
Ruffin.

This officer failed to find sufficient evidence to substantiate inmate's
allegations of staff misconduct; therefore, no further action will be taken.

If inmate Ruffin is of the opinion that this issue has not been resolved, he
may file an appeal **WITHIN 30 DAYS OF THE DATE OF THE WARDEN'S DECISION** to the
Director of the Department of Corrections, Administrative Review Board, 1301
Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

Mavis Gross, Grievance Officer

_____✓_____  CONCUR

_____  DO NOT CONCUR

J. R. Walls, Warden

4-10-02
Date

cc:   Inmate Ruffin
      ADA Coordinator

555

## GRIEVANCE OFFICER'S REPORT

Date Received: 3/27/02      Date of Review: 3/27/02

Committed Person: *John Ruffin (N2-C-7)*     Number: *K80541*

Nature of Grievance: *ADA, Medical Treatment ( )2 C, 11E)*

Facts Reviewed: All information submitted to the Grievance Officer by inmate and institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed by this writer. Reference is invited to inmate's written grievance for information concerning the nature of the issue being grieved.

Recommendation: I am requesting the *Heu Admin / ADA Coordinator* provide the Grievance Officer with any information pertinent to the issue(s) being grieved by the inmate. Upon receipt of a response, the Grievance Officer will then consider all available information and render a final disposition on the inmate's grievance.

Grievance Officer: *Warren Gross*     David Hoffman

          Signature                        Print Name

cc: Inmate *Ruffin / Heu Admin / ADA Coordinator*

## CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: 3/27/02    ☑ I concur    ☐ I do not concur    ☐ Remand

Comments: _____

*J.R. Walls*          3/28/02

Chief Administrative Officer               Date

## COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____

Committed Person's Signature/Number            Date

DC 5657       Copy: Original to the Master File
IL 426-17343

ADMINISTRATIVE REVIEW BOARD
1301 Concordia Court, P.O. Box 19277
Springfield, IL 62794-9277

Page 2

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT *Emergency* 504.870

| Date 1/20/2002 | Committed Person (Please Print) RUFFIN | ID # K80541 |
|---|---|---|

| Present Facility MCC | Facility where grievance issue occurring MCC |
|---|---|

NATURE OF GRIEVANCE WARDEN WAILS REFUSED TO HONOR COURTORDER TO TRANSFERRED RUFFIN TO BE EXAMINE BE OUTSIDE NEUROLOGICAL

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☐ Disciplinary Report · Date

- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment

Transfer Denial
- ☐ By Transfer Coordinator
- ☐ By Institution

Where Issued

- ☐ Disability
- ☒ Other WARDEN REFUSE TO TRANSFERRED OF HONOR COURT ORDER

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.
PAGE 2 - Grievance Officer completes, forwards to CAO. CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance I/M RUFFIN BRINGS THIS GRIEVANCE UNDER 504.810 OF WARDEN WAILS ACTIONS OF REFUSING TO HONOR PERRY COUNTY JUDGE JAMES W. CAMPANELLA'S COURT ORDER DATED SEPTEMBER 27, 2001. THE COURT FINDS THAT COUNSEL FOR THE I/M RUFFIN HAS MADE ARRANGEMENTS FOR THE I/M RUFFIN #K80541 TO HAVE A PHYSICAL/NEUROLOGICAL EVALUATION WITH A DR. RANDALL STAHLY AT CHESTER MEMORIAL HOSPITAL ON OCTOBER 26, 2001 AT 8:40 A.M. AND THAT WARDEN JONATHAN R. WAILS OF THE MCC, SHALL TRANSFER I/M RUFFIN TO THE CHESTER MEMORIAL HOSPITAL, 1900 STATE STREET CHESTER, IN 62353 ON OCTOBER 26, 2001 AT 8:40 A.M. FOR AN APPOINTMENT WITH DR. STAHLY TO BE EVALUATED FOR HIS PHYSICAL/NEUROLOGICAL STATUS, I/M RUFFIN'S ATTORNEY GENE GROSS MADE SEVERAL ATTEMPTS FOR WARDEN WAILS TO TRANSFER RUFFIN TO SEE DR. STAHLY VIOLATES RUFFIN'S FIRST AMENDMENT RIGHTS TO ACCESS TO THE COURT, BECAUSE RUFFIN WAS ON TRIAL, IN THE CIRCUIT COURT OF PERRY COUNTY FOR AN ALLEGED "UNLAWFUL POSSESSION OF A CONTRABAND IN A PENAL INSTITUTION (PINCKNEYVILLE)" CASE NO. 01-CF-32 THIS CASE OCCURRED AT PINCKNEYVILLE CORRECTION. DURING TRIAL, RUFFIN ATTORNEY FILED A MOTION FOR FITNESS TO STAND TRIAL, BECAUSE THERE IS A BONA FIDE DOUBT OF RUFFIN FITNESS TO STAND TRIAL AND TO ASSIST HIS ATTORNEY IN CASE 01-CF-32, BECAUSE RUFFIN WAS SUFFERING OBSTRUCTION OF BREATH-ING AND SWALLOWING COMPLICATIONS DUE TO 2 METALLIC BULLETS EMBEDDED IN THE SOFT TISSUES OF THE RIGHT SIDE OF THE NECK WITH SWELLING AND RUFFIN GRADUALLY MORE DETERIORATING CONDITION AND AMONGST OTHER EXCRUCIATING PAIN SUFFERING (BECAUSE MCC REFUSE TO PROVIDE MEDICAL TREATMENTS FOR THESE MEDICAL SYMPTOMS) ATTORNEY GENE GROSS MADE MULTIPLE ATTEMPTS FOR WAILS TO TRANSFER, BUT TO NO AVAIL, ON JANUARY 4, 2002, RUFFIN WAS UNFORTUNATELY FOUND GUILTY THE VIA CRIME (AS STATED ABOVE)

Relief Requested RUFFIN REQUESTS $100,000.00 IN MONETARY COMPENSATION FOR DENY HIM ACCESS TO THE COURT, WHICH (BECAUSE WAILS FAILED TO HONOR COURT ORDER·EVEN THE PERRY COUNTY CLERK SENT A CERTIFY COPY OF THE COURT ORDER BUT WAILS/WAILS REFUSE TO HONOR CONSTITUTE VIOLATION OF THE 1ST AMENDMENT OF U.S. CONST.

(Attach additional pages, if necessary)

| COUNSELOR'S RESPONSE |
|---|

Date Received.

Response.

Counselor

Signature          Print Name          Date of Response

☐ Outside jurisdiction of this facility, grievances which arose from a facility other than the committed person's present location and arise out of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277

B428 MCCH

12-61

R.A A INMATE WheelCApp
R2—B—18
R2B18

## COMMITTED PERSON'S GRIEVANCE REPORT

| DATE: 10/28/00 | COMMITTEE PERSON: JOHNNY M. RUFFIN (Please print) | ID# K 80541 |
|---|---|---|

| PRESENT FACILITY: PNKCC | FACILITY WHERE GRIEVANCE ISSUE OCCURRED: PNKCC |
|---|---|

**NATURE OF GRIEVANCE:**

| ___ Personal Property | ___ Mail Handling | TRANSFER DENIAL: ___ Disability |
|---|---|---|
| X Staff Conduct | ___ Dietary | ___ By Transfer Coordinator ___ Other |
| ___ Restoration of Good Time | ___ Medical Treatment | ___ By Institution |
| X Disciplinary Report – Date: 10/18/00 | | Where Issued: |

RECEIVED
MAR 1 4 2001
OFFICE OF
STATE ISSUES

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of Grievance: THIS GRIEVANCE IS CONCERNING C/O S. WYCISKALLA(R 2 CELL HOUSE) HARRASSASING A DISABLE(A.D.A.) INMATE/AND INTERFERRING WITH DISABLE INMATE MEDICAL NEEDS(DELAYING)

ON DATE 10/13/00 INMATE RUFFIN HAD A 10:30 am CALL PASS TO SEE THE PHYSICAL THERAPIST. INMATE TOLD C/o S. WYCISKALLA THAT HE HAS MISPLACE HIS SICK CALL PASS, THAT HE CAN CHECK HIS LIST AND HE WILL CLEARLY SEE THAT I WAS TO REPORT TO H.C.U. THAT DAY & TIME. C/O RESPONSE WAS NO PASS YOU CAN'T GO, I THEN ASK IF HE CAN CALL H.C.U TO VERFY MY ALLEGATION;HE REPONSE WAS IF THEY NEED THEY YOU  H.C.U. WILL CALL OVER FOR YOU. BECAUSE THIS OFFICER BIAS OPINION TOWARD A HANDI-CAP INMATE, INMATE RUFFIN MISS HIS PASS TO SEE THE PHY. THR. AND LATER SUBJECT TO CHARGES OF NOT COOPERATING WITH THERAPY. ALL BECAUSE H E WOULDN'T LOOKI ON HIS DAILY PASS LIST IT WOULD CLEARLY TELL HIM I HAD A PASS
TO see, because of this I miss my Appai

ON DATE 10/15/00 INMATE FELL OUT OF HIS WHEELCHAIR CHAIR AND BADLY TWIST HIS RIGHT SIDE KNEE THAT WAS SWOLLEN. AND INMATE WAS SETBACK FROM ANY ASSISTANC ON HIS OWN BECAUSE OF THE INJURIES/INMATE NEED ASSISTANCE BY OTHER INMATE TO DAILY BASIC NEEDS BETWEEN THE DATE 10/15/00 to 10/20/00. WITNESS TO THE SERIOUS INJURY R.N. JENNY FROENK(FIRST TO DIAGNOSIS INJURY), VALERIE,BARTIN CKI (PHYSICAL THERPIST)ON THOSE DAYS STATED ABOVE C/o S. WYCISKALLA WHO IS THE WING OFFICER IN THE MORNING, WHEN IT WAS TIME TO GO H.C.U FOR PHY. T WING OFFICER WILL SIMPLY LOOK IN THE INMATE CELL AND ASK ARE GOING TO YOUR PASS I SAID, YES BUT I NEED HELP WITH GETTING MY CLOTHS ON BECAUSE THE INJU Y HINDERED ME FROM MOVE THAT LEG AT ALL, HIS RESPONSE I AM NOT HELPING YOUR ASS, I SAID I NEED ASSISTANCE HIS REPLY BE READY ABOUT TO GO ON YOUR PASS J

5 MINUTE, INMATE CONTINUE TO ASK C/O TO SOME TO ASSIST ME BECAUSE NOON
SEE OTHER SIDE OR ATTACH

Relief Requested: I ASK FOR RELIEF FROM THE ALLEGATION OF NOT PACTIPATING MY H.C.U. PHYSICAL THERPY APPOINTMENT STATED ABOVE, BECAUSE OF THIS C/O CONDUCT AXM AND FOR THIS BE REPORT ON MY MEDICALRECORDS;ALSO BECAUSE OF THOSE MISS MED LINE I TAKEWAS TAKEN OFF BECAUSE THE C/O WOULDN'T HELP. I ALSO ASK RELI F TO BE PUT BACK ON MY BALCOPHEN MEDICATION AS SOON AS POSSIBLE

(Attach additional pages, if necessary)

### COUNSELOR'S RESPONSE

Date Received: 10/30/00

Response: Grievance on discipline go directly to grievance officer.

| Counselor: [signature] | BSiercks | 10/30/00 |
|---|---|---|
| Signature | Print Name | Date of Response |

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

B24

RECEIVED
FEB 26 2001
OFFICE OF

*H.D.\of INMATE WHC Chair (2B-1)*

## COMMITTED PERSON'S GRIEVANCE REPORT

| DATE: | COMMITTEE PERSON: (Please print) | | ID# | |
|---|---|---|---|---|
| PRESENT FACILITY: | | FACILITY WHERE GRIEVANCE ISSUE OCCURRED: | | |

NATURE OF GRIEVANCE:

| ___ · Personal Property | ___ Mail Handling | TRANSFER DENIAL: | ___ Disability |
|---|---|---|---|
| ___ Staff Conduct | ___ Dietary | ___ By Transfer Coordinator | ___ Other ____ |
| ___ Restoration of Good Time | ___ Medical Treatment | ___ By Institution | |
| ___ Disciplinary Report – Date: _____ | | Where issued: _____ | |

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

#### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

*RECEIVED MAR 1 4 2001 OFFICE OF INMATE ISSUES*

Brief Summary of
Grievance:    CONTINUE FROM——————————

INMATE THAT WILL HELP ME, WOULD NOT COME IN MY ROOM WITHOUT S. WYCISKALLA
PERMISSION BECAUSE HE WELL KNOWN TO SEND INMATES TO SEGRETION FOR INMATE
BEING IN OTHER INMATE CELL. BECAUSE THIS I NOT ONLY MISS MY DAILY H.C.U
PASS BUT ALSO MISS MY DAILY MEDLINE IN THE MORNING AT 8:00 am & 12:00pm
; I ALSO MISS CHOW LINE FOR THOSE DAYS OF MY INFIRMITIES. THANK FOR THOSE
C/O THAT DID HELP ME OUT ,LIKE C/O CORBIN(2 HOUSE WING OFFERCER IN THE
EVENING WHO KNOW OF MY DISABILITY AND HAD THE NURSE TO BRING MY MEDICATION
TO MY CELLHOUSE & ICE PACKS TO ICE MY KNEE) I ASK FOR A INVESTIGATION OF
THIS BIAS C/O S. WYCISKALLA OF HIS BIAS CONDUCT TOWARD DISABLE INMATES

ON DATE C/o S. WYCISKALLA, WROTE INMATE MR RUFFIN A BOGUS DISPLINARY TICKET
(DAMAGE OR MISUSE OF PROPERTY, CONTRABAND/UNATHORIZED PROPERTY, HEALTH,
SMOKING OR SAFETY VIOLATIONS) THIS ANOTHER INCINDENT# 200006914.
C/O CONTINUE BRING FALSE ALLEGATION TOWARDS INMATE RUFFIN: CHARGING HIM
WITH USING THE HANDI-CAP SHOWERCHAIR TO USE THE TOLIET WITH. THIS A BOLD
FACE LIE BECAUSE THIS TICKET WAS EXGUNGED DUE TO CHARGES NOT SUBSTANTIATED.
INMATE RUFFIN CELL MATE ASK FOR THE SHOWERCHAIR TO USED IN THE MORNING
WHEN HE CAME OFF LOCKDOWN. C/O STIFF #385 SUGGEST THIS BECAUSE HE GOT
BECAUSE HE RETRIEVED THE SHOWERCHAIR OUT ANTHER DISABLE INMATE CELLHOUSE
OFF THE C WING. C/O ALSO CHARGING US WITH USING AS A TOLIET WHEN NEVER
SEEN ANY ONE OF US ON THAT CHAIR, BUT ONLY MADE A ASSUMPTION BECAUSE THE
CHAIR WAS BY THE TOLIET AREA; THE REASON THE CHAIR OVER THEIR BECAUSE THE
CELL IS TO SMALL. I ASK TO KEEP A WATCH ON THIS OFFICER ATTITUDE TOWARDS A
INMATES THAT IS DISABLE

Relief
Requested: _____
_____
_____
_____

#### (Attach additional pages, if necessary)

#### COUNSELOR'S RESPONSE

Date Received: _____
Response: _____
_____

Counselor: _____
      Signature        Print Name        Date of Response

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present
location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review
Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722

*RECEIVED FEB 2 6 2001 OFFICE OF*

(B25)

(B35)

GRIEVANCE OFFICER'S REPORT

Date Received: December 12, 2000        Date of Review: January 6, 2001

Committed Person: Jonny Ruffin      12-61        Number: K80541

Nature of Grievance: IDR issued on 10/18/00.

Facts Reviewed: Inmate states he was issued an IDR by HCU because he did not show up for physical therapy. Inmate states that he misplaced his call pass and CO Wyciskalla would not let him go to HCU without it. Inmate wants to be put back on Balcophen medication. Inmate further states that on 10/15/00 he fell out of his wheel chair and hurt his knee. Inmate stated he needed assistance but CO Wyciskalla would not help him. Inmate was issued a bogus IDR for Damage or misuse of property, contraband/unauthorized property and health and smoking violation. Date of IDR was not provided.

On 10/20/00, inmate was issued an IDR by CO Waciskalla, which was expunged.

IDR issued on 10/18/00 for failure to report to HCU was expunged.

Issue of medication was previously addressed.

According to Capt. Spiller, it is the responsibility of the inmate to ensure that he keeps track of his call passes.

Recommendations: Issues have been addressed.

Grievance Officer       _____       **T. Murray**
                          Signature                      Print Name

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: JAN 0 9 2001    ☒ I concur    ☐ I do not concur    ☐ Remand

Comments: _____

_____                JAN 0 9 2001
Chief Administrative Officer                 Date

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____  _____
Committed Person's Signature / Number                           Date

DC 5657         Copy· Original to the Master File                      ADMINISTRATIVE REVIEW BOARD
IL 426-17343                          FEB 2 6 2001           1301 Concordia Court, P.O. Box 19277
                               OFFICE OF           Springfield, IL 62794-9277

EMERGENCY GRIEVANCE 504.40 D.R.

8, MCC#1

## COMMITT... PERSON'S GRIEVANCE REPORT

DATE: 11/3/00      COMMITTEE PERSON: JOHNNY M. RUFFIN      ID# K 80541
(Please print)

PRESENT FACILITY: PNKCC      FACILITY WHERE GRIEVANCE ISSUE OCCURRED: PNKCC

NATURE OF GRIEVANCE:

____ Personal Property    ____ Mail Handling    TRANSFER DENIAL:    ____ Disability
____ Staff Conduct        ____ Dietary          ____ By Transfer Coordinator   ____ Other
____ Restoration of       X Medical Treatment   ____ By Institution
     Good Time            
____ Disciplinary Report – Date: _____   Where Issued: _____

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of
Grievance:   ON THE FOLLOWING DATES: JOHNNY RUFFIN WAS INJURE BECAUSE
OF THE RIGHT LEG ON HIS WHEEL:CHAIR(WHICH WAS BROKEN AT THE TIME
10/15/00) FELL TRYING TO USE THE WASHROOM OR TOILET IN HIS CELL
DUE TO THESE INMATE WAS BEDRIDDEN FOR 6 DAYS NOT ABLE TO TRANSFER
TO HIS CHAIR WITHOUT ANY HELP(INMATE WILL HAVE SOME ASSISTANCE
IF C/O GETS HELP) ON DATE S 10/16/00 INMATE RUFFIN DIDN'T RECIEVE
HIS MEDICATION BECUASE C/O S. WYCISKALLA(MORNIG SHIP WING OFFICER
FOR 2 HOUSE [B])REFUSE TO GET INMATE RUFFIN HELP TO TRANSFER TO
HIS WHEELCHAIR TO GET HIS 8:00 & 12;00 MEDICATION(BALCOPHEN)BECAUSE
OF THIS INCONSIDERATE WING OFFICER I MISS MY NEEDED MEDICATION
AND THE MEDICAL DIRECTOR IS PUNISHING ME BY TAKE ME OFF MY MANDOTORY
MEDICATION (FROM DATE 10/20/00 to PRESENT)

I GIVE THANKS TO 2 HOUSE WING OFFICER CORBIN WHO WORK IN THE EVENING
SHIP WHO EXPLAIN MY SIXTITATION TO THE NURSE WHO THEN BROUGHT MY
MEDICATION TO MY CELL HOUSE. THIS IS ALL THE WING OFFICER HAD TO DO
OR GET ME SOME HELP SO I CAN TRANSFER TO MY WHEELCHAIR OTHERWISE I
I WILL STILL BE ON MY MEDICATION.

SECOND OF ALL, DR. GARCIA SHOULDNOT HAVE TAKEN ME OFF MY MEDICATION
WITH OUT FIRST CONSULTANCE WITH ME. THIS IS AN EXAMPLE OF DELIBERATE
INDIFFERENCE & WANTON TO INFLICT PAIN . THE ISSUE STATED ABOVE WASNOT
A GOOD ISSUE TO TAKE ME OFF MY NEEDED MEDICATION.

THIRDLY, WHAT THE WHEELCHAIR COMPANY SO LONG TO GET THE WHEELCHAIR PARTS
HERE OTHER WISE I MAY NOT HAVE FALLEN AND TWISTED MY RIGHT LEG

WITNESSES: C/O CORBIN, R.N. JENNY FROENK, P.T. VALARIE BARTINSKI,I/M
Relief  UPCHURCH LARRY, BUNVILLE CLEVELAND, TRACY NESBITT(2 HOUSE)
Requested:   AND EXPLANATION WHY IT TOOK SO LONG TO GET WHEELCHAIR FIX
AND NEED TO BE PUT BACK ON BALCOPHEN MEDICATIONS AS SOON AS POSSIBLE;
AND A INVESTIGATION INTO OFFICER S. WYCISKALLA CONDUCT TOWARDS I/M
DURING THE TIME OF HIS INFIRMITIES. THANK YOU VERY MUCH.

(Attach additional pages, if necessary)

### COUNSELOR'S RESPONSE

Date Received: 11-13-00 copy to HCU

Response: Per HCU Admin. on 10/16, pr. refused to see the physo therapist and never mentioned to her that you missed your meds, you were well enough to

Counselor: _____   _____   _____
             Signature        Print Name        Date of Response

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

come to HCU so you should've been able to be ready for your meds.
X-Ray of knee Showed no fracture. You were seen on 9/1 and
10/25 in HCU and never mentioned to you were unable
to take your meds. Your wheelchair has been fixed and

SD428


NOV 2000
RECEIVED
PINCKNEYVILLE C.C.
WARDENS OFFICE

## GRIEVANCE OFFICER'S REPORT

Date Received: December 5, 2000                    Date of Review: January 3, 2001

Committed Person:  Johnny Ruffin            12-19              Number:  K80541

Nature of Grievance:  Medical Treatment.

Facts Reviewed:  Inmate states that on 10/15/00 his wheelchair broke and he was injured as a result of it. He was bedridden for six days. Inmate claims he did not receive his medication because the officer refused to get him help to transfer in to his wheelchair. Inmate further states that DR. Garcia took him off his medication without first consulting with him. Inmate wants to know why it took so long to get the wheel chair parts.

According to HCU Administrator, Christine Mitchell on 10/16/00, inmate refused to see the physical therapist and never mentioned that he had missed medication. Inmate was well enough to go to HCU so he should have been able to get up to get his medication. Inmate had no lay-in. The x-ray showed no fracture. Inmate was seen on 10/24/00 and 10/25/00. No mention of his medication was made. Wheelchair was fixed. Medication in question was ordered on 11/10/00.

According to CO Wyciskalla, wing officer for R2D wing,  in no way did he ever prevented inmate from receiving his medication.

Recommendations:  It is this writer's findings that Im's medical concerns are being addressed by the facility's health care staff; therefore, I recommend grievance be denied. HCU has no control over the wheelchair company.  Only the Doctor can determine what medication is needed and when. Inmate did not have a lay-in. This officer failed to find sufficient evidence to substantiate inmate's allegations of staff misconduct.

Grievance Officer _____        **T. Murray**
                                  Signature                                  Print Name

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: JAN 0 4 2001          ☒ I concur      ☐ I do not concur      ☐ Remand

Comments: _____ DENIED

_____                JAN 0 4 2001
Chief Administrative Officer                              Date

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

_____                _____
Committed Person's Signature / Number                    Date

DC 5657                    Copy  Original to the Master File          ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                                           1301 Concordia Court, P O  Box 19277
                                                                        Springfield, IL  62794-9277



Side 2

.d.a inmate wheelchair
R 2 HOUSE [B] 18

R2B18

## COMMITTED PERSON'S GRIEVANCE REPORT

| DATE: 11/5/00 | COMMITTEE PERSON: (Please print) JOHNNY M. RUFFIN | ID# K 80541 |

| PRESENT FACILITY: PNKCC | FACILITY WHERE GRIEVANCE ISSUE OCCURRED: PNKCC |

RECEIVED
MAR 1 4 2001

NATURE OF GRIEVANCE:

_X_ Personal Property _____ Mail Handling    TRANSFER DENIAL:    _____ Disability
_X_ Staff Conduct    _____ Dietary    _____ By Transfer Coordinator    _____ Other
_____ Restoration of    _____ Medical Treatment    _____ By Institution
Good Time
_x_ Disciplinary Report – Date: 10/29/00    Where Issued: R 2 HOUSE [B]

PAGE 1 – Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to the Grievance Officer.

PAGE 2 – Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

### THIS FORM IS NOT FOR PROTECTIVE CUSTODY DENIALS

Brief Summary of
Grievance:  ON DATE 10/29/00 Lt WILLIAMS RONALD D. CONFISCATE I/M RUFFIN PROPERTY SLIPS, WARRANTIES etc.. because it was in a green folder I /M RUFFIN WAS NOT DOWN HERE WHEN THE WARDEN MEMO CAME OUT, BUT WAS INFORM BY ANOTHER INMATE THAT I SHOULD KEEP PROPERTY SLIPS OUT SO OFFICER CAN SEE THEM. UNFORTUNATELY, I WASN'T TOLD TO PUT IT IN A WHITE FOLDER, BUT I PUT IN A GREEN FOLDER FOR THE PAST 5 MONTHS AND I HAD NO PROBLEM UP TO NOW. THE PAPERS THAT WAS TOOKEN, BUT SOME OF SLIP WAS RETURN BUT THERE ARE A FEW MORE ITEMS THAT WASN'T RETURN. FOR INSTANCE, PROPERTY SLIPS FOR EGG CRATE MATTRESS, WARRANTIES FOR TYPEWRITER & T.V., RAIDO, FAN, HOTPOT, etc.. This is a direct violation A.D.A. HARRASSING A DISABLE INMATE & RETAILATION AND COERCION 512
I AM ASKING THAT THESE IMPORTANT PROPERTY PAPERS BE RETURN AS SOON AS POSSIBLE BEFORE THIS INSTITUTION TRY TO CONFISCATE PROPERTY THAT I PAID FOR..

ABOUT 4 MONTHS AGO INMATE I.D # CHANGE FROM K 80541 TO B 73412 which PUT I/M RUFFIN IN A PERIL BECAUSE HIS PROPERTIES HAS DIFFERENT I.D.# ENGRAVED IN HIS MERCHANDISE. I/M RUFFIN ASK THE LT STATED ABOVE IF HE WILL GET i/m RUFFIN TO THE B.U.I. TO GET HIS PROPERTY I.D.# CORRECTLY ENGRAVED IN HIS STUFF(K 80541) HE REPEATEDLY SAID I AM GOING TO GET IT STRAIGHT  OUT BUT INMATE WAS ELLUDED EVERY TIME. EVEN NOW THIS PROBLEM HASNOT BEEN RESOLVE. INMATE ASK THAT THIS PROBLEM BE RESOLVE OR OTHERWISE THIS IS DISCRIMINATION AGAINST AND A.D.A. INMATE

Relief  I ASK FOR MONETARY DAMAGES FOR VIOLATING INMATE A.D.A. CONSTITUTION
Requested: RIGHT HARRASSING A DISABLE INMATE RETALIATION & COERCION 512
I/M ASK THAT HIS IMPORTANT PAPER WORK BE RETURN AS SOON AS POSSIBLE ALSO RESOLVE I.D. ENGRAVE PROBLEM BY GETTING INMATE TO B.U.I. INMATE ASK THAT HIS DISPLINARY TICKET #200007051 BE EXPUNGED
(Attach additional pages, if necessary)

### COUNSELOR'S RESPONSE

Date Received: 11-13-00
Response: Grievances on discipline go directly to grievance officer
Counselor: _____ SUTER _____ DIERKS _____ 11/13/00
Signature    Print Name    Date of Response

Outside jurisdiction of this facility; grievances which arose from a facility other than the committed person's present location and denial of transfers form the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9722.

RECEIVED
FEB 2 6 2001

## G1   ANCE OFFICER'S REPORT

Date Received: December 12, 2000                     Date of Review: January 6, 2001

Committed Person:  Johnny Ruffin                12-62                     Number:  K80541

Nature of Grievance:  IDR issued on 10/29/00 by Lt. Williams.

Facts Reviewed:  Inmate is grieving IDR issued on 10/29/00. Inmate states that his property slips and warranties were confiscated because they were in a green folder. Inmate states he was not at PNKCC when the memo came out concerning the property slips. He states he was not told to put them in a white folder. Inmate further states that his ID number was changed and his permit items have not been changed to reflect it. Inmate feels he is being discriminated against because he is an ADA inmate.

According to IDR, while conducting A.M. property box inspection, the Lt. confiscated 1 green folder and several personal papers from the shelving. On 10/28/00, inmate was given a direst order to put the material inside his property box.

According to the Adjustment Committee, inmate was given a verbal and all personal papers were to be returned. Green folder was to be destroyed.

Personal Property verified that on 11/13/00, inmate was issued all personal papers.

Warden's Memo dated July, 20, 2000 concerning permit items states; The following list of permit items that are allowed to be out of your personal property boxes at the time of property box inspection: Fan, AM/FM Radio, Typewriter, Hot Pot, Television, AM/FM Radio with Cassette Player and Desk Lamp. The listed items must be stored on your shelving unit or inside your personal property box. Storing of these items in any other area is prohibited. All confiscated permit items will either be destroyed or sent home at the inmate's expense. NOTE: Jewelry permit items (watch, religious necklace and wedding ring) must either be worn or in your personal property box during property box inspection.

According to OTS. inmate transferred in on 4/6/00.

Inmate Orientation Manual (under Personal Property) states that all inmates are to place their permits for personal property permit items in a white envelope and keep them on the shelf in their cell at all times. This will be the only envelope allowed out of the correspondence box during property box checks and when inmates leave their housing assignments.

Recommendations: I recommend grievance be denied. Staff was following proper procedure. Inmate needs to refer to the Inmate Orientation Manual for rules. No one is exempt from the rules. The Adjustment Committee relied on sufficient evidence to be reasonable satisfied inmate was guilty of the infractions. Unable to provide monetary damages at this level.

Grievance Officer _____T. M_____          **T. Murray**
                                    Signature                                             Print Name

### CHIEF ADMINISTRATIVE OFFICER'S RESPONSE

Date Received: ___JAN 0 9 2001___      ☒ I concur      ☐ I do not concur      ☐ Remand

Comments: _____ *Denied*

_____          JAN 0 9 2001
Chief Administrative Officer                                      Date

### COMMITTED PERSON'S APPEAL TO THE DIRECTOR

I am appealing the Chief Administrative Officer's decision to the Director, via the Administrative Review Board. I understand this appeal must be submitted within 30 days of receipt of the Chief Administrative Officer's decision.

Committed Person's Signature / Number           Date

DC 5657                    Copy:  Original to the Master File                         ADMINISTRATIVE REVIEW BOARD
IL 426-17343                                                                                           1301 Concordia Court, P.O. Box 19277
                                                             FEB 2 6 2001                          Springfield, IL  62794-9277



# STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
## FINAL SUMMARY REPORT

Run Date: 11/02/200

Name: RUFFIN, JOHN M.    IDOC #: K80541    Race: Black

Hearing Date/Time: 11/01/2000 / 08:50 AM    Living Unit: PNK-R2-B-13

Incident #: 200007051 / 1    Status: Final

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 10/29/2000 | 1 | WILLIAMS, RONALD D | R2 CELLHOUSE | 7:35 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 403 | Disobeying a Direct Order | Deleted |
| 404 | Violation of Rules | Guilty |
| | Comments: Warden's memo (property box) | |

| Witness Type | Witness Id | Witness Name |
|---|---|---|
| Witness Status | | Witness Statement |

No Witnesses Requested

## RECORD OF PROCEEDINGS
IDR read to inmate. Inmate pled not guilty.

## BASIS FOR DECISION
Based on IDR written by reporting employee who while inspecting inmate Ruffin's cell per Warden's memo (property box) discovered a green folder and various papers that were left out on the shelving. Inmate ID'd by ID card.

NOTE: Dispose per inmate: green folder
Return to inmate: property slips

## DISCIPLINARY ACTION (Consecutive to any priors)
Recommended:    Final:
Verbal Reprimand    Verbal Reprimand

## SIGNATURES
Hearing Committee

BARCISZEWSKI, VINCEN - Chair Person    WHITE    Race

JONES, SHERI L    BLACK    Race

Recommended Action Approved

## FINAL COMMENTS:

GUY D PIERCE / GDP    11/02/2000
Chief Administrative Officer    Signature    Date

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504: Subpart F.

CROW, CHRISTEL S    11/02/2000   09:00 AM
Employee Serving Copy to Committed Person    When Served - Date and Time

R-2

Page 1 of 1

R2B18

PINCKNEYVILLE CORRECTIONAL CENTER

Personal Property Inventory of Non-Approved Items

Inmate Name _Ruffin_____   Number _K 80541_   Date _11-12-00_

In accordance with Department Rule 535, Administrative Directive 05.03.111A, and any other applicable Administrative Directives, I am requesting the following item(s) of Personal Property to be:

1. _____   Sent to person listed below at my expense (fill out money voucher).
2. _____   Released to person listed on a visit. I understand that if I request the below item(s) to be released on a visit, it will be held for a maximum of 60 days, and, if it is not picked up within that 60 day period it will be destroyed or made a State Loan.
3. _____   Authorize the receiving Institution to destroy item(s)

Description of item(s) _Contraband Exhibit # M001510_

_return green folder property slips_

_Dispose Per Itm_

_(Destroy)_

To be sent / released to _____ / _____
                              Name                      Street Address

                         _____ / _____
                              City / State                  Zip Code

Inmates Signature _____   Number _____   Date _11-13-00_
Signature, Officer Completing Inventory _____

cc:   Inmate Copy
      Inmate Personal Property Active File
      Personal Property Office
      Inmate Personal Property Traveling Folder

DCA #260-53479
   #426-23655 (eff. 02/00)

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

| Gri .ce Officer's Report |
|---|

Date Received: __2/ 7 / 02__     Date of Review: __5/ 22 / 02__     Grievance # (optional) __1156__

Committed Person: _____John Ruffin (N2-C-7)_____     ID#: _____K80541_____

Nature of Grievance: ___IDR-s 1/24/02, 1/31/02 (3A, 3A, 3B, 3B, 3C, 3C, 7B)___

**Facts Reviewed:**     All information submitted to the Grievance Officer by the inmate or institutional staff pertaining to the issue(s) being grieved has been thoroughly reviewed. Inmate grieves he was written the IDR's in retaliation for writing R/O Rea up in grievances.

IDR-1 written by R/O Rea on 1/24/02 was dismissed due to inmate having a letter in which his attorney Gross told him to not file. Document proved inmate did send papers to his attorney.

IDR-2 written by R/O Rea on 1/31/02 for insolence and disobeying orders states inmate Ruffin began saying "bitch" "dumb ass honky" and "honky" in a manner to disguise what he was saying. Inmate continued to do this for several minutes and R/O asked inmate to stop and that R/O believe he was intentionally saying these things to R/O. Inmate did not stop and continued. Inmate known by sight and gallery map.

Hearing of 2/5/02 was continued to call witnesses. Inmate pled not guilty on 2/14/02. Witness Grant, N53705 stated she was passing legal papers out and had every chuck hole open. She has a problem with Ruffin and has been hard on him. Witnes Longoria, A81084 stated Ruffin was listening to a video singing and she stated are you talking to me. She was needing an excuse to give him a ticket because he beat one of her tickets out. Inmate found guilty based on not giving exonerating evidence and ID. Inmate received 1 months each C-grade, segregation, and loss of commissary.

**Recommendation:**     First ticket was dismissed and inmate was found not guilty. Regarding the second ticket, I find the ticket to have been written and processed in accordance with DR-504. After a total review of all information available, I find no violation of inmate's due process rights. The Adjustment Committee relied on sufficient evidence to be reasonably satisfied the inmate was guilty of the infraction. Therefore, I must recommend this grievance be denied.

Mavis Gross

_____      _____Mavis E. Gross_____
Print Grievance Officer's Name              Grievance Officer's Signature

cc: Inmate Ruffin      (Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

Date Received: ___05/23/02___     ☑ I concur     ☐ I do not concur     ☐ Remand

Comments: _____

_____

_____Jn. Walls_____                           __5/ 23/ 02__
Chief Administrative Officer's Signature                    Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director  I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_____     _____     __/ /__
Committed Person's Signature                ID#                    Date

RECEIVED
JUN 0 5 2007
OFFICE OF
INMATE ISSUES

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT EMERGENCY 304,84

| Date 2/24 2003 | Committed Person (Please Print) RUFFIN John | ID # K 76591 |
|---|---|---|
| Present Facility MCC | Facility where grievance issue occurred MCC | |

**NATURE OF GRIEVANCE:**

- ☐ Personal Property
- ☒ Staff Conduct
- ☐ Restoration of Good Time
- ☒ Disciplinary Report - Date January 24,2002 + 2/14/02 Where issued MCC
- ☐ Mail Handling
- ☐ Dietary
- ☐ Medical Treatment
- Transfer Denial:
- ☐ By Transfer Coordinator
- ☐ By Institution
- ☐ Disability
- ☐ Other: _____

PAGE 1 - Committed person completes and sends to counselor who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.

PAGE 2 - Grievance Officer completes, forwards to CAO; CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

**THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.**

Brief Summary of Grievance: THIS IS A FOLLOW UP GRIEVANCES CONCERNING REPEATED MISCONDUCT OF ELISA REA LAW LIBRARY CLERK - WHO CONSPIRATORIALLY DISCIPLINARY CHARGE AGAINST C/O PERSON RUFFIN, FOR FILING GRIEVANCE AGAINST HER *PLEASE NOTE - I/M RUFFIN WARNED WARDEN WALLS + ASS'T WARDEN FRANTZ, + SUPT SPILLER CONCERNING MRS REA, DENIAL OF LEGAL SUPPLIES, DISPLAYING IN A DISRESPECTFUL WAY, HARASSING, THREAT TO DESTROY LEGAL DOCUMENTATION, AND THREAT OF FILING A DISCIPLINARY TICKET AGAINST I/M RUFFIN - SEE GRIEVANCE RPT #220 BUT UNFORTUNATELY, MCC ADM. FAILED TO REMEDY PROBLEMS, ON 1/24/02 24,2002 LAWCLERK REA FILED A MALICIOUS, BOGUS DISCIPLINARY TICKET AGAINST I/M RUFFIN (SEE AN EXHIBIT) ALLEGING I/M RUFFIN GAVE HER FALSE INFORMATION AN (DR 305) AND ABUSE OF PRIVILEGES (DR 310), PERTAINING TO AN LEGAL DOCUMENTS I/M RUFFIN GAVE HER (REA) TO COPY, WHICH IS A MANDAMUS AGAINST I.D.O.C. DIR. DONALD N. SNYDER (FOR FAILURE OR TO ANSWER PENDING (GRIEVANCE) MC-250 IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS - THIS SAID DOCUMENT WAS WRITTEN OUT AN OLD LEGAL DOCUMENT, I GAVE TO MY ATTORNEY GENE GROSS, IN APRIL 2001, AN HE (GROSS) TOLD ME NOT TO FILE IT, SO I HAD TO WRITE ON THE BACK OF THIS OLD DOCUMENT BECAUSE ELISA REA CONTINUE TO REFUSE TO GIVE ME WRITING PAPERS, ELISA REA BOGUSLY SANCTION ME FOR DOING THIS, TO THE CONTRARY THE ADJUSTMENT COMMITTEE EXPUNGED THE TICKET ON JANUARY 28th, ON NORTH C-WING, I/M RUFFIN GAVE ELISA REA THE DISCIPLINARY TICKET + GRIEVANCE ATTACHING, PERTAINING TO THE RETALIATION TICKET SHE FILED AGAINST I/M ON 2/24/02. THIS LAWCLERK READ THE GRIEVANCES. ~~xxxxx~~ Cont.

Relief Requested: TO PUT LAWCLERK ELISA REA DOWN IN THE I.D.O.C. COMPUTER AS AN ENEMY OF I/M RUFFIN, AND A INJUNCTION ON MRS. ELISA REA FROM ANY PHYSICAL CONTACT OF ANY LEGAL DOCUMENTS I SEND LIBRARY TO GET COPY, AND EXPUNGEMENT OF DISCIPLINARY REPORT + GRANT RUFFIN $100,000.00 IN COMPENSATORY PUNITIVE DAMAGES + EMOTIONAL INJURIES.

(Attach additional pages, if necessary.)

| COUNSELOR'S RESPONSE | |
|---|---|
| Date Received: | |
| Response: | |
| Counselor: | |
| Signature | Print Name | Date of Response |

☐ Outside jurisdiction of this facility: grievances which arose from a facility other than the committed person's present location and denials of transfers from the Transfer Coordinator's Office forward directly to the Administrative Review Board, 1301 Concordia Court, P.O. Box 19277, Springfield, IL 62794-9277.

**RECEIVED**

JUN 05 2002

OFFICE OF
INMATE ISSUES

Illinois Department of Corrections
COMMITTED PERSON'S GRIEVANCE REPORT

| Date | Committed Person RUFFIN | ID# Kaaaa1 |
|------|------|------|

Present Facility:
Facility where grievance is/was incurred:

**NATURE OF GRIEVANCE**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Restoration of Good Time
- [X] Disciplinary Report  Date
- [ ] Mail Handling
- [ ] Dietary
- [ ] Medical Treatment
- [ ] HIPAA
- [ ] Transfer Denial by Facility
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Other (specify)
- [ ] Disability

PAGE 1 - Committed person completes and sends to counselor, who completes counselor response and returns to committed person. Committed person then decides whether or not to forward to Grievance Officer. Grievances on discipline go directly to Grievance Officer.
PAGE 2 - Grievance Officer completes, forwards to CAO, CAO responds and returns to committed person. Committed person then decides whether or not to forward to ARB.

*CONT>*        THIS FORM IS NOT USED FOR PROTECTIVE CUSTODY DENIALS.

Brief Summary of Grievance:  ON JANUARY 3, 2002, THIS LAWCLERK ELISA REA, FILE A (false) RETALIATORY TICKET AGAINST MR. RUFFIN, TO GET HIS CELLMATE I.M/D TOSSED, THIS LAW CLERK ALLEGED AS SHE WAS ESCORTED C/M Bed AT CELLHOUSE C1/M GLENN SMITH N52109 ) CELL GIVEN HIM (MATH) SOME LEGAL PAPER OF DOCUMENT THIS LAWCLERK COMES OVER TO INMATE RUFFIN CELL 7, I IM RUFFIN WAS MINDING HIS OWN BUSINESS, SINGING SONG OF A hiphop video ON RAP (EVERY PARTY ON GWING KNOW RUFFIN DOES THIS VERY OFTEN) AND I/C REA APPROACHE RUFFIN IN A BELLIGERENT HOSTIL WAY, WITH A LOUD VICE "WHO YOU CALLING A BITCH OR A DUMB ASS HONKY", I'M RUFFIN REPLIED, "MS. REA I HAVEN'T SAID ANYTHING TO YOU OR ABOUT YOU," SHE REPLIED, "YOU LYING BASTARD I'M WRITE YOUR ASS DISCIPLINARY TICKET," THEN SHE IMMEDIATELY GOT INTO A VERBAL SHOUTING MATCH WITH I/M HOOD #R08073, NILES ( PLEASE NOTE- EVERY INMATE ON GWING WILL BEAR WITNESS, THAT IM RUFFIN NEVER CALL HER OR SAID TOWARDS HER (REA) OR CALL HER A BITCH OR DUMB ASS HONKY AND THAT THIS L/M HAS REPEATEDLY HARASS & THREATEN I/M RUFFIN OVER A (period of time) THIS I/M RUFFIN REQUEST THAT THE M. GRIEVANCE ADMINISTRATION REMOVE L/C REA FROM GWING OR GIVE I/M RUFFIN ANOTHER ALTERNATIVE TO GIVE HIS LEGAL DOCUMENTS TO ANOTHER LAW CLERK, BECAUSE I'M RUFFIN FEARS THIS L/C ABUSE AND IMMINENT THREAT OF BODILY HARM + EMOTIONAL INJURY. TO H.I.M. AND ALSO THAT SHE HAVE REPEATEDLY THREATEN TO DESTROY MY LEGAL DOCUMENTS, I'M IN SEGREGATION AND I HAVE NO OTHER LEGAL ACCESS, BUT THRU L/C REA, SO ITS IN MENARDS INTEREST TO REMOVE HER ALSO I AM FOR AND EXPUNGE ON MY DISCIPLINARY TICKET 1/3/02, AND ALL PRIVILEGE (PS, YRD, EM.
SEE - LANDMAN v. ROYSTER, 333 F.SUPP. 621, 660 (ing law finding Punishing one for complaining about legal aid)

Relief Requested:  TO PUT LAW CLERK ELISA REA IN THE D.O.C. COMPUTER AS AN ENEMY AND TO RESTRAIN HER FROM ACCESS TO ANY OF MY LEGAL DOCUMENT, I SEND OVER TO THE LAW LIBRARY TO GET T COPIES. TO EXPUNGE DISCIPLINARY TICKET, AND GRANT I/M RUFFIN AN $100,000. IN COMPENSATORY & PUNITIVE DAMAGES & EMOTIONAL INJURIES.

**COUNSELOR'S RESPONSE**

Date Received:
Response:

Counselor:
Signature    Print Name    Date of Response

RECEIVED
JUN 05 2002
OFFICE OF
INMATE ISSUES

# STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS
## ADJUSTMENT COMMITTEE
### FI'   . SUMMARY REPORT

Run Date: 01/29/2002

| | |
|---|---|
| **Name:** RUFFIN, JOHN M. | **IDOC #:** K80541 |

**Race:** Black

**Hearing Date/Time:** 01/28/2002 / 10:20 AM      **Living Unit:** MEN-N2-C-07      **Orientation Status:** N/A

**Incident #:** 200200383 / 1      **Status:** Expunged Final

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 01/24/2002 | 1 | REA, ELISA A | LIBRARY | 8:30 AM |

| Offense | Violation | Final Result |
|---|---|---|
| 303 | Giving False Info to an Employee | |
| 310 | Abuse of Privileges | |

| Witness Type | Witness Id | Witness Name | |
|---|---|---|---|
| Witness Status | | Witness Statement | |
| Inmate | N52909 | SMITH, GLENN | Requested By Inmate |
| Needs Updating | | | |

I attest to the statements as being a correct reflection of the statements provided to me by witnesses.

_____
Hearing Investigator

## RECORD OF PROCEEDINGS
I HAVE A LETTER FROM MY LAWYER TO PROVE MY STATEMENT I AM NOT GUILTY

## BASIS FOR DECISION
COMMITTEE REVIEWED LETTER IN WHICH ATTORNEY GROSS TOLD RUFFIN TO NOT FILE , DOCUMENT PROVING RUFFIN DID SEND PAPERS TO HIS ATTORNEY. THEREFORE DISMISS THIS REPORT

## DISCIPLINARY ACTION  (Consecutive to any priors)
Recommended:                          Final:

— E X P U N G E D —

## SIGNATURES
### Hearing Committee

| | | |
|---|---|---|
| BIGGS, ROBERT A  - Chair Person | Lt. Biggs R | WHITE |
| | Signature | Race |
| LEE, TRACY K | | BLACK |
| | Signature | Race |

**Recommended Action Approved**

## FINAL COMMENTS:

| | | |
|---|---|---|
| JONATHAN R WALLS / JRW | J.R. Walls | 01/28/2002 |
| Chief Administrative Officer | Signature | Date |

The committed person has the right to appeal an adverse decision through the grievance procedure established by Department Rule 504  Subpart F

| | |
|---|---|
| Employee Serving Copy to Committed Person | When Served - - Date and Time |

EXPIT  .  /JR

A85

State of Illinois - Department of Corrections
**CIPLINARY REPORT**

Page 1 of 1

☑ Disciplinary Report   1/24/02          ☐ Investigative Report          Date
              Date

Committed Person: RUFFIN, John   No. K80541   Facility MENARD CORR CTR

Observation Date: 1/24/02   Time Approx 8:30 ☑am ☐pm   Location LAW LIBRARY

Elisa Rea                              Rea   1/24/02   9:00am
_____PRINT Employee's Name_____        _____Employee's Signature/Time_____

Offense: 504 B (A) 303 Giving False Information to An Employee, 310 Abuse of Privileges
                (C)

Observation On above date and approximate time while processing a copy request picked up from inmate Ruffin K80541 on 1/22/02, this writer noticed that inmate had written on the back of another legal document. This other document is several pages of an original document that inmate Ruffin had me notarize and copy back in April. Inmate's request for Notary and copies constitutes False Information to an Employee (303) and Abuse of Privileges (310) due to the fact that he did not submit the document to the court after getting it notarized and copied (at state expense). Inmate identified on sight by this writer and verified by gallery map. Copy of document attached. Witnesses if any:

NOTE: Use continuation page if necessary to describe observation and/or list witnesses

☐ Temporary Confinement   ☐ Investigative Status   Reasons _____

_____PRINT Name_____                    Supervisor's Signature and Date
                                        (For Community Correctional Centers, Chief Adm. Off.)

☐ Confinement Reviewed by Reviewing Officer   Comment _____

_____PRINT Name_____                    Signature/Date

☑ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit

Capt. Korando                           Capt Korando 1-24-02
_____PRINT Name_____                    Reviewing Officer's Signature and Date

Reviewed by Hearing Investigator
(Adult Division Major Reports Only)     PRINT Name          Signature and Date

PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS

You may ask that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may also ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole

Committed Person's Signature and Number   Committed Person Refused to Sign ☐

S. Richard              S. Rich          JAN 24 2002 7:35 ☑am ☐pm
_____PRINT Serving Employee's Name_____  _Serving Employee's Signature_  _Date and Time Served_

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Offense Date: _____   _____Committed Person's Signature and Number_____

[DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING]

SAILDOR LONGOCIO, A8103 LAWCLERK ELISA REA, REPEATEDLY HARRASS Iim RUFFIN, DENYING Him WRITTING PAPERS Forcing HiM TO WrTL. On old LEGAL DOCUMENT, I'M RUFFIN WAS WriT OUT TO PERTY CO. COVRT, So THE DOCUMENT HE WAS TO Fille WAS OF NO EFFECT.
NAME OF WITNESS ____ Glen SMITH ____ Number/Cell/Tier N2C4 # N52809 ____ Date ____
THAT LAWCLERK ELISA REA HAVING BEEN THREATEN IIm RUFFIN, THAT SHE WAS GOING TO FILE A DISCIPLINARY
☐ Witness can testify to TICKET, SHE ALSO REPEATEDLY DENYED RUFFIN WRITTING PAPER, I'M RUFFIN DIDN'T GIVE FALSE INFO, BECAUSEWHEN HE WAS TO File PAPER, HE WAS WriT OUT TO COVRT, So THE DOCUMENT WAS Of NO EFFEC
NAME OF WITNESS ____ WILL EVAN #B ____ Number/Cell/Tier N2C8 #B ____
☐ Witness can testify to I'M RUFFIN HAVING BEEN HARRASS BY ELISA REA WHO REPEATEDLY DENYED RUFFIN WriTTiNG PAPER compelling RUFFIN TO WriTE ON LEGAL DOCUMENT

DC 7205 (Rev. 4/98)   Distribution: 1) Master File; 2) Committed Person;   _____Committed Person's Name and Number_____
IL 426-0361                         3) Facility, 4) Facility

(A8-6)

State of I___ Department of Corrections
__IPLINARY REPORT

Page ___ 1 ___

☒ Disciplinary Report ___1/31/02___
Date

☐ Investigative Report _____
Date

Committed Person: __Ruffin, John__   No. __K80541__   Facility __Menard Corr. Ctr.__

Observation Date __1/31/02__  Time: __approx. 10:20__ ☒AM Location: __N2-C-Wing, cell #7__

__Elisa Rea__                                  __Pro-Rea / 1/31/02 / 12:05pm__
PRINT Employee's Name                          Employee's Signature ___/Time

Offense: 50__ B   (A) __304 Insolence__, __403 Disobeying a Direct Order__
         C

Observation: __On the above date and approximate time, inmate Ruffin K80541 began saying "bitch,"__
__"dumb ass honkey," and "honky" in a manner to disguise what he was saying.__
__The inmate continued to do this for several minutes. This writer asked inmate to stop,__
__telling the inmate this writer believed he was intentionally saying these things towards__
__this writer. Inmate Ruffin did not stop (403) and continued saying "bitch," "dumb__
__ass" (304) and even escalated his verbal tirade. Inmate is known to this writer__
__on sight and frather identified by gallery map.__

Witnesses if any: _____

NOTE: Use continuation page if necessary to describe observation and/or list witnesses.

☐ Temporary Confinement   ☐ Investigative Status   Reasons _____

_____                _____
PRINT Name                              (For Co__ mu__ e_ Correctional Centers, Chief Adm. Oft )
                                        __pervisor's Signature and Date

☐ Confinement Reviewed by Reviewing Officer   Comment _____

_____                _____
PRINT Name                              Signature/Date

☒ MAJOR, submitted to Adjustment Committee   ☐ MINOR, submitted to Program Unit

__W. Rees__                             __Cecil W. Rees    1-31-02__
PRINT Name                              Reviewing Officer's Signature and Date

☐ Reviewed by Chief Investigator
(Adult Division Major Reports Only)   PRINT Name   _____   Signature and Date

PROCEDURES APPLICABLE TO ALL HEARINGS ON INVESTIGATIVE AND DISCIPLINARY REPORTS

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

PROCEDURES APPLICABLE TO HEARINGS CONDUCTED BY THE ADJUSTMENT COMMITTEE ON DISCIPLINARY REPORTS

You may a__ that witnesses be interviewed and, if necessary, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify__ by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing. If you are found guilty of a serious rule violation, you may be placed in confinement and/or lose privileges, and/or be required to make restitution. In addition, juveniles may receive a delay in recommended parole.

_____                Committed Person Refused to Sign ☐
Committed Person's Signature and Number

__C. O. McAfrey__        __/signature/__        __1-31-02    5:40__ ☒am
PRINT Serving Employee's Name    Serving Employee's Signature    Date and Time Served

I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing

Offense Date: _____        _____
                                  Committed Person's Signature and Number

(DETACH AND RETURN TO THE ADJUSTMENT COMMITTEE OR PROGRAM UNIT PRIOR TO THE HEARING)

I would like the Adjustment Committee or Program Unit to consider calling the following witnesses regarding disciplinary report of __ __ __
                                                                                                              Date

NAME OF WITNESS. _____   Number/Cell/Title. _____

Witness can testify to. _____

NAME OF WITNESS. _____   Number/Cell/Title. _____

Witness can testify to _____

EXHIBIT No 136

DC 7205 (Rev. 4/98)   Distribution: 1) Master File; 2) Committed Person;   _____
IL 426-0361                         3) Facility; 4) Facility              Committed Person's Name and Number

A87