# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHNNY M. RUFFIN, JR., #K-80541, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WINNEBAGO COUNTY JAIL, | ) | |
| RICHARD MEYERS, GARY ARBISI, | ) | |
| DEBRA DECKER, ILLINOIS | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| GUY PIERCE, DONALD N. SNYDER, | ) | CIVIL NO. 03-210-DRH |
| KAREN MCKINNEY, CHRISTINE | ) | |
| MITCHELL, ALFREDO GARCIA, | ) | |
| RONALD WILLIAMS, SCOTT | ) | |
| WCYISKALLA, ROBERT A. | ) | |
| DAVENPORT, T. MURRY, ROGER | ) | |
| COWEN, JONATHAN WALLS, ALAN | ) | |
| FRENTZEL, ADRIAN FEINERMAN, | ) | |
| SUPERINTENDENT MAUE, ELISA REA, | ) | |
| MAVIS GROSS, PAM GRUBMAN, | ) | |
| GARY KNOP, UNKNOWN PARTY, and | ) | |
| STEPHEN DOUGHTY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, an inmate currently in the Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

In 1999, Plaintiff was shot several times in the back by sheriff's deputies in Kane County, Illinois. Due to the injuries sustained in this incident, Plaintiff was rendered quadriplegic and is

permanently confined to a wheelchair.  Virtually all of the claims asserted in this action involve the medical treatment, or lack thereof, provided to him to treat his condition.  In his original complaint, Plaintiff sets forth 13 separate claims, but the numbering is confusing:  after setting forth 42 enumerated paragraphs of general allegations, Plaintiff begins with "Count 12" on a new page "1," which is followed on page 17 by "Count 2."  A logical progression follows from here, so the Court can only assume that Count "12" is a typographical error, and that Plaintiff really intended to begin with "Count 1."  The complaint then jumps from Count 11 straight to Count 16.

However, Plaintiff later filed an amended complaint with respect to Counts 11, 12, 13, 14, 15 (Doc. 9).  In the original complaint, Count 11 skips from paragraph 166 to paragraph 201; the amended complaint corrects this omission.  In the amended complaint, Count 11 includes paragraphs 139-183; Count 12 is paragraph 184, Count 13 is paragraph 185; Count 14 includes paragraphs 186-195; Count 15 includes paragraphs 196-206.  Therefore, the Court and all parties will refer to the original complaint (Doc. 1) for Counts 1-10 and Count 16-17, and to the amended complaint (Doc. 9) for Counts 11-15.  The confusion over the numbering now resolved, the Court will summarize all 17 counts for clarity:

> **COUNT 1:** Against Defendants Winnebago County Jail, Meyers, and Arbisi for deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment (Doc. 1 – designated "Count 12" on page "1-17" ¶¶ 1-28).

> **COUNT 2:** Against Defendants Winnebago County Jail, Meyers, and Arbisi for violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Doc. 1, ¶¶ 29-30).

> **COUNT 3:** Against Defendants Winnebago County Jail, Decker, and Arbisi for deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment (Doc. 1, ¶¶ 31-40).

> **COUNT 4:** Against Defendants Decker, Arbisi, and Meyer for negligence (Doc. 1, ¶ 41).

**COUNT 5:** Against Defendants Garcia, Murry, Pierce, McKinney, Mitchell, Snyder, Wcyiskalla, and John Doe for deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment while he was at Pinckneyville Correctional Center (Doc. 1, ¶¶ 42-92).

**COUNT 6:** Against Defendants Garcia and Doe for medical malpractice under the laws of the state of Illinois (Doc. 1, ¶ 93).

**COUNT 7:** Against Defendants Pierce, Garcia, Mitchell, McKinney, Wcyiskalla, Snyder, Murry, and Doe for reckless negligence under the laws of the state of Illinois (Doc. 1, ¶ 94).

**COUNT 8:** Against Defendants Illinois Department of Corrections, Snyder, Mitchell, McKinney, Pierce, and Garcia for violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. (Doc. 1, ¶¶ 95-99).

**COUNT 9:** Against Defendants McKinney, Garcia, Williams, and Wcyiskalla, for retaliation and harassment (Doc. 1, ¶¶ 100-121).

**COUNT 10:** Against Defendants McKinney, Pierce, Williams, Snyder, and Davenport for "civil conspiracy" (Doc. 1, ¶¶ 122-138).

**COUNT 11:** Against Defendants Feinerman, Gross, Cowen, Walls, Grubman, Snyder, Frentzel, and Dougherty for deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment (Doc. 9, ¶¶ 139-183).

**COUNT 12:** Against Defendants Feinerman and Dougherty for medical malpractice under the laws of the state of Illinois (Doc 9, ¶ 184).

**COUNT 13:** Against Defendants Feinerman, Dougherty, Walls, Cowen, Frentzel, Grubman, Gross, and Snyder for reckless negligence under the laws of the state of Illinois (Doc 9, ¶ 185).

**COUNT 14:** Against Defendants Gross, Snyder, Walls, Feinerman, Grubman, Cowen, and Frentzel for civil conspiracy to deny Plaintiff's grievances (Doc 9, ¶ 186-195).

**COUNT 15:** Against Defendants Feinerman, Frentzel, Cowen, Grubman, Gross, and Snyder for racial discrimination, in violation of his rights under the Civil Rights Act of 1964 and the Fourteenth Amendment (Doc 9, ¶¶ 196-206).

**COUNT 16:** Against Defendants Snyder, Cowen, Walls, Feinerman, Grubman, Frentzel, Knop, and Rea for violations of the Rehabilitation Act of 1973, 29 U.S.C.

§ 794 et seq. (Doc. 1, ¶¶ 207-215).

**COUNT 17:**   Against Defendants Rea, West, Cowen, Walls for retaliation and harassment (Doc. 1, ¶¶ 216-227).

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.   An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   After evaluating Plaintiff's claims individually, the Court finds it appropriate to exercise its authority under Section 1915A to dismiss those claims that are frivolous before allowing Plaintiff to proceed with his remaining claims.  *See also House v. Belford*, 956 F.2d 711, 718-19 (7th Cir. 1992).

## GENERAL PRINCIPLES

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994).  This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106.  *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996),

- 4 -

*cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements.  The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'"  *Farmer*, 511 U.S. at ----, 114 S.Ct. at 1977.  As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  *Id.*  The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference."  *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters*, 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997).  However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate;  it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm....  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm.  The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

Neglect of a prisoner's health becomes a violation of the Eighth Amendment only

if the prison official named as defendant is deliberately indifferent to the prisoner's health--that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction).  However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur.  *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

## COUNTS 1-4

These claims were dismissed as time-barred by the Honorable Philip G. Reinhard of the Northern District of Illinois, and all Defendants associated with these claims were already dismissed from this action (*see* Doc. 3).  Therefore, the Court and the parties need not address these claims further.

## COUNT 5

### *Denial of Access to Physical Therapy* (¶¶ 42-53)

Plaintiff states that upon his arrival at Pinckneyville Correctional Center ("Pinckneyville") in April 2000, he was denied physical therapy by Defendant Garcia because Pinckneyville did not offer physical therapy. On August 8, 2000, Plaintiff was seen by a physical therapist and began to receive physical therapy twice weekly.  Plaintiff states that between April and August 8, 2000, he suffered from pain, muscle spasms, joint pains, "muscle skeletal" pains, and other complications relating to his paralysis, as a result of denial of physical and occupational therapy.  Plaintiff states

- 6 -

that he filed grievances requesting proper treatment but that Defendants Pierce, McKinney, Mitchell, Murry and Garcia did not attempt to provide him with the requested services.

Denial of physical therapy may implicate a serious medical need. *See Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981) (denial of physical therapy to paraplegic prisoner for eleven months sufficient to state a claim for purposes of surviving review pursuant to 28 U.S.C. § 1915); *cf. Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996) (allegations inmate was denied his wheelchair because it did not fit through the cell doors and denied physical therapy sessions, without scienter, not sufficient to raise a fair inference of deliberate indifference to his serious medical needs). Based on these allegations, and the standard stated above for medical claims, Plaintiff's claim that he was denied physical therapy in violation of the Eighth Amendment may not be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

### Denial of Transfer to a Facility Offering Physical Therapy (¶¶ 47-49)

Plaintiff states that he made numerous requests to Pinckneyville administrators for a transfer to Dixon Correction Center, a facility providing physical therapy and services for wheelchair-bound inmates. The requests were denied. Plaintiff also states that Defendants Snyder, Pierce, McKinney, Mitchell, and Garcia were all aware of Plaintiff's needs and desire to be transferred, but none took any action to do so.

"A prisoner has no due process right to be housed in any particular facility." *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995) (citing *Meacham v. Fano*, 427 U.S. 215, 223-225 (1976)). As such, Plaintiff fails to state a claim against these defendants; the claim is **DISMISSED with prejudice** from the action.

### Denial of Prescribed Medication (¶¶ 55-65)

Plaintiff states that prior to his transfer to Pinckneyville, he had been taking a medication called Baclofen for his muscle spasms and pain.  Plaintiff states that Dr. Garcia, who examined him on April 7, 2000, did not give him Baclofen until April 25, 2000, causing the Plaintiff to suffer muscle spasms and pain for 18 days.  On June 26, 2000, Plaintiff saw Dr. Garcia and requested that his Baclofen prescription be renewed.  Dr. Garcia refused to renew it, and as a result, Plaintiff suffered "more than a month long of continuous and excruciation pain and suffering caused by violent muscle spasms."   The pain and spasms interfered with his sleep, his ability to read, exacerbated his joint pain, caused hand contraction and frequent shaking and trembling, deterred him from doing his flexibility exercises, and impeded his ability to perform the activities of daily living. Plaintiff made numerous requests for Baclofen, but they were denied.  Plaintiff states that he was again given the medication on August 4, 2000.

Plaintiff also states that after a fall from his wheelchair, he injured his knee and was unable to get out of bed.  Defendant Wcyiskalla refused to help him to his wheelchair to get his medication. As a result of missing his medication for one day, and according to Pinckneyville policy, the medication was discontinued.  Plaintiff did not receive Baclofen between October 16, 2000, and November 10, 2000.  As a result, plaintiff suffered from pain and muscle spasms.

Based on the standards noted above, this claim cannot be dismissed at this point in the litigation.  *See* 28 U.S.C. § 1915A.

### *Delayed and Denied Access to Medical Prosthetics* (¶¶ 66-77)

Plaintiff states that on April 18, 2000, Defendant Garcia determined that a prosthetic device used to straighten Plaintiff's right hand and wrist was worn down and cracked.   Garcia recommended that Plaintiff see a prosthetic specialist to fix the old brace or order a new one.  Garcia

never followed up on this recommendation.  On September 12, 2000, physical therapist Dan Laver attempted to repair the worn and cracked brace with medical tape and "unstable sticks."   On September 28, 2000, the device collapsed completely.  As a result, Plaintiff states that between April 18 and September 28, 2000, he suffered unnecessary pain and discomfort.  Based on these allegations and the standards articulated above, the Court is unable to dismiss this claim at this point in the litigation.  *See* 28 U.S.C. § 1915A.

Plaintiff also states that on August 23, 2000, he informed Dr. Garcia that his wheelchair was broken and that he was "subject to a serious risk of present and future harm" as a result.  Plaintiff also requested that he be given a wheelchair with a retractable armrest so that he could get in and out of the chair without the risk of falling.  Dr. Garcia suggested that Plaintiff's wheelchair be fixed, but denied Plaintiff's request for a replacement wheelchair in the interim.  In September, Defendant John Doe, the wheelchair repairman, examined Plaintiff's wheelchair to determine how best to repair it.  Plaintiff states that John Doe made note of the danger of his "faulty wheelchair" but did not assist Plaintiff in getting another wheelchair until his was fixed.  To the extent that Plaintiff is attempting to assert claims of deliberate indifference against Dr. Garcia and John Doe for not providing him with a different wheelchair between the time the defects in the old one were discovered and the time they were repaired, the claim fails.  This claim does not even reach the level of medical negligence, let alone deliberate indifference.  *See Crowder*, 74 F.3d at 815.   Accordingly, the claim is **DISMISSED with prejudice**.

Then, on October 15, 2000, Plaintiff fell from his wheelchair leading to an injured right knee and hip.  Physical Therapist Dan Laver, during the course of Plaintiff's routine physical therapy sessions, found that Plaintiff had a reduced range of motion in the right knee after the fall.  Mr.

Laver recommended that Plaintiff receive a wheelchair with retractable or removable arms and an elevating right leg rest.  Dr. Garcia denied the request.  Based on these facts, Plaintiff has not stated a claim of deliberate indifference. Accordingly, this claim is **DISMISSED with prejudice** from the action.

### Denial of Access to a Neurosurgeon Specialist (¶¶ 78-92)

Plaintiff states that after he had some difficulty breathing and swallowing, Dr. Garcia examined him and determined that some bullet fragments were lodged in Plaintiff's neck.  Plaintiff requested surgery by a neurosurgeon to remove the fragments.  On September 26, 2000, Plaintiff reported to the prison's "surgery clinic," to have the bullets removed, but when he found out that Dr. Garcia, not a neurosurgeon, would be doing the procedure, Plaintiff refused the surgery.

Plaintiff states that he wanted a neurosurgeon, not Dr. Garcia, to perform the surgery, and that he feared Dr. Garcia was unqualified to perform the surgery.  Mere disagreement with a physician's chosen course of an inmate's medical treatment does not amount to deliberate indifference under the Eighth Amendment.  *See Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

> Plaintiff's . . . contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("matter[s] of medical judgment" do not give rise to § 1983 claim); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), *cert. denied*, 450 U.S. 104a (1981); *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir.1976) (same).

*Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).  Accordingly, this claim is **DISMISSED with prejudice** from the action.

### COUNT 6

Plaintiff states a claim of "medical malpractice" against Garcia and "John Doe."   U n d e r

- 10 -

Illinois law, a Plaintiff "in any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must, within 90 days of the filing of the complaint, file an affidavit that indicates that as to each defendant, Plaintiff has consulted with a qualified health professional who has reviewed his claim and provided a written report that the claim is reasonable and meritorious.  If the statute of limitations would impair obtaining such an affidavit, a plaintiff must file an affidavit, again within 90 days of the filing of the complaint, so detailing and verifying that the Plaintiff has not voluntarily dismissed the same cause of action before.  *See* 735 Ill. Comp. Stat. §5/2-622(a) (West 2002). Failure to file the required affidavit is grounds for dismissal of the claim.  *See* 735 Ill. Comp. Stat. § 5/2-622(g); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  Plaintiff has failed to file the necessary affidavit.  Therefore, the claim is **DISMISSED with prejudice** from the action.

## COUNT 7

Plaintiff brings this claim for "reckless negligence" based on the denial of proper medical care by Defendants Pierce, Garcia, Mitchell, McKinney, Wcyiskalla, Snyder, Murry and John Doe. Under Illinois law, in a negligence action, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach.  *See Velarde v. Illinois Cent. R.R. Co.*, 820 N.E.2d 37, 51 (Ill. App. Ct. 2004). Based on this standard, the Court is unable to dismiss the claim at this point in the litigation.  *See* 28 U.S.C. § 1915A.  However, based on the same standard, John Doe should be dismissed from the action.  Plaintiff has not asserted how Defendant Doe owed him a duty of care.  Accordingly, John Doe is **DISMISSED** as a defendant from the action.

## COUNT 8

- 11 -

Plaintiff also invokes the protection of the Rehabilitation Act, 29 U.S.C. § 794, and states that Defendants Illinois Department of Corrections, Snyder, Mitchell, McKinney, Pierce, and Garcia discriminated against him in violation of the Rehabilitation Act.

The Seventh Circuit has found that the Rehabilitation Act applies to prisons, following the Supreme Court's reasoning in *Pennsylvania Department of Corrections v. Yeskey,* 524 U.S. 206 (1998) (the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., applies to prisons). *Stanley v. Litscher*, 213 F.3d 340, 343 (7th Cir. 2000). Contrary to ADA claims, which must be pursued in state court, an individual plaintiff may pursue claims in federal court under the Rehabilitation Act.

> As for the Rehabilitation Act, 29 U.S.C. § 794: we agree with *Kilcullen v. New York State Department of Labor,* 205 F.3d 77, 79-80 (2d Cir. 2000), and *Garrett v. University of Alabama,* 193 F.3d 1214, 1218 (11th Cir. 1999), *cert. granted on a different issue*, --- U.S. ----, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000), that the ADA and the Rehabilitation Act are identical for purposes of § 5. But the Rehabilitation Act also is a condition on the receipt of federal funds, and legislation under the spending power is not affected by *Kimel [v. Florida Board of Regents,* 528 U.S. 62 (2000)]. *See Oak Park Board of Education v. Kelly E.*, 207 F.3d 931, 935 (7th Cir.2000). The Rehabilitation Act is no different in this respect from the IDEA, which *Oak Park* held adequate to support litigation against states in federal court. *Accord, Little Rock School District v. Mauney*, 183 F.3d 816, 831-32 (8th Cir. 1999). We therefore agree with the fourth, ninth, and eleventh circuits that the Rehabilitation Act is enforceable in federal court against recipients of federal largess. *Litman v. George Mason University*, 186 F.3d 544, 553 (4th Cir. 1999); *Clark v. California*, 123 F.3d 1267, 1271 (7th Cir. 1997); *Sandoval v. Hagan*, 197 F.3d 484, 493-94 (11th Cir. 1999).

*Stanley*, 213 F.3d at 344. Therefore, the only remaining threshold question is whether plaintiff is an "individual with a disability" as defined in 29 U.S.C. § 705(20).

> Except as otherwise provided in subparagraph (B), the term "individual with a disability" means any individual who–
> (I) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and
> (ii) can benefit in terms of an employment outcome from vocational rehabilitation

- 12 -

services provided pursuant to subchapter I, III, or VI of this chapter [29 U.S.C.A. §§ 720 et seq., 771 et seq., or 795 et seq.].

29 U.S.C. § 705(20).

From the allegations in the complaint, it appears that plaintiff may suffer from such a disability. Therefore, the Court is unable to dismiss Count 8 at this point in the litigation. *See* 28 U.S.C. § 1915A.

## COUNT 9

Plaintiff states that Defendants McKinney, Garcia, Pierce, and Wcyiskalla harassed and retaliated against him for writing grievances regarding his medical care at Pinckneyville. Plaintiff presents an exhaustive list of instances in which he was retaliated against. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Based on these standards, the Court is unable to dismiss Count 9 at this point in the litigation. *See* 28 U.S.C. § 1915A.

## COUNT 10

Plaintiff states that he was subjected to a "calculated plot" by Defendants McKinney, Pierce, Williams, Davenport, and Snyder to violate his Constitutional right of access to the courts by confiscating his legal papers in an effort to "cover up" their "systematic practice of denial of Plaintiff's serious medical needs." Plaintiff also states that Defendants intentionally delayed responding to his grievances, or refused to respond to them entirely, with the intention of keeping

Plaintiff from exhausting his administrative remedies so that he could not file a law suit.  Plaintiff cites a number of Illinois Department of Corrections regulations regarding grievance procedures in the prison.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995).  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).

Furthermore, under the language of 42 U.S.C. § 1997e, Plaintiff is only required to exhaust those remedies "available" to him.  Remedies that prison officials prevent a prisoner from using are not "available" under Section 1997e.  *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts.  *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992).  First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Jenkins,* 977 F.2d at 268 (*quoting Bounds v. Smith*, 430 U.S. 817, 828 (1977)).  Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation."  *Alston v. DeBruyn,* 13 F.3d 1036, 1041 (7th Cir. 1994); *Jenkins*, 977 F.2d at 268; *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir. 1992); *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 n.2 (7th Cir. 1987).  That means that a detriment must exist, a detriment resulting from illegal

conduct that affects litigation.  It does not mean that any delay is a detriment.  *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 113 S.Ct. 1002 (1993).  Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation.  *Kincaid,* 969 F.2d at 603.  Plaintiff does not do so here.  He does not show that he missed any court deadlines or that the outcome of any case was affected because of Defendants actions.  In fact, Plaintiff's ability to file a lengthy and thorough complaint in this case belies his assertion that he has been denied access to the courts.  As such, this claim is **DISMISSED with prejudice** from the action.

## COUNT 11

### *Denial Access to Physical Therapy* (¶¶ 139-159A)

Upon Plaintiff's arrival at Menard Correctional Center ("Menard") in February 2001, Feinerman told him that the physical therapy treatment he had received at Pinckneyville was not available at Menard.  Feinerman further stated that it was Plaintiff's own actions that resulted in his transfer to Menard, and that he "must suffer the consequences."  Although Feinerman conceded that physical therapy would be beneficial, he told Plaintiff he would have to do his own therapy while at Menard.  Plaintiff states that Defendants Feinerman, Walls, Cowen, Frentzel, and Snyder each personally participated in denying Plaintiff physical therapy.  Plaintiff filed grievances about the lack of physical therapy, but Defendants Gross, Cowen, Walls, Grubman or Snyder took action to correct the situation.

Denial of physical therapy may implicate a serious medical need.  *See Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981) (denial of physical therapy to paraplegic prisoner for eleven months sufficient to state a claim for purposes of surviving review pursuant to 28 U.S.C. § 1915); *cf. Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996) (allegations inmate was denied his wheelchair

because it did not fit through the cell doors and denied physical therapy sessions, without scienter, not sufficient to raise a fair inference of deliberate indifference to his serious medical needs). Based on these allegations, and the standard stated above for medical claims, Plaintiff's claim that he was denied physical therapy in violation of the Eighth Amendment may not be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

***Denial of Access to Neurosurgeon Specialist*** (¶¶ 160-174)

Plaintiff states that in February 2001 he complained to Dr. Feinerman about his difficulty breathing and swallowing because of the bullet fragments lodged in his neck. Dr. Feinerman determined that it was not necessary for the fragments to be removed, even after Plaintiff had great difficulty swallowing a "thick powder like" laxative. Plaintiff made many requests for referral to a neurosurgeon to evaluate the bullet fragments and the need for their removal. Defendants Cowen, Walls, Grubman, Dougherty, Feinerman, and Snyder all refused to provide him with his requested relief. An allegation that a plaintiff was denied treatment by a medical specialist does not in and of itself establish a constitutional violation. *See Ledoux*, 961 F.2d at 1537. Based on that standard, Plaintiff's claim that he was denied access to a specialist does not state a claim under the Eighth Amendment. Accordingly, the claim is **DISMISSED with prejudice**.

***Denied Access to Therapeutic Egg-Crate Mattress*** (¶¶ 175-182)

Plaintiff states that he was denied an egg-crate therapeutic mattress by Dr. Feinerman because it was a fire hazard in the Menard segregation unit, even though he had been allowed to have one in the Pinckneyville segregation unit. Plaintiff states that without the mattress he suffered excruciating pains, blood-clotting, massive edema, excessive poor circulation to his lower extremities and bed sores. Based on the above-noted standards, the Court is unable to dismiss this

claim at this point in the litigation.  *See* 28 U.S.C. § 1915A.

## COUNT 12

Plaintiff asserts a claim of "medical malpractice" against Defendants Feinerman and Dougherty.  As noted above regarding Count 6, Plaintiff has not filed an affidavit required by Illinois statute to bring a medical malpractice claim in Illinois.  Based on that requirement, the claim is **DISMISSED with prejudice** from the action.

## COUNT 13

Plaintiff states a claim for "reckless negligence" against Defendants Feinerman, Dougherty, Walls, Cowen, Frentzel, Grubman, Gross, and Snyder, based on the facts alleged in Count 11.  As stated above, under Illinois law, in a negligence action, the plaintiff must establish that the defendant owed a duty of care, that the defendant breached that duty, and that the plaintiff incurred injuries proximately caused by the breach.  *See Velarde v. Illinois Cent. R.R. Co.*, 820 N.E.2d 37, 51 (Ill. App. Ct. 2004).  Based on this standard, the Court is unable to dismiss the claim at this point in the litigation.  *See* 28 U.S.C. § 1915A.

## COUNT 14

Plaintiff states that Defendants Gross, Snyder, Walls, Feinerman, Grubman, Cowen, and Frentzel conspired to interfere with Plaintiff's ability to exhaust his administrative remedies before filing a civil rights lawsuit and thereby violating his constitutional right of access to courts.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995).  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992);

- 17 -

*Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982).

Furthermore, under the language of 42 U.S.C. § 1997e, Plaintiff is only required to exhaust those remedies "available" to him. Remedies that prison officials prevent a prisoner from using are not "available" under Section 1997e. *See Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001).

Based on the standards articulated in Count 10, Plaintiff's claim of denial of his right of access to the courts fails. Plaintiff does not show actual substantial prejudice to specific litigation. He does not show that he missed any court deadlines or that the outcome of any case was affected because of Defendants actions. Plaintiff's ability to file this lawsuit was not impeded. As such, this claim is **DISMISSED** from the action with prejudice.

## COUNT 15

Plaintiff states that Defendants Feinerman, Frentzel, Cowen, Grubman, Gross, and Snyder discriminated against him because of his race in violation of the Civil Rights Act and the Equal Protection Clause of the Fourteenth Amendment. Plaintiff states that he witnessed a white inmate's egg crate mattress being moved when the white inmate was assigned a different cell, but Plaintiff, a black inmate, was denied one. Plaintiff also states that he witnessed a white inmate receiving what appeared to be physical therapy in the health unit at Menard but that he, a black inmate, was denied any physical therapy.

Racial discrimination by state actors violates the Equal Protection Clause of the Fourteenth amendment unless it is narrowly tailored to serve a compelling state interest. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To state an equal protection claim, a plaintiff must establish that a state actor has purposely treated him differently than persons of a different race. *Id.* Plaintiff has failed to state a claim based on these standards. Plaintiff has stated that he witnessed white inmates

receiving treatment that he was denied.  However, Plaintiff has not alleged that Defendants purposefully treated him differently *because of his race*.  Without an allegation of purposeful discrimination, Plaintiff has not stated a claim of racial discrimination.  Accordingly, the claim is **DISMISSED with prejudice** from the action.

## COUNT 16

Plaintiff also invokes the protection of the Rehabilitation Act, 29 U.S.C. § 794, and states that Defendants Snyder, Cowen, Walls, Feinerman, Grubman, Frentzel, Knop, and Rea discriminated against him in violation of the Rehabilitation Act.  Based on the legal standards described in Count 8 and the allegations set forth in this Count, the Court is unable to dismiss this Rehabilitation Act claim at this point in the litigation.  *See* 28 U.S.C. § 1915A.

## COUNT 17

Plaintiff states that Defendants Rea, West, Cowen, and Walls harassed and retaliated against him for filing grievances by refusing to give him needed legal supplies and by writing false disciplinary reports against him.

As stated above, Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Based on these standards, the Court is unable to dismiss Count 17 at this point in the litigation.  *See* 28 U.S.C. § 1915A.

- 19 -

<u>**S**UMMARY AND **C**ONCLUSION</u>

**IT IS HEREBY ORDERED** that COUNTS 1, 2, 3, 4, 6, 10, 12, 14, and 15 are **DISMISSED** from this action with prejudice.  As to Count 5, Plaintiff is allowed to proceed on his claims regarding denial of physical therapy, denial of medication, and denial of a hand brace, but his claims regarding prison transfer, denial of a replacement wheelchair, denial of a wheelchair with additional features, and treatment by a neurosurgeon are **DISMISSED** from the action with prejudice.  As to Count 11, Plaintiff is allowed to proceed on his claims of denial of physical therapy and an egg-crate mattress, but his claim regarding denial of treatment by a neurosurgeon is **DISMISSED** from the action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **WINNEBAGO COUNTY JAIL, RICHARD MEYERS, GARY ARBISI, DEBRA DECKER**, **JOHN DOE, RONALD WILLIAMS, ROBERT A. DAVENPORT, and SUPERINTENDENT MAUE** are **DISMISSED** from this action with prejudice.

Plaintiff names "unknown party" as a defendant in the caption of his complaint, but makes no specific allegations against this defendant.  "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). *See also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene).  Accordingly, **IT IS FURTHER ORDERED** that Defendant "unknown party" is **DISMISSED** from the action.

**IT IS FURTHER ORDERED** that Plaintiff shall complete and submit a USM-285 form for defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, GUY PIERCE, DONALD**

**N. SNYDER, KAREN McKINNEY, CHRISTINE MITCHELL, ALFREDO GARCIA, SCOTT WCYISKALLA, T. MURRY, ROGER COWEN, JONATHAN WALLS, ALAN FRENTZEL, ADRIAN FEINERMAN, ELISA REA, MAVIS GROSS, PAM GRUBMAN, GARY KNOP, and STEPHEN DOUGHERTY** within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order. The Clerk is **DIRECTED** to send Plaintiff **17** USM-285 forms with Plaintiff's copy of this Memorandum and Order. **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, GUY PIERCE, DONALD N. SNYDER, KAREN McKINNEY, CHRISTINE MITCHELL, ALFREDO GARCIA, SCOTT WCYISKALLA, T. MURRY, ROGER COWEN, JONATHAN WALLS, ALAN FRENTZEL, ADRIAN FEINERMAN, ELISA REA, MAVIS GROSS, PAM GRUBMAN, GARY KNOP, and STEPHEN DOUGHERTY**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on defendants **ILLINOIS DEPARTMENT OF CORRECTIONS, GUY PIERCE, DONALD N. SNYDER, KAREN McKINNEY, CHRISTINE MITCHELL, ALFREDO GARCIA, SCOTT WCYISKALLA, T. MURRY, ROGER COWEN, JONATHAN WALLS, ALAN FRENTZEL, ADRIAN FEINERMAN, ELISA REA, MAVIS GROSS, PAM GRUBMAN, GARY KNOP, and STEPHEN DOUGHERTY** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist

of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).  With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal.  Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of

the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Upon the consent of all parties herein, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), this matter will be, and it is hereby, **REFERRED** to a United States Magistrate Judge for disposition.

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED:** August 1, 2005.


/s/   David RHerndon
**DISTRICT JUDGE**

- 23 -