## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JOHNNY M. RUFFIN, JR.,**

     **Plaintiff,**

**v.**

**WINNEBAGO COUNTY JAIL, et al.,**

     **Defendants.**                              **Case No. 03-cv-210-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION

Plaintiff Johnny Ruffin is an inmate currently housed with the Illinois Department of Corrections ("IDOC") at a correctional facility in Pinckneyville, Illinois. Plaintiff brings this suit, *pro se*, against Defendants, claiming deprivations of his constitutional rights pursuant to **42 U.S.C. § 1983**. Plaintiff sustained injuries during an incident in 1999, when he was shot multiple times by sheriff's deputies in Kane County, Illinois (*see* Doc. 21, p. 1). Due to these injuries, Plaintiff is now a paraplegic, confined to a wheelchair general mobility purposes. Plaintiff is currently serving a sixty-nine year sentence for second degree murder and two counts of aggravated battery with a firearm.

This matter comes before the Court on a Report and Recommendation

("R&R") (Doc. 172), issued by Magistrate Judge Proud, pursuant to **28 U.S.C. § 636(b)(1)(B)**. The R&R recommends granting in part and denying in part a Motion for Summary Judgment (Doc. 136), filed by Defendants Garcia, Feinerman and Doughty. Plaintiff brought claims against these Defendants, all of whom are physicians (*see* Plaintiff's Complaint, Docs. 1 & 9; *see also*, Doc. 21). Against Dr. Garcia, Plaintiff alleges claims of deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights (Count 5) (Doc. 1, ¶¶ 42-92), as well as an Illinois common law claim of reckless negligence (Count 7) (Doc. 1, ¶ 94), a claim for violation of the Rehabilitation Act of 1973 (Count 8)[1] (Doc. 1, ¶ 95-99) and claims of retaliation and harassment (Count 9) (Doc. 1, ¶ 100-12). Against Drs. Feinerman and Doughty, Plaintiff alleges claims for deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights (Count 11)[2] (Doc. 9, ¶¶ 139-183) as well as Illinois common law claims of reckless negligence (Count 13) (Doc. 9, ¶ 185), and a separate claim against Dr. Feinerman for violation of the Rehabilitation Act of 1973 (Count 16) (Doc. 9, ¶ 207).

In their Motion for Summary Judgment (Doc. 136), Drs. Garcia, Feinerman and Doughty (the "Medical Defendants") only argued for summary

---

[1] Due to an oversight, this was not included in the list of claims in the R&R (Doc. 172, p. 2), but this claim against Dr. Garcia did survive threshold review (Doc. 21, p. 12-13).

[2] The threshold Order mistakenly omitted Dr. Doughty's name as a named defendant in Plaintiff's surviving Eight Amendment claims (Doc. 21, pp. 15-16) as alleged in Count 11 (Doc. 9, ¶¶ 139-183). However, the allegations clearly list Dr. Doughty as one of the alleged wrongdoers regarding denial of the use of an eggcrate mattress only – he is not mentioned as a wrongdoer regarding Plaintiff's claim for denial of physical therapy while incarcerated at Menard (Doc. 9, ¶¶ 139-159A), even though Defendants' summary judgment arguments imply that he was.

judgment regarding Plaintiff's claims of their alleged deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights.[3]

Particularly, Plaintiff alleged that while housed at Pinckneyville, Dr. Garcia was deliberately indifferent to Plaintiff's serious medical needs by: (1) failing to ensure Plaintiff received physical therapy by sending him off-site for treatment during the four-month period when Pinckneyville did not employ an on-site physical therapist; and (2) failing to prescribe Baclofen to Plaintiff for the time periods of April 7, 2000 through April 25, 2000, June 26, 2000 through August 3, 2000, and October 16, 2000 through November 10, 2000; and (3) failing to ensure that Plaintiff had received a new hand brace. While housed at Menard, Plaintiff alleges that Drs. Feinerman and Doughty were deliberately indifferent to Plaintiff's serious medical needs by: (1) failing to provide Plaintiff with physical therapy by referring him to see an off-site therapist or recommending he be transferred to a different IDOC facility with an on-site physical therapist; and (2) failing to allow Plaintiff to use an eggcrate mattress.

Specifically, Judge Proud recommended:

1. Defendant Garcia should be granted partial summary judgment relative to the Eighth Amendment claim in Count 5 that Plaintiff was denied Baclofen from April 6, 2000 to April 25, 2000;

2. Defendant Garcia should be granted partial summary judgment relative to the Eighth Amendment claim in Count 5 and the First Amendment claim in Count 9 related to any failure to ensure

---

[3] More appropriately, the Medical Defendants should have moved for a partial summary judgment, as they failed to make legal arguments regarding Plaintiff's claims of retaliation, harassment and for violations of the Rehabilitation Act of 1973. Therefore, these claims remain.

Plaintiff promptly received a prothesis;

3.    Defendant Feinerman be granted partial summary judgment relative to the Eighth Amendment claim in Count 11 regarding failure to provide Plaintiff with an eggcrate mattress;

4.    Defendant Doughty be granted summary judgment as to the Eighth Amendment claims in Count 11, regarding failure to provide an eggcrate mattress and failure to provide physical therapy; and

5.    A *sua sponte* dismissal of Count 7 against defendant Garcia and Count 13 against defendants Feinerman and Doughty, without prejudice, with leave to comply with **735 ILL. COMP. STAT. 5/2-622** within 30 days.

(Doc. 172, pp. 18-19).

The R&R was sent to the parties, with a notice informing them of their right to appeal by way of filing "objections" within ten days of service of the R&R.  In accordance with the notice, both Plaintiff and defendants Garcia and Feinerman have filed timely objections to the R&R (Docs. 176 & 177, respectively).  Because timely objections have been filed, this Court must undertake *de novo* review of the objected-to portions of the R&R.  **28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992)**.  The Court may "accept, reject, or modify the recommended decision."  **Willis v. Caterpillar Inc., 199 F.3d 902, 904 (7th Cir. 1999)**.  In making this determination, the Court must look at all the evidence contained in the record and give fresh consideration to those issues for which specific objection has been made.  **Id**.  However, the Court need not conduct a *de novo* review of the

findings of the R&R for which no objections have been made.  ***Thomas v. Arn*, 474 U.S. 140, 149-52 (1985)**.  Instead, the Court can simply adopt these findings.

## II.  <u>FACTUAL BACKGROUND</u>

The parties have only objected to certain portions of the R&R and therefore, the Order will recount only those uncontested facts germane to the parties' objections.

After suffering multiple gunshot wounds in 1999, Plaintiff was treated for several months at various hospitals, including Sherman Hospital, Northwestern Hospital and Rockford Swedish American Hospital (Doc. 137 - Defendants' Statement of Uncontested Facts, ¶ 5; *see also* Doc. 159 - Plaintiff's Statement of Uncontested Facts, ¶ 5).  Later that year, after his initial treatment, Plaintiff was subsequently transferred to the Winnebago County Jail (*Id*. at ¶ 6).  From Winnebago, Plaintiff went to the Dixon correctional facility on March 17, 2000, and then to the Pinckneyville correctional facility in April 2000, where he remained until transferred to the Menard correctional facility in February 2001 (*Id*. at ¶¶ 7-8, 60).

When transferred from Dixon to Pinckneyville, Plaintiff's Health Care Status Transfer Form shows that he had been receiving weekly routine physical therapy, as well as prescriptions for Tylenol, Flexeril and Colace (*Id*. at ¶ 11; *see also* Doc. 138 - Ex. K, p. 11).  Dr. Garcia was the treating physician at the time of Plaintiff's tenure at Pinckneyville (Doc. 137, ¶ 9; Doc. 159, ¶ 9).  From the time of

Plaintiff's arrival at Pinckneyville until approximately four months afterward, in August 2000, the facility did not employ an on-site physical therapist (*Id*. at ¶ 22). In order for Plaintiff to receive physical therapy during that time, Dr. Garcia would have had to refer him to an off-site physical therapist, if deemed medically necessary (*see* Doc. 158-2, Ex. A - Medical Vendor Contract, p. 5; Doc. 138, p. 8). Plaintiff did not receive physical therapy treatment while incarcerated at Pinckneyville until August 2000, when Pinckneyville had hired an on-site physical therapist. After being evaluated, it was determined Plaintiff should receive physical therapy twice a week (Doc. 137, ¶ 41; Doc. 138 - Ex. D, p. 7).

During his initial examination of Plaintiff on April 7, 2000, Dr. Garcia did continue Plaintiff's prescriptions, issued while at Dixon, for Tylenol and Colace, but it does not appear he continued the prescription for Flexeril, which is a muscle relaxant (Doc. 137, ¶¶ 12-13; Doc. 159, ¶¶ 12-13). During his next examination of Plaintiff on April 18, 2000, Dr. Garcia signed a permission slip permitting Plaintiff to use an eggcrate mattress (*Id*. at ¶ 32). In an examination on April 25, 2000, prompted due to Plaintiff's complaints to the duty nurse of muscle spasms, Dr. Garcia gave Plaintiff a ten-day prescription for Baclofen (*Id*. at ¶ 14). During a May 26, 2000 examination, Dr. Garcia once again renewed Plaintiff's Baclofen prescription for 30 days (Doc. 137, ¶ 15; *see* also Doc. 138 - Ex. C - Garcia Affidavit, ¶ 7 and Ex. D, p. 5). After the 30-day prescription of Baclofen ran out, Dr. Garcia did not prescribe Baclofen for Plaintiff again until August 3, 2000, renewing it for a one-month period and then again on September 3, 2000, renewing the prescription

through December 31, 2000 (Doc. 137, ¶¶ 17-18; Doc. 138 - Ex. C, ¶¶ 10 & 14; Ex. D, p. 8). This prescription was discontinued by Dr. Garcia on October 16, 2000, for reasons contested by Plaintiff, yet it was again renewed on November 10, 2000 through the end of February, 2001 (Doc. 137, ¶ 19; Doc. 138 - Ex. C, ¶ 19; Ex. D, p. 9).

On February 6, 2001, Plaintiff was transferred from the Pinckneyville to the Menard correctional facility (Doc. 137, ¶ 60; Doc. 159, ¶ 60). Just prior to the transfer, at an IDOC disciplinary hearing, Plaintiff was found guilty of an infraction for fashioning a shank out of part of his leg brace and was placed into segregation (Doc. 137, ¶¶ 57-58; Doc. 138, Ex. B - Plaintiff's Depo., 40:15-43:12). Plaintiff was then transferred to Menard, which is a maximum-security prison, where he was housed in the Segregation unit for his entire stay from February 6, 2001 through December 6, 2002 (*Id.*).

Similar to Pinckneyville, Menard also had no physical therapist on its staff (*Id.* at ¶ 67). Due to its heightened security status, inmates housed at Menard were only sent off-site for physical therapy if there was an acute need (Doc. 159-2, p. 15). Upon his arrival at Menard, Plaintiff's initial examination was given by Dr. McEntyre, who allowed him use of an eggcrate mattress, but determined Plaintiff's needs for physical therapy did not go beyond performing self-exercises he had already been taught (*Id.* at 14; Doc. 159-5, p. 18). However, Plaintiff was not allowed to use the eggcrate mattress after his first night because Menard policy prohibited its use, deeming it a potential fire hazard (Doc. 137, ¶ 69; Doc. 159-2, p. 4).

Afterwards, Plaintiff was treated by Drs. Feinerman and Doughty, while incarcerated at Menard until December 2002 (Doc. 137, ¶ 3).

### III.  DISCUSSION

**A.  Legal Standard**

**1.  Summary Judgment**

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)**.  The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. ***Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. ***Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000);** ***Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999)**.  In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations as stated in the pleadings.  Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd*, **51 F.3d 276 (citing *Celotex*, 477 U.S. at 324)**.

No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  ***Anderson v. Liberty Lobby, Inc.***, **477 U.S. 242, 249-50 (1986) (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**.  "[P]laintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment."  ***Weeks v. Samsung Heavy Industries Co., Ltd.***, **126 F.3d 926, 939 (7th Cir. 1997)**.  In other words, summary judgment may not be averted merely by the non-moving party "baldly contesting his adversary's factual allegations," but instead, the Plaintiff must come forth with probative evidence to substantiate the allegations of the complaint.  ***Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))**.

**2.      Deliberate Indifference to a Serious Medical Need**

In ***Estelle v. Gamble,* 429 U.S. 97 (1976)**, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals.  ***See id.* at 103; *see also Walker v. Benjamin*, 293 F.3d**

1030, 1036-37 **(7th Cir. 2002)**.  To create a violation by failing to provide medical care, there must be "deliberate indifference" to a substantial risk of harm.  ***Sherrod v. Lingle,* 223 F.3d 605, 610 (7th Cir. 2000) (citing *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970)**.  This standard erects two high hurdles which every inmate-plaintiff must clear.  ***Dunigan v. Winnebago County,* 165 F.3d 587, 590 (7th Cir. 1999)**. The plaintiff must show: 1) the medical condition was objectively serious; and 2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.  ***Sherrod,* 223 F.3d at 610**.

A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." ***Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)**.  To show deliberate indifference, a plaintiff must establish that the jail official "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health.  ***Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) (citing *Wynn v. Southward,* 251 F.3d 588 (7th Cir. 2001))**.  The Seventh Circuit has said that deliberate indifference requires a showing of more than mere negligence (or even gross negligence) but less than purposeful infliction of harm.  ***Woodward v. Correctional Medical Services of Illinois, Inc.,* 368 F.3d 917, 926 -927 (7th Cir. 2004*) (citing *Matos ex rel. Matos v. O'Sullivan,* 335 F.3d 553, 557 (7th Cir. 2003); *Perkins,* 312 F.3d at 875**.  Furthermore, an inmate is not entitled to demand specific care, nor is he entitled to the best care available. ***Forbes v. Edgar,***

**112 F.3d 262, 267 (7th Cir. 1997)**.

In other words, "the Eighth Amendment is not a vehicle for bringing claims for medical malpractice." **Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996) (citing Estelle, 429 U.S. at 105; Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996))**. Nor is it a vehicle to determine "whether one course of treatment is preferable to another . . . [as] [s]uch matters are questions of tort, not constitutional law." **Id. at 591**. As the United States Supreme Court declared, "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." **Farmer v. Brennan, 511 U.S. 825, 838 (1994)**.

**B.    Analysis**

To reiterate, the Court will only address the particular objections to the R&R raised by the parties, which is not inclusive of all the issues addressed by the R&R. First, Dr. Garcia objects to the R&R's finding that questions of material fact remain regarding whether he acted with deliberate indifference when he did not renew Plaintiff's prescription for Baclofen from June 26, 2000 through August 3, 2000 and again from October 16, 2000 through November 10, 2000 (Doc. 177, pp. 3-7). Further, he objects to the R&R's finding that questions of material fact remain regarding whether he acted with deliberate indifference towards Plaintiff for not allowing Plaintiff to receive off-site physical therapy from April through August 2000 and again from January 29, 2001 through February 6, 2001 (*Id*. at 7-10). Dr.

Feinerman objects to the R&R's finding that questions of material fact remain regarding whether he acted with deliberate indifference towards Plaintiff for not authorizing off-site physical therapy while Plaintiff was housed at Menard (*Id*. at 10-12). Likewise, Plaintiff made two objections to the R&R. First, Plaintiff objects to the R&R's grant of partial summary judgment, finding that Drs. Feinerman and Doughty were not deliberately indifferent towards Plaintiff for failing to provide him with an eggcrate mattress while he was housed at Menard (Doc. 176, p. 1-3). Plaintiff's second objection to the R&R is for its grant of partial summary judgment on the finding that Dr. Doughty was not deliberately indifferent towards Plaintiff for his failure to also authorize off-site physical therapy while Plaintiff was housed at Menard (*Id*. at 3). These objections will be addressed herein in like order.[4]

### 1. Defendants' Objections

#### a. Baclofen

##### i. June 26, 2000 - August 3, 2000

In the memorandum in support of their Motion for Summary Judgment, Dr. Garcia explained that he did not prescribe Baclofen because Plaintiff did not complain of muscle spasms during his examination on June 26, 2000. The R&R found this explanation unavailing and summary judgment unwarranted, given Plaintiff's allegations that he *did* complain of muscle spasms and that Dr. Garcia's

---

[4] The Court additionally notes that none of the parties object to the finding that Plaintiff has an "objectively serious medical need" for the purposes of an Eighth Amendment deliberate indifference analysis. The only issues center around whether the Medical Defendants were subjectively aware of Plaintiff's needs but acted towards him with deliberate indifference, nonetheless.

refusal to write the prescription was in retaliation for Plaintiff's prior grievances filed against him (Doc. 172, p. 11).  Dr. Garcia objects to this finding.

Dr. Garcia contends that Plaintiff has provided no medical evidence to show he complained of muscle spasms during his examination on June 26, 2000 or that he made it known to medical staff that he developed muscle spasms until he again was prescribed Baclofen on August 3, 2000 (Doc. 177, p. 4).  Further, Dr. Garcia states that the only grievance Plaintiff filed before his examination was dated June 24, 2000 and there is no evidence establishing Dr. Garcia's knowledge of this grievance prior to the June 26, 2000 examination (*Id.* at 5).  Instead, Dr. Garcia contends the record shows Plaintiff's June 24, 2000 grievance was not even received by the counselor and grievance officer until June 26, 2000, the same day as Plaintiff's examination.

Regardless of these points raised by Dr. Garcia, what remains in evidence is Plaintiff's sworn affidavit, stating that during his June 26, 2000 examination, he told Dr. Garcia he was having muscle spasms and asked that his Baclofen prescription be renewed.  Plaintiff further avers that Dr. Garcia's response to his request was hostile and he told Plaintiff, before kicking him out of the health care room, there was nothing he could do for his requests stated in his grievances (Doc. 171, p. 7 (Ex. M - Plaintiff's Affidavit, ¶ 4)).  Even though the medical records do not indicate Plaintiff's complaints of muscle spasms on or around June 26, 2000 (*see* Doc. 159-4, p. 102 - notes from Plaintiff's 6/26/00 exam) Plaintiff's affidavit (albeit self-serving) stating otherwise is sufficient to create a question of material fact

to survive summary judgment, as the R&R determined. **See Kaba v. Stepp, 458 F.3d 678, 681 (7th Cir. 2006) (finding that even Plaintiff's self-serving affidavit testimony in support of his § 1983 suit was "competent evidence to rebut [a] motion for summary judgment" as long as it was based on affiant's personal knowledge, was detailed and specific) (alteration in original) (citing _Dale v. Lappin_, 376 F.3d 652, 655 (7th Cir. 2004)); _see also Lax v. City of South Bend_, 449 F.3d 773, 774 (7th Cir. 2006) (reversing the district court grant of summary judgment for its failure to regard Plaintiff's affidavit as evidence creating a question of material fact precluding summary judgment)**. Thus, the Court adopts the finding of the R&R that a question of material fact remains as to Plaintiff's claim of Dr. Garcia's alleged deliberate indifference for his decision not to prescribe Baclofen from June 26, 2000 through August 3, 2000, thereby precluding summary judgment on this issue.

### ii.      October 16, 2000 - November 10, 2000

Although Dr. Garcia prescribed Plaintiff Baclofen for one month on August 3, 2000, and on September 3, 2000, he renewed the prescription through December 31, 2000, he claims he discontinued it on October 20, 2000, due to a report from staff that Plaintiff had refused the Baclofen on October 16, 2000 (Doc. 159-4, p. 19 - 10/16/00 medical notes).[5] The R&R found questions of material fact remained as to whether Plaintiff actually refused to take the Baclofen on October 16,

---

[5] The medical notes also state that Plaintiff refused to sign the drug refusal form.

2000 or whether Dr. Garcia intentionally discontinued the prescription in retaliation for Plaintiff's grievances against him (Doc. 172, p. 11).

In his R&R objections, Dr. Garcia states that not only do the medical notes indicate Plaintiff's refusal to take the Baclofen on October 16, 2000, but medical records also show Plaintiff's continued noncompliance an additional four days afterward (Doc. 177, p. 6 & Ex. A). Additionally, Dr. Garcia takes issue with Plaintiff's affidavit, which states that on October 15, 2000, Plaintiff severely twisted his right knee and only missed the med-line to receive his Baclofen on October 16, 2000 because correctional officers refused to assist in transferring him from his bed to his wheelchair in order to make the med-line (Doc. 171, p. 8 - Plaintiff's Aff., ¶ 5). [6] Therefore, Plaintiff contests the characterization that his failure to take Baclofen on October 16, 2000 was a "refusal," instead, implying that had he been helped to the med-line, he would have taken the Baclofen (*see* Doc. 158-2, p. 20). Dr. Garcia states in his affidavit that it was not until he next examined Plaintiff on November 10, 2000 that Plaintiff again requested a prescription of Baclofen; Dr. Garcia, noting that Plaintiff was experiencing more muscle spasms, agreed to renew the prescription (Doc. 138-7 - Garcia Aff., ¶ 20).

The evidence shows, at best, that Dr. Garcia was only aware of Plaintiff's alleged refusal to take Baclofen on October 16, 2000 and four days thereafter, according to the medical notes. Plaintiff does not offer evidence to contravene this

---

[6] In support, Plaintiff also offers the affidavit testimony of Inmate Larry Upchurch (Doc. 159-3, p. 34, ¶ 11).

– at most, he offers evidence supporting the allegation that certain correctional officers knew of his physical inability to make it to the med-line in time to receive his Baclofen. From the record, there is nothing to show Dr. Garcia knew of Plaintiff's desire to continue taking Baclofen until he next requested it during his November 10, 2000 examination; his request was granted. Therefore, unlike the finding in the R&R, the Court finds nothing to create a question of material fact that Dr. Garcia acted with deliberate indifference. As such, it must vacate the finding of the R&R and grant partial summary judgment to defendant Dr. Garcia regarding Plaintiff's claim that Dr. Garcia was deliberately indifferent to his serious medical needs by refusing to prescribe Baclofen for the period from October 16, 2000 through November 10, 2000.

### b.    Physical Therapy at Pinckneyville

The R&R found questions of material fact existed, precluding summary judgment for Dr. Garcia in regard to Plaintiff's claims of deliberate indifference to a serious medical need for denial of physical therapy from April 2000 through August 2000, as well as a brief period of time when Plaintiff was placed into segregation from January 29, 2001 through February 6, 2001, while housed at Pinckneyville (Doc. 172, p. 12). In his objections, Dr. Garcia contends that he did not have the authority to hire an off-site therapist. Once an on-site physical therapist was acquired at Pinckneyville, Plaintiff was evaluated for physical therapy on August 8, 2000; it was eventually determined Plaintiff should continue physical therapy twice a week (Doc. 137, ¶¶ 40-41).

Further, Dr. Garcia argues that Plaintiff's claim is more appropriately considered as a "delay" in medical treatment, the real issue being whether the delay in Plaintiff getting physical therapy caused an acute worsening of his condition to justify recommending off-site treatment (Doc. 177, p. 8). As to this issue, Dr. Garcia argues that Plaintiff has failed to provide any evidence showing this delay in treatment actually worsened his physical condition (*Id.*). In support, Dr. Garcia offers a chart comparing Plaintiff's range of motion evaluations on March 28, 2000 (when he was receiving physical therapy at Dixon) and August 8, 2000 (his initial physical therapy session once Pinckneyville acquired an on-site therapist) (*Id.* at 9, citing Doc. 159-4, pp. 13, 22 & 24). Moreover, Dr. Garcia points out the fact that Plaintiff, while housed at Dixon prior to being transferred to Pinckneyville, received instructions on how to perform individual physical therapy exercises in absence of a physical therapist (*Id.*, citing Doc. 159-4, p. 24; *see also* pp. 25-27). In fact, medical records show that Plaintiff, during his September 26, 2000 session, informed the physical therapy staff at Pinckneyville that he had been doing self exercise activities on his own (*Id.*, citing Doc. 159-5, p. 1). Dr. Garcia even identifies three separate memorandums all referencing Plaintiff's refusal to attend certain physical therapy sessions (*Id.*, citing Doc. 150-4, p. 10; 159-4, p. 21; Doc. 177, Ex. C). Regarding the time period when Plaintiff was placed into segregation at Pinckneyville, from January 29 through February 6, 2001, Dr. Garcia states that just prior to that, medical notes show Plaintiff's physical therapy sessions had been

reduced (*Id.*, citing Doc. 159-5. P. 15).[7]

The R&R found it problematic that Dr. Garcia did not offer a valid reason as to why he did not authorize off-site physical therapy for Plaintiff during the four months Pinckneyville did not have an on-site therapist on its staff. However, in the memorandum in support of the Medical Defendants' Motion for Summary Judgment, Dr. Garcia asserts that from April 2000 through August 2000, he examined Plaintiff on five separate occasions and never found his condition to be so acute to warrant an off-site referral for physical therapy (Doc. 138, p. 8). He highlights the fact that Plaintiff has not shown there was a medical need for off-site therapy or that the delay in treatment negatively impacted Plaintiff.

To claim that a delay in medical treatment rises to the level of a constitutional violation, as Plaintiff alleges, he must introduce verifying medical evidence into the record to establish the detrimental effect of the delay. ***See Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)**. Reviewing the record, the Court finds no verifying medical evidence showing any detrimental effects Plaintiff alleges he experienced during the four months when he did not receive physical therapy at Pinckneyville. Therefore, as a matter of law, the Court must vacate the R&R's finding that a question of material fact exists and find instead, that Dr. Garcia is entitled to a grant of partial summary judgment on Plaintiff's claim of deliberate indifference.

---

[7] However, those notes do not state how much of a reduction in session was ordered by Plaintiff's therapist.

As for the second time period, January 29, 2001 through February 6, 2001, while Plaintiff was in Segregation and did not receive physical therapy, this only spans a little over a week's time. This "delay" is also not bolstered by verified medical evidence to show detrimental effects suffered by Plaintiff and therefore also does not survive partial summary judgment.

### c.    Physical Therapy at Menard

Dr. Feinerman objects to the R&R's finding that existing questions of material fact remained regarding Plaintiff's claim of deliberate indifference to his serious medical needs for failing to provide physical therapy. Menard did not have an on-site physical therapist, but it was possible for the treating physician to authorize off-site treatment if there was an acute need for it. The R&R found that Dr. Feinerman's decision that Plaintiff did not have an acute need for physical therapy was contravened by his "otherwise consistently recognized need for therapy," along with an inmate affidavit offered by Plaintiff, stating that Dr. Feinerman explained that had Plaintiff not been transferred to a maximum security prison (Menard) he would still be receiving physical therapy (Doc. 172, p. 17).

Dr. Feinerman, in his objections to the R&R, relies upon Plaintiff's "success" with his individual exercises while he went without physical therapy for the four months while at Pinckneyville (Doc. 177, p. 11). He also states that Dr. McEntyre, the physician who first examined Plaintiff after his arrival at Menard, only recommended that Plaintiff continue with his self-exercises (*Id.*). When buttressed with a later medical opinion from Dr. Anyanwu, the medical director at Menard, that

Plaintiff would not benefit from seeing a physical therapist, Dr. Feinerman believes his medical determination that Plaintiff did not exhibit an acute need to warrant off-site physical therapy does not constitute deliberate indifference (*Id.*).

Although Plaintiff was receiving physical therapy when there was a therapist on-site at the correctional facilities where he was previously housed, this does not signify his need for therapy was "acute." In Dr. Feinerman's medical opinion, Plaintiff did not exhibit an acute need; Plaintiff's self-exercises, in Dr. Feinerman's opinion, sufficed to maintain Plaintiff's range of motion abilities. Now, there lies the possibility that Dr. Feinerman may have wrongly concluded so, as another physician may have determined Plaintiff's need *was* acute. The possibility also exists that it may have been more appropriate for Dr. Feinerman to refer Plaintiff to an actual physical therapist to determine whether his need for therapy was acute. These shortcomings, however, do not amount to a constitutional violation. At most, they amount to possible medical negligence. **See Garvin v. Armstrong, 236 F.3d 896, 897 (7th Cir. 2001) (" [A] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation.")**. From its review of the Record, the Court must vacate the R&R's finding denying partial summary judgment for Dr. Feinerman in regards to Plaintiff's claim that he acted with deliberate indifference towards Plaintiff's serious medical need. Instead, partial summary judgment on this issue will be granted in favor of Dr. Feinerman.

### 2. Plaintiff's Objections

#### a. Eggcrate Mattress

Plaintiff alleged that Drs. Feinerman and Doughty were deliberately indifferent to his serious medical needs for refusing to authorize his use of an eggcrate mattress while at Menard. Although Plaintiff was allowed the use of an eggcrate mattress his first night at Menard when he stayed in the Health Care Unit, for the rest of the duration he was not allowed one because deemed a fire hazard and its use in the inmate cells was against Menard policy. However, Plaintiff alleges that another inmate by the name of Craig Childress was allowed to have an eggcrate mattress in his cell and thus, the difference in treatment between Plaintiff and Childress was based upon racial discrimination. The R&R noted that Plaintiff had failed to allege a Fourteenth Amendment equal protection claim and therefore, the Court "need not delve further into the alleged racial discrimination" (Doc. 172, p. 16). Plaintiff states that he originally alleged a racial discrimination claim in his Complaint, which was dismissed by the Court in its threshold Order but he now wishes to "reopen" this claim (Doc. 176, pp. 1-2, citing Doc. 21, pp. 18-19). The Court dismissed Plaintiff's racial discrimination claim with prejudice, which does not allow it to be "reopened." Further, the threshold Order (Doc. 21) is not subject to reconsideration via Plaintiff's objections to the R&R and therefore, Plaintiff's request is unavailing.

The R&R also speculated that even if the policy for assigning inmates

the use of an eggcrate mattress was flexible, there was no medical evidence to support Plaintiff's allegations that he had bed sores (necessitating the eggcrate mattress), so he failed to show a serious medical need existed (Doc. 172, p. 16). Plaintiff objects to this, arguing that there are other reasons besides bed sores which would warrant his need for an eggcrate mattress (Doc. 176, pp. 2-3). More specifically, Plaintiff states that he had since being housed back at Pinckneyville, he has been prescribed an eggcrate mattress to relieve bullet pressure off of his upper right-shoulder blade (*Id*. at 3 & Ex. B).[8] The problem with his argument is that it does not erase the policy at Menard prohibiting the use of eggcrate mattresses due to a potential fire hazard. Also, Plaintiff forgets that the R&R was only *speculating* that even if the policy prohibiting eggcrate mattresses at Menard did not exist, there was no evidence to show Plaintiff had a medical need for one. The fact remains, undisputed, that there was a policy prohibiting Menard's physicians from prescribing inmates the use of an eggcrate mattress due to the fact that they were considered fire hazards. Therefore, the Court does not find evidence that Drs. Feinerman and Doughty acted with deliberate indifference towards Plaintiff and so it adopts the findings of the R&R, granting partial summary judgment in favor of Drs. Feinerman and Doughty on this issue.

---

[8] This exhibit is somewhat problematic as it does not list the reason why Plaintiff was prescribed an eggcrate mattress.

### b. Dr. Doughty

Plaintiff's second objection to the R&R is that it granted partial summary judgment in favor of Dr. Doughty, finding he did not act with deliberate indifference for failing to authorize off-site physical therapy for Plaintiff while at Menard (Doc. 176, p. 3). Dr. Doughty, in his affidavit, stated that he did not find Plaintiff's need for physical therapy to be acute and therefore, off-site physical therapy was not warranted. Plaintiff objects, stating that Dr. Doughty merely relied upon Dr. Feinerman's medical opinion regarding whether Plaintiff's need was acute, which does not amount to a "difference in medical opinion," as the R&R found (Doc. 176, p. 3).

Considering Plaintiff's medical history of muscle spasms, the fact that he had received continued physical therapy prior to his transfer to Menard and the fact that he is a wheel-chair bound paraplegic would indicate to any physician that Plaintiff had serious medical needs. The question then becomes whether the determination that Plaintiff's need for physical therapy was not "acute" was medically sound. Tangential to that question lies the question as to whether Plaintiff's ability to perform self-exercises sufficed in lieu of being treated by a physical therapist. Finally, the ultimate question arises as to whether Dr. Daughty believed that not authorizing off-site physical therapy would pose an excessive risk to Plaintiff's health and well-being. Yet, as the Court found with Plaintiff's deliberate indifference claim against Dr. Feinerman, Dr. Daughty's medical opinion that Plaintiff's need for

physical therapy was not "acute," if not medically sound, amounts to, at most, medical negligence. The fact that Plaintiff, since being transferred to Menard, has been receiving physical therapy does not conclusively show deliberate indifference: the correctional facility where he is now housed may have an on-site physical therapist and therefore, Plaintiff's may not have to exhibit an acute need in order to receive on-site treatment. Plaintiff also fails to offer evidence that any physician or therapist ever concluded that his need for therapy was acute. More importantly, Plaintiff has not submitted any evidence showing that his failure to get off-site physical therapy while at Menard actually deteriorated his range of motion or other muscular abilities. It was the medical opinion of Drs. McEntyre, Feinerman, Doughty and Anyanwu that Plaintiff did not exhibit an acute need for therapy, but instead, the self-exercises he was taught provided sufficient therapeutic benefit. Therefore, the Court does not find Dr. Doughty acted with deliberate indifference towards Plaintiff's serious medical needs and thus, adopts the finding of the R&R granting partial summary judgment in his favor.

## IV.  CONCLUSION

The Court hereby **ADOPTS IN PART AND VACATES IN PART** the R&R (Doc. 172), as explained within the text of this Order, regarding Drs. Garcia, Feinerman and Doughty's Motion for Summary Judgment (Doc. 136) as follows:

- Vacating the finding of the R&R, partial summary judgment is **GRANTED** in favor of Dr. Garcia on Plaintiff's claim of deliberate indifference to his serious medical needs regarding his allegations that (1) that he was denied Baclofen from October 16, 2000 through November 10, 2000, and (2) he was denied

physical therapy from April 2000 through August 2000, and January 29, 2001 through February 6, 2001, while at Pinckneyville (Count 5 of Plaintiff's Complaint).

- Vacating the finding of the R&R, partial summary judgment is **GRANTED** in favor of Dr. Feinerman on Plaintiff's claim of deliberate indifference to his serious medical needs regarding his allegation that he was denied physical therapy while housed at Menard (Count 11 of Plaintiff's Complaint).

- Adopting the finding of the R&R, partial summary judgment is **GRANTED** in favor of Dr. Feinerman and Dr. Doughty on Plaintiff's claim of deliberate indifference to his serious medical needs regarding his allegation that he was denied the use of an eggcrate mattress while housed at Menard (Count 11 of Plaintiff's Complaint).

- Adopting the finding of the R&R, partial summary judgment is **GRANTED** in favor of Dr. Doughty on Plaintiff's claim of deliberate indifference to his serious medical needs regarding his allegation that he was denied physical therapy while housed at Menard (Count 5 of Plaintiff's Complaint).

- Adopting the finding of the R&R, partial summary judgment is **DENIED** in favor of Dr. Garcia regarding Plaintiff's claim of deliberate indifference to his serious medical needs based on his allegations that Dr. Garcia refused to prescribe him Baclofen from June 26, 2000 through August 3, 2000 (Count 5 of Plaintiff's Complaint).

The Court also **ADOPTS** any findings and conclusions as stated in the R&R that were not specifically objected to by the parties, including, but not limited to:

- Dr. Garcia should be **GRANTED** partial summary judgment relative to the Eighth Amendment claim in Count 5 and the First Amendment claim in Count 9 related to any failure to ensure Plaintiff promptly received a prothesis; and

- A *sua sponte* **DISMISSAL WITHOUT PREJUDICE** of Count 7 against Dr. Garcia and Count 13 against Drs. Feinerman and Doughty, allowing Plaintiff **leave to comply** with **735 ILL. COMP.**

**Stat. 5/2-622** within <u>thirty (30) days</u> from the date of this Order.

Lastly, the Court notes that Counts 8 & 16 of Plaintiff's Complaint, alleging violations of the Rehabilitation Act of 1973 against Drs. Garcia and Feinerman, respectively, still remain (as it does against other named Defendants in this suit who are not subject to the instant Motion for Summary Judgment (Doc. 136)).[9]

**IT IS SO ORDERED**.

Signed this 21st day of March, 2008.

/s/     David R Herndon

**Chief Judge**
**United States District Court**

---

[9] To be clear, these are not the sum total of existing claims remaining in this suit, they are merely the remaining claims against the "Medical Defendants" – Drs. Garcia and Feinerman, as there is another pending summary judgment motion filed on behalf of the other named Defendants in this matter which must be addressed.