### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JOHNNY M. RUFFIN, JR.,**

     **Plaintiff,**

**v.**

**WINNEBAGO COUNTY JAIL, et al.,**

     **Defendants.**                 **Case No. 03-cv-210-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

## I.  Introduction

       Before the Court is defendant IDOC's Renewed Motion for Judgment as a Matter of Law or in the Alternative, Motion for New Trial (Doc. 283), to which Plaintiff has responded in opposition (Doc. 286).[1]  This case was tried by a jury, the jury rendered a verdict finding no liability on the part of the individual Defendants. However, the jury found defendant Illinois Department of Corrections ("IDOC") was

---

[1]  During the jury trial, Defendants made a motion for judgment as a matter of law pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 50(a)** at the close of Plaintiff's case.  The Court granted the motion in part and denied it in part.  Specifically, the Court granted judgment as a matter of law in favor of defendant Karen McKinney as to Count 5, which stated an Eighth Amendment claim for deliberate indifference to a serious medical need and in favor of defendant Jonathan Walls as to Count 11, which was also an Eighth Amendment deliberate indifference claim, and Count 17, which was a First Amendment claim for retaliation and harassment.  At the close of the case, Defendants moved pursuant to Rule 50(a).  Again, the Court granted in part and denied in part Defendants' motion, in that it granted judgment as a matter of law in favor of all the remaining individual Defendants named in Count 16, which stated a Rehabilitation Act claim.  The remaining counts that were submitted to the jury for deliberation were: Count 9 - a First Amendment claim for retaliation and harassment against defendants Karen McKinney and Scott Wyciskalla; Count 16 - a Rehabilitation Act claim against IDOC; and Count 17 - a First Amendment claim for retaliation and harassment against defendant Elisa Rea.

liable to Plaintiff for his claims made in Count 16 of his Complaint, and awarded damages in the amount of $17,000.  Plaintiff's Count 16 alleged violations of his federal rights under Section 504 of the Rehabilitation Act of 1973, **29 U.S.C. § 794**, while he was incarcerated at Menard Correctional Center ("Menard").[2]  Specifically, Plaintiff, who is a handicapped individual, claimed his rights under the Rehabilitation Act were violated because Menard failed to provide him with reasonable accommodations to certain programs and activities including the shower area, the healthcare unit (via the sick call request procedures), the segregation visiting room, the exercise yard, transportation to court, and access to emergency exits from the wing where his cell was located.

As the following discussion will show, the Court finds IDOC's arguments fail to warrant relief.

## II.  Discussion

### A.    Legal Standard

A motion for judgment as a matter of law made during trial, which is denied by the court, may be renewed pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 50(b)**.  **FED. R. CIV. P. 50(b)**.  The moving party may also make an alternative request for a new trial under **Rule 59**.  **FED. R. CIV. P. 50(b) (citing FED. R. CIV. P. 59)**.  The determining court then has three options when ruling on a Rule 50(b) motion: it may allow judgment on the verdict to remain, order a new trial or grant

---

[2] Menard is an IDOC facility.

the motion and direct entry of judgment as a matter of law in favor of the movant. **FED. R. CIV. P. 50(b)**. If the court grants the Rule 50(b) motion, it must also conditionally rule on the movant's alternate request for a new trial, "by determining whether a new trial should be granted if the judgment is later vacated or reversed." **FED. R. CIV. P. 50(c)(1)**.

A Rule 50(b) motion should be granted only when "'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that issue." *Murray v. Chicago Transit Auth.*, 252 **F.3d 880 (7th Cir. 2001)**. The standard governing a Rule 50(b) renewed motion for judgment as a matter of law is the same as used in determining a motion for summary judgment pursuant to Rule 56, meaning that the Court must review the entire record, construing all the evidence in favor of the nonmoving party. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)).

In the alternative, IDOC seeks a new trial pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 59**. Rule 59(a) allows the court, after a jury trial, to grant a new trial on all or as to some of the issues, as to any party, "for any reasons for which a new trial has heretofore been granted in an action at law in federal court." **FED. R. CIV. P. 59(a)**.

B.      **Analysis**

Both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act apply to state prisoners. ***Cassidy v. Ind. Dept. of Corr.*, 199 F.3d 374, 375 (7th Cir. 2000) (citing *Penn. Dept. of Corr. v. Yeskey*, 524 U.S. 206 (1998); *Crawford v. Ind. Dept. of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997))**. The Rehabilitation Act is "materially identical to and the model for the ADA [citation omitted] except that it is limited to programs that receive federal financial assistance." ***Crawford*, 115 F.3d at 483, *abrogated on other grounds*, see Erickson v. Bd. of Governors of State Colleges and Universities, 207 F.3d 945, 948-49 (7th Cir. 2000)**. In other words, it "incorporates the prohibitions contained within the Americans with Disabilities Act . . . and requires federal agencies . . . to offer 'reasonable accommodation' to 'qualified individuals with a disability.' " ***Bellino v. Peters*, 530 F.3d 543, (7th Cir. 2008)**

> The Rehabilitation Act provides, in part:
>
> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**29 U.S.C. § 794(a)**. "Otherwise qualified" means Plaintiff must show that, were it not for his handicap, he would have qualified for the benefit, treatment, or program which he was denied. ***Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120-21 (7th Cir. 1997)**. "Program or activity" is defined in the Act as the operation of a

"department, agency, special purpose district, or other instrumentality of a state or local government." Thus, a prima facie case for violation of the Rehabilitation Act necessitates a showing that: (1) Plaintiff suffers from a disability as defined under the Act; (2) Plaintiff was otherwise qualified to participate in the program; (3) the program received federal financial assistance; and (4) Plaintiff was "excluded from participation, denied benefits or otherwise discriminated against solely because of his disability." ***Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004) (citing *Silk v. City of Chicago*, 194 F.3d 788, 798 n.6 (7th Cir. 1999))**.

During trial and continuing in IDOC's instant motion, it is clear that the Parties do not dispute that IDOC is an entity receiving federal financial assistance so that its programs and activities fall under the coverage of the Rehabilitation Act (the "Act"). Also undisputed is the fact that Plaintiff has a disability as defined under the Act and can be deemed an "otherwise qualified" individual. The issue therefore becomes whether there was sufficient evidence upon which a reasonable jury could find IDOC liable, in the amount of $17,000.00, for violating Plaintiff's rights under the Act, **29 U.S.C. § 794**, as plead in Count 16 of Plaintiff's Complaint. IDOC now renews its request for a judgment as a matter of law, basing its request on the asserted grounds that Plaintiff was not, in fact, denied equal access to programs or activities at Menard and additionally, that if IDOC were still found liable, Plaintiff is only entitled to an award of nominal damages, not compensatory (Doc. 283).[3]

---

[3] Although IDOC's Motion actually addresses the damages issue first, the Court believes it better to first discuss the issue of liability.

**1.      Denial of Equal Access to Programs or Activities at Menard**

The jury found that IDOC violated Plaintiff's rights under the Rehabilitation Act while he was housed at the Menard Correctional Center for its failure to provide him equal access to the shower area, the healthcare unit (via the sick call request procedures), the segregation visiting room, the exercise yard, transportation to court, and access to emergency exits from his cell on the fourth floor (Doc. 1 - Complaint, Count 16).  IDOC now argues that there was no evidence introduced during trial to show Plaintiff was actually prevented from any of the programs or activities as alleged in Count 16 of his Complaint (Doc. 283, pp. 9-12).

**a.      Transportation to Court**

Plaintiff claimed that because he was denied access to be transported in a wheelchair-accessible van to and from court, he was essentially "manhandled" when he had to be lifted from under his armpits and legs by Menard personnel into the van.  Plaintiff further claimed that he suffered physical injuries from being "manhandled."  Here, IDOC argues that the *transporting* to and from court should not be seen as the program or activity under the Act.  Rather, IDOC asserts that Plaintiff complained of his impeded ability to attend court; not the mode of transportation to and from the courthouse.  IDOC concludes that Plaintiff's ability to attend court while housed at Menard should instead be construed as the program or activity subject to the Act (*Id*. at 9).  Continuing, IDOC notes that "Plaintiff did not testify that he was unable to attend court writs, only that he was dissatisfied with the

manner in which he was transported" (*Id*.).  Further, IDOC argues"nothing in the
Rehabilitation Act or relevant case law requires Federal funding recipients to provide
wheelchair-accessible vans when transporting individuals confined to a wheelchair
who are participating in a program or activity conducted by the recipient" (*Id*.).

Plaintiff opposes IDOC's assertion (Doc. 286, pp. 9-10).  The Court
agrees with Plaintiff.  First, although the Act does not specifically mandate handicap
accessible transportation, its purpose covers such a need if, under the legal
requirements set forth under the Act, it is able to be reasonably accommodated.[4]
Second, the Court does not construe Plaintiff's claim under the Act as one of being
denied access to the *courts*.  Rather, Count 16 of his Complaint has always alleged

---

[4] Because IDOC's legal argument fails to acknowledge the fact that violations of the Act also
includes failure to reasonably accommodate, the Court will address it now to clarify.  Within the
Act's prohibition of discrimination towards disabled individuals lies the measurement by which
discrimination can be shown: when an otherwise qualified individual is excluded from or denied
the benefits of a program or activity.  **See 29 U.S.C. § 794**.  This "measurement" is further exacted
by the defining terms of how a person is deemed a "qualified individual."  "Qualified individual," a
term borrowed from the ADA, means any individual with a disability "who with or without a
*reasonable accommodation* has the physical and mental capacity to participate in the program or
activity in question." **Crawford, 115 F.3d at 483 (emphasis added) (citing 42 U.S.C. §
12131(2))**.  So, in turn, Plaintiff is allowed to argue exclusion therefrom or denial thereof by
showing that IDOC failed to provide a reasonable accommodation to enable him to participate in
the program or activity at issue.  **Id. (citations omitted)**.  Additionally, as Plaintiff argues, the
"reasonable accommodation" requirement was a crucial element of Plaintiff's claim under the Act
throughout the jury trial, evident from the jury instructions, which were submitted by Defendants
for the court's approval, with Plaintiff's consent (*see, e.g.*, Doc. 277 - Jury Instructions, pp. 14-15,
18, 24).  For example, one jury instruction described Plaintiff's claim for violations under the Act
due to Defendants' failure to provide "reasonable access to programs and activities at Menard" (*Id*.
at 14-15).  The jury instruction which set forth the elements for a claim under the Act listed as the
fourth element that: "Plaintiff requested, and was denied reasonable accommodation necessary for
him to participate in the programs or activities provided to non-disabled inmates" (*Id*. at 18).
Lastly, another jury instruction stated "Defendant [IDOC] is required to provide reasonable
accommodations to a qualified individual to enable that individual to participate in the program or
activity.  However, an accommodation may be considered unreasonable if it imposes an undue
burden on the prison" (*Id*. at 24, citing *Crawford*).

that IDOC failed to reasonably accommodate the needs of his disability when it failed to use a handicap accessible van when transporting him to and from the court.  The fact that he attended court was incidental to the "activity" of transporting him there. Unlike IDOC's suggestion, it is the act of transporting Plaintiff which is to be deemed the IDOC-related activity for purpose of analyzing liability under the act.  Likewise, Plaintiff could have complained of the lack of a handicapped accessible van when transporting him to and from a work site, if the circumstances were presented as such.  In short, it is the "how" rather than the "where" which is at issue.  Otherwise, following along the lines of IDOC's argument, Menard officials could have transported Plaintiff to court using a catapult as long as he did, in fact, get to court, without violating the terms of the Rehabilitation Act.  While this example goes beyond IDOC's actual assertions, its argument has nonetheless paved the way to such absurd scenarios, and only serve to distort the overall purpose and intent of the Act.  IDOC would have one believe that as long as it got Plaintiff to court then access was not denied and its job was fulfilled.

Concluding that the program or activity alleged in Plaintiff's Count 16 was the transportation to and from the courts, the Court finds that the issue of whether Defendants failed to reasonably accommodate Plaintiff's disability by not using a wheelchair accessible van was properly presented to the jury during trial. Therefore, Defendants are only entitled to Rule 50 relief if there was insufficient evidence for a reasonable jury to base its finding of liability against IDOC for its

failure to reasonably accommodate Plaintiff.  IDOC offers no specific argument in this regard.  Rather, it argues that Plaintiff failed to introduce sufficient evidence of suffering physical injury therefrom (Doc. 283, pp. 6-8).  In any event, the Court finds sufficient evidence from which the a reasonable jury could have found that IDOC failed to reasonably accommodate Plaintiff by not providing a wheelchair accessible van to transport him to and from court while he was housed at Menard.  Granted, this is a case-specific determination.  The Court must also note that the jury was allowed to consider the possibility that any needed accommodation may have imposed too onerous of a burden upon Defendants to be deemed "reasonable."  Yet, the evidence at trial showed that although other correctional facilities had wheelchair accessible vans, none were available at Menard nor did IDOC appear to make much a reasonable effort to obtain these vans transporting Plaintiff (Doc. 286, p. 7).  A reasonable jury could have found that there was a reasonable accommodation available to IDOC and that it would not have been an undue burden for Menard to have requested the use of a wheelchair accessible van from another facility in order to safely transport Plaintiff to and from court.

**b.    Visiting Room**

While housed at Menard, Plaintiff also alleged that his rights were violated under the Act for the lack of a wheelchair accessibility in the visiting room of the segregation wing.  Specifically, Plaintiff claimed that he was forced to cram his wheelchair into a small space which also contained a metal stool (presumably, for

inmates to sit upon). Due to the placement of the stool, Plaintiff claimed that he had to be handcuffed in such a way that his legs were jammed into the stool, causing them to swell and bruise.

IDOC argues that it is entitled to judgment as a matter of law to the extent that Plaintiff claims he was denied equal access to the visiting room as it was difficult for him to talk to his family or have privacy, because IDOC "does not offer a program or activity of providing maximum security prisoners with private visiting facilities" (Doc. 283, p. 10). Plaintiff, in response, takes issue with IDOC's off-the-mark argument, clarifying that his claim was for the denial of meaningful access or reasonable accommodation which would allow Plaintiff to visit with his family, attorneys or others. Accordingly, Plaintiff disputes the assertion that he claimed a denial of meaningful access to *private* visiting facilities, but rather, that he was denied reasonable accommodation (or meaningful access) to allow him use the visiting room without physical injury because of the lack of wheelchair accessibility. The Court agrees, finding Plaintiff's characterization of his claim the one that was accurately conveyed to the jury during trial.

The Court also finds that there was sufficient evidence upon which a reasonable jury could base its finding that IDOC failed to reasonably accommodate Plaintiff in his use of the visiting room. Evidence was introduced at trial that Menard personnel subsequently removed the stool to the visiting room and in so doing, Plaintiff was able to access it in his wheelchair without causing injury to his legs by

being uncomfortably cuffed to the stool.  The jury may reasonably have deduced that the evidence supported the belief that this accommodation was not an undue burden upon IDOC and therefore, supported a finding of liability for violating the Act.

### c.      Sick Call Request Procedures

IDOC also believes it is entitled to judgment as a matter of law regarding Plaintiff's claim that he was denied reasonable accommodation because of his disability to obtain timely responses for his sick call requests.  Menard's policy was that sick call requests from inmates would be responded to within 24 to 72 hours.  Plaintiff presented his own testimony and that of other witnesses to support the allegation that there was often a considerable delay in the sick call response received by the disabled inmates.  Although Plaintiff admits these facts were disputed by Defendants, credibility issues are properly determined by the jury, not the court afterwards.  Therefore, the Court finds that the evidence presented at trial was sufficient to allow a reasonable jury to deduce that IDOC failed to timely respond to sick call requests from its disabled inmates.

### d.      Emergency Exits

IDOC further argues it is entitled to judgment as a matter of law with regard to Plaintiff's claim that he was denied meaningful access to emergency exits from his ADA-wing at Menard, in the event that emergency evacuation procedures were necessary.  During trial, evidence was presented that there were no wheelchair ramps to evacuate disabled inmates from the fourth floor where Plaintiff was housed

at Menard.  In event of a fire, procedure at Menard was to wheel the wheelchair-bound inmates into the shower area on Plaintiff's wing and, if necessary, subsequently evacuate them to the outside of the facility.  In order to evacuate the inmates, evidence showed that Menard personnel could use the elevator, stair chairs or gurneys to move the disabled inmates or else they could physically lift and move the inmates, if necessary.  However, there was also evidence introduced claiming that Menard did not have enough stair chairs, for example, to remove all of the disabled inmates from Plaintiff's wing, and that the inmates would thereby have to be evacuated in shifts.  The Court finds that there was sufficient evidence for a reasonable jury to find that IDOC failed to provide reasonable accommodations with regard to emergency exits for disabled inmates such as Plaintiff, housed on the ADA-wing at Menard.

> e.    **Shower Area**

With regard to Plaintiff's claim that he was denied meaningful access to the shower facility while housed at Menard, IDOC argues it is entitled to judgment as a matter of law.  IDOC claims that Plaintiff's testimony during trial focused on the cleanliness of the shower area in general, that there was no showerhead within his reach from his wheelchair and that the shower chairs used in the shower area for disabled inmates were in poor condition.  IDOC asserts that Plaintiff's dissatisfaction with the shower accommodations do not amount to a violation of the Act.  In response, Plaintiff claims that the evidence he produced disputed IDOC's evidence

that there were actually shower chairs in the shower area where he was housed.  The Court finds sufficient evidence for a reasonable jury to find that IDOC failed to reasonably accommodate Plaintiff with regard to the shower area.

### f.      Access to the Exercise Yard

Lastly, IDOC moves for judgment as a matter of law regarding Plaintiff's claim that he was denied meaningful access to the exercise yard.  There are restrooms located in the yard for inmates to use, but because these are not handicap-accessible, if Plaintiff needed to use the restroom, a correctional officer had to take him back to his housing unit.  Even if Plaintiff had remaining yard time, he would not be returned to the yard.[5]  Non-disabled inmates, however, were able to use the restroom facilities located in the exercise yard, rather than having to leave the yard and sacrifice the remainder of their outdoor time.  IDOC basically argues that it did reasonably accommodate Plaintiff's need in this instance.  However, the Court finds that there was sufficient evidence for a reasonable jury to find otherwise.

In sum, the Court does not believe IDOC has met its burden to warrant granting it a judgment as a matter of law as to Plaintiff's Rehabilitation Act claim against it as alleged in Count 16 of his Complaint.  The Court finds sufficient evidence upon which a reasonable jury could have based its liability finding.  Moreover, IDOC offers little in the way to show (during trial or by the instant motion) that any accommodation would have presented it with an undue burden.  Therefore,

---

[5]   Testimony during trial established that inmates were typically allowed five hours of exercise yard time per week, normally done in one five-hour stretch on Saturday mornings.

finding that the liability verdict against IDOC shall remain standing, the Court now turns to the issue of whether IDOC is entitled to a judgment as a matter of law with respect to damages.

### 2.   Damages

The jury not only found IDOC liable for violating Plaintiff's rights under the Rehabilitation Act, it awarded Plaintiff compensatory damages in the amount of $17,000.00.  IDOC therefore argues that to the extent the Court finds IDOC violated Plaintiff's rights under the Act, Plaintiff should only be allowed to recover nominal damages in the amount of $1.00, because he failed to present evidence of a physical injury related to the alleged Rehabilitation Act violations in Count 16 of his Complaint (Doc. 283, pp. 6-8, 12).  It is clear that § 1997e(e) of the Prison Litigation Reform Act of 1996 ("PLRA") applies to Plaintiff's Rehabilitation Act claims as such constitute a "federal action." *See Cassidy*, **199 F.3d at 376**.  Section 1997e(e) of the PLRA provides: "Limitation on recovery.  No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury*."  **42 U.S.C. § 1997e(e) (emphasis added)**.

IDOC asserts that during trial, Plaintiff did not testify that he suffered a physical injury as a result of being denied meaningful access to programs or activities while housed at Menard, including his claims regarding the lack of emergency evacuation ramps, the shower area, sick call requests or the exercise

yard.  Responding, Plaintiff does not dispute the fact that he did not suffer actual physical injuries as a result of any violations of the Act regarding these things. However, Plaintiff argues that there was ample evidence submitted to the jury to support their award of compensatory damages.

Specifically, Plaintiff points to evidence that he suffered physical injuries on the multiple occasions when he was transported to and from court in a van that was not wheelchair accessible (Doc. 286, p. 8).  Plaintiff's own testimony and that of an eyewitness, Milam Martin, told of how in order to transfer Plaintiff from his wheelchair into the van and back again, one correctional officer would grab Plaintiff's legs, the other correctional officer would grab Plaintiff underneath his arms, physically lift him into the van, and drag him across the floor of the van to a seat. As a result, Plaintiff testified that he suffered bruising, swelling to his arms and legs and pain under his arms (where several bullet fragments remain lodged from a previous injury).  Martin testified that he observed Plaintiff's swelling and bruising. Regarding the segregation visiting room, Plaintiff testified that as a result of having to be handcuffed in such a way that caused his legs to be jammed against the metal stool, Plaintiff's legs became bruised and swollen.  Plaintiff testified that he was injured between ten and twenty separate times in the van and approximately six times in the segregation visiting room.

With regard to these claimed resultant physical injuries, IDOC argues that Plaintiff failed to produce any documented medical evidence (Doc. 283, p. 7).

In fact, IDOC notes that Plaintiff's medical records for the time period at issue in this case do not indicate any complaints of physical injury suffered after any of the times he was transported in the van, to and from court, or after he used the segregation visitation room.  Further, IDOC argues that Plaintiff's own testimony regarding his alleged physical injuries is not sufficient to uphold an award of mental or emotional damages because he lacks competency to testify as to the cause of his injuries.  Countering, Plaintiff explains that the reason there was no mention of his injuries in his medical records is because of the delay in getting any response to his sick call requests.  As such, Plaintiff claims that by the time he was actually treated by medical personnel, his injuries were already healed (in other words, the bruising had faded and the swelling of his arms and legs subsided) (Doc. 286, p. 8).  In support, Plaintiff states that he and two other witnesses testified that Menard typically would not respond to disabled inmates' sick call requests as promptly as it did to non-disabled inmates.

Supporting its assertion that Plaintiff's own testimony of his physical injuries cannot support an award for compensatory damages, IDOC cites to the Seventh Circuit opinion, ***Pearson v. Welborn*, 471 F.3d 732, 743 (7th Cir. 2006)** (Doc. 283, p. 6).  Yet, ***Pearson*** seems distinguishable from the case at hand.  In ***Pearson***, the plaintiff inmate testified that "as a result of the extra year [at Tamms] he was 'mentally and physically depressed' and 'lost at least 50 pounds at a time.'"  The Seventh Circuit found the plaintiff's claim of injury to be "unelaborated" and

thus insufficient to support an assertion of a "physical injury" as that term is commonly understood. *Id.* First, the Court believes that the Seventh Circuit was likely more focused upon the fact that the allegations of the injury itself did not amount to a *physical* injury, rather than the fact that the plaintiff's own testimony would not suffice as evidence supporting the allegations that he suffered a physical injury. **Cf. Hendrickson v. Cooper, 589 F.3d 887, 893 (7th Cir. 2009) (upholding jury's award of $75,000 compensatory damages for violation of inmate plaintiff's Eighth Amendment rights, finding the plaintiff's reliance primarily upon his own testimony in order to prove the pain and suffering experienced in relation to his back pain as sufficient evidence, considering "the uniquely subjective nature of pain") (citing Cooper v. Casey, 97 F.3d 914, 917 (7th Cir. 1996)).** Second, Plaintiff in this case was not the only source of evidence regarding his physical injuries, at least with respect to the alleged physical injuries he claims he suffered by being transported in a van that was not wheelchair accessible.  IDOC also fails to point to any authority which requires that evidence of physical injury must be presented via medical records in order to allow the jury to award damages.[6]  Therefore, the Court finds that there was sufficient evidence that Plaintiff suffered a physical injury as a result of IDOC's violating his rights under the Rehabilitation Act in order to justify an award of compensatory damages, rather than

---

[6] Plaintiff also makes note of the fact that during trial, IDOC had every opportunity to argue to the jury that Plaintiff had failed to show evidence of physical injury documented in his medical records (Doc. 286, p. 8).

only nominal damages.  The evidence presented a question of fact for the jury to determine.  Since the jury awarded damages, it clearly found the Plaintiff suffered injuries.

**3.    New Trial**

Continuing, IDOC argues that, in the alternative, it is entitled to a new trial as the verdict was against the manifest weight of the evidence (Doc. 283, pp. 13-14).  The Court rejects this argument, reiterating its finding that there was sufficient evidence presented for a reasonable jury to find IDOC liable for violating Plaintiff's rights under the Rehabilitation Act as alleged in Count 16 of his Complaint.

### III.  <u>Conclusion</u>

For the reasons discussed herein, the Court hereby **DENIES** IDOC's Renewed Motion for Judgment as a Matter of Law or in the Alternative, Motion for New Trial (Doc. 283).  In addition, the Court hereby **LIFTS THE STAY** it entered via its November 6, 2009 Order (Doc. 285).  Accordingly, Defendants are hereby **ORDERED** to file their **Responses** to Plaintiff's Motion for Bill of Costs (Doc. 281) and Plaintiff's Motion for Attorneys' Fees (Doc. 282) by **September 3, 2010**.

**IT IS SO ORDERED**.

Signed this 25th day of August, 2010.

/s/    David R Herndon

**Chief Judge**
**United States District Court**