# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JOHNNY M. RUFFIN, JR.,**

     **Plaintiff,**

**v.**

**WINNEBAGO COUNTY JAIL, et al.,**

     **Defendants.**                      **Case No. 03-cv-210-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.  Introduction

Before the Court is Plaintiff's Motion for Approval of Reasonable Attorney's Fees and Costs (Doc. 282), to which defendant the Illinois Department of Corrections ("IDOC") has filed an opposing Response (Doc. 294).  Plaintiff seeks reimbursement of attorney's fees in the amount of $35,759.75, pursuant to the Rehabilitation Act, which states that "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  **29 U.S.C. § 794a(b)**.  The Court must determine what amount, if any, to award Plaintiff, who can best be described as a "partially prevailing party."  As part of its analysis,

the Court must also determine the reasonable hourly rates applicable for the work of his attorney and the attorney's law clerk.

## II.  <u>Background</u>

Plaintiff initially filed this suit in 2003 in the United States District Court for the Northern District of Illinois.  Initially, Plaintiff plead 17 separate counts against 25 Defendants (*see* Docs. 1 & 21).  All of Plaintiff's claims alleged constitutional violations to his civil rights, per 42 U.S.C. § 1983, with the exception of Count 16, which alleged violations of his rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (*see* Doc. 21, p. 3).  The Northern District dismissed Counts 1 through 4 of Plaintiff's Complaint, finding them to be time-barred.  As there were no remaining claims arising out of the Northern District of Illinois, this case was subsequently transferred here, as the remaining claims arose while Plaintiff was housed in correctional facilities located in the Southern District of Illinois (*see* Doc. 3).  Plaintiff thereafter filed an Amended Complaint (Doc. 9) with respect to Counts 11-15.  Through the threshold review of Plaintiff's Complaint and Amended Complaint, conducted by this Court pursuant to 28 U.S.C. § 1915A, many of the remaining claims were dismissed with prejudice (Doc. 21, p. 20).[1]

Plaintiff thereafter moved on three separate occasions to file various amended complaints (Docs. 54, 91, 104); his requests were denied (Docs. 71, 100,

---

[1]  Certain counts were only partially dismissed as to certain defendants and/or certain claims made within each count.  For example, in Count 5, Plaintiff listed many instances which he claimed constituted violations of his Eighth Amendment rights, but the Court found that only Plaintiff's claims for denial of physical therapy, denial of a hand brace and denial of medication would survive dismissal (*see* Doc. 21, pp. 6-10).

110).  During the lengthy pretrial process, Plaintiff represented himself.  There were many discovery issues along the way.  There were also many requests for extensions of time and Plaintiff moved for reconsideration of several of the Court's orders.  IDOC prevailed in part on its a motion to dismiss (Doc. 66), the Court dismissing it from Count 8 of Plaintiff's Complaint, but finding that it still remained a Defendant as to Count 16 (Doc. 118).  Defendants also filed their respective summary judgment motions (Docs. 136, 142, 149, 194).  The Court granted partial summary judgment, dismissing several Defendants from certain counts and also dismissing some of Plaintiff's claims within those certain counts (Docs. 182, 183, 217, 218).

Regarding the last summary judgment motion filed (Doc. 194), because the moving Defendants raised the issue of administrative exhaustion, the Court adopted in part and vacated in part (Doc. 217) the Report and Recommendation (Doc. 203), and referred the matter to the Magistrate Judge for an evidentiary hearing (or "*Pavey*" hearing), reserving its ruling as to the remainder of the summary judgment motion.[2]  The Court also appointed an attorney to represent Plaintiff at this hearing (Doc. 220).  The hearing was conducted (Doc. 229) and thereafter, the appointed counsel was allowed to withdraw (Doc. 233).  However, because Plaintiff again moved for appointment of counsel and this matter was clearly proceeding to trial, the Court granted the motion.  On March 19, 2009, attorney Joseph L. Bauer, Jr., was appointed by the Court, *pro bono*, to serve as Plaintiff's counsel (Docs. 234

---

[2]  Incidentally, the issue of administrative exhaustion addressed at the hearing was later found to be moot, due to the stipulation of dismissal between Plaintiff and the moving Defendants (Docs. 237, 240, 242).

& 235).  A final pretrial conference was conducted on April 13, 2009, during which the Parties narrowed their issues for trial and identified their trial witnesses and exhibits (Doc. 244).  A Final Pretrial Order was issued to this effect (Doc. 253).  Although the trial date was initially set for August 24, 2009, due to a conflict with the Court's schedule, trial was rescheduled for September 8, 2009 (Doc. 252), and again rescheduled for October 5, 2009, due to a conflict with Plaintiff's counsel's calendar (Doc. 254).

Trial lasted through October 8, 2010.  At the close of Plaintiff's case, Defendants moved for judgment as a matter of law pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 50(a)**.  The Court granted the motion in part and denied it in part.  Specifically, the Court granted judgment as a matter of law in favor of defendant Karen McKinney as to Count 5, which stated an Eighth Amendment claim for deliberate indifference to a serious medical need.  The Court also granted judgment as a matter of law in favor of defendant Jonathan Walls as to Plaintiff's Eighth Amendment deliberate indifference claim in Count 11, and Plaintiff's First Amendment claim for retaliation and harassment in Count 17.  At the close of the entire case, Defendants again moved for a judgment as a matter of law to the remaining claims.  Again, the Court granted in part and denied in part Defendants' motion, granting judgment as a matter of law in favor of all the remaining *individual* Defendants named in Count 16, which stated a Rehabilitation Act claim.  The remaining counts that were submitted to the jury for deliberation were: Count 9 - a First Amendment claim for retaliation and harassment against defendants Karen

McKinney and Scott Wyciskalla; Count 16 - a Rehabilitation Act claim against IDOC; and Count 17 - a First Amendment claim for retaliation and harassment against defendant Elisa Rea.

The jury rendered a verdict finding no liability on the part of the individual Defendants (Doc. 275).  However, the jury found IDOC was liable to Plaintiff for his Rehabilitation Act claims made in Count 16 of his Complaint, and awarded damages in the amount of $17,000.[3]

### III.  Analysis

IDOC objects to Plaintiff's request for attorney's fees on the basis that: (1) Plaintiff has failed to substantiate his attorney's hourly rate, and (2) the amount sought by Plaintiff does not accurately take into account his limited success during trial (Doc. 234, p. 2).

### A.    Determining the Lodestar Amount

In determining an award of attorney's fees, the "lodestar" amount should first be calculated.  This is done by multiplying the number of hours the attorney reasonably expended on the litigation times a reasonable hourly rate.  ***Mathur v. Bd. of Trustees of So. Ill. Univ.*, 317 F.3d 738 (7th Cir. 2003) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983))**.  In order to support a request for attorney's

---

[3]  Plaintiff's Count 16 alleged violations of his federal rights under Section 504 of the Rehabilitation Act of 1973, **29 U.S.C. § 794**, while he was incarcerated at Menard Correctional Center ("Menard").  Specifically, Plaintiff, who is a handicapped individual, claimed his rights under the Rehabilitation Act were violated because Menard failed to provide him with reasonable accommodations to certain programs and activities including the shower area, the healthcare unit (via the sick call request procedures), the segregation visiting room, the exercise yard, transportation to court, and access to emergency exits from the wing where his cell was located.

fees, the moving party should first be deemed "prevailing" under a statute authorizing the recovery of attorney's fees.  Next, the moving party should submit "evidence supporting the hours worked and the rates claimed." *Hensley*, **461 U.S. at 432**. Inadequate documentary support in this regard may result in a reduction of the amount of the attorney's fees awarded. *Id.*  In order to ensure less reduction of the requested attorney's fees amount, the moving party should take care to only include fees for hours of an attorney's work that were " 'reasonably expended,' " as the court should attempt to exclude from its calculation any fees for hours of work deemed to be "excessive, redundant, or otherwise unnecessary." *Id.* **at 434 (citing S. REP. NO. 94-1011, at 6 (1976))**.  Therefore, the moving party should keep in mind the Supreme Court's cautionary advice that, "[h]ours . . . not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.* **(citation and internal quotes omitted) (emphasis in original)**.

### 1.    Number of Hours Reasonably Expended

Plaintiff moves for attorney's fees in the total amount of $35,759.75 (Doc. 282).  This total amount is comprised of the following: fees for Plaintiff's appointed attorney, Joseph L. Bauer, Jr., for 103.3 hours at a rate of $300.00 per hour; fees for Bauer's law clerk, William Jackson, for 62.25 hours at a rate of $50.00 per hour; and expenses incurred by the law firm of Bauer & Baebler, P.C., related to this suit, in the amount of $1,657.25.  A visual breakdown of this information is provided as follows:

|  | Hours | Rate per Hour | Amount |
|---|---|---|---|
| Joseph L. Bauer, Jr. | 103.3 | $300.00 | $ 30.990.00 |
| William Jackson | 62.25 | $50.00 | $   3,112.50 |
| Misc. Expenses | ---------- | ----------- | $   1,657.25 |

**Grand Total**                                                                          **$35,759.75**

IDOC does not contest the assertion that Plaintiff is a "prevailing" party and as such, is entitled to move for attorney's fees pursuant to the statutory authorization in the Rehabilitation Act, 29 U.S.C. § 794a(b).  It does, however, challenge the degree to which Plaintiff has actually "prevailed," given the fact that out of his initial 17 counts and 25 Defendants, only one Defendant was found liable as to one count (Count 16).

In support of the hours claimed, Plaintiff has attached the Affidavit of his appointed attorney, Joseph L. Bauer, Jr. ("Bauer Aff.") (Doc. 282, Ex. 1). Attached as exhibits to the Bauer Affidavit are: Exhibit 1 - Bauer's time entries for work on this case; Exhibit 2 - Jackson's time entries for his work on this case; and Exhibit 3 - a list of expenditures related to this case.  The Court will review these exhibits and consider IDOC's specific objections in determining the reasonable number of hours expended on Plaintiff's case.

### a.    Attorney Time

Regarding Bauer's time, IDOC points out that there are two distinct entries regarding work related to claims upon which Plaintiff clearly did not prevail,

as they deal with witness Larry Upchurch, who testified in support of claims the Court previously deemed unrelated to Plaintiff's Rehabilitation Act claim against IDOC[4] (Doc. 294, p. 8).  The specific entries are as follows:

| DATE | TIME | DESCRIPTION | SUPPORTING DOCUMENT |
|------|------|-------------|---------------------|
| 5/5/09 | 0.5 hours | Investigation into location of witnesses Glen Smith and Larry Upchurch and email to Ellen Bruch, AAG concerning their location | Emails with Ellen Bruce |
| 10/1/09 | 0.75 hours | Spoke w/Ryan Baebler concerning picking up witness Larry Upchurch who I located in Rockford, IL, bringing him to St. Louis to testify and returning him to Rockford | |

(Doc. 282, Ex. 1 - Bauer Aff., Ex. 1, pp. 2 & 6.)

While the October 1, 2009 entry clearly deals solely with an issue regarding Larry Upchurch, the May 5, 2009 entry deals with both Larry Upchurch and another potential witness, Glen Smith.  In viewing the description of anticipated testimony from the Final Pretrial Order (Doc. 253, pp. 4-5), it appears Plaintiff intended Smith to provide testimony on a variety of topics, including issues squarely addressed in his Count 16 Rehabilitation Act claim against IDOC.  Therefore, even though Smith never testified because he is now deceased, reimbursement is allowable for work spent attempting to obtain information on a witness to provide relevant testimony as to the claim upon which Plaintiff has prevailed.  As such, the Court will exclude in full the time for the October 1, 2009 entry, but it will only partially exclude the time for the May 5, 2009 entry, in that it will allow half of the

_____

[4] *See* the Court's September 27, 2010 Order (Doc. 297) regarding Plaintiff's Bill of Costs.

Page 8 of 21

time to remain, or 0.25 hours.

IDOC does not otherwise specifically object to Bauer's remaining time entries, although it does complain that "[t]he remaining entries are so generic that Defendant cannot determine whether the time was spent on the successful claim" (Doc. 294, p. 8). The Court has also reviewed Bauer's time entries and cannot deem further entries as unrelated to the litigation of Plaintiff's successful claim. In sum, the Court will exclude a total of one billable hour from Bauer's submitted time entries, thereby making the new amount of "reasonable" hours worked pertaining to Bauer equal **102.3 hours**.

### b.   Law Clerk Time

Next, IDOC objects to certain time entries made by Bauer's law clerk, William Jackson ("Jackson"), as not being reasonable (*Id*.). In particular, IDOC objects to the following of Jackson's time entries:

| DATE | TIME | DESCRIPTION | SUPPORTING DOCUMENT or time |
|------|------|-------------|------------------------------|
| 9/11/09 | 3.5 hours | Attempting to find remaining claims | Memo: "to Joe re: motion for inspection of prison" |
| 10/1/09 | 6.0 hours | Prison Visits | 9:00 to 3:00 |
| 10/5/09 | 9.5 hours | Trial | 8:00 to 5:30 |
| 10/6/09 | 9.0 hours | Trial | 8:30 to 5:30 |
| 10/7/09 | 9.5 hours | Trial | 8:30 to 6:00 |
| 10/8/09 | 5.0 hours | Waiting for verdict | 9:00 to 2:00 |

(Doc. 282, Ex. 1 - Bauer Aff., Ex. 2.)

The Court finds that the convoluted nature of this case, given Plaintiff's lengthy Complaint and the many instances in which certain claims or Defendants

were dismissed, when coupled with the fact that Plaintiff's counsel was not appointed until shortly before the final pretrial conference, certainly justifies time devoted to "attempting to find the remaining claims."  A more experienced attorney may have required less time to complete this tasks, however, a more experienced attorney would also likely charge a higher hourly rate.

Regarding Jackson's attendance at trial, often, an attorney needs someone to accompany him or her in order to help with handling exhibits, taking notes and other necessities.  Bauer could have well brought a paralegal or legal secretary to assist him during trial.  However, the Court is doubtful that their hourly rate would be much less than Jackson's.  The fact that Bauer chose Jackson appears to make sense, as his billable rate is relatively low and he had just completed law school, so he had a general sense of the law.  The minutes from trial reflect that IDOC had two attorneys present during trial (*see* Docs. 269, 270, 273, 274).  Granted, they had more Parties to represent, yet, the Court cannot find it *unreasonable* that Bauer chose to use his law clerk to assist him during trial.  Therefore, Jackson should also be compensated for his time.  In addition, the Court notes that the minutes (and his time entries) reflect Bauer was unable to be present in Court on October 8, 2009 to wait for a jury verdict (*see* Doc. 274).  Instead, Jackson was there on Bauer's behalf.  The Court also does not find this time entry unreasonable.

The only time entry the Court finds unreasonable is Jackson's October 1, 2009 entry, in which it appears he accompanied Bauer to two separate

Page 10 of 21

correctional facilities to meet with two different witnesses.[5]   This is, the Court believes, a task Bauer could have sufficiently accomplished on his own.   Thus, the Court will exclude this six-hour time entry as unreasonable.   Reviewing the remainder of Jackson's time entries, the Court notes nothing particularly unreasonable about them, on their face.  IDOC makes no further specific objections. Accordingly, the Court will exclude six hours from the 62.5 work hours for Jackson, making the new amount of "reasonable" hours worked pertaining to Jackson equal **56.5 hours**.

### c.   Expenses

IDOC does not make specific objections to the expenses for which Plaintiff seeks reimbursement.   Upon the Court's review of the expense sheet submitted as an attachment to the Bauer Affidavit, it appears that most of these expenses are related to those incurred by witness Larry Upchurch (Doc. 282, Ex. 1 - Bauer Aff., Ex. 3).   In fact, Plaintiff previously submitted these expenses in his Bill of Costs (Doc. 281), which the Court declined to tax (Doc. 297), finding Larry Upchurch did not provide testimony to support Plaintiff's Rehabilitation Act claim against IDOC – the only claim upon which he prevailed.   Therefore, these expenses will also be excluded herein.

The only expenses which the Court sees fit to allow as part of an

---

[5]  A cross-reference with Bauer's time entries for October 1, 2009 similarly shows six hours were spent driving to Big Muddy River Correctional Center to meet with Milam Martin and then to Pickneyville Correctional Center to meet with Salvador Longoria (Doc. 202, Ex. 1 - Bauer Aff., Ex. 1, p. 6).

attorney's fee award are the telephone (collect) calls from Plaintiff to Bauer, Bauer's travel expenses (mileage), and what appears to be investigator fees.  ***See, e.g., Heiar v. Crawford Cty., Wis.*, 746 F.2d 1190, 1203 (7th Cir. 1984) ("[E]xpenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates – expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses – are part of the reasonable attorney's fee allowed by the Civil Rights Attorney's Fees Awards Act")**.  Therefore, the Court will exclude a total of $1,342.74 from the requested total expense amount of $1,657.25, thereby leaving a new amount of reasonable expenses included as part of the attorney's fees award, equaling **$314.51**.

### 2.    Reasonable Hourly Rate

IDOC also contests Plaintiff's assertion that $300.00 per hour for the work of his attorney Joseph L. Bauer, Jr. ("Bauer"), is a "reasonable" hourly rate, arguing that Plaintiff has failed to sufficiently establish the market rate for his attorney's services.  The party seeking attorney's fees bears the burden of proving that the hourly rate sought to be charged by his attorney is considered "reasonable." ***Hensley*, 461 U.S. at 432**.  To support his claimed hourly rate of $300.00, Bauer states, in his affidavit, that "[a] reasonable hourly rate for my services is $400.00 per hour.  However, for purposes of this case the undersigned is requesting to be paid a reasonable attorney's fee of $300.00 per hour" (Doc. 282, Ex. 1 - Bauer Aff., pp. 2-3, ¶ 5).  To further support his averment, Bauer details his thirty-five years of legal

experience as a litigator (*Id.*).

The Seventh Circuit has expressed its "preference . . . to compensate attorneys for the amount that they would have earned from paying clients, *i.e.*, the standard hourly rate." **Mathur, 317 F.3d at 743 (citation omitted)**. Unfortunately, "an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services." **Harper v. City of Chicago Heights, 223 F.3d 593, 604 (7th Cir. 2000)**. The Court will presume that evidence of the "attorney's actual billing rate for comparable work" will constitute the going market rate. **Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999) (citing People Who Care v. Rockford Bd. of Educ., School Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996))**. If such evidence is not offered or not available (i.e., if the attorney typically accepts clients on a contingency fee basis), the "next best evidence of an attorney's market rate includes evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." **Id.** If the moving party meets his burden, the burden then shifts to the opposing party to show why a lesser hourly rate should be applied instead. **Id. at 554-55**.

The Court finds that Plaintiff has not met his burden to prove that a $300.00 hourly rate for the work of his attorney and a $50.00 hourly rate for his law clerk is reasonable. Plaintiff has not submitted any evidence showing either past fee awards Bauer has received in similar cases or demonstrating that the hourly rates

sought are consistent with the market rate.[6]   However, the Court notes that a $300.00 hourly rate has been found reasonable in the past for representation of a civil rights prevailing plaintiff in this market.   ***See, e.g., Horina v. City of Granite City, Ill.*, No. 05-cv-79-MJR, 2007 WL 1760873 at \*6 (S.D. Ill. June 18, 2007) (Reagan, J.) (finding the requested hourly rate for attorney's fees of $300.00 per hour to be consistent with the market rate for the forum, as demonstrated by the moving party through the affidavit of a local experienced trial attorney"); *cf. Reid v. Boyd*, No. 05-cv-679-MJR, 2007 WL 458205 at \*1-2 (S.D. Ill. Feb. 8, 2007) (Reagan, J.) (finding "nothing particularly troubling" about the moving party requesting an hourly rate of $250.00 per hour).**

IDOC, regarding its objection to the hourly rates, first asks the Court to allow it, on behalf of the taxpayers, the opportunity to conduct limited discovery to address the issue of what the reasonable hourly rate for this case should be (Doc. 294, p. 5).   In the alternative, IDOC proposes the Court apply the hourly rate established by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d)(3). Although IDOC notes that the PLRA does not technically apply to the Rehabilitation Act to limit the recovery of attorney's fees, as it would to § 1983 claims, it believes that "absent sufficient evidence of a market rate, the PLRA rate is a reasonable substitute" (*Id.*).   IDOC explains that the PLRA, provides an award of an hourly rate not greater than 150% of the hourly rate established under section 3006A of Title 18

---

[6]   Plaintiff's attorney works at a law firm located in this forum, in downtown St. Louis, Missouri.

for payment of court-appointed counsel in criminal cases (*Id.*, citing 42 U.S.C. §
1997e(d)(3)).  Pursuant to section 3006A of Title 18, which is referred to as the
Criminal Justice Act ("CJA"), fees for appointed attorneys are set at $60.00 per hour
for court time and $40 per hour for out of court time reasonably expended, unless
an increase is justified depending on a particular geographic region (*Id.*, citing 18
U.S.C. § 3006A(d)(1)).  As such, pursuant to the Omnibus Appropriations Act of
2009, the hourly compensation rate for CJA attorneys in October 2009 was $110.00
per hour (*Id.* at 6, citing Pub. L. No. 111-8 and Ex. A).  Thus, IDOC offers that a
reasonable hourly rate for Plaintiff's attorney's fees in this case is 150% of $110.00,
which equals an hourly rate of $165.00 (*Id.*).  Although it objects to the hourly rate
of $50.00 as being unsubstantiated, IDOC does not suggest a lower hourly rate to
apply for Jackson's work as a law clerk.

Relying on a previous order issued from this district which found the
$300.00 per hour to be the market rate, ***see Horina*, 2007 WL 1760873 at \*6**, and
also from the Court's own knowledge of Plaintiff's counsel's experience, it will apply
the hourly rate of $300.00 for Bauer's work.  As such, the Court declines to allow
IDOC's request to conduct additional discovery or to use IDOC's proposed hourly
rate of $165.00.  In addition, the Court finds $50.00 per hour to be a reasonable rate
for a law clerk who is a law school graduate, for this market.  Therefore, the Court
finds the applicable lodestar amount in this case to be as follows:

| | Hours | Rate per Hour | Amount |
|---|---|---|---|
| Joseph L. Bauer, Jr. | 102.3 | $300.00 | $  30.690.00 |
| William Jackson | 56.5 | $50.00 | $    2,825.00 |
| Misc. Expenses | ---------- | ----------- | $       314.51 |

**LODESTAR AMT.**                                               **$33,829.51**

### B.    Adjusting the Lodestar Amount

Once the lodestar amount has been determined, the court may then adjust the amount accordingly, as a result of its consideration of the following factors (herein referred to as the "*Hensley* factors"):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

***Hensley*, 461 U.S. at 430 n.3; *Mathur*, 317 F.3d at 742 n.1 (citations omitted).**

In other words, the resultant amount awarded as reasonable attorney's fees to a prevailing party will be determined on a case-by-case basis. ***Hensley*, 461 U.S. at 429**. In this determination, a district court is allowed broad discretion. ***Mathur*, 317 F.3d at 742 (citations omitted)**.

IDOC believes the lodestar amount should be reduced to reflect Plaintiff's "limited success" (Doc. 294, pp. 6-8).  It is true that the most "critical

factor" when determining the amount of attorney's fees to award is the "degree of success obtained" by the party requesting the fee award.  ***See Hensley*, 461 U.S. at 436**.  IDOC points out Plaintiff tried distinct claims (Doc. 294, p. 6).  In addition, IDOC notes that Plaintiff sought $500,000 in compensatory damages and $1 million in punitive damages (*Id*.).  Plaintiff also sought mandatory injunctive relief against IDOC to ensure that at its Menard correctional facility, IDOC install a wheelchair accessible bathroom in the segregation unit yard, wheelchair accessible visiting cubicles in the segregation visitation room, provide a wheelchair accessible van, and to provide a wheelchair accessible ramp off of the fourth floor wing where Plaintiff was housed, or else to house him on ground level (*Id*. at 6-7, citing Doc. 253, p. 9).  IDOC next points out that the only relief Plaintiff obtained was for his Rehabilitation Act claim and this was only against IDOC.  The award was also much less than the amount requested.   IDOC recalls that Plaintiff was awarded $17,000 in compensatory damages, was awarded no punitive damages and denied any injunctive relief (*Id*.).

          The Court agrees with IDOC's assertion that the lodestar amount should be reduced to account for Plaintiff's partial success.  In a perfect world, the Court could simply look at Bauer and Jackson's time entries to determine which work was attributable solely to the claim upon which Plaintiff prevailed.  However, while the Court also agrees the claims presented at trial were "distinct," it is likely Plaintiff's counsel did not work on the case claim by claim.  Therefore, such specific time entries are not available nor does the Court expect that they would be.  As such, the

Page 17 of 21

Court must use its own discretion in fashioning an appropriate adjustment to the lodestar amount, utilizing the various applicable *Hensley* factors .

First, because Plaintiff's unsuccessful constitutional civil rights claims brought pursuant to § 1983 can be deemed as "distinct" from his successful Rehabilitation Act claim, the Court cannot treat all of his attorney's work on the case as "part and parcel" of the successful claim.  ***See Hensley*, 461 U.S. at 434-35 (finding that when a plaintiff brings distinctly different claims for relief based on different facts and legal theories, even if brought against the same defendants, work expended on one claim will be viewed as unrelated to work expended on another claim and thus, "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," and as the "congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits . . . no fee may be awarded for services on the unsuccessful claim") (citation omitted).**

Plaintiff's counsel was not appointed at the onset of this case, but instead, appointed with the expectation that he would serve to litigate this case, as it was ready to be tried.  The Court granted Plaintiff's request to appoint trial counsel, thereby appointing Bauer in March 2009, in order that he would represent Plaintiff at the Final Pretrial Conference and during trial.  Despite the fact that it was his ethical obligation as a licensed attorney to endeavor to do so, Bauer, nevertheless,

willingly accepted this *pro bono* appointment and did a highly commendable job of representing his client.  Yet, his appointment was not of a lengthy duration – only roughly seven months.  Therefore, Bauer was not involved in most of the lengthy pretrial process, including discovery or dispositive motions.  The docket reflects that Bauer did file the following: the Parties' agreed upon Final Pretrial Order (Doc. 253), a Motion for Discovery to Inspect (Doc. 255), a Motion in Limine (Doc. 258), a Motion to Bifurcate or Segregate Evidence (Doc. 261), and a Motion to Compel Whereabout of Witness (Doc. 264).  He participated in the final pretrial conference.  Last, but certainly not least, the Court must acknowledge the amount of work that a competent attorney puts into preparing for a jury trial and trying a case in front of a jury.

Further, although Plaintiff's claims could not be defined as novel or overly-complex, an attorney, such as Bauer, who does not typically practice civil rights law or deal with the Rehabilitation Act on a frequent basis, must still work to understand these laws, their burdens of proof, and the requisite elements of each claim.  Moreover, because Bauer was appointed later in the game, he was not intimately familiar with the case as he may have been had he been appointed initially.  Attempting to familiarize oneself with this case and then sorting out which claims remain for trial can make one's eyes go temporarily crossed, to say the least.  The Court also observes that Bauer appears to be one of three attorneys employed at his law firm.  Therefore, this is not a situation where, if he is pulled away from his other cases because of his appointment in this case, there are other attorneys, several

ranks deep, to pick up the slack for him.  Rather, it is likely that Bauer's acceptance of his appointment in this case may have lead to the preclusion of his employment in other cases, or, at the very least, less time for him to devote to his paying clients. Lastly, Plaintiff did not just get some newly-licensed attorney, with the ink still drying on his bar admissions certificate, appointed to his case.  Instead, he was appointed a well-seasoned litigator, who, likely because of his experience and knowledge, was able to obtain some relief for Plaintiff.

Given that there is "no precise rule or formula" for determining the adjustment of the lodestar amount, the Court finds, when taking into account the applicable *Hensley* factors as discussed herein, it would be appropriate to award forty percent of the lodestar amount.  The Court arrives at this percentage because Plaintiff prevailed as to one of the five counts brought to trial.  While this 1 to 5 ratio actually equates to twenty percent, the Court believes that because Plaintiff prevailed on his Rehabilitation Act claim, which was a somewhat more complex to litigate than his other claims, the ratio should be doubled to account for this.  Therefore, the Court determines that the final award of attorney's fees shall be forty percent of the $33,829.51 lodestar amount, or **$13,531.80**.

## IV.  <u>Conclusion</u>

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Approval of Reasonable Attorney's Fees and Costs (Doc. 282).  The Court determines Plaintiff is entitled to attorney's fees, but not in the original amount requested.  Instead, the Court hereby awards Plaintiff **$13,531.80** in attorney's fees.

**IT IS SO ORDERED**.

Signed this 27th day of September, 2010.


/s/    David R Herndon

**Chief Judge**
**United States District Court**